IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case no. 1:14-CR-306-GBL - 8 |
| | ) | Defendant **GUEVARA'S** |
| | ) | |
| MANUEL E. PAIZ GUEVARA | ) | |

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SCHEDULING ORDER

It has only been about 60 days since the appointment of learned counsel in this case. The United States Attorney has provided some discovery, however, thus far, has refused and resisted identifying those agencies participating in the investigation and presentation of the case for the United States. The defense in unable to prepare motions pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and its progeny or to issue subpoenas concerning the facts of the case, begun motion driven investigation into the identifiable government witnesses, based on the discovery and other investigation, or other issues concerning the strengths and weaknesses of the government's case. The strength and weakness of the case being an issue for which counsel is obligated to determine in preparation for the presentation to the United States Attorney and the Capital Crimes Unit ("CCU") of

1

the United States Department of Justice as to the issue of whether the Attorney General will authorization for seeking the death penalty against this defendant.

    1. The Authorization Process:

Although the defendant has been charged with a death-eligible offense, death is not a potential punishment unless the government files a Notice of Intent to Seek a Sentence of Death (Notice of Intent), as required by 18 U.S.C. § 3593. The Department of Justice (DOJ) prohibits the filing of such a notice without the prior written authorization of the Attorney General of the United States. (U.S.A.M., ch. 9-10.040).[1] The DOJ Death Penalty Protocol allows defense counsel to present the defense views and arguments regarding death authorization first to the local United States Attorney for the Eastern District of Virginia, and second to the Capital Crimes Unit in Washington, D.C. (U.S.A.M., ch. 9-10.080; 9-10-120). The authorization presentation to the United States Attorney for the Eastern District of Virginia is a significant and important and legally critical step in the death penalty authorization process. Counsel for defendant is required to provide effective assistance of counsel and to fully investigate the circumstances of the defendant, the relative strengths and weaknesses in the government's case and whether death is the more likely verdict

---

[1] Attached as Ex. 1. In 1995, the DOJ adopted this formal procedure for U. S. Attorney to follow in federal cases charging capital crimes. This procedure was most recently amended effective July 27, 2011,

given the facts of the case and the facts and circumstances of the defendant's development and nurturing.

    A. The Local Process:

The protocol provides, in pertinent part, as follows:

> In any case in which the United States Attorney or Assistant United States Attorney is considering whether to request approval to seek the death penalty, the United States Attorney or Assistant Attorney general **shall give counsel for the defendant a reasonable opportunity to present any facts, including any mitigating factors, for the consideration of the United States Attorney or Assistant Attorney General shall give counsel for the defendant a reasonable opportunity to present any facts, including mitigating factor, for the consideration of the United States Attorney** or Assistant Attorney General.

(U.S.A.M., ch. 9-10.080)(emphasis added). Defense counsel views the term "reasonable opportunity" as encompassing a sufficient opportunity to conduct a complete and thorough investigation into the relative merits of the guilt and penalty phases to determine the existence of case facts or defendant circumstances which could mitigate the potential from death to life. The obvious purpose of such a meeting is for the defendant to bring to the attention of the United States Attorney facts and circumstances that would weigh against a request for capital authorization. The recommendations of the United States Attorney is a key component = indeed, in practice, virtually a determinative one – as to the Attorney General's ultimate decision.

At every level of review - including the initial review undertaken at the local level – the decision maker is directed to act, in essence, as a jury in determination of the strength of the government's case as to guilt or innocence and as to whether death or life without possibility of parole is the most appropriate punishment. While a jury decides to impose the punishment of guilt or innocence and as to whether death or life without possibility of parole is the most appropriate punishment. While a jury decision to impose the punishment of guilt must be unanimous, one juror, not convinced that death is most appropriate, can shape the punishment decision. If one juror can be dissuaded from imposing death, the defendant will live.

Thus, in language that virtually mirrors what federal death penalty phase jurors are told, that following standards for the government's determination whether death is appropriate apply:

> In determining whether it is appropriate to seek the death penalty, the United States Attorney or Assistant Attorney General, the Capital Review Committee, the Deputy Attorney General, and the Attorney General will determine whether the applicable statutory aggravating factors and any non-statutory aggravating factors sufficiently outweigh the applicable mitigating factors sufficiently to justify a sentence of death, or, in the absence of any mitigating factors, whether the aggravating factors themselves are sufficient to justify a sentence of death, or, in the absence of any mitigating factors, whether the aggravating factors themselves are sufficient to justify a sentence of death. **Reviewers are to resolve ambiguity as to the presence or strength of aggravating or mitigating factors in favor of the defendant.** The analysis employed in weighing the aggravating and mitigating factors should be qualitative, not quantitative; a sufficiently strong mitigating factor may outweigh

> several aggravating factors. Reviewer may accord weak aggravating factors or strong mitigating factors little or no weight. Finally, there must be substantial, admissible, and reliable evidence of the aggravating factors.

