IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | Docket No.: 1:14-306-005 |
| | : | Hon. Gerald Bruce Lee |
| CHRISTIAN LEMUS CERNA, | : | Hearing Date:  September 11, 2015 |
| | : | |
| Defendant | : | |

### DEFENDANT'S MOTION TO IMMEDIATELY DISCLOSE ANY AND ALL CONTACT BETWEEN GOVERNMENT AGENTS OR PROSECUTORS AND POTENTIAL JAILHOUSE INFORMANTS INCARCERATED WITH DEFENDANT

COMES NOW the Defendant, Christian Lemus Cerna, by and through counsel, and hereby moves this Court to order the Government to immediately disclose any and all contact between government agents or prosecutors and potential informants incarcerated with defendant. In support, defendant relies upon Rules 12(b)(4) and 16(a)(l)(A) of the Federal Rules of Criminal Procedure, the Fifth, Sixth and Eighth Amendments, and submits the following.

Defendant, since his arrest, has been incarcerated at the Alexandria Detention Center in Alexandria, Virginia and the Fairfax County Detention Center in Fairfax, Virginia, the U.S. Marshall's holding cell at the U.S. District Courthouse, and he has been transported to and from these various detention locations.  During this period of incarceration and transportation to and from detention locations, he has been in contact with other pretrial detainees and convicted inmates, some of whom are facing lengthy state or federal sentences. Jailhouse informants have been used frequently throughout the federal system by prosecuting authorities and frequently emerge to testify against defendants in exchange for favorable

1

treatment – i.e. reduction in sentences, dismissal of charges—in their own cases. The possibility of manufactured conversations exists.

As a safeguard and to permit the required pretrial resolution of Defendant's objections to any testimony of this sort, the Defendant requests immediate disclosure of government (state or federal) sponsored or monitored contacts regarding the allegations in the indictment and any such conversation the prosecution is aware of.

Government tolerated, sponsored or planted informants are both highly unreliable and frequently used, particularly in serious cases. In *United States v. Henry*, the government planted an informant in the same cell as the defendant. 447 U.S. 264, 266-267 (1980). The informant was instructed not to interrogate the defendant about his involvement in the crime but to be alert to any statements. *Id*. The informant ultimately testified at the defendant's trial concerning incriminating statements made by the defendant. *Id*. In a broad characterization of the rights protected by the Sixth Amendment, the Supreme Court has stated that, "[b]y intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel, the Government violated Henry's Sixth Amendment right to counsel." *Id*. at 274, 100 S.Ct. 2183.

The Sixth Amendment provides that, "the accused shall enjoy the right . . . to have Assistance of Counsel for his defence."U.S. Const. amend VI. This right is triggered "`at or after the time that judicial proceedings have been initiated . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Fellers v. United States*, 540 U.S. 519, 523 (2004) (quoting *Brewer v. Williams*, 430 U.S. 387, 398, (1977)). Once the Sixth Amendment has attached, the government may not "deliberately elicit" incriminating statements from the defendant without the presence of his attorney. *See United States v. Henry*, 447 U.S. at

2

270 (outlining the deliberate-elicitation standard). Unlike a defendant's Fifth Amendment rights, the Sixth Amendment is implicated even when an undercover officer or unidentified informant acting at the behest of the state questions the defendant. *Massiah v. United States*, 377 U.S. 201, 206 (1964). In other words, admission of statements made even when the defendant does not know he is being interrogated can violate the Sixth Amendment.

The Supreme Court has cautioned, "the Sixth Amendment is not violated whenever — by luck or happenstance — the State obtains incriminating statements from the accused after the right to counsel has attached." *Maine v. Moulton*, 474 U.S. 159, 176 (1985). Rather, the Constitution is implicated when the police suggest that an informant record conversations and when they assist an informant in recording conversations with the defendant. A defendant's Sixth Amendment right is also likely to be violated when an informant has an arrangement already in place with the state at the time of the conversation, and perhaps is compensated on a contingent basis. *Henry*, 447 U.S. at 270.

