## THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case no. 1:14-CR-306-GBL - 8 |
| | ) | |
| | ) | |
| MANUEL E. PAIZ GUEVARA | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT MANUEL E. PAIZ GUEVARA'S MOTION FOR IMMEDIATE TENDER OF GIGLIO INFORMATION AS TO COOPERATING INDIVIDUALS

DEFENDANT MANUEL E. PAIZ GUEVARA has filed his motion seeking immediate tender of all available and described documentation regarding considerations, actual or potential, for sentencing reductions or limiting sentencing exposure, for cooperation.

*Giglio v. United States*, 405 U.S. 150 (1972) provides the due process obligation of the prosecution to tender to the defendant any information possessed by that office or the office of any investigative agencies, any information which might reveal a reason to or possible benefit from fabrication.

Limited investigation reveals that the prosecution of this defendant will be significantly driven by cooperating individual testimony. There is limited objective

evidence of the offenses and what evidence is available will be significantly driven by cooperating individuals offering "explanations" regarding the relationship between the objective evidence and the defendant. In point of fact, absent the cooperating individuals "explanations" the evidence will not objectively identify the actual perpetrator of the offense.

All prosecutions involving cooperating individual witnesses are precarious and likely to involve fabricated evidence.

The United States Department of Justice has been long aware of the problems associated with cooperating individual predicated or dependent prosecutions.

> Criminals are likely to say and do almost anything to get that they want, especially when what they want is to get out of trouble with the law. This willingness to do anything includes not only truthfully spilling the beans on friends and relatives, but also lying, committing perjury, manufacturing evidence, soliciting others to corroborate their lies with more lies, and doublecrossing anyone with whom they come into contact, including – and especially – the prosecutor. A drug addict can sell out his mother to get a deal; and burglars, robbers, murderers and thieves are not far behind. They are remarkably manipulative and skillfully devious. Many are outright conscienceless sociopaths to whom 'truth' is a wholly meaningless concept. To some, 'conning' people is a way of life. Others are just basically unstable people. A 'reliable' informant one day may turn into a consummate prevaricator the next.

Prosecution of Public Corruption Cases (Department of Justice Feb. 1988, pp. 117-118.

The Innocence Project reports that in 15 percent of the cases overturned due to DNA evidence exoneration, that is, scientific objective evidence indicating the accused could not have been the perpetrator, an informant or cooperating jail house witness testified as to the exonerated defendant' commission of the offense. See http://www.tje,o[/prg/index.php/snitch-testimony.

A study conducted of 350 erroneous convictions found that one-third of the erroneous convictions were due to "perjury by prosecution witness", particularly con-conspirators testifying for promises, assurances or hope of a reduced sentence or sentencing exposure. Rule 35 of the Federal Rules of Criminal Procedure or rule 5K of the United States Sentencing Commission Guidelines were most often implicated in the federal exonerations. It is likely the instant case will involve cooperating witnesses testifying under the pale of sentencing agreements or deals. H. Bedau & M. Radelet, Miscarriages of Justice in Potentially Capital Cases, 40 Stand. L. Rev. 21, 173 (1987).

Traditionally cross examination of the cooperating informant has been the only tool available to the defense to expose the perjury of the cooperating witness. The reality of the effectiveness of cross examination as a tool to ferret out perjury on the part of a cooperating informant is that the testimony of the cooperating informant cannot be corroborated or rebutted. Usually the cooperating informant will testify that the defendant admitted, in a one on one conversation, not overheard

by any other potential witness, that the defendant "confessed." Such evidence cannot be revealed by cross examination for the cooperating informant knows and will rely on the lack of potential corroboration or rebuttal by anyone save the defendant, who's role as the accused on trial carries an inherent indicia, if not presumed, likelihood a being self-serving and perjury. In point of fact, the cooperating informant is fully and calculatingly aware that the success or failure of his cooperation is dependent upon his or her being believed by the prosecution. If the informant testifies falsely the prosecution is the very last entity to whom such admission would be made.

Interestingly, a routine Google search employing all of the electronic information filtering tools of the internet and every item every written on the topic reveals not one instance of a cooperating witness in a case later exonerated for perjurous informant testimony being prosecuted or officially sanctioned for committing perjury.

TIMELINESS OF TENDER –

A defendant has a constitutional right to *Brady* and *Giglio* material "in time for its effective use at trial." *United State v. Smith Grading and Paving, Inc,* 760 F. 2d at 531.

The United States Department of Justice has recognized the constitutional right of a defendant to tender of Brady materials, and as such Giglio materials, in time for the defendant to investigate and effectively use the materials during a trial.

In 2010 the United States Department of Justice, in a Memorandum to Department Prosecutors, written by Deputy Attorney General David O. Ogden, was directed to provide guidance to prosecutors. The memorandum have become known as "the Ogden Memo." The memorandum was not some discourse by one prosecutor regarding his or her practices. The memorandum was developed by "a working group of experienced attorneys with expertise regarding criminal discovery issues that included attorneys from the Office of the Deputy Attorney General, the United States Attorneys' Offices, the Criminal Division, and the National Security Division. The working group received comment from the Office of the Attorney General, the Attorney General's Advisory Committee, the Criminal Chiefs Working Group, the Appellate Chiefs Working Group, the Professional Responsibility Advisory Office, and the Office of Professional Responsibility. See the Ogden Memo, page 1.

