IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

      v.                                No. 1:14-CR-306 - GBL

PEDRO ANTHONY ROMERO CRUZ,
JOSE LOPEZ TORRES,
JAIME ROSALES VILLEGAS,
ALVIN GAITAN BENITEZ,
CHRISTIAN LEMUS CERNA,
OMAR DEJESUS CASTILLO,
DOUGLAS DURAN CERRITOS,
**MANUEL ERNESTO PAIZ GUEVARA**,
JOSE DEL CID,
JESUS ALEJANDRO CHAVEZ,
        Defendants

## MEMORANDUM FOR BRADY DISCOVERY MOTION FOR INVESTIGATIVE MATERIALS PERTAINING TO THE PARK VIEW LOCOS SALVATRUCHAS CLIQUE OF MS-13

Manuel Ernesto Paiz Guevara, by counsel, has moved this Court to Order the United States to provide the defense with specific investigative materials pertaining to MS-13. The specific materials we request under Brady v. Maryland, 373 U.S. 83, 87 (1963) are as follows:

1. **Field Interview Cards and Photographs from any federal or local agencies involved in this case.**

We request any and all written results of "field interviews," field interview cards (known as F.I.'s), files and/or photographs for all alleged members, affiliates, and other associates of the Park View Locos Salvatruchas (PVLS) clique of MS-13 who are charged in this case (or investigated in this case whether or not those people are now charged in the present indictment).[1]

2. **Relevant Gang Books or Gang Files.**

We request any "gang book" or "gang file," in whatever form, and however named, that collects information about the PVLS clique of MS-13.

3. **Maps or Descriptions of PVLS clique of MS-13 Street "Turf."**

We request any and all maps or written descriptions of the supposed "turf" of the PVLS clique of MS-13. By this, we mean the physical

---

[1] We know, for example, from a sworn search warrant affidavit provided in discovery (dated August 15, 2014), that Mr. Paiz Guevara had been "observed with 3 other *known* Mara Salvatrucha 13 member/associates [sic]." (emphasis added). The affiant's basis as to who was a "known" gang member, comes at least partly from the information we request – that is, information/files in the form of F.I's (or something similar) regarding alleged PVLS individuals, prior formal or informal law enforcement contact with them, and/or information kept about them from various sources.

geographical area that the PVLS clique of MS-13 is alleged to control and/or operate within.

**4. Data Compilations re: Members or Affiliates of the PVLS clique of MS-13.**

We request any and all compilations, summaries, or other reports documenting the number of arrests or law enforcement contacts involving the alleged gang members or affiliates of the PVLS clique of MS-13.

**5. Training Materials re: MS-13 and the PVLS clique of MS-13 in particular.**

We request any and all training materials or other documents that have been maintained, distributed, or otherwise used to train or educate law enforcement personnel (including federal and state law enforcement and federal and state prosecutors) about MS-13 and the PVLS clique of MS-13 in particular.

**6. Other Materials Describing MS-13 and the PVLS clique of MS-13 in particular.**

We request any other materials, including "gang description sheets" and "gang validation sheets," or similar documents that exist describing or relating to MS-13 and the PVLS clique of MS-13 in particular.

**7. Police Reports Alleging Gang Enhancements Related to the PVLS clique of MS-13.**

We request any police reports, proposed charging documents, or other investigative documents alleging or describing criminal activity and alleging that criminal activity is related to the PVLS clique of MS-13. Police reports of this kind would tend to include factual allegations suggesting why certain crimes are or are not in furtherance of a criminal street gang, and thus reflect directly on elements of many of the crimes alleged in the indictment.

**8. Police Reports for Members and Affiliates of the PVLS clique of MS-13 that Do Not Suggest Any Gang Motivation.**

We also request any police reports, charging documents, or other investigative documents alleging or describing criminal activity by alleged members, associates, or affiliates of the PVLS clique of MS-13 that *do not* suggest that criminal activity was at the behest of or for the benefit of the PVLS clique of MS-13. These documents are material because the government has alleged that a number of crimes – such as the murder in Count 6 of the present indictment – were necessarily for the benefit of the PVLS clique of MS-13. To the extent that evidence shows (or could lead to other evidence that shows) that certain street crime is committed by alleged

members of the PVLS clique of MS-13, independent of and unrelated to any criminal organization, it undermines the government's enterprise theory of the case and should be disclosed.

