FILED

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA       2015 AUG 10  P 2:52

Alexandria Division              CLERK'S DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 1:14-CR-306 |
| v. ) | |
| ) | The Honorable Gerald Bruce Lee |
| ARAELY SANTIAGO VILLANUEVA, ) | |
| a/k/a "Slow," ) | **UNDER SEAL** |
| a/k/a "Lil Slow," ) | |
| a/k/a "Spider," ) | **(NOT TO BE PUT ON PUBLIC DOCKET)** |
| ) | |
| Defendant ) | |
| ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States hereby files its position on the sentencing of defendant ARAELY SANTIAGO VILLANUEVA for committing violent crimes in aid of racketeering activity, in violation of 18 U.S.C. § 1959. On March 10, 2015, the defendant pled guilty to one count of murder in aid of racketeering activity. Under the statute, the defendant faces a mandatory sentence of life imprisonment. In addition, considering the Sentencing Guidelines and the statutory factors prescribed by 18 U.S.C. § 3553(a), a term of life imprisonment would be the just and appropriate sentence. Accordingly, the government requests that the Court sentence the defendant to life imprisonment.

## ARGUMENT

**I.   Applicable Sentencing Law**

In considering an appropriate sentence, a district court examines both the Sentencing Guidelines and the statutory factors established under 18 U.S.C. § 3553(a). *See United States v.*

*Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). To determine a sentence, "[a] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines." *Hughes*, 401 F.3d at 546. "Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *Id.* at 546. Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to promote respect for the law, provide just punishment, deter criminal conduct, protect the public, and avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

Although the Sentencing Guidelines are advisory and are only one of the factors listed in § 3553(a), the Guidelines assist the court by "'provid[ing] certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities.'" *United States v. Booker*, 543 U.S. 200, 264 (2005) (quoting 28 U.S.C. § 991(b)(1)(B)); *see also* 18 U.S.C. § 3553(a)(6). Indeed, in the ordinary case, there will be a significant amount of overlap between the Guidelines range and the remaining § 3553(a) factors because the Guidelines "reflect a rough approximation that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). The Guidelines, for example, encompass the most salient aspects of "the nature and circumstances of the offense" (by establishing an Offense Level that incorporates aggravating or mitigating circumstances such as loss amounts, number of victims, and a defendant's role in the offense), as well as reflect "the history and characteristics of the defendant" (most notably by establishing a Criminal History Category based on the defendant's prior criminal record). 18 U.S.C. § 3553(a)(1). The Guidelines further help to prevent "unwarranted sentencing disparities" by ensuring that defendants who have committed similar crimes and have similar criminal records will receive roughly similar sentences, regardless of the district and courtroom

in which they are sentenced. 18 U.S.C. § 3553(a)(6); *see Gall v. United States*, 552 U.S. 38, 46 (2007) (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Thus, although the Guidelines are not mandatory, they remain "the starting point and the initial benchmark" in ensuring fair and just sentencing both for defendants, individually, and across multiple cases, collectively. *Gall*, 552 U.S. at 49.

## II. A Sentence of Life Imprisonment is Appropriate Based on the § 3553(a) Factors.

A sentence of life imprisonment is necessary and sufficient to account for the sentencing factors prescribed by 18 U.S.C. § 3553(a).

### Nature and Circumstances of Offense

The defendant was a member of the Park View Locos Salvatruchas (PVLS) clique of MS-13, which engaged in a brutal series of violent crimes in aid of racketeering activity in Northern Virginia from August 2013 to June 2014. During that period, the PVLS clique committed three murders, one attempted murder, and numerous assaults with a deadly weapon. The defendant participated in two of the murders, which were particularly gruesome.[1]

In the first murder, committed on or about October 7, 2013, the defendant along with other gang members repeatedly stabbed Nelson Omar Quintanilla Trujillo (28 years old), a member of the gang suspected of being an informant. As Quintanilla Trujillo pleaded for his life, another gang member, defendant Douglas Duran Cerritos, slashed him across the face and neck multiple times with a machete. Another gang member, defendant Jose Lopez Torres, recounted during a recorded phone conversation that "We hacked him to pieces."

---

[1] In accordance with his plea agreement, the defendant pled guilty to one count of murder in aid of racketeering activity for killing Gerson Adoni Martinez Aguilar. In the statement of facts for the plea agreement, the defendant acknowledged his participation in another murder, the killing of Nelson Omar Quintanilla Trujillo on or about October 7, 2013. The defendant was a juvenile at the time that murder was committed.

3

In the second murder (the offense of conviction), committed on or about March 29, 2014, the defendant along with other gang members repeatedly stabbed Gerson Adoni Martinez Aguilar (17 years old), who was an associate or "chequeo" of the gang. Gang members believed that Martinez Aguilar had stolen $600 from the gang and that he had engaged in sexual relations with another gang member's girlfriend. For these actions in disrespecting the gang, they decided to kill him. The autopsy revealed approximately 12 stab wounds to the victim's neck and 18 stab wounds to the victim's back. At the conclusion of the attack, some of the gang members (not the defendant) severed the victim's head from his body. One gang member, defendant Christian Lemus Cerna, recounted during a recorded conversation that "We chopped that fucker's head off." In order to bury the victim, gang members mutilated the victim's legs with a pick axe so that they could bend the legs forward on top of the body to fit inside the burial hole.

The nature and circumstances of this offense reflect a savage violence and a wanton disregard for human life. The victim was a juvenile—only 17 years old—when the gang murdered him simply because they suspected he had stolen $600 and had sexual relations with another gang member's girlfriend. The murder was shocking in its viciousness. The gang members inflicted dozens of stab wounds on the victim, they subsequently severed his head from his body, and then they mutilated his legs. Even in terms of MS-13 gang crimes, this offense stands out for its exceptional brutality.

In addition to the two murders, the defendant acknowledged engaging in three other violent crimes. In the summer of 2013, he served as the lookout while other gang members robbed a man at gunpoint in Fairfax County. Then, on or about September 26, 2013, the defendant participated in an assault during which gang members attacked a juvenile with a machete in the City of Alexandria. The defendant unsuccessfully attempted to prevent the

victim, who had several tendons in his hand severed, from fleeing the scene. Finally, on or about October 3, 2013, the defendant along with other gang members assaulted another man in Fairfax County by beating and kicking him.

<u>History and Characteristics of the Defendant</u>

The defendant was born and raised in Guatemala. In 2012, he illegally entered the United States. While attending J.E.B. Stuart High School in Fairfax County, the defendant was introduced to a member of the PVLS clique of MS-13 in Northern Virginia. The defendant joined the gang at the age of seventeen. He advanced from being a "paro" or helper to a "chequeo" or associate member of the gang within five or six months. During this period of time, he sold drugs for the gang and participated in a number of assaults. The defendant was advised by other gang members that he would have to commit a murder in order to become a "homeboy" or full member of MS-13. After participating in the murder of Nelson Omar Quintanilla Trujillo, the defendant was "jumped in" to the gang as a homeboy.

<u>Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public from Further Crimes by the Defendant</u>

The murder committed by the defendant falls within that category of crimes considered the most serious offenses in the federal criminal code. The defendant pled guilty to murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959. When enacting that statute, Congress recognized the severity of the offense by imposing a penalty of death or life imprisonment. The defendant's conduct in the brutal murder of a juvenile on behalf of the criminal enterprise MS-13 warrants a sentence of life imprisonment.

A sentence of life imprisonment will also ensure the public is protected from further crimes by the defendant and may deter other members of the gang by impressing on them the

5

extremely severe consequences for such criminal conduct. The government has no illusions that all young MS-13 gang members will now reflect on the prospect of receiving life imprisonment before they commit another violent crime. But, if just one gang member were to change course, the defendant's sentence of life imprisonment would help protect others from the type of fate suffered by the victims in this case.

## CONCLUSION

Accordingly, for the reasons stated above, the government requests that the Court impose a sentence of life imprisonment.

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

Stephen M. Campbell
Julia K. Martinez
Tobias D. Tobler
Assistant United States Attorneys
Counsel for the Government
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703)299-3700
(703)739-9556 (fax)

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 10, 2015, I filed UNDER SEAL the foregoing with the Clerk of Court and sent a copy of the Position of the United States with Respect to Sentencing to counsel for the defendant.

Stephen M. Campbell
Assistant United States Attorney
Counsel for the Government
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703)299-3700
(703)739-9556 (fax)