# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case no. 1:14-CR-306-GBL - 8 |
| | ) | |
| | ) | |
| MANUEL E. PAIZ GUEVARA | ) | |

## MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS

### LEGAL ARGUMENT SUMMARY

1. The defendant was approached by an officer in Fairfax in an attempt to commence a "consensual encounter", a Terry stop, of a group of Hispanic males, including the defendant, without a particularized suspicion or objective basis for suspecting the defendant was engaged in criminal activity.

2. That the interest and intrusion into the activities and presence of the Hispanic males was a product of racial profiling, coupled with knowledge that some of the group were members of an Hispanic gang, and without further objective basis for investigation.

3. As the officer approached, he noticed the defendant kept his left arm near his left side and conducted a pat down of the defendant without a permissible basis to believe that the defendant was armed and dangerous.

4. That upon grasping the defendant's left hand pocket the officer felt, as per the officer's sworn affidavit, "hard lumpy objects, and heard the sound of plastic", which the officer "knew to be narcotics." Recovered from the pocket were "7 jewelers' baggies containing marijuana inside of a larger "ziplock" baggie.

5. That a warrant was issued for the defendant charging him with possession with intent to distribute near a school zone. The warrant was not served.

6. About a month later the defendant was arrested in Kansas City, MO, on unrelated charges and extradited to Virginia on the marijuana warrant.

7. The officer obtained the defendant's cell phone from the Kansas City authorities.

8. Upon returning to Virginia, the officer obtained a search warrant for the contents of the cell phone, based upon the facts of the initial encounter, the Terry stop, the pat down, and a field test conducted on the seized marijuana.

FACTUAL SUMMARY

The defendant's cellular telephone, an item in which the defendant enjoyed a reasonable expectation of privacy, was seized by the police and searched pursuant to a search warrant. The affidavit offered in support of the application for search warrant was based upon unconstitutionally seized evidence. As such the search warrant and all evidence obtained in connection with that search warrant is fruit of the poisonous tree.

On April 23, 2014 an, as yet unidentified, police officer engaged the defendant in conversation in the area of 6024 Vista Drive, Falls Church, Virginia in Fairfax County. He stated he observed the defendant "keeping his left arm suspiciously close to his left side …" The officer "noticed a bulge in [the defendant's] left, sweatshirt pocket." The officer believed the defendant was armed. The officer did a "pat down" of the defendant and felt, what the officer described as "hard, lumpy objects, and heard the sound of plastic, [the officer] immediately knew the item to be narcotics." Taken from the pocket were "7 jewelers' baggies" found within "a larger plastic ziplock baggie" which contained marijuana. The officer refers to the marijuana as "narcotics." The marijuana and the plastic bags were seized.

The defendant was released without charges but informed he would need to meet the officer at a later time to be charged with a crime.

Subsequently, a warrant was issued, but never served on the defendant.

The defendant was later arrested in Kansas City, MO. on unrelated Missouri charges. At the time of arrest in Missouri his property was seized, including a cellular telephone. On May 15, 2014 the defendant was extradited to Fairfax County, Virginia. The defendant's property, including the cellular phone were turned over to the officers travelling with the defendant, one of whom was the original officer on the marijuana charge.

On or about August 15, 2014 the officer obtained a search warrant for the contents of the telephone.

It is the search of the telephone, the seizure of its contents and their use at trial which are the gravamen of defendant's motion to suppress.

## ARGUMENT

**A. The initial Terry stop of the group, and particularly the defendant, was, from the totality of the circumstances, without a valid basis to conclude that there existed a particularized and objective basis for suspecting the defendant was engaged in criminal activity.**

In the affidavit in support of the search warrant for the contents of the cellular telephone, the officer stated:

> On April 23, 2014, [the officer] was in the area of 6024 Vista Dr., Falls Church (Fairfax County), Va, when [the defendant] was observed with 3 other known Mara Salvatrucha 13 member/associates. [The defendant] was the second subject [the officer] spoke to while dealing with the group. 'The officer' observed [the defendant] keeping his left arm suspiciously close

4

>       to his left side as he walked towards me. [The officer] also
>       noticed a bulge in [the defendant's] left, sweatshirt pocket. [The
>       officer] believed [the defendant] to be armed a weapon, so a Pat
>       Down of the aforementioned area was conducted. As [the
>       officer] patted the area, [the officer] felt hard lumpy objects,
>       and heard the sound of plastic. [The officer] immediately knew
>       the item to be narcotics, and 7 jewelers' baggies containing
>       marijuana was found inside a larger plastic ziplock baggie. The
>       items were seized from [the defendant's] person.

Affidavit in Support of a Search Warrant. Dated August 15, 2014, [time] 1110.

A warrant for the search of the contents of the cellular telephone was issued August 15, 2014 at 1110 [time].

Over the last forty years, the law has permitted a brief, investigatory stop of a person "where a police officer observes unusual conduct which leads him reasonable to conclude in light of his experience that criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L. Ed. 2d 889 (1968); Illinois v Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L. Ed. 2d 570 (2000). The facts and circumstances of the activities need not give rise to probable cause, the officer must be able to articulate an objectively reasonable suspicion of criminal activity. See, e.g. United States v. Arvizu, 534 U.S. 266, 274, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002); United States v. McCoy, 513 F. 3d 405, 41 (4th Cir. 2008); United States v. Sprinkle, 106 F. 3d 613, 617 (4th Cir. 1997). The officer's experience in interpreting the observed conduct is a vital and permissible

component in the assessment of articulable and objectively reasonable suspicion that criminal activity is occurring. See, e.g. McCoy, 513 F.3d at 411; see also United States v. Perkins, 363 F.3d 317, 323 (4th Cir. 2004).

In the instant case, as per the sworn affidavit of the police officer, he or she had observed the defendant and three other known members of an Hispanic street gang, in the area of 6024 Vista Dr. in Falls Church. There are no additional facts or circumstances of the activities or actions of this group. There is no reference to recent criminal activity near that location. The sole circumstances for suspicion are that the members of the group are members of a street gang and Hispanic. Neither, individually or combined can legally give rise to constitutional objective or particularized suspicion to legally justify any police conduct warranting official law enforcement inquiry.

The Terry stop was not legally permitted and all evidence coming therefrom must be suppressed.

**B. That the "pat down" of the defendant because, when approached, prior to any conversation, the defendant was "keeping his left arm suspiciously close to his left side as he walked towards [the police officer]" and "a bulge in [the defendant's] left, sweatshirt pocket was, individually or combined, insufficient indicia to support a conclusion**

**that the defendant might be armed and dangerous, justifying a frisk or pat down.**

A frisk for weapons is permissible when an officer reasonably believes that the person being stopped may be armed and presently dangerous. See Terry, 392 U.S. at 24, 88 S.Ct. 1868. But, the assessing whether a frisk is justified must be made without regard to the underlying intent or motivation of the officer involved. Scott v. United States, 436 U.S 128, 138, 98 s. Ct. 1717, 56 L.Ed. 2d 168 (1978). "if sufficient objective evidence exists to demonstrate reasonable suspicion, a Terry stop is justified regardless of a police officer's subjective intent." United States v. Swann, 149 F.3d 271, 275 (4th Cir. 1998). See also 4 Wayne R. LaFave, Search and Seizure § 9.6(a) (4th ed. 2004).

Assuming the Terry stop to be legally justified, which the defendant does not concede, the mere fact that the defendant kept his left arm suspiciously close to his left side and that his left pocket contained some object making it "bulge", even given that the defendant was a member of a street gang, in legally insufficient for objectively finding a reasonable suspicion that the defendant was armed and dangerous.

Even if the Terry stop was supported by observations of unusual conduct legally justifying the reasonable conclusion that criminal activity was afoot, rendering the Terry stop unconstitutional, the assessment of the defendant's arm

and the fact that there was something in his pocket does not support sufficient indicia that the defendant was armed, justifying a pat down or frisk.

Regardless of the legality of the Terry stop, all evidence and information obtained from the pat down or frisk should be suppressed.

**C. That the officers "immediate" assessment, as per the sworn affidavit, that the frisk of the defendant's left pocket was sufficient for a conclusion that the sweatshirt pocket contained "narcotics", to-wit: "hard lumpy objects" consisting of seven small jewelers' bags containing marijuana which were contained in another and larger "ziplock", which made a the "sound of plastic" was, at best, a wild and unreasonable conclusion or unsupported speculation.**

The officer, as per his sworn affidavit, stated that on feeling the left pocket of the defendant's sweatshirt he was able to feel something "hard and lumpy. And heard the sound of plastic" and was able to "immediately" discern the pocket contained narcotics.

Minnesota v. Dickerson, 508 U. S. 366. 113 S. Ct. 2130, 124 L.Ed 2d 334 (1993) sets forth the "plain feel" doctrine, which holds that contraband discovered during a lawful Terry stop is admissible so long as the search does not exceed the bounds of Terry. Id. at 373, 113 S. Ct. 2130. If the feel of the object felt, if the

contour or mass of the object makes identify of the object immediately apparent, the officer may lawfully seize the contraband.

As this intrusion in warrantless the burden in on the government to prove the legality of the seizure. As warrantless searches and seizures of per se unreasonable the United States has the burden of proving that the officer possesses the abilities to feel through a sweatshirt and discern that the hard and lumpy object he or she feels are narcotics. It should be no major effort for the defense to prove that marijuana, packed in jewelers' plastic bags for street distribution are neither hard nor lumpy. Marijuana is a shredded leaf product.

If the court finds that, objectively, assuming the legality of the Terry stop and the frisk to be legal, that the officer has the ability, or that anyone has the ability, to "immediately" recognize the identity of the contents.
Inability to so prove, again assuming the legality of the Terry stop and the frisk, such abilities the motion to suppress should be granted.

**D. That the officer's statement, as per his sworn affidavit, that he felt, when he grabbed the defendant's left sweatshirt pocket, "hard lumpy objects, and heard the [a] sound of plastic" ziplock baggie is a fabrication and falsehood.**

No law can support any assertion of such a fact, either to support it or negate it. Suffice it to say, which can be replicated in court has it has been done while

9

preparing this memorandum, a ziplock baggie, containing smaller plastic bags or any small vegetable matter, does not make any noise. The statement, contained in the affidavit offered in support of the search warrant for the telephone and its contents, is a deliberate and calculated falsehood.

E. That the "good faith exception" cannot be applicable if the search warrant is issued on information obtained from an unconstitutional intrusion into protected space of the defendant.

> In the affidavit in support of the search warrant the officer specifically relies upon information found during the warrantless search of the defendant's clothing.
> Your Affiant observed Paiz Guevara keeping his left arm suspiciously close to his left side as he walked towards me. Your Affiant also noticed a bulge in his left, sweatshirt pocket. Your Affiant believed Paiz Guevara to be armed with a weapon, so a Pat Down of the aforementioned area was conducted. As Your Affiant patted the area, Your Affiant felt hard lumpy objects, and heard the sound of plastic. Your Affiant immediately knew the item to be narcotics, and 7 jewelers' bagggies contained marijuana was found inside a large plastic ziplock baggie. The items were seized from Paiz Guevara's person.

Affidavit in Support of a Search Warrant, page 3.

This issue, the use of unconstitutionally detected and/or seized evidence in an affidavit for search warrant has been specifically addressed by the Fifth and Ninth Circuit Courts of Appeals.

In United States v. Woerner, 709 F.3d 527 (5th Cir. 2013), state officers had conducted a search of the defendant's computer with a search warrant the officers

knew to have expired. The officers were the expired search warrant arrested the defendant for possession of child pornography. The matter was referred to the FBI, which obtained its own search warrant. The FBI conducted a search of the defendant's computer, arrested the defendant and obtained inculpating statements from the defendant during interviews. The FBI then obtained another search warrant for the defendant's external hard drive, a flash drive and email accounts, not btaoined during the initial search by state agents, on the expired search warrants and the FBI warrant. The FBI warrants were partially based on evidence obtained during the original search on the expired warrant.

      The Fifth Circuit applied the good faith exception due solely on the fact that the FBI did not know that the information obtained from state officers was tainted and that the FBI agents did not participate directly in obtaining the evidence on the tainted warrant.

      In the instant case, unlike the facts in Woerner, wherein one law enforcement entity conducted the illegal search and another law enforcement entity: the FBI conducted the second and third searches, the same officer conducted the illegal search and seizure of the defendant in a warrantless search, was the affiant on the search warrant for the telephone. The insulation between the law enforcement official conducting the illegal search and the second law enforcement presence does not exist. The same officer conducting the illegal

search is the same officer obtaining the search warrant, relying on the fruits of the illegal search of the defendant on the street.

WHEREFORE, premises considered, the defendant seeks an order finding that:

1. The initial Terry Stop of the defendant was unlawful and that there existed no reasonable suspicion that criminal activity was afoot.

2. That the subsequent seizure of the defendant's person and the grasping of his left pocket was unlawful as the initial Terry Stop was unlawful and that there existed no reasonable basis to assume the defendant was armed.

3. That the officer could not have immediately concluded that the lumpy and hard contents of the pocket nor the sound of plastic was narcotics.

4. That the search warrant for the telephone, expressly relying upon the fruits of the initial Terry Stop, the grasping of the defendant's clothing and the immediate conclusion that the object in the defendant's pocket was illegal contraband,

5. That each of the acts subsequent to each earlier act, listed above, were fruits of the poisonous tree.

6. That the subsequent search warrant was obtained expressly relying upon the string of earlier constitutional violations, referred to in the Affidavit in

12

Support of Search Warrant, in an of itself, was unconstitutional as fruits of the poisonous tree and must be excluded.

Defendant's Motion to Suppress should be, in all things, GRANTED.

Respectfully submitted,

**MANUEL E. PAIZ GUEVARA**

By: _____/S/_____

David P. Baugh, Esq.
Va. Bar No. 22528
2025 East Main Street, Suite 108
Richmond, Virginia  23224
804.743-8111
Email: dpbaugh@dpbaugh.com

W. Michael Chick, Jr. Esq.
Law Offices of W. Michael Chick, Jr.
10513 Judicial Drive, Suite 102
Fairfax, Virginia  22030
571.276.8279
Email:  mike@chichlawfirm.com
**ATTORNEYS FOR DEFENDANT**

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing Motion for Designation of Law Enforcement Agencies was duly served, August 12, 2015, upon:

Stephen M. Campbell, Esq.
Julia K Martinez, Esq.
Assistant United States Attorneys
Eastern District of Virginia
2100 Jamison Avenue
Alexandria, Virginia  22314,

13

And all other defendants in this matter by the Court's electronic filing system.

*/s/ David P. Baugh*
**David P. Baugh**