(U.S.A.M., ch. 9-10.130)(emphasis added). Thus, the role of mitigation in the authorization process, and the life and death of the defendant, is of transcendent importance.

Once the defense has had the opportunity to present any facts, including mitigating factors, to the United States Attorney, the U.S. Attorney's office then prepares a Death Penalty Evaluation Form and prosecution memorandum. (U.S.A.M., ch. 9-10.0880). the documents that must be included in the memorandum are information on the theory of the prosecution, the facts and evidence, the defendant's background and criminal history, the aggravating and mitigating factors associated with the crime and the defendant, the basis for federal prosecution as opposed to state prosecution, views of the victim's family regarding the death penalty, and the recommendation of the U.S. Attorney regarding whether the government should seek the death penalty. The documents should also include any documents or materials provided by the defense. (*Id.* at F).

### II. Defense Counsel's Responsibilities During the Authorization Process:

Counsel in a capital case are ethically and constitutionally required to conduct a thorough and exhaustive investigating to develop mitigating factors that may prove

persuasive in convincing the United States Attorney not to pursue the death penalty in a particular case.

It is noteworthy and must be emphasized that the local United States Attorney's **electing not to pursue death is the single most important task capital counsel can perform** since there is a high level of agreement among capital qualified counsel around the nation between the local recommendation and the Attorney General's ultimate decision on the issue. Thus, the local decision not to seek the death penalty virtually guarantees the same result from the Department of Justice while the opposite is equally true, i.e. a decision at the local level to seek authorization for a capital prosecution from the Attorney General means it is highly likely the case will proceed to an authorized capital case.

The Attorney General has stated that the matters of concern, to be addressed during the authorization process are:

> Although they are not specifically listed in the Standards of Determination, certain factors are commonly considered during this process, **including the strength of the evidence, the role of the defendant in the capital offense,** the defendant's willingness to plead guilty to a life or near-life term of imprisonment, and a variety of other factors probative of the jury's likelihood to impose a death sentence.

Memorandum to All Federal Prosecutors, Eric H. Holder, Jr., Attorney General, July 27, 2011 (Emphasis added)(Ex. 1). A complete factual investigation od the offense is proper in preparation for the United States Attorney's and the

Attorney General's review and decision as to whether seeking death is to be authorized. The decision process for authorization involves and assessment of the strength of the government's case and the role of the defendant in the homicide offense.

It is anticipated the Government's case against the defendant will involve significant evidence against the gang: MS-13 and its reputation for violence, as well as the defendant's involvement in the offense and the gang. It will further, likely, involve cooperating gang members or conspirators. What inducements, if any, are going to be offered to government witnesses for their testimony? What punishments, if a participant/witness, were the witnesses subject to prior to cooperation? Are there Rule 35 options available to the witness as a consequence of their cooperation? These are issues that counsel for defendant must investigate so that presentation can be made.

The task for the capital defense counsel, in accordance with ABA Guidelines, and case directives regarding effective assistance of counsel, requires that the attorney ever vigilantly seeks removal of the potential for the imposition of death. In addition to his or her skills of advocacy and supporting the application of those skills of advocacy it the underlying that that must be thoroughly investigated.

For those lawyers and law enforcement personnel unfamiliar with the reality and standards imposed when the government contemplates seeking death and

7

perhaps are more familiar with standards of non-capital cases is that trial counsel in a capital case must "investigate the client's life history, and emotional and psychological make-up, as well as the substantive case and defense … [t]he importance of this investigation, and the thoroughness and care with which it is conducted, cannot be overemphasized." Professor Gary Goodpaster; *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 N.Y.U.L. Rev. 299, at 324 (1983).

As the earliest determinative steps as to the looming potential for the imposition of death can be removed from the prosecutorial equation and the defendant live, versus dies, the presentations to the United States Attorney and the CCU are vital to the required standards of advocacy for the capital defense counsel. The full extent of discovery, due process and the usually trial-based motion's practice, must be available and applied pre-authorization. No effective trial counsel can overlook, protract, or not actively seek *Brady, Giglio, Roviaro*, or even Jencks Act information for presentation prior to death penalty authorization. Additional motions requesting such information will be filed shortly.

In essence, trial presentation of all evidence favorable to the defendant and the challenge, by rebuttal or explanation to every individual aspect and item of the government's case usually available immediately prior to trial, begins, in a capital case with the authorization presentation. The trial and presentation of the defendant's

case begins before the United States Attorney. Time and advocacy are required to ensure the information, usually available on the time on the very eve of trial, must be expended in authorization preparation.

Simply stated, trial counsel should be ready for trial, with his or her investigation complete, due process benefits realized and defense strategy formulated prior to the authorization meetings with the United States Attorney and the Attorney General. Then, and only then, after a complete investigation and the acquisition of the trial due process efforts can serious plea negotiation begin and trial set, if necessary. This last point concerning negotiation must be reemphasized.

The recent opinion in Missouri v. Frye, 132 S. Ct. 1399 (2012) imposes the heightened obligation of the defense counsel to conduct a thorough preparation and information acquisition prior to advising the defendant regarding any plea, regardless of the defendant's express wishes. Effective assistance to the client cannot be provided without counsel being mindful of the guilt factual and sentencing considerations involved in the case.

### III. This Court Should Create an Authorization Schedule:

In the context of federal capital trials, Chapter VI of the "Guidelines for Administrating the Criminal Justice Act and Related Statutes," promulgated by the Judicial Conference of the United States, urges courts and parties to establish a

schedule for resolution of whether the government will seek the death penalty.[2] This schedule must permit defense counsel a reasonable opportunity to investigate both guilt and mitigation in an effort to convince the U. S. Attorney not to seek the death penalty. Furthermore, the fact that the judicial conference promulgated this guideline demonstrates that it is appropriate for this Court to intervene with regard to the timing of the mitigations presentation.

There are obvious reasons for allowing defense counsel a reasonable opportunity to investigate. In May 1998, a subcommittee of the Committee on Defense Services of the Judicial Conference of the United States, chaired by the Hon. James R. Spencer, District Judge for the United States District Court for the

---

[2] § 670 Scheduling of Federal Death Penalty Case Authorization to Control Costs.
   (a) Within a reasonable time after appointment of counsel under 18 U.S.C. § 3005, and only after consultation with counsel for the government and for the defendant (including, as appropriate, in an ex parte application or proceeding), the court should establish a schedule for resolution of whether the government will seek the death penalty.
   (b) This schedule should include dates for:
       (1) the submission by the defendant to the U. S. Attorney of any reasons why the government shuld nto seek the death penalty;
       (2) the submission by the U.S. attorney to the appropriate officials of the DOJ of a recommendation and any supporting documentation concerning whether the death penalty should be sought' and
       (3) filing of a notice under 18 U.S.C.§ 3593 (a) that the government will seek the death penalty, or notification to the court and the defendant that it will not.
   (c) The schedule should be flexible and subject to extension for good cause at the request of either party (again, as appropriate, in an ex parte application or proceeding).
   (d) The schedule should allow reasonable time for counsel for the parties to discharge their respective duties with respect to the question of whether the death penalty should be sought, with regard to:
       ▪ the factual complexity of the case;
       ▪ the status of any continuing investigation of the crimes and related criminal conduct;
       ▪ the anticipated or actual progress of discovery;
       ▪ the potential for successful plea negotiations; and
       ▪ any other relevant factors.
   (e) It is also recognized that scheduling extension may be necessary because full development of facts related to guilt and aggravating and mitigating factors may continue even after the case is submitted to the DOJ for review.
       This case can be found at:
       http;//www.uscourts.gov/FederalCourts/AppointmentofCounsel/CJAGuidelinesForms/volPartA/vol7PartAChapter6.aspex#670

Eastern District of Virginia, released a report and recommendation on the cost and quality of defense representation in federal death penalty cases. See, FEDERAL DEATH PENALTY CASES: RECOMMENDATION CONCERNING THE COST AND QUALITY OF DEFENSE REPRESENTATION (hereinafter cited as "Spencer Committee Report").[3] Among the observations and findings contained in that report, and later adopted by the Judicial Conference of the United States, is the following: "Since an early decision not to seek death is the least costly way to resolve a potential capital charge, a prompt preliminary mitigation investigation leading to effective advocacy with the Justice Department is critical both to a defendant's interests and to sound fiscal management of public funds." (Appendix 6A of Chapter VI of the CJA Guidelines, p. 6.)[4] As noted by the Frist Circuit in In re Sterling-Suarez, 306 F. 3d 1170 (1st. Cir. 2008), albeit in the context of approving the early appointment of Learned Counsel pursuant to 18 U.S.C. § 3005, a thorough and persuasive mitigation presentation may save substantial time and money over the course of the capital case preparation and presentation:

> In some cases the early appointment of learned counsel will not be wasted at all but may well make the difference as to whether the Attorney general seeks the death penalty (and perhaps as to whether defendant lives or dies). Further, the submission to the Attorney General is a comparatively informal one and in those cases where the opposition succeeds n persuading the Attorney

---

[3] http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/Publications/Recommendations/RecommendationsCostQuality.aspx
[4] http://www.uscourts.gov/uscourts/FederalCourts/AppointmentofCounsel/vol07A-Ch06-Appx6A.pdf

> General not to seek the death penalty, a substantial additional expenditure on the trial and sentencing phase of a capital case is likely to be avoided. There is certainly no indication that requiring employment at the earlier state will necessarily be a waste of money.

*Id*. at 1174.

In a September 2010 update to the Spencer Report prepared jointly by the Defender Services Committee and the Office of Defender Services, the following observation was made concerning the length of the certification process and the desirability of containing the costs associated with the process:

> The Department of Justice can do this by evaluating and streamlining its procedures. Judges can do this by establishing reasonable deadlines and maintaining oversight during the pre-authorization state of the litigation. Courts should ensure, however, that whatever decision-making timetables are imposed are sufficient to allow for meaningful pre-authorization advocacy by counsel for the defendant. Where authorization to seek the death penalty is significantly likely, the prosecution and the defense should be given every opportunity to explore the reasons for not authorizing or for negotiating an early disposition of the case.

J. B. Gould and L. Greenman, Report to the Committee on Defender Services Judicial conference of the *United States update on the Cost and Quality of Defense Representation in Federal Death Penalty Cases* (September 2010) (Emphasis added.)[5]

---

[5] http://www.uscourts.gov/uscourts/FederalCourts/AppointemtnofCounsel/AppointmentOfCounsel/FDPC2010.pdf

The timetable proposed in this case is based on the collective experience of several respected counsel as the minimum feasible time within which to accomplish a preliminary investigation that will, in the language of the original Spencer Report, "lead[] to an early decision not to seek death."

The proposed timetable is further based on learned counsel's experience having represented a defendant in an MS-13 capital case in the past: United States v. Rivera, representing defendant Oscar Antonio Grande, docket no. 04-283 (ED. Va. April 2005). Tried in this court, before this judge, also a multiple defendant cases with significant language involved related issues in both investigation and trial.

IV. Conclusion:

Experience leads any Learned Counsel to describe a capital trial as a trial unlike any other criminal trial in the nation. Effective assistance of counsel obligations found in existing case law mandates that capital trial counsel fully investigate every identifiable issue, even when such an issue is not likely to become fruitful or dispositive of the outcome of the case. Every issue and every potential issue must be fully and thoroughly researched and developed.

In Gardner v. Florida, 430 U.S. 339, 357-58 (1977), the court held:

> [D]eath is a different kind of punishment from any other which may be imposed in this county. From the point of view of the defendant, it is different in both its severity and its finality. From the point of view of society, the action of the sovereign in taking the life of one of its citizens differs dramatically from any other legitimate state action. It is of vital importance to the defendant

> and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion.

Regardless of the Court's experience and counsel's experience in capital litigation it behooves all to be reminded that the real and underlying issue is not whether the defendant is guilty or even if he committed the offense. The issue is not merely whether the crime is qualitatively more evil than the majority of other murders, the violent taking of a human life, from the "heartland" of other murders. The issue is whether this defendant and this crime fit into a small and carefully crafted niche as the worst of homicides and the worst of defendants.

Accordingly, defendant Manuel E. Paiz Guevara moves this Court to issue an order permitting the authorization meeting with the United States Attorney to occur by May 1, 2015 and that, if necessary, the authorization meeting occur between the defense and the CCU 45 days after the meeting with the United States Attorney (June 15, 2015) subsequent to the authorization meeting with the United States Attorney.

It is further requested that if death authorization is issued, the United States file Notice of its Intention to Seek the Death Penalty, no later than sixty days (60) following the defense meeting with the CCU.

If the Notice of Intention to Seek the Death Penalty is filed by the United States, the trial of this matter should be set no earlier than six months from the date of the filing of the Notice of Intention to Seek the Death Penalty by the United States.

Proposed Case Schedule:

    Presentation to the U. S. Attorney ED Va.    May 1, 2015

    Presentation to the United States DOJ    June 15, 2015

    Notice of Intent to Seek Death filed    August 15, 2015

    Trial, if Death Authorized    no earlier than 6 months after notice filed.

    Respectfully submitted,

    **MANUEL E. PAIZ GUEVARA**

By:    _____(s)_____

David P. Baugh, Esq.
Va. Bar No. 22528
2025 East Main Street, Suite 108
Richmond, Virginia  23224
804.743-8111
Email: dpbaugh@dpbaugh.com

W. Michael Chick, Jr. Esq.
Law Offices of W. Michael Chick, Jr.
10513 Judicial Drive, Suite 102
Fairfax, Virginia  22030
571.276.8279
Email:  mike@chichlawfirm.com
**ATTORNEYS FOR DEFENDANT**

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing Motion for Designation of Law Enforcement Agencies was duly served, December 11, 2014, upon:

>Stephen M. Campbell, Esq.
>Julia K Martinez, Esq.
>Assistant United States Attorneys
>Eastern District of Virginia
>2100 Jamison Avenue
>Alexandria, Virginia 22314,

And all other defendants in this matter by the Court's electronic filing system.

_____/S/_____

**David P. Baugh**