In *Maine v. Moulton*, 474 U.S. 159 (1985), the Court expanded the *Henry* holding by finding that "knowing exploitation by the state of an opportunity to circumvent the defendant's right to counsel is equivalent to intentional creation of such an opportunity." Yet, an undercover law enforcement officer posing as a fellow inmate is still not required to give Miranda warnings to an incarcerated suspect before asking him questions that may elicit an incriminating response. *Illinois v. Perkins*, 496 U.S. 292, 300 (1990).

However, to the extent a defendant's Sixth Amendment right to counsel is violated, any statements elicited must be suppressed on that basis. In *Moulton*, the Supreme Court held that incriminating statements made by the defendant, after formal charges were filed against him, to his co-defendant, who was operating as an undercover agent for the state, were inadmissible,

notwithstanding that the state also had legitimate reasons for recording the defendant's statements to his co-defendant, which included investigating the defendant's alleged plan to kill a state witness and insuring the codefendant's safety. *Moulton*, 474 U.S. at 179-80.

The test for agency used by a majority of the federal courts is whether law enforcement instructed the informant to obtain information about a particular defendant. *See United States v. LaBare*, 191 F.3d 60 (1st Cir. 1999) (Being told by the government to listen for information about criminal activity from any and all inmates does not make an informant a government agent); *United States v. Birbal*, 113 F.3d 342 (2nd Cir. 1997) (It appears that there must be specific instructions to gather information from a specific individual); *United States v. McFadden*, 187 Appx. 290 (4th Cir. 2006); *United States v. D.F.*, 63 F.3d 671 (7th Cir. 1995); *Moore v. United States*, 178 F.3d 994 (8th Cir. 1999); *Stano v. Butterworth*, 51 F.3d 942 (11th Cir. 1995); *United States v. Watson*, 894 F.2d 1345 (D.C. Cir. 1990); *U.S. v. LaBare*, 191 F.3d 60 (1st Cir. 1999); *U.S. v. York*, 933 F.2d 1343 (7th Cir. 1991). Nevertheless, the Fifth Circuit in *United States v. Cervantes-Pacheo*, 826 F.2d 310, 314 (5th Cir. 1987) has observed that:

> "It is difficult to imagine a greater motivation to lie than the inducement of a reduced sentence, but courts uniformly hold that such a witness may testify so long as the government's bargain with him is fully ventilated so that the jury can evaluate his credibility." (Emphasis added).

Furthermore, citing *United States v. Beard*, 761 F.2d 1477, 1481 (11th Cir. 1985), the Fifth Circuit held that "we hold that the credibility of the compensated witness, like that of the witness promised a reduced sentence, is for a properly instructed jury to determine." *Id* at 316. Defendant respectfully submits that such a jailhouse informant possesses a strong motive for perjuring himself . Therefore, such testimony is inherently unreliable and in need of pretrial judicial review. The Supreme Court in *Lilly v. Virginia*, 527 U.S. 116, 125 (1999), for example, suggested a jury instruction may be required regarding the credibility of

informants. The Oklahoma court in *Dodd v. State*, 993 P.2d 778, 784 (Ok. Crim. App. 2000) adopted several protective procedures to ensure a full cross-examination of informant witnesses was possible because informant testimony "triggers '"insidious reliability problems[,] ... [i]rrespective of whether initially contacted by the state, most informants relay incriminating statements to the state in expectation of benefit in exchange."

As of June 2015, over 155 people have been exonerated from death row since capital punishment was reinstated in 1973. A 2005 study by the Center for Wrongful Convictions at the Northwestern School of Law examined 111 of those exonerations and found that 45.9% of those 111 people were wrongfully sentenced to death based at least in part on the testimony of "witnesses with incentives to lie." Center on Wrongful Convictions, The Snitch System: How Snitch Testimony Sent Randy Steidl and other Innocent Americans to Death Row Center on Wrongful Convictions, Northwestern Chicago: Northwestern University Press, 2005, available at thttp://www.law.northwestern.edu/wrongful convictions/documents/SnitchSystemBooklet.pdf. In fact, testimony from snitches and other informants is the leading cause of wrongful convictions in capital cases. *Id.*

This forbidding problem had been previously observed by the Courts. The Mississippi Supreme Court had warned of: "an unholy alliance between con-artist convicts who want to get out of their own cases, law enforcement who [are] running a training ground for snitches over at the county jail, and the prosecutors who are taking what appears to be the easy route, rather than really putting their cases together with solid evidence." *McNeal v. State*, 551 So. 2d 151, 158 n.2 (Miss. 1989).

The Mississippi Court's concern is a reflection of the fact that cases are built on opportunist "snitches" on a frighteningly frequent basis. For this reason, the same court

5

has warned that the testimony of either an accomplice or a snitch "is to be received and considered with caution, as from a polluted and suspicious source." *Dedeaux v. State*, 86 So. 664, 665 (Miss. 1921) (citing *Wilson v. State*, 16 So. 304 (Miss. 1894); see also, *Lilly*, 527 U.S. at 125.

The United States Supreme Court has noted that "[t]he use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility." *Lee v. United States*, 343 U.S. 747, 757 (1952); see also *United States v. Swiderski*, 539 F.2d 854 (2d Cir. 1976) (informer paid $10,000 for his services, worked on a contingent fee basis); *United States v. Sarvis,* 523 F.2d 1177, 1180 (D.C. Cir. 1975); United *States v. Wasko*, 473 F.2d 1282 (7th Cir. 1973); *United States v. Leonard*, 494 F.2d 955, 961 (D.C. Cir. 1974); *United States v. Garcia*, 528 F.2d 580 (5th Cir.), cert. denied sub nom. *Sandoval v. United States*, 426 U.S. 952 (1976).

For these reasons, the United States Supreme Court has held that snitch or accomplice testimony "ought not to be passed upon ... under the same rules governing other apparently credible witnesses..." *Crawford v. United States*, 212 U.S. 183,204 (1908). Indeed, the Nevada Supreme Court has noted "that a jail-house incrimination is now available in a fairly large number of homicide cases." *D'Agostino v. State*, 823 P.2d 283, 285 (Nev. 1992). The Court went on to hold that special precautions must be taken to avoid presenting unreliable evidence to the jury:

"A legally unsophisticated jury has little knowledge as to the types of pressures and inducements that jail inmates are under to "cooperate" with the state and to say anything that is "helpful" to the state's case. It is up to the trial judge to see that there are sufficient assurances of reliability prior to admitting this kind of amorphous testimony to keep this kind of unreliable evidence out

of the hands of the jury..." *Id*. at 284; *see also* Cal. Penal Code §1127 (trial courts must instruct jurors that "testimony of an in-custody informant should be viewed with caution and close scrutiny"); *People v. (Thomas) Thompson*, 45 Cal.3d 86 (1988) (on proportionality review, court finds prosecution's need to rely on "snitch" testimony "disconcerting"); *Tibbs v. State*, 337 So.2d 788, 790 (Fla. 1976) (reversing a murder conviction/death sentence as being against the weight of the evidence. The testimony of a cellmate snitch was dismissed as "the product of purely selfish considerations."); *Barnes v. State*, 469 So.2d 126, 132 (Miss. 1984) (testimony of jailhouse snitches must "be viewed with caution and suspicion even in the absence of any proof of a leniency/immunity agreement.").

The Louisiana Supreme Court views the word of an informant as being less credible than that of a law abiding citizen when it comes to probable cause to search. A distinction must be drawn "between an 'informant' who is a member of the criminal community and an informant who is the witness or victim of a crime." *State v. Ross*, 561 So.2d 1004, 1009 (La.App. 4 Cir. 1990), citing *State v. Morris*, 444 So.2d 1200 (La. 1984). The testimony of a snitch may simply be too insubstantial to support a conviction. *See Jackson v. Virginia*, 443 U.S. 307 (1979)); White, Regulating Prison Informers Under the Due Process Clause, 1991 S. Ct. Rev. 103, 104-105.

Moreover, to the extent that the Sixth Amendment approach does not directly address the reliability problems associated with jailhouse informants, Fifth Amendment due process or fundamental fairness requirements do.

Prosecutors have a more important objective than just winning a case. As the Court indicated in *Berger v. United States*, 295 U.S. 78, 88 (1935), "it is the sworn duty of the prosecutor to assure that the defendant has a fair and impartial trial." The duty of the prosecutor

7

to try the defendant fairly and impartially is "utterly derailed by unchecked lying witnesses, and by any law enforcement officer or prosecutor who finds it tactically advantageous to turn a blind eye to the manifest potential for malevolent disinformation." *Commonwealth v. Bowie*, 243 F.3d 1109, 1114 (9th Cir. 2001). Further, the Supreme Court has been very sensitive to the use of false testimony and has readily found a violation of due process when such testimony is knowingly used. *See Mooney v. Holohan*, 294 U.S. 103 (1935).

Even when perjured testimony is not actively sought, the Court has found a due process violation if the prosecutor offers the testimony knowing it to be false. *Alcorta v. Texas*, 355 U.S. 28 (1957) (per curiam)). Particularly relevant to jail-house informants is the case of *Napue v. Illinois* 360 U.S. 264 (1959), in which an informant falsely testified that no promises had been made. The Court held that the prosecutor was required to correct this testimony. This obligation extended even if another prosecutor had made the leniency agreement and the trial prosecutor was unaware of the arrangement. *Giglio v. U.S.*, 405 U.S. 150 (1972).) In this way, the Court demonstrated its concern not just for prosecutorial misconduct, but also for accuracy of the testimony. The Fifth Circuit in *United States v. Valencia*, 0820546 (5th Cir. 2010), recently held that while the harmless error rule applies to Brady violations a new trial will be given if the defendant proves that: "(1) the prosecution did not disclose evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material." (*citing United States v. Infante*, 404 F.3d 376, 386 (5th Cir. 2005)). Evidence is "material" if there is a reasonable probability that the outcome of the trial would have been different had such evidence been revealed to the defense. *Id*. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. (citing *United*

*States v. Brown*, 303 F.3d 582, 593 (5th Cir. 2002) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

      WHEREFORE, Defendant requests that this Court require the government to immediately disclose any and all contact between government agents or prosecutors and informants who are or have been incarcerated with Defendant so that he can seek appropriate relief. Following disclosure of any such information, the Defense reserves its rights to file any evidentiary or other motion to challenge the admissibility of any such statements. In order for this Court—given the complexity and number of defendants—to make a proper pretrial determination in advance of trial the disclosure here should be immediate.

                                    Respectfully submitted

                                    Christian Lemus Cerna
                                    By Counsel

| | |
|---|---|
| _____/s_____ | \_\_\_\_/s_____ |
| Keva J. McDonald | Frank Salvato |
| Virginia Bar No.: 72197 | Virginia Bar No.: 30453 |
| Attorney for Lemus Cerna | Attorney for Lemus Cerna |
| The Law Office of Keva J. McDonald | |
| 4000 Legato Road | 1203 Duke Street |
| Suite 1100 | Alexandria, Virginia 22314 |
| Fairfax, Virginia 22033 | (703) 548-5000 |
| (703) 896-7669 | (703) 739-0179 (fax) |
| (571) 335-0763 (fax) | frank@salvatolaw.com |
| kmcdonaldlaw@aol.com | |

Certificate of Service

WE HEREBY CERTIFY that on the 23rd day of July, 2015 this motion was filed with the Electronic Filing System which system will send a copy of such motion to:

Stephen M. Campbell

Assistant United States Attorney

Attorney for the United States

United States Attorney's Office

2100 Jamieson Avenue

Alexandria Virginia 22314

Steve.Campbell@usdoj.gov

Julia Martinez

Assistant United States Attorney

Attorney for the United States

United States Attorney's Office

2100 Jamieson Avenue

Alexandria Virginia 22314

Julia.Martinez@usdoj.gov

| \_\_\_\_\_/s_____ | \_\_\_\_\_/s_____ |
|---|---|
| Keva J. McDonald | Frank Salvato |
| Virginia Bar No.: 72197 | Virginia Bar No.: 30453 |
| Attorney for Lemus Cerna | Attorney for Lemus Cerna |
| The Law Office of Keva J. McDonald | |
| 4000 Legato Road | 1203 Duke Street |
| Suite 1100 | Alexandria, Virginia 22314 |
| Fairfax, Virginia 22033 | (703) 548-5000 |
| (703) 896-7669 | (703) 739-0179 (fax) |
| (571) 335-0763 (fax) | frank@salvatolaw.com |
| kmcdonaldlaw@aol.com | |