On the issue of the timeliness of disclosure to due process information, the memorandum provided that "Timing: Exculpating information, regardless of whether the information is memorialized, must be disclosed to the defendant reasonably promptly after discovery." Ogden Memo, page 7.

To be for "effective use at trial" must be such that the defendant has time and opportunity to investigate and develop the facts of any reason a government witness might have to fabricate. By example, if the witness is being offered implicit or explicit immunity from a criminal act, the defendant must be afforded the opportunity to determine the facts of the criminal act alleged and the potential range of punishment to which the witness might be subjected to determine the "value" of the immunity offer.

GIGLIO MATERIAL DEFINED –

In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court stated that constitutional due process rights, as set forth the Brady v. Maryland, citation omitted, requires the defendant access and tender of materials affecting the credibility of Government witnesses, "such as, **but not limited to**, plea agreements, promises of leniency by the Government, inducements of testify, and, financial assistance offered by the Government." *U. S. v. Beckford*, 962 F. Supp. 780 (E.D. Va. 1997) (Emphasis added). Any information known to the Government which might indicate any reason for the witnesses to fabricate is exculpating and material which is classically Brady.

The Ogden Memorandum, at Paragraph 7, page 4, states:

7. <u>Potential *Giglio* Information Relating to Non-Law Enforcement Witnesses and Fed. R. Evid. 806 Declarants</u>: All potential Giglio information known by or in the possession of the prosecution

team relating to non-law enforcement witnesses should be gathered and reviewed. That information includes, but is not limited to:

▪ Prior inconsistent statements (possibly including inconsistent attorney proffers, see United States v. Triumph Capital Group, 544 F. 3d 149 (2nd Cir. 2008))

▪ Statements or reports reflecting witness statements variations (see below)

▪ Benefits provided to witnesses including:

▪ Dropped or reduced charges

▪ Immunity

▪ Expectations of downward departure or motions for reduction of sentence

▪ Assistance in a state or local criminal proceeding

▪ Considerations regarding forfeiture of assets

▪ Stays of deportation or other immigration status

▪ considerations

▪ S-Visa

▪ Monetary benefits

▪ Non-prosecution agreements

▪ Letters to other law enforcement officials (e.g. state prosecutors, parole boards) setting forth the extent of a witness's assistance or making substantive recommendations on the witness's behalf

▪ Relocation assistance

▪ Consideration or benefits to culpable or at risk third-parties

▪ Other known conditions that could affect witness bias such as:

▪ Animosity towards defendant

▪ Animosity toward a group of which the defendant is a member or with which the defendant is affiliated

▪ Relationship with victim

▪ Known but uncharged criminal conduct (that may provide an incentive to curry favor with a prosecutor)

▪ Prior acts under Fed. R. Evid. 608

▪ Prior convictions under Fed. R. Evid. 609

▪ Known substance abuse or mental health issues or other issues that could affect the witness's ability to perceive and recall events.

Please note the language of numbered paragraph 7 of the Ogden memorandum which states that the list of information to be disclosed "includes, but is not limited to:" the list of information above.

Given the extent of the information, not exclusive, identified as information which could affect a witness's credibility, it should be obvious that such information must be tendered early enough to provide defense counsel the opportunity to investigate the information and to see that all supporting documentation as to the stated benefit is obtained by the defense for presentation at trial and to be used during cross examination as to credibility of the witness.

The court should grant defendant's motion for early disclosure of Giglio material and that such disclosure be ordered mindful of the time sufficient to investigate the circumstances, while involved in the complex preparation of the other trial obligations of counsel in addition to *Giglio* issues.

Respectfully submitted,

**MANUEL E. PAIZ GUEVARA**

By:   _____(s)_____

David P. Baugh, Esq.

8

Va. Bar No. 22528
2025 East Main Street, Suite 108
Richmond, Virginia  23224
804.743-8111
Email: dpbaugh@dpbaugh.com

W. Michael Chick, Jr. Esq.
Law Offices of W. Michael Chick, Jr.
10513 Judicial Drive, Suite 102
Fairfax, Virginia  22030
571.276.8279
Email:  mike@chichlawfirm.com
**ATTORNEYS FOR DEFENDANT**


CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and

foregoing Notice of Appearance was duly served, June 4, 2013, upon:


Stephen M. Campbell, Esq.
Julia K Martinez, Esq.
Assistant United States Attorneys
Eastern District of Virginia
2100 Jamison Avenue
Alexandria, Virginia  22314,

And all other defendants in this matter by the Court's electronic filing

system.

/s/  *David P. Baugh*
**David P. Baugh**

David P. Baugh, Esq.
Va. Bar No. 22528
2025 East Main Street, Suite 108
Richmond, Virginia  23224

9

804.743-8111
Email: dpbaugh@dpbaugh.com