### SUMMARY OF WHY THESE MATERIALS ARE FAVORABLE AND MATERIAL UNDER BRADY

The above requested information is both favorable and material because – among other things – we believe it shows comparative levels of involvement, rank and status in MS-13 that are favorable to Mr. Paiz Guevara.[2] In this case, the comparative levels of involvement, rank or status in MS-13 is a material and critical aspect of our defense. Evidence of such comparative levels of involvement in the gang not only establishes what degree of planning, if any, Mr. Paiz Guevara had in the alleged murder plot, but it also mitigates suggestions of his purported knowledge and role with respect to the racketeering elements of the alleged crime. By way of example, and without revealing the defense, we believe that the requested evidence will show that our client – unlike others who stand indicted –

---

[2] "Although the Due Process Clause of the Fourteenth Amendment, as interpreted by Brady, only mandates the disclosure of *material* evidence, the obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations." Cone v. Bell, 129 S. Ct. 1769, 1783 n. 15 (2009) citing Rule 3.8(d) (emphasis added). See also U.S. v. Agurs, 427 U.S. 97, 106 (1976) (suggesting that the test for materiality under Brady is less strict when specific information is requested than when no such request is made).

was not an initiated member of the PVLS clique of MS-13, and that he further did not know of the plan to murder the deceased in Count 6 of the current Indictment.

The requested evidence will also be used to impeach and challenge the credibility of government witnesses in this case, be they law enforcement witnesses or cooperating gang members (indeed, the government may well intend to use this information for that same impeachment purpose against various defendants, should they choose to testify). Prior inconsistent (or false) statements by any of the government's witnesses will also materially assist us in attacking the credibility of such witnesses. This includes any prior occasions of informal contact where one of the alleged PVLS individuals lied to or was misleading with law enforcement and/or any reputations specific individuals have in the law enforcement community for untruthfulness or for violence.

Additionally, this case is unique in that much of the requested materials may, at first glance, appear to be the opposite of favorable (such as the requested training materials or other materials revealing evidence of the dangerousness of the PVLS clique, or the allure of the gang, etc.); however, upon reflection is not hard to see how such information – along with risk factors, types of individuals that are targeted for recruitment, consequences for disobeying the chain of command, etc. – is indeed material and favorable to the defense for mitigation purposes in both the merit and [possible] penalty phase of this case.

## BRADY LAW CONCERNING THE REQUESTED FAVORABLE EVIDENCE

The Court is certainly well-versed in Brady law; however we must nonetheless lay it out. It has been consistently recognized through interpretation of the Sixth, Eighth and Fourteenth Amendments of the United States Constitution by the U.S. Supreme Court that a "defendant has a constitutionally protected privilege to request and obtain from the prosecution [favorable] evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." California v. Trombetta, 467 U.S. 479, 485 (1984) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). The Brady doctrine covers not only obviously exculpatory material – such as evidence that someone else committed the offense or that the accused was not identified as the assailant – but also information that could be used to impeach government witnesses. Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676 (1985) ("Impeachment evidence . . . as well as exculpatory evidence falls within the Brady rule.").

The Brady doctrine is broadly read. For example, to be favorable to the accused, information does not have to point directly to innocence; it is enough if the information does no more than demonstrate that a factor that "could link the defendant to the crime do[es] not." Patler v. Slayton, 503 F.2d 472 (4th Cir. 1974). Even inadmissible evidence qualifies as Brady information if it could lead to witnesses or other evidence that would be admissible. See Wright v. Hopper, 169,

7

F.3d 695, 703 & n.1 (11th Cir. 1999); Madsen v. Dormire, 137 F.3d 602, 604 (8th Cir. 1998); United States v. Phillip, 948 F.2d 241, 249 (6th Cir. 1991); Sellers v. Estelle, 651 F.2d 1074, 1077 n.6 (1981).

The government is required both to disclose favorable information to the defense and to use reasonable diligence in seeking to learn about and identify favorable information that is not directly known to the prosecution. Kyles v. Whitley, 514 U.S. 419, 437 (1995) ("the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police"). Hence, for the purpose of Brady discovery requests, the term "prosecution" includes not only the staff of the prosecutor's office, but extends to federal law enforcement personnel and other local agencies involved in the criminal investigation. Smith v. Secretary of New Mexico Dept. of Corr., 50 F.3d 801, 824 (10th Cir. 1995); see United States v. Perdomo, 929 F.2d 967, 978 (3rd Cir. 1991) (term "prosecution" includes investigatory agents and activities). "A prosecutor's office cannot get around the Brady obligation to disclose material evidence by keeping itself in ignorance or compartmentalizing information about different aspects of the case." Carey v. Duckworth, 738 F.2d 875, 877 (4th Cir. 1984); see United States v. Trevino, 556 F.2d 1265, 1272 (5th Cir. 1977).

The government's good faith or bad faith in efforts to produce discoverable material is irrelevant to its Brady disclosure obligations. United States v. Agurs, 427 U.S. 97, 110 (1976); Giglio, 405 U.S. at 154 ('[W]hether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor."). In close cases, the prosecutor must "'resolve doubtful questions in favor of disclosure.'" Kyles, 514 U.S. at 439 (quoting Agurs, 427 U.S. at 108). Should the government do otherwise and withhold even arguably favorable evidence, the fairness of the court proceeding is undermined and its integrity is put into risk. See, e.g., Banks v. Dretke, 540 U.S. 688, 693-95 (2004) (reversing conviction and sentence where prosecution withheld impeachment evidence of cooperating witnesses).

Evidence is also favorable to the accused if it weakens any aspect of the government's case. Kyles, 514 U.S. at 441 ("Disclosure of [inconsistent] statements would have resulted in a markedly weaker case for the [government] and a markedly stronger one for the defense. To begin with, the value of two of those witnesses would have been substantially reduced or destroyed.").

The Supreme Court in Kyles made clear that favorable information is not just information known to the government but also that the failure to act by the government and its agents constitutes favorable information. Thus, the government must disclose any information that enables an attack on the quality or

9

reliability of its witnesses or the law enforcement investigation. Id., at 445 ("Damage to the prosecution's case would not have been confined to evidence of the eyewitnesses, for [the informant's] various statements would have raised opportunities to attack not only the probative value of crucial physical evidence and the circumstances in which it was found, but the thoroughness and even the good faith of the investigation, as well."); id. at 447 ("By demonstrating the detectives' knowledge of [the informant's] affirmatively self-incriminating statements, the defense could have laid the foundation for a vigorous argument that the police had been guilty of negligence."); id. at 450-451 (evidence showing "that the police were irresponsible" and underscoring "the unreliability of the investigation[.]").

The government must provide favorable and exculpatory information to the defense in a timely manner. "Disclosure by the government must allow the defense to use that favorable material effectively in the preparation and presentation of its case." United States v. Elmore, 423 F.2d 775, 779 (4th Cir. 1970). Indeed, the accused's rights to due process and a fair and reliable sentencing proceeding work hand-in-hand with his rights to effective assistance of counsel, to investigate his case, and to call witnesses on his own behalf. On the timeliness issue, it is also worth noting that Virginia Legal Ethics Opinion 1862 (http://www.vacle.org/opinions/1862.htm) (finding that under the Virginia Rules of

Professional Responsibility, a prosecutor's ethical obligations in disclosing favorable information demand *more* than what is required of them under Brady). According to that LEO, "a timely disclosure is one that is made as soon as practicable" and that "the duty to make a timely disclosure is violated when a prosecutor intentionally delays making the disclosure or withholds disclosure in order to gain a strategic advantage in the case.[3]

For all of these reasons, and those that will presented at a hearing on this matter, we ask that these requests be granted.

**WHEREFORE**, Mr. Paiz Guevara, by counsel, respectfully asks this Court to issue an order directing the United States to provide the specific investigative materials enumerated above.

Respectfully submitted,

**MANUEL ERNESTO PAIZ GUEVARA**

By: _____/s/_____

David P. Baugh, Learned Counsel
2025 East Main Street, Suite 108
Richmond, Virginia 23223
804.743.8111
dpbaugh@dpbaugh.com

---

[3] Under the McDade Amendment (28 U.S.C. § 530B), federal prosecutors are required to abide by the state ethics rules of the jurisdiction in which they practice.

W. Michael Chick, Jr.
Law Offices of W. Michael Chick, Jr
10513 Judicial Drive, Suite 102
Fairfax, Virginia  22030
571.276.8279
mike@chicklawfirm.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was duly served via ECF, upon:

Stephen M. Campbell, Esq.
Julia K Martinez, Esq.
Tobias Tobler, Esq.
Assistant United States Attorneys
Eastern District of Virginia
2100 Jamison Avenue
Alexandria,Virginia 22314

And all other defendants in this matter by the Court's electronic filing system.

_____/s/_____
W. Michael Chick, Jr.