IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Case No. 1:14-CR-306 |
| v. | ) | |
| | ) | The Honorable Gerald Bruce Lee |
| PEDRO ANTHONY ROMERO CRUZ, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANTS'
NON-EVIDENTIARY PRETRIAL MOTIONS

The United States of America, by and through its attorneys, Dana J. Boente, the United

States Attorney, Stephen M. Campbell, Julia K. Martinez, and Tobias D. Tobler, Assistant

United States Attorneys, hereby files this omnibus response to defendants' non-evidentiary

pretrial motions.[1]  For efficiency's sake, the government has provided a combined response to

similar defense motions.

I.      DEFENDANTS' MOTIONS FOR DISCLOSURE OF DISCOVERY MATERIALS

Defendants Alejandro Chavez (Doc. Nos. 317, 333), Marquez Ayala (Doc. No. 325),

Rosales Villegas (Doc. No. 340), Lemus Cerna (Doc. Nos. 348, 357), and Paiz Guevara (Doc.

Nos. 353, 354, 359–62, 367, 368) have moved for orders directing the government to disclose

discovery materials pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*,

405 U.S. 150 (1972), the *Jencks* Act, 18 U.S.C. § 3500, Federal Rule of Criminal Procedure

26.2, and Federal Rule of Criminal Procedure 16.[2]  Marquez Ayala has specifically requested

---

[1] The government will file a separate response to Defendant Duran Cerritos's Motion to
Dismiss Count Four of the Third Superseding Indictment (Doc. No. 358).

[2] Defendants Romero Cruz (Doc. No. 374), Lemus Cerna (Doc. No. 378), and Rosales
Villegas (Doc. No. 387) have moved to adopt Alejandro Chavez's first motion (Doc. No. 317).

that "all *Brady*/*Giglio* material [be] disclosed immediately, and all *Jencks* material [be] disclosed one month prior to trial." Doc. No. 325, at 2. Lemus Cerna has requested that the government produce all Rule 16 discovery materials no later than 60 days after the return of the third superseding indictment, *i.e.*, by approximately August 25, 2015. Doc. No. 357, at 1. He has also requested "immediate disclosure or disclosure at a date certain well in advance of trial" of all *Giglio*, *Brady*, and *Jencks* material. *Id*.

Early in this case, the government contacted all defense counsel with a proposed discovery order. The proposed order was similar to the standard discovery order used in the vast

---

Defendants Marquez Ayala (Doc. No. 341), Gaitan Benitez (Doc. No. 363), Romero Cruz (Doc. No. 374), Duran Cerritos (Doc. No. 376), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), Rosales Villegas (Doc. No. 387), and Lopez Torres (Doc. No. 388) have moved to adopt Alejandro Chavez's second motion (Doc. No. 333). Defendants Lemus Cerna (Doc. Nos. 345, 378), Gaitan Benitez (Doc. No. 363), Romero Cruz (Doc. No. 374), Duran Cerritos (Doc. No. 376), DeJesus Castillo (Doc. No. 377), Rosales Villegas (Doc. No. 387), and Alejandro Chavez (Doc. No. 389) have moved to adopt Marquez Ayala's motion. Defendants Marquez Ayala (Doc. No. 343), Lemus Cerna (Doc. Nos. 345, 378), Gaitan Benitez (Doc. No. 363), Romero Cruz (Doc. No. 374), DeJesus Castillo (Doc. No. 377), and Alejandro Chavez (Doc. No. 389) have moved to adopt Rosales Villegas's motion. Defendants Gaitan Benitez (Doc. No. 363), Romero Cruz (Doc. No. 374), Duran Cerritos (Doc. No. 376), DeJesus Castillo (Doc. No. 377), Rosales Villegas (Doc. No. 387), Lopez Torres (Doc. No. 388), and Alejandro Chavez (Doc. No. 389) have moved to adopt Lemus Cerna's first motion (Doc. No. 348). Defendants Gaitan Benitez (Doc. No. 363), Romero Cruz (Doc. No. 374), Duran Cerritos (Doc. No. 376), DeJesus Castillo (Doc. No. 377), Marquez Ayala (Doc. No. 380), Rosales Villegas (Doc. No. 387), and Alejandro Chavez (Doc. No. 389) have moved to adopt Lemus Cerna's second motion (Doc. No. 357). Defendants Romero Cruz (Doc. No. 374), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), Rosales Villegas (Doc. No. 387), Lopez Torres (Doc. No. 388), and Alejandro Chavez (Doc. No. 389) have moved to adopt Paiz Guevara's first motion (Doc. No. 353, 354). Defendants Romero Cruz (Doc. No. 374), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), Rosales Villegas (Doc. No. 387), Lopez Torres (Doc. No. 388) and Alejandro Chavez (Doc. No. 389) have moved to adopt Paiz Guevara's second motion (Doc. No. 359, 360). Defendants Romero Cruz (Doc. No. 374), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), Marquez Ayala (Doc. No. 381), Rosales Villegas (Doc. No. 387), Lopez Torres (Doc. No. 388), and Alejandro Chavez (Doc. No. 389) have moved to adopt Paiz Guevara's third motion (Doc. No. 361, 362). Defendants Romero Cruz (Doc. No. 374), DeJesus Castillo (Doc. No. 377), Marquez Ayala (Doc. No. 382), Rosales Villegas (Doc. No. 387), Lopez Torres (Doc. No. 388) and Alejandro Chavez (Doc. No. 389) have moved to adopt Paiz Guevara's fourth motion (Doc. Nos. 367, 368).

majority of cases in this district, but provided for more generous deadlines. The suggested deadlines were based on those imposed in this district's most recent death penalty-eligible and complex gang cases. To date, no defendant has signed the proposed order. Nonetheless, the government has diligently produced discovery in this case, including over 7,000 recordings of conversations involving and relating to the defendants and their respective roles in the charged crimes. The government has also produced over 15,000 pages of documents, including, among other things: law enforcement investigative reports (pertaining to both the charged crimes and other criminal activities involving the defendants); photographic evidence; autopsy reports; and search warrant returns. The government submits that the deadlines in the proposed order are sufficient to provide defendants with ample time to prepare for trial, particularly in light of the significant discovery already produced. The proposed order – attached hereto as Exhibit 1, along with the cover email sent to defense counsel last November – also concisely addresses all of the government's discovery and disclosure obligations.

In contrast, the discovery motions defendants have filed include numerous requests for materials that are not subject to disclosure under any of the cited legal authorities. For instance, Alejandro Chavez has requested that the government produce "[a]ny documents or objects obtained by the U.S. Attorney in any manner other than by seizure or by way of due process," as well as the statements of any person interviewed in the case, including those the government does not intend to call at trial. Doc. No. 317, at 2. The government will not, at this time, burden the Court with an item-by-item response to the defendants' specific information requests. Rather, the government will continue to meet all of its constitutional and statutory discovery obligations, and reserve the right to object to overbroad discovery requests from the defendants that rest on no lawful authority.

For the additional reasons that follow, the Court should deny the defendants' motions for premature disclosure of discovery materials.

A.  Defendants' Motions for *Brady* and *Giglio* Materials

To meet its *Brady* and *Giglio* obligations, the government must disclose exculpatory and impeachment materials to the defendant "in time for its effective use at trial."  *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 407 (4th Cir. 2014); *United States v. Beckford*, 962 F. Supp. 780, 788 (E.D. Va. 1997).  The government has complied, and will continue to comply, with these obligations and with all other relevant discovery authorities.  As described above, the government has already produced significant discovery in this case.  These productions have included extensive information that constitutes *Brady* and *Giglio* material.

The government's discovery practices in this matter reflect our office's serious view towards its constitutional obligations, and its general policy of prompt disclosure of exculpatory and impeachment materials.  The government must also protect its witnesses, however, and the law clearly safeguards our need to do so.  As this Court has held:

> [T]he rights conferred by *Brady* and its progeny are not absolute except as to the need for disclosure.  With respect to timing, those rights are relative to the fundamental societal interest in a fair trial which produces a rational decision based on all admissible evidence. . . .  That interest is severely diminished if important testimonial evidence is lost because a witness disappears out of fear or is threatened, injured or killed.  Therefore, in some instances, the disclosure of *Brady* material must be delayed somewhat in furtherance of society's interest in a fair trial on the basis of all relevant evidence.

*Beckford*, 962 F. Supp. at 793-94; *see also United States v. Elmore*, 423 F.2d 775, 779 (4th Cir. 1970) (recognizing the appropriateness of *Brady* disclosure at time of trial in light of government's witness intimidation concerns).

The defendants in this case are members and associates of MS-13, a violent street gang known to intimidate and kill suspected cooperators and witnesses.  As set forth in the third

superseding indictment, MS-13 "commands silence about gang activity and prohibits cooperation with law enforcement."   Doc. No. 287, at ¶ 6.   If a gang member or civilian cooperates with law enforcement, gang leadership may issue a "green light," which signals authorization to murder that individual.  *Id.*   Indeed, the apparent motivation for the murder of Nelson Omar Quintanilla Trujillo, as charged in the fourth count of the third superseding indictment, was that gang members believed he was a government informant.   That the government has, in this case, incapacitated 13 members of an international gang with approximately 6,000 to 10,000 members in the United States,[3] does not mitigate the threat to the life and safety of the witnesses in this case.

The government fully intends to disclose all *Brady* and *Giglio* materials in this case sufficiently in advance of the March 21, 2016 trial date to satisfy due process.   At this early juncture, however, protecting potential government witnesses from the very real threat of intimidation and harm outweighs the interests of the defendants in obtaining this information eight months before trial.   The government submits that disclosure of all remaining *Brady* materials 30 days prior to trial, and all *Giglio* materials 10 business days prior to trial, as provided in the attached proposed discovery order, would give defense counsel more than enough time to make effective use of the information.   *See, e.g.*, *Elmore*, 423 F.2d at 779–80 (finding no prejudice where witness statement containing *Brady* information was produced during trial, though opining that statement should have been produced as soon as relevant witness was called to testify); *Beckford*, 962 F. Supp. at 795 (permitting government to withhold witness statements, regardless of whether they contained *Brady* information, until three days

---

[3] Federal Bureau of Investigation, "The MS-13 Threat: A National Assessment" (Jan. 14, 2008), *available at* https://www.fbi.gov/news/stories/2008/january/ms13_011408.

prior to jury selection).[4]   We respectfully request that the Court deny any motion to compel disclosure of remaining *Brady* and *Giglio* materials prior to that time.

B.   Defendants' Motions for *Jencks* Act and Rule 16 Materials

The Court should also reject the defendants' motions for premature disclosure of *Jencks* materials.   The *Jencks* Act provides that the government need not produce any statement or report in its possession, made by a government witness, until after that witness has testified on direct examination.   *See* 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2.   At this very early stage – eight months prior to trial – the government has not even made final determinations as to who its witnesses will be.   For these reasons, and in consideration of the witness safety concerns set forth above, the Court should deny the defendants' motions.   The government respectfully submits that disclosure of *Jencks* material 10 business days prior to trial, as provided in the attached proposed discovery order – a deadline well in advance of what the law requires – would allow ample time for defendants to make effective use of the information.   Pending this disclosure, the government will continue to meet its lawful obligations under the *Jencks* Act, and will preserve witness statements, as required by the statute.[5]

With respect to defendants' request for discovery pursuant to Rule 16, the government has already disclosed voluminous materials falling within this category of discovery, as noted above, and will continue to timely produce any additional discovery.

---

[4] The *Beckford* Court provided an exception for three particular types of *Brady* information: (1) alibi evidence; (2) evidence that a person other than a defendant was responsible for the crimes charged; and (3) other "facially exculpatory" evidence.   962 F. Supp. at 795.   The Court required disclosure of these categories of evidence by April 18, 1997, approximately one month before the start of trial on May 27, 1997.   *Id.* at 794-95.

[5] *See* Defendant Alejandro Chavez's Request for Preservation of Electronic Mail (Doc. No. 332).   Defendants Gaitan Benitez (Doc. No. 363), Duran Cerritos (Doc. No. 376), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), and Rosales Villegas (Doc. No. 387) have moved to adopt this motion.

6

C. <u>Defendants' Motions for Designation of Phone Calls the Government Intends to Use at Trial</u>

Defendants Lemus Cerna (Doc. No. 348) and Paiz Guevara (Doc. No. 359) have moved under Rule 16(d)(1) of the Federal Rules of Criminal Procedure for an order requiring the government to provide additional information regarding the recorded telephone calls it intends to use at trial.  Lemus Cerna has specifically requested "an index and a summary of the contents of all the recordings of the conversations" the government intends to present as trial evidence.  Doc No. 348, at 1.  Paiz Guevara seeks "the date, time, parties to, and . . . transcripts [if any] of any recorded telephone calls" the government intends to introduce at trial, and requests such disclosure 60 days before trial begins.  Doc. No. 359, at 1.  These requests go far beyond what the relevant discovery authorities require of the government, and the Court should therefore deny the defendants' motions.

By requesting an index of calls the government intends to introduce at trial, the defendants are, in essence, seeking early disclosure of the government's exhibit list.  As courts have recognized, the Rules of Criminal Procedure do not entitle a defendant to pretrial disclosure of such a list.  *See, e.g.*, *United States v. Prince*, 618 F.3d 551, 562 (6th Cir. 2010) ("Rule 16 does not entitle a defendant to pretrial disclosure of the government's exhibit list."); *United States v. Lewis*, 594 F.3d 1270, 1280–81 (10th Cir. 2010) (concluding that no procedural rule or statute requires pretrial disclosure of exhibit lists); *United States v. Causey*, 356 F. Supp. 2d 681, 686–87 (S.D. Tex. 2005) ("The plain language of Rule 16 does not require the government to specify among the universe of discovery documents produced to defendants which documents it considers material to the defense or which documents it intends to use in its case-in-chief.").  "The obligation imposed by Rule 16 is one of discovery, to make certain categories of documents available to the defense. The rule does not impose a duty on the Government to tip its

hand prematurely by requiring it to give the defendant a roadmap of its strategy." *United States v. Scrushy*, Case No. CR-03-BE-530-S, 2004 WL 483264, at *3 (N.D. Ala. Mar. 3, 2004). Accordingly, courts have regularly rejected defendant's requests for early disclosure of exhibit lists, even in cases involving hundreds of thousands of documents. *See, e.g.*, *Prince*, 618 F.3d at 561–62 (upholding district court decision not to require government to identify exhibits it intended to introduce at trial from among 70,000 pages of discovery materials); *United States v. Reddy*, 190 F. Supp. 2d 558, 571–72 (S.D.N.Y. 2002) (denying motion to compel government to designate evidence it intended to use at trial where government had produced over 250,000 documents). *But see United States v. Poindexter*, 727 F. Supp. 1470, 1484 (D.D.C. 1989) (ordering "the government to identify all documents on which a witness will rely or to which he will refer" where government had produced over 300,000 pages of documents).

The government recognizes the defendants' need to review thoroughly the evidence against them, and the importance of avoiding unfair surprise at trial. To assist the defendants in their review of the recorded telephone calls, the government has specifically identified the calls it considers most pertinent. The government provided this list to defense counsel nine months ago, and seven months remain in which the defense can review these and other recorded calls. At the time the parties exchange exhibit lists, the government will provide the defense with a list of those calls it intends to introduce at trial, along with court-certified transcripts of the calls. There is no basis, legal or otherwise, for requiring the government to take the further step of finalizing its evidence a full two months before trial, and divulging that information to the defense. *See United States v. Anderson*, 481 F.2d 685, 694 (4th Cir. 1973) ("Rule 16 does not require the prosecution to disclose all the minutia[e] of its evidence, to reveal its trial strategy, and to

delineate with total specificity the case it intends to present." (internal quotation marks omitted)). The Court should therefore deny the defendants' motions.

### D.  Defendant Paiz Guevara's Motion for Investigative Materials

Defendant Paiz Guevara has moved for an order compelling the government to disclose, in effect, all materials generated by any law enforcement agency regarding the PVLS clique of MS-13.  Doc. Nos. 361, 362.   The defendant's far-reaching request is foreclosed by clearly established principles regarding the duties of prosecutors and defendants with regard to discovery of exculpatory information.  First, while the government has a constitutional duty "to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), the government has no such duty with respect to government agencies not participating in the investigation, *see, e.g.*, *United States v. Smith*, 398 Fed. Appx. 938, 941 (4th Cir. 2010) ("There is no requirement that prosecutors in one district be aware of and disclose information in the possession of other governmental offices."); *Kasi v. Angelone*, 300 F.3d 487, 506 (4th Cir. 2002) ("[W]e reject Kasi's claim that *Kyles* imposes a duty upon a state prosecutor to conduct a *Brady* review of federal agency files."); *Lovitt v. True*, 330 F. Supp. 2d 603, 622 (E.D. Va. 2004) (finding "no supporting authority" for petitioner's claim that "duty to ascertain [exculpatory] information . . . is without jurisdictional boundaries").  The defendant's motion is therefore improper to the extent that it would require the government to seek the sought-after information from any governmental offices, including law enforcement agencies, not participating in the investigation.

Second, even when cabined to participating agencies, the defendant's request is sweeping in scope, and rests on an impermissible degree of speculation.   "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *see also United States v. Caro*, 597 F.3d 608, 619 (4th Cir.

2010) ("We have often noted that *Brady* requests cannot be used as discovery devices."). The government's duty to disclose exculpatory evidence "does not require the government to make available all evidence in its possession or within its reach," *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011), nor "divulge every possible shred of evidence that could conceivably benefit the defendant," *United States v. Lee Vang Lor*, 706 F.3d 1252, 1259 (10th Cir. 2013). And "[m]ere speculation that *Brady* material exists does not justify fishing expeditions in government files." *United States v. Paulino*, 103 F.3d 122, 1996 WL 671346, at *2 (4th Cir. 1996) (citing *United States v. Crowell*, 586 F.2d 1020, 1029 (4th Cir. 1978)); *see also United States v. Davis*, 752 F.2d 963, 976 (5th Cir. 1985) (*Brady* does not ensure a defendant "access to all government material" so that he may "conduct a fishing expedition" for exculpatory information).

The defendant's request is of the precise variety these authorities prohibit. The defendant seeks all law enforcement investigative materials related to the PVLS clique of MS-13 on the grounds that it may help the defendant differentiate his own gang involvement as compared to other members. Given the scope of the PVLS clique's unlawful activities throughout the United States and abroad, the magnitude of such a discovery production would be potentially staggering. Moreover, such production would implicate grave security concerns, as the materials the defendant requests are undoubtedly replete with information regarding victims, witnesses, confidential informants, and undercover law enforcement agents in this district and others.

In any event, the defendant's theory as to how these records might yield exculpatory material is speculative, at best. *See United States v. Colkley*, 899 F.2d 297, 302 (4th Cir. 1990) (defining exculpatory evidence "as material evidence that would create a reasonable doubt as to the correctness of a guilty verdict at trial"). The defendant's rationale for seeking the requested information is that he intends to argue that he was "not an initiated member of the PVLS clique

10

of MS-13, and that he further did not know of the plan to murder the deceased in Count 6 of the current Indictment." Doc. No. 362, at 5–6. But the defendant offers no explanation for how or why investigative materials from entirely unrelated cases, involving other crimes, victims, and perpetrators will assist him in his endeavor. To the extent the defendant seeks general information about the PVLS clique, he can rely upon the extensive discovery productions with information *relevant to this case*, forthcoming expert disclosures, testifying witnesses, and his own independent investigation. *Brady* does not require the government to turn over information in its files regarding parallel investigations, so that a defendant may develop a standard for measuring comparative culpability. *See, e.g.*, *United States v Okolo*, 820 F.2d 1220, 1987 WL 37645, at *1 (4th Cir. 1987) (rejecting argument that a defendant's PSR in an unrelated case was "exculpatory" because it "provide[d] a standard for measuring culpability").

The defendant also claims that he will use the materials requested to impeach government witnesses, but again offers no explanation for how or why investigative materials bearing no relation to the present case will assist him in this effort. Doc. No. 362, at 6. As noted above, the government has produced to the defense a voluminous amount of discovery in this case, and will continue to do so consistent with its legal obligations. These productions include *Giglio* and *Jencks* Act materials that the defendant may properly use to impeach government witnesses, to the extent they provide a basis to do so.

*Brady* and its progeny do not obligate the government to undertake the herculean task proposed by the defendant, premised on nothing more than conjecture. The Court should deny the motion.

E. Defendant Paiz Guevara's Motion for Provision or Access to PSI of Co-Defendants or Other Individuals Who Have Entered or Agreed to Enter Guilty Pleas in Exchange for Testimony

Defendant Paiz Guevara also seeks access to the Presentence Investigation Report ("PSR") of co-defendants who have entered guilty pleas or have agreed to enter guilty pleas with the government.  Doc. Nos. 367, 368, at 1.[6]  In the alternative, he asks the Court to conduct an *in camera* review of each PSR.  *Id.*  Rather than providing specific grounds to justify the disclosure of information from these sensitive documents, the defendant offers only sweeping generalizations and speculation about what potential exculpatory or impeachment information the reports may contain.

The Fourth Circuit extensively analyzed the law governing disclosure of PSR information in *United States v. Trevino*, noting that "[i]n *United States v. Figurski*, 545 F.2d 389 (4th Cir. 1976), we held that presentence reports prepared on behalf of government witnesses must be examined by the district court *in camera* before any of the information contained therein is disclosed to the accused."  89 F.3d 187, 190 (4th Cir. 1996).  The court then held:

> The adversary system does not permit either party to "engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents." (citation omitted). . . . We conclude that a district court is under no duty to conduct an *in camera* examination of a requested PSR unless the accused has first clearly specified the information contained in the report that he expects will reveal exculpatory or impeachment evidence.

*Trevino*, 89 F.3d at 192; *see also United States v. Allen*, 716 F.3d 98, 105 (4th Cir. 2013) ("[T]his does not mean that a defendant can go on a fishing expedition every time a codefendant pleads guilty, as *Trevino* clearly requires a specific explanation of what exculpatory evidence a

---

[6] Defendants Romero Cruz (Doc. No. 374), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), Marquez Ayala (Doc. No. 381), Rosales Villegas (Doc. No. 387), Lopez Torres (Doc. No. 388), and Alejandro Chavez (Doc. No. 316) have moved to adopt Paiz Guevara's motion.

PSR will contain."). The defendants have failed to specify any such information in their motions. Accordingly, the Court should deny their request for *in camera* review of PSRs.[7]

## II.    DEFENDANTS' MOTION TO REVEAL IDENTITY OF CONFIDENTIAL INFORMANTS

Defendant Marquez Ayala asks the Court to order the government "to provide the defense with the name, date of birth, social security number, address and telephone number of all the unindicted co-conspirators, co-operating witnesses, and confidential informants" who were either used to surreptitiously record the defendants or who were willing participants in the charged offenses.  Doc. No. 328 at 1.[8]   Should the government fail to promptly provide that information, the defendant insists that the indictment should be dismissed.  *Id.* at 5-6.  The defendant's motion raises obvious and serious safety concerns in that it seeks disclosure of the identities and locations of government informants to members and associates of MS-13, a violent street gang known to intimidate and kill suspected cooperators and witnesses.  Because the defendant cites no particularized need for any of the information he seeks and points to no authority that would require the government to disclose this information, the defendant's motion should be denied.

In support of his argument, defendant relies on *Roviaro v. United States*, 353 U.S. 53 (1957), and related Fourth Circuit cases.  In *Roviaro*, the Supreme Court enacted a balancing test, weighing the public interest in law enforcement against the rights of the accused, to

---

[7] Defendant Paiz Guevara also moved for disclosure of the plea agreements of codefendants who have pled guilty.  (Docs. No. 367, 368).  This motion is addressed in Section I.A of this response, relating to requests for immediate disclosure of *Brady* and *Giglio* information.

[8]   Defendants Romero Cruz (Doc. No. 374), Rosales Villegas (Doc. No. 387), DeJesus Castillo (Doc. No. 377), Gaitan Benitez (Doc. No. 363), Duran Cerritos (Doc. No. 376), Lemus Cerna (Doc. No. 345), and Alejandro Chavez (Doc. No. 316) have moved to adopt Marquez Ayala's motion.

determine whether the government must disclose the identity of a confidential informant.  Under that balancing test, a critical factor is whether the confidential informant was a participant in the crime or a witness to the crime.  *See United States v. Price*, 783 F.2d 1132, 1138 (4th Cir. 1986) ("one of the factors tending to show that the prosecution is not entitled to withhold from the accused information as to the identity of an informant is the qualification of the informant to testify directly concerning the very transaction constituting the crime."); *United States v. Mabry*, 953 F.2d 127, 131 (4th Cir. 1991).  Another key factor is whether disclosing the identity will place the safety of the confidential informant in jeopardy.  *See United States v. Brinkman*, 739 F.2d 977, 981 (4th Cir. 1984) (government did not have to reveal informant's name where informant was not directly involved in the crime in which defendant was charged and revealing identity would put other investigations at risk); *United States v. Woody*, No. 7:05CR00110, 2006 WL 2303113, at *6 (W.D. Va. Aug. 9, 2006) ("One factor which weighs against disclosure is when the 'safety and security of the person supplying the information is best protected by nondisclosure of his identity to those who may cause him harm.'  Danger to an informant must be given 'significant weight' as a factor in balancing interests under *Roviaro*.") (citations omitted)).

In each of the cases cited by the defendant, the basis for the defendant's claim was that the defense was denied disclosure of an important government informant who did not ultimately testify at trial.  *See Roviara*, 353 U.S. 53; *McLawhorn v. North Carolina*, 484 F.2d 1 (4th Cir. 1973); *Mabry*, 953 F.2d 127; *Price*, 783 F.2d 1132.  *But see United States v. Martinez*, 286 Fed. Appx. 809 (4th Cir. 2008) (unpublished) (government's failure to disclose identity and impeachment information of confidential informant in advance of his testimony at trial was non-prejudicial error).  In contrast, in this case, there is no confidential informant, who was a participant or witness to any of the charged offenses, who will not be testifying at trial.  Thus,

14

because any informant relevant under *Roviaro* and related precedent will testify at trial, the defendant has no basis for demanding disclosure at this time.

To the extent the defendant seeks identity and contact information for witnesses the government intends to call at trial, he has no grounds to justify this sweeping request. The government is not required to produce a witness list in advance of trial. *See United States v. Anderson*, 481 F.2d 685, 693 (4th Cir. 1973) ("As for the demand of the defendants for a list of the Government's witnesses, they were not entitled of right, in this non-capital case, to such pretrial disclosure."). And the defendant offers no specific reason that he needs this information. *See, e.g.*, *Mabry*, 953 F.2d at 132 ("We have ruled that a "defendant must come forward with something more than speculation as to the usefulness of . . . disclosure [of a confidential informant.]'" (quoting *United States v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985)). As discussed in Parts I.A & B, *supra*, the government proposes producing any remaining *Brady* information 30 days before trial and all *Jencks* and *Giglio* material 10 business days before trial, which will allow the defendant ample time to prepare any cross-examination. Particularly in light of the witness safety reasons detailed above, the Court should decline to order any additional, or earlier, disclosure of witness information. *See, e.g.*, *Elmore*, 423 F.2d at 779 (recognizing the appropriateness of *Brady* disclosure at time of trial in light of government's witness intimidation concerns); *Beckford*, 962 F. Supp. at 795 (permitting government to withhold witness statements, regardless of whether they contained *Brady* information, until three days prior to jury selection).

Accordingly, defendant's motion should be denied.

III.   DEFENDANTS' MOTIONS REGARDING CO-DEFENDANT AND
       CO-CONSPIRATOR STATEMENTS

   A.   Defendant Gaitan Benitez's Motion for Disclosure of Statements by Co-Defendants
        Which Incriminate Defendant

Defendant Alvin Gaitan Benitez asks the Court to order the government to disclose "any statements or confessions by any co-defendant which arguably incriminate him, which the government intends to offer at trial."   Doc. No. 347, at 1.[9]  The defendant asserts that the admission of such statements from a non-testifying co-defendant would violate his Sixth Amendment right of confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004) and *Bruton v. United States*, 391 U.S. 123 (1968).  Doc. No. 347, at 1.  As a consequence, the defendant claims such statements would be grounds to move for a severance.  *Id.*

To the extent the defendant refers to *testimonial* statements – such as a confession made to law enforcement – the government is amenable to disclosing any such statements with sufficient time to resolve any issues arising under *Crawford* or *Bruton* in advance of trial.  *See, e.g.*, *United States v. Udeozor*, 515 F.3d 260, 268 (4th Cir. 2008) (discussing the scope of *Crawford* protection and the definition of a "testimonial" statement).   The government respectfully suggests that 30 days would provide sufficient time.  However, the government notes that, as of this filing, the government does not anticipate introducing at trial any such statement.

To the extent the defendant intends his motion to apply more broadly to *non-testimonial* statements by co-defendants, that request has no basis.  As the Fourth Circuit has held, "*Bruton* is simply irrelevant in the context of nontestimonial statements."  *United States v. Dargan*, 783

---

[9] Defendants Romero Cruz (Doc. No. 374), Rosales Villegas (Doc. No. 387), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), and Alejandro Chavez (Doc. No. 389) have moved to adopt Gaitan Benitez's motion.

F.3d 643, 651 (4th Cir. 2013).  Courts have repeatedly upheld the admission of incriminating statements made by non-testifying co-defendants under Rule 804(b)(3) "statement against interest" and Rule 801(d)(2)(E) "co-conspirator statements" where the statements were not testimonial in nature and thus did not implicate *Crawford*.  *See, e.g.*, *Dargan*, 783 F.3d at 650 ("[Declarant] made the challenged statements to a cellmate in an informal setting—a scenario far afield from the type of declarations that represented the focus of *Crawford's* concern."); *United States v. Jordan*, 509 F.3d 191 (4th Cir. 2007) (statement made by defendant to friend admitted under Rule 804(b)(3)); *United States v. Sullivan*, 455 F.3d 248, 258 (4th Cir. 2006) ("[w]hile such statements may well have been admissible evidence as statements by a co-conspirator during the course of and in furtherance of the conspiracy, *see* Fed. R. Evid. 801(d)(2)(E), they are not testimonial statements under *Crawford*.").

Accordingly, the government has no objection to disclosing, 30 days prior to trial, any testimonial statement by a non-testifying defendant which tends to incriminate another defendant and which the government intends to use at trial.

B.  Defendant Marquez Ayala's Motion for Disclosure of Co-Conspirator Statements

Defendant Juan Carlos Marquez Ayala asks the Court to order the government to provide "the statements of co-conspirators who they do not intend to call at trial if admitted in evidence under the hearsay exception of Fed. R. Evid. 801(d)(2)(e)."  Doc. No. 352.[10]  The Fourth Circuit has thoroughly examined and completely rejected such a demand by defendants.

---

[10]  Defendants Romero Cruz (Doc. No. 374), Rosales Villegas (Doc. No. 387), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), and Alejandro Chavez (Doc. No. 389) have moved to adopt Marquez Ayala's motion.

As the defendant acknowledges in his brief, the Fourth Circuit sitting *en banc* addressed this issue in *United States v. Roberts*, 811 F.2d 257 (4th Cir. 1987).  In that opinion, the Court of Appeals held:

> The plain language of Fed. R. Crim. P. 16(a)(1)(A) pertains to the discovery of statements "made by the defendant."  *The rule does not mention and is not intended to apply to the discovery of statements made by co-conspirators.*  Such statements are more properly governed by the Jencks Act, 18 U.S.C. § 3500. (italics added).
>
> When the statements of persons other than the defendant are sought, questions of witness safety necessarily arise.  The phrase "witness safety" incorporates our concerns about those persons whose inculpatory statements may be introduced at trial.  The dichotomy the dissent would have us draw between declarants and witnesses is utterly unrealistic.  It fails to recognize, among other things, that the disclosure of co-conspirator statements may expose not only the declarant to threats and intimidation, but also those expected to testify at trial concerning the declarant's statements.  This approach endangers government witnesses by circumventing the protections of the Jenks Act, and we reject it.

*Id*. at 258-59.  The Court of Appeals then expressly noted that it had adopted the reasoning of Judge Wilkinson in his concurring opinion in *United States v. Jackson*, 757 F.2d 1486 (4th Cir. 1985).  *Roberts*, 811 F.2d at 259.  In *Jackson*, Judge Wilkinson wrote:

> "Fear of intimidation of witnesses and concern over efforts to suborn perjury were not flights of fancy by those who drafted Rule 16."  *United States v. Percevault*, 490 F.2d 126, 131 (2d Cir. 1974).  These fears do not evaporate when the statement is to be introduced through the testimony of federal agents pursuant to the co-conspirator exception to the hearsay rule, Fed. R. Evid. 801(d)(2)(E).
>
> * * *
>
> Rule 16(a)(1)(A) requires the government to disclose to the defendant his own statements which the government intends to offer at trial and which were made to a person then known to the defendant as a government agent.  *It does not . . . confer a right to discover the statements of anyone else, and in particular it makes no mention of co-conspirators.* (italics added).

*Id*. at 1493.  The plain language of the holding in *Roberts*, 811 F.2d at 258, could not be more clear: "The rule does not mention and is not intended to apply to the discovery of statements made by co-conspirators." With this pronouncement, the Fourth Circuit *en banc* emphatically

ruled that defendants are not entitled to discovery of statements by co-conspirators under Rule 16(a)(1)(A).

Yet, the defendant claims that the "Court of Appeals did not overrule the essential holding in *Jackson*." Doc. No. 352, at 4. To the contrary, that is precisely what the Fourth Circuit did. *See United States v. Swain*, No. 4:07-CR-62-D, 2008 WL 717720, at *3 (E.D.N.C. Mar. 17, 2008) ("As for statements of non-testifying co-conspirators (indicted or unindicted), the court notes that the holding in *Jackson* on which the defendant relies has been abrogated. In *Roberts*, the Fourth Circuit vacated an earlier decision which relied upon the same reasoning in *Jackson*."); *United States v. King*, 121 F.R.D. 277, 280 (E.D.N.C. 1988) ("Unfortunately for defendant, the Fourth Circuit has specifically addressed this question *en banc* and held that the plain language of Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure pertains only to the discovery of statements 'made by the defendant' and does not mention nor does it apply to discovery of statements made by co-conspirators." (citing *Roberts*.)).

Accordingly, the Court should deny the motion.

## C.   Defendant Gaitan Benitez's Motion for a *James* Hearing

Defendant Gaitan Benitez asks the Court to conduct a *James* hearing "to determine whether co-conspirator hearsay statements are admissible as evidence against the defendant." Doc. No. 349, at 1.[11] In his brief, the defendant cites the original Fifth Circuit case from which the name of the hearing is derived, *United States v. James*, 590 F.2d 575 (5th Cir.) (*en banc*), *cert. denied*, 442 U.S. 917 (1979), as well as three additional Fifth Circuit cases. Doc No. 349, at 1–2. Notably, the defendant does not cite a single Fourth Circuit case in support of his motion.

---

[11]   Defendants Romero Cruz (Doc. No. 374), Rosales Villegas (Doc. No. 387), Marquez Ayala (Doc. No. 379), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), and Alejandro Chavez (Doc. No. 389) have moved to adopt Gaitan Benitez's motion.

The Fourth Circuit has held that a district court has no requirement to conduct a *James* hearing in order to evaluate the admissibility of co-conspirator statements under Rule 801(d)(2)(E) of the Federal Rules of Evidence.  *See United States v. Hines*, 717 F.2d 1481, 1488 (4th Cir. 1983) ("This court, however, does not require the *James* hearing.  Instead, a trial judge retains the option to admit conditionally the declarations of co-conspirators before the conspiracy has been independently established, subject to the fulfillment of that factual predicate.") (citation omitted); *United States v. Blevins*, 960 F.2d 1252, 1256 (4th Cir. 1992) ("This circuit has rejected the formalistic requirement that there must be a hearing to determine the existence of a conspiracy before statements can be admitted under Rule 801(d)(2)(E). Instead, we allow a trial court to conditionally admit co-conspirators' statements subject to subsequent satisfaction of the requirements for their admission.")

Although this case involves a criminal enterprise engaged in racketeering activity, the charges in the indictment focus on simple and distinct offenses—three murders and an attempted murder.  These violent crimes involve rather discrete conspiracies in comparison with far more complicated conspiracies often found, for example, in a broad international drug trafficking case or a complex white collar case. With regard to the pending case, the practice in this Circuit of conditionally admitting the co-conspirator statements subject to the government subsequently proving the conspiracy should be more than sufficient and, therefore, a *James* hearing is not warranted.

IV.     DEFENDANTS' MOTIONS FOR DISCLOSURE OF RULE 404(B) MATERIALS

Defendants Marquez Ayala (Doc. No. 324), Duran Cerritos (Doc. No. 337), Lemus Cerna (Doc. No. 346), and Paiz Guevara (Doc. Nos. 355, 356) have moved for orders directing the government to: (1) immediately notice any intention to present evidence at trial of the

20

defendants' "crimes, wrongs, or other acts" under Federal Rule of Evidence 404(b); and (2) identify any/or produce such evidence.[12]  Defendants' arguments rest on a misconstruction of what Rule 404(b) requires, and the Court should deny their motions accordingly.

Rule 404(b)(2)(A) of the Rules of Evidence requires that the government "provide reasonable notice of the general nature" of any evidence of crimes, wrongs, or other acts.  The government must do so "before trial" or "during trial if the court, for good cause, excuses lack of pretrial notice."  Fed. R. Evid. 404(b)(2)(B).  By its terms, the rule provides no basis for the defendants' demands that the government identify its witnesses or disclose documents and physical evidence.  On the contrary, as the notes of the advisory committee plainly state, Rule 404(b) does not supersede other rules of disclosure, such as the Jencks Act, "nor require the prosecution to disclose . . . the names and addresses of its witnesses."  Fed. R. Evid. 404(b), advisory comm. note to 1991 amendment; *see also United States v. Renteria*, No. 7:12-CR-37, 2014 WL 2616630, at *5 (E.D.N.C. June 12, 2014) ("[T]he Rules of Evidence are not rules of discovery.  The purpose of the Rule 404(b) notice provision, to prevent surprise during trial, does not support providing a defendant with materials which the Government possesses and plans to offer at trial. . ." (quoting *United States v. Williams*, 792 F. Supp. 1120, 1134 (S.D. Ind. 1992)).  As stated above, the government has complied, and will continue to comply, with all

---

[12] Defendants Lemus Cerna (Doc. Nos. 345, 378), Gaitan Benitez (Doc. No. 363), Romero Cruz (Doc. No. 374), Duran Cerritos (Doc. No. 376), DeJesus Castillo (Doc. No. 377), Rosales Villegas (Doc. No. 387), and Alejandro Chavez (Doc. No. 389) have moved to adopt Marquez Ayala's motion.  Defendants Romero Cruz (Doc. No. 374), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), and Alejandro Chavez (Doc. No. 389) have moved to adopt Duran Cerritos's motion.  Defendants Gaitan Benitez (Doc. No. 363), Romero Cruz (Doc. No. 374), DeJesus Castillo (Doc. No. 377), and Alejandro Chavez (Doc. No. 389) have moved to adopt Lemus Cerna's motion.   Defendants Romero Cruz (Doc. No. 374), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), Lopez Torres (Doc. No. 388), and Alejandro Chavez (Doc. No. 389) have moved to adopt Paiz Guevara's motion.

constitutional discovery obligations and with all other relevant authorities.  The Court should reject the defendants' efforts to obtain discovery through the improper vehicle of Rule 404(b).

The Court should also deny the defendants' requests for premature notice of the government's Rule 404(b) evidence.  Again, at this early stage, the government has not even reached final determinations regarding its trial evidence.  Disclosure of any potential witnesses would, moreover, place those individuals at serious risk of harm or intimidation.  Three days is the customary notice afforded under the standard joint discovery order in this District, an order long sanctioned by this Court.  The government respectfully submits that notice of all Rule 404(b) evidence ten business days prior to trial, as provided in the attached proposed discovery order, would be more than "reasonable" under the present circumstances, and would accord with case law interpreting the rule.  *See, e.g.*, *United States v. Ojeikere*, 299 F. Supp. 2d 254, 257 (S.D.N.Y. 2004) ("Courts in this Circuit have routinely found that at least ten business days provides reasonable notice to a defendant under Rule 404(b)." (collecting cases)); *United States v. Moorefield*, No. 14-284, 2015 WL 3879934, at *7 (W.D. Pa. June 23, 2015) ("Courts that have considered what constitutes 'reasonable notice' have concluded that notice of intent to use Rule 404(b) evidence seven to ten days prior to trial is sufficient." (collecting cases)).

## V.   DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF SUBPOENA RETURNS

Defendant Gaitan Benitez has moved for the disclosure of subpoena returns pursuant to Local Rule 17(E).  Doc. No. 350.[13]  This appears no more than an attempt by the defendant to obtain the names and contact information for the government's witnesses – information that the

---

[13] Defendants Romero Cruz (Doc. No. 374), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), Rosales Villegas (Doc. No. 387), Lopez Torres (Doc. No. 388), and Alejandro Chavez (Doc. No. 389) have moved to adopt Gaitan Benitez's motion.

Court should not compel the government to share with the defense at this time.  *See* I.A, *supra*. For the witness safety reasons detailed above, the Court should deny this motion.

VI.    DEFENDANT'S MOTION FOR NOTICE OF INTENTION TO USE EVIDENCE

Citing Rule 12(b)(4)(B) of the Federal Rules of Criminal Procedure, Defendant Alejandro Chavez has requested that the government inform him of its intention to "use evidence" in the case against him.  Doc. No. 318.[14]   This motion fails for lack of proper purpose and the specificity required by law.  Rule 12(b)(4)(B) is not a broad-ranging means of compelling the government to catalogue its evidence and divulge its witnesses.  Rather, the purpose of Rule 12(b)(4)(B) is "to facilitate the timely filing of focused suppression motions and to avoid the needless filing of motions to suppress evidence that the government has no intention of presenting."  *United States v. Ishak*, 277 F.R.D. 156, 160 (E.D. Va. 2011) (citing *United States v. Candelaria–Silva*, 162 F.3d 698, 702 (1st Cir. 1998)).  Therefore, "[a]ny request under Rule 12(b)(4)(B) must identify evidence with sufficient specificity that the government can readily ascertain the particular evidence referenced." *Id.*  Only at that time can the government provide effective notice as to its intent to offer the specifically-identified evidence at trial.  *Id.*  Because Alejandro Chavez's motion does not identify specific evidence, the government cannot respond to it effectively and satisfy any obligations under Rule 12(b)(4)(B).  The Court should deny the motion accordingly.

VII.    DEFENDANTS' MOTIONS CHALLENGING THE INDICTMENT'S SUFFICIENCY

Defendant Romero Cruz (Doc. No. 369) has moved to dismiss the third superseding indictment, and Defendants Duran Cerritos (Doc. No. 336) and Romero Cruz (Doc. No. 371)

---

[14] Defendants Romero Cruz (Doc. No. 374) and Lemus Cerna (Doc. No. 378) have moved to adopt this motion.

have moved the Court for a bill of particulars.[15]   The defendants' motions misapprehend the requirements of Rule 7 of the Federal Rules of Criminal Procedure, and the purpose of a bill of particulars, which is *not* a discovery tool.   Because the indictment provides the defendants with sufficient notice of the charges against them, and the government has provided – and will continue to provide – ample discovery, the Court should reject the defendants' claims.

A.   Defendant Romero Cruz's Motion to Dismiss

Pursuant to Rule 7 of the Federal Rules of Criminal procedure, an indictment must include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).   "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Ali*, 735 F.3d 176, 193 (4th Cir. 2013).   An indictment charging a § 1959 offense is legally sufficient if it alleges, directly or indirectly, the following essential elements:   "(1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise." *United States v. Cuong Gia Le*, 310 F. Supp. 2d 763, 778 (E.D. Va. 2004) (quoting *United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994)).   An indictment need not

---

[15] Defendants DeJesus Castillo (Doc. No. 377) and Lemus Cerna (Doc. No. 378) have moved to adopt Romero Cruz's motion to dismiss.   Defendants Marquez Ayala (Doc. No. 342), Gaitan Benitez (Doc. No. 363), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), Rosales Villegas (Doc. No. 387), and Lopez Torres (Doc. No. 388) have moved to adopt Duran Cerritos's motion.   Defendants DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), and Marquez Ayala (Doc. No. 383) have moved to adopt Romero Cruz's motion for a bill of particulars.

include specific allegations explaining the link between the crime and the purposes of the racketeering organization, the particular roles of the conspirators, or overt acts.  *See id.* at 778, 783-84.

The third superseding indictment in this case thoroughly satisfies the law's requirements. With respect to each count, the indictment recites the elements of the crime charged, identifies the name of each defendant charged, identifies the victim of the offense,[16] and specifies the date of the offense.  The indictment also includes 13 additional paragraphs of factual allegations that explain the purposes, means, and methods of the MS-13 racketeering enterprise.  This more than suffices to meet the Rule 7(c)(1) standard.  *See, e.g.*, *United States v. Hernandez*, No. CR-14-0120, 2015 WL 4498084, at *7 (N.D. Cal. July 23, 2015) ("[T]o survive a motion to dismiss the VICAR conspiracy count[], all the indictment need allege is that Defendants' entered into an agreement to commit murder . . . to gain entrance to, or to maintain or increase their standing in, a racketeering enterprise." (internal quotation marks and alterations omitted)); *United States v. McAuley*, No. 11–CR–6083CJS, 2014 WL 7796696, at *19 (W.D.N.Y. Feb. 4, 2014) (holding that indictment's allegations tracking language of 18 U.S.C. 1959(a)(5) and identifying "the approximate time, location and participants in the alleged offense" were "sufficient to withstand a motion to dismiss").  The Court should therefore deny Romero Cruz's motion.

B.  Defendants' Motions for a Bill of Particulars

Rule 7(f) of the Federal Rules of Criminal Procedure provides that "the court may direct the government to file a bill of particulars."  The purpose of a bill of particulars is to inform a defendant of the charges against him so he may adequately prepare a defense, avoid or minimize surprise at trial, and plead in bar of another prosecution for the same offense.  *Wong Tai v.*

---

[16] The first and second counts of the third superseding indictment refer to the victim of an attempted murder by his initials, to protect the victim's safety and privacy.

*United States*, 273 U.S. 77, 82-83 (1927); *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996), *cert. denied*, 519 U.S. 857 (1996); *United States v. Automated Medical Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985); *United States v. Dulin*, 410 F.2d 363, 364 (4th Cir. 1969). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (internal quotation marks omitted).

A bill of particulars is *not* a means of obtaining generalized discovery, a "detailed exposition of [the government's] evidence," or an explanation of "the legal theories upon which it intends to rely at trial." *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980); *see also United States v. Anderson*, 481 F.2d 685, 690 (4th Cir. 1973) ("Ordinarily, the function of a bill of particulars is not to provide detailed disclosure of the government's evidence in advance of trial but to supply any essential detail which may have been omitted from the indictment." (internal quotation marks omitted)).   Defendants may not compel the government, through a bill of particulars, to specify the details of overt acts already set forth in the indictment, *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978); *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir. 1975); *United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975), nor specify the precise manner in which the crimes charged in the indictment were committed, *United States v. Andrews*, 381 F.2d 377, 377–78 (2d Cir. 1967).

Consistent with the limited function of a bill of particulars, courts routinely deny requests for bills of particulars "when the information requested is provided to the defendant in some other form."   *United States v. Marrero*, 904 F.2d 251, 258 (5th Cir. 1990); *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) ("[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other

26

means.").  "A defendant is not entitled to an unnecessary bill of particulars, where the underlying objectives of a Rule 7 motion are fully satisfied by informal and formal discovery."  *United States v. Ahmad*, No. 1:14-cr-164, 2014 WL 2766121, at *8 (E.D. Va. June 18, 2014) (internal quotation marks and alterations omitted); *see also United States v. Soc'y of Indep. Gasoline Marketers of Am.*, 624 F.2d 461, 466 (4th Cir. 1980) (finding denial of bill of particulars not improper in light of discovery provided by the government).

In the instant case, the third superseding indictment sets forth the elements of the charged offenses, identifies the times and places of the defendants' criminal conduct, and cites the statutes violated by that conduct.  This information provides the defendants with sufficient notice of the charges to enable them to prepare their defense.  *United States v. Blanchard*, 542 F.3d 1133, 1140 (7th Cir. 2008).  As set forth above, the defendants may not use a bill of particulars as a discovery tool to elicit further factual specifics supporting these charges, or probe the government's legal theories.

Furthermore, the government has already disclosed to the defense information concerning the facts and circumstances surrounding the alleged offenses.  As noted above, the government has produced over 15,000 pages of documents, including, among other things: law enforcement investigative reports (pertaining to both the charged crimes and other criminal activities involving the defendants); photographic evidence; autopsy reports; and search warrant returns.  The government has also provided the defense with over 7000 recordings of conversations involving and relating to the defendants and their role in the charged crimes.  Moreover, the government has specifically directed the defendants to approximately 200 recordings that the government considers most pertinent based upon its review of the evidence.  These recordings describe the participants in the crimes and their respective roles.

Despite the extensive discovery provided in this case and the specific factual allegations set forth in the indictment, Duran Cerritos seeks a bill of particulars with details regarding the purposes, means, and methods of the MS-13 racketeering enterprise.  In making this request, the defendant mistakes the fundamental purpose of a bill of particulars:  to ensure the government has informed the defendant *of the charges against him*.  It does not require the government to divulge to the defendant specific details regarding all of the defendant's conduct in furtherance of the purposes, means, or methods of the underlying racketeering enterprise.

The Second Circuit case cited by the defendant, *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988), is not to the contrary.  There, the Court held that a bill of particulars was appropriate where the government had charged the defendant with a substantive count of conspiracy to violate RICO, but had not identified the discrete extortionate schemes the government intended to prove in order to substantiate the conspiracy charge.  *Id.* at 1154.  Here, by contrast, the government has provided detailed allegations regarding the crimes underlying each substantive count.  The government will not attempt to prove at trial any unidentified crimes in order to substantiate a RICO conspiracy count.  *Davidoff* is therefore inapposite.  *See, e.g.*, *United States v. Chevalier*, 776 F. Supp. 853, 855-56 (D.Vt. 1991) (distinguishing *Davidoff* on grounds that the *Davidoff* defendant was indicted for certain extortionate schemes and, at trial, was confronted with evidence of other extortions, whereas the defendant in the instant matter "will be tried for the precise crimes for which he was indicted").

In light of the extensive discovery provided in this case, and because the indictment omits no essential detail, there will be no unfair surprise and the defendants can more than adequately prepare their defense.  A bill of particulars is therefore inappropriate, and the Court should deny the defendants' motions.

VIII.   DEFENDANTS' MOTIONS TO SEVER

Defendants Alejandro Chavez (Doc. No. 320), Romero Cruz (Doc. No. 372), and Rosales Villegas (Doc. No. 387 at 3) have moved to sever themselves from the other defendants in the case.[17]   It is well-settled that there is a preference in the federal system for joint trials of defendants who are indicted together.  *Zafiro v. United States*, 506 U.S. 534, 537 (1993).  The Fourth Circuit has held that "[b]arring special circumstances, . . . the general rule is that defendants indicted together should be tried together for the sake of judicial economy."  *United States v. Rusher*, 966 F.2d 868, 877 (4th Cir.) (internal quotations omitted), *cert. denied*, 506 U.S. 926 (1992).  Because the defendants are properly joined under Rule 8(b) of the Federal Rules of Criminal Procedure, and do not offer persuasive arguments in favor of a discretionary severance under Rule 14, the Court should deny these motions.

A.   The Defendants Are Properly Joined Under Rule 8(b)

Defendant Alejandro Chavez argues in the first instance that he is not properly joined with the other defendants in the indictment under Federal Rule of Criminal Procedure 8(b).  Doc. No. 320 at 4.  That argument fails because the indictment alleges a series of violent offenses committed in furtherance of the same criminal racketeering enterprise over a short period of time, in the same geographic area, by defendants who are all alleged to be members or associates of that enterprise.

Federal Rule of Criminal Procedure 8 permits defendants to be joined in the same action if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."  Fed. R. Crim. P. 8(b).   Separate

---

[17] Defendant Lemus Cerna (Doc. No. 378) and Defendant DeJesus Castillo (Doc. No. 377) moved to adopt their co-defendants' motions to sever, though without specifying which defendant or defendants they advocate severing.  To the extent Lemus Cerna and DeJesus

offenses are considered to be acts within the same series "if they arise out of a common plan or scheme . . . unified by some substantial identity of facts or participants." *United States v. Porter*, 821 F.2d 968, 972 (4th Cir. 1987).  The defendants in this case are charged with various offenses relating to four violent crimes – three murders and one attempted murder – committed in aid of the criminal racketeering enterprise MS-13 over an approximate eight-month period in Northern Virginia.  All 13 defendants charged in the indictment, including Chavez, are alleged to be members or associates of MS-13.  Alejandro Chavez is charged in Counts Seven, Eight, and Nine in connection with the last of the four charged violent crimes in aid of racketeering ("VCAR") offenses, the murder of Julio Urrutia.

The facts in the cases the defendant cites in support of his argument differ dramatically from the facts here.  Notably, none of the cases he cites are gang cases and none involved defendants alleged to be part of the same racketeering enterprise.  *See United States v. Chincic*, 655 F.2d 547 (4th Cir. 1981) (unrelated burglaries); *United States v. Kaplan*, 588 F.2d 71 (4th Cir. 1978) (unrelated firearms offenses); *Ingram v. United States*, 272 F.2d 567 (4th Cir. 1959) (unrelated incidents of possessing nontax-paid liquor); *United States v. Hatcher*, 680 F.2d 438 (6th Cir. 1982) (unrelated narcotics offenses); *United States v. Lech*, 161 F.R.D. 255 (S.D.N.Y. 1995) (unrelated bribery schemes).

To the contrary, courts in this Circuit and others have repeatedly endorsed joinder of defendants and offenses when all relate to the same street gang.  *See, e.g.*, *United States v. Williams*, 2010 WL 4702351, at *2 (E.D. Va. 2010) ("it is plain to the court that illegal activities performed by members of street gangs in furtherance of such gang have a 'logical relationship' to each other and in this case form a 'series of [alleged] acts or transactions' sufficient to warrant

Castillo move to sever themselves, the government opposes those motions for the same reasons described herein.

30

joinder of charges and defendants under Rule 8."); *United States v. Phillips*, 239 F.3d 829, 838 (7th Cir. 2001) (upholding joinder where codefendants' membership in same gang linked their separate crimes including drug and weapon offenses and violent crimes in aid of racketeering). Joinder is especially appropriate where, as here, the offenses occur over a relatively short period of time and in a localized geographic region.  For these reasons, defendant Alejandro Chavez is properly joined and severance is not warranted under Rule 8(b).

B. The Defendants Have Not Met the Heavy Burden of Showing Prejudice Sufficient to Warrant Severance

Alejandro Chavez argues in the alternative that this Court should exercise its discretion to grant severance under Federal Rule of Criminal Procedure 14.  Doc. No. 320 at 5.  Defendant Romero Cruz also argues that the Court should sever his case pursuant to Rule 14, and defendant Villegas has adopted Romero Cruz's motion as it pertains to him.  Doc. Nos. 372 & 387.

When defendants are properly joined under Rule 8(b), as they are in this case, severance under Rule 14 is justified "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.  The party seeking severance under Rule 14 "bears the burden of demonstrating 'a strong showing of prejudice.'"  *United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008) (quoting *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984)). That burden requires a moving defendant to show that a joint trial will result in "actual prejudice" to such defendant.  *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995). Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief, if any, to the district court's sound discretion.  *Zafiro*, 506 U.S. at 538-39. As a result, claims of potential prejudice generally are addressed through limiting instructions

31

rather than severance.  *See Zafiro*, 506 U.S. at 539; *United States v. Hayden*, 85 F.3d 153, 160 (4th Cir. 1996); Fed. R. Evid. 105.

None of the defendants have made the requisite strong showing of actual prejudice to warrant severance.  The defendants' arguments focus on the fact that a joint trial will involve evidence of violent offenses with which they are not charged.  Doc. No. 320 at 7-8; Doc. No. 372 at 3-4.  Alejandro Chavez argues additionally that he will be prejudiced by the admission of evidence of racketeering activity in which he was not directly involved.  Doc. No. 320 at 8.  In the first instance, the Fourth Circuit has previously rejected the argument that defendants are sufficiently prejudiced to overcome the presumption in favor of joint trials merely due to the admission of evidence of violent crimes they did not commit.  *See United States v. Dinkins*, 691 F.3d 358, 368 (4th Cir. 2012) (concluding that severance was not required even though evidence at trial included murders with which the defendants were not charged).  In such instances, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.

The presumption in favor of a joint trial is particularly applicable in this case, because the other charges in the indictment all constitute racketeering activity committed by other members of the same enterprise.  The defendants' assumption that evidence of other violent acts committed by the gang would not be admissible if their cases were severed is simply misplaced.  To prove the VCAR offenses with which these defendants are charged, the government must prove that MS-13 is a criminal enterprise that engages in racketeering activity through its members and associates.  Thus, subject to the limitations of Rule 403, the racketeering acts of which defendant Alejandro Chavez complains, Doc. No. 320 at 8, as well as the VCAR offenses with which the other defendants in the case are charged, would be admissible even in separate

cases against Alejandro Chavez, Romero Cruz, and Rosales Villegas.  As the Fourth Circuit has repeatedly recognized, though there is always a potential for prejudice when counts or defendants are joined for trial, that "possibility of prejudice is greatly diminished where . . . the evidence of the joined crimes would be mutually admissible for legitimate purposes in separate trials for each offense."  *United States v. Cole*, 857 F.2d 971, 974 (4th Cir. 1988) (internal quotation marks omitted).

Indeed, courts repeatedly have rejected severance claims in racketeering cases precisely because evidence of racketeering activity committed by other members of the same enterprise is admissible to prove the existence and scope of the enterprise.  As one court explained:

> Proof of [RICO] elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of the acts.  Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant, and the claim that separate trials would eliminate the so-called spillover prejudice is at least overstated if not entirely meritless.

*United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992); *see also United States v. Stillo*, 57 F.3d 553, 557 (7th Cir. 1995) (upholding joinder of defendants even though one of the defendants claimed that he was prejudiced by evidence of pervasive corruption from predicate RICO offenses in which he was not involved.); *United States v. Eufrasio*, 935 F.2d 553, 567-69 (3d Cir. 1991); (rejecting defendants' claim of prejudicial joinder although codefendant was charged with a predicate act involving murder in which they had no knowledge or involvement); *United States v. Le Compte*, 599 F.2d 81, 82 (5th Cir. 1979), *cert. denied*, 445 U.S. 927 (1980) (rejecting argument that two defendants were the victims of prejudicial spillover from testimony concerning the acts of co-defendants and holding that "the Constitution does not require that in a charge of group crime a trial be free of any prejudice but only that the potential for transferability of guilt be minimized to the extent possible.").

The cases the defendants rely on are inapposite and are not gang or racketeering cases. For example, defendant Alejandro Chavez cites heavily from the Fifth Circuit's opinion in *United States v. McRae*, 702 F.3d 806 (5th Cir. 2012). *McRae*, however, involved a substantially less culpable co-defendant and the admission of highly inflammatory evidence unrelated to the offenses with which he was charged. Concluding that severance was warranted, the court noted that the "case is one of those situations warranting a severance as opposed to the majority of cases that do not require severance because the inflammatory prejudice was not as great, or the difference between the types of crimes charged, on the one hand, and the related evidence, on the other, was not so great." *Id.* at 828 (internal citation omitted). In contrast to *McRae*, all of the defendants in this case are charged with at least one of four VCAR offenses, and defendant Alejandro Chavez is charged with one of the murders. And, as discussed above, evidence of those offenses is mutually admissible to prove the existence and scope of the criminal enterprise that is MS-13. Defendants' arguments are thus unavailing.

Furthermore, to the extent the defendants will suffer any prejudice from the admission of their co-defendants' racketeering offenses, the Fourth Circuit has repeatedly emphasized the curative power of jury instruction. *See, e.g.*, *United States v. Najjar*, 300 F.3d 466, 475 (4th Cir. 2002) ("[J]uries are presumed to follow their instructions" (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)). There is no reason to believe that proper instruction in the present prosecution will not adequately safeguard the rights of defendants subject to proper joinder. The jury will be instructed to weigh separately the evidence as to each defendant and there is no reason to suspect they will do otherwise.

C. A Joint Trial Will Promote Judicial Economy

As the Supreme Court has recognized, the presumption in favor of a joint trial is due to the fact that "[j]oint trials play a vital role in the criminal justice system.  They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro*, 506 U.S. at 537 (internal quotation marks and citation omitted).  A joint trial in this case will promote judicial economy for at least three reasons.  First, because all of the defendants are charged with racketeering activity in conjunction with a single enterprise, there would be significant efficiency gains to allowing the government to present evidence as to the existence and activities of MS-13 in a consolidated trial.  Second, there is significant overlap in the evidence and witnesses relevant to each of the substantive offenses.  And finally, severance would produce inefficiencies of its own due to the overlapping allegations and defendants within the indictment.

Indeed, the defendants' own motions demonstrate the inefficiencies that would be caused by separate trials.  In adopting Romero Cruz's motion, defendant Rosales Villegas notes that he "does not object to being tried jointly with Pedro Romero Cruz and Jose Lopez Torres on Count 1, 2 and 3 of the Third Superseding Indictment."  Doc. No. 387 at 3.  Counts One, Two, and Three all relate to the first of the VCAR offenses charged in the indictment: the attempted murder of D.F. and related conspiracy.  But defendant Lopez Torres is also charged in Count Four, the murder of Nelson Omar Quintanilla Trujillo.  Thus, to satisfy the defendants' demands, the Court would have to subject Lopez Torres to two separate trials. Alternatively, Lopez Torres could be tried solely with other defendants charged in Count Four, but in that case, because the three defendants charged in relation to the attempted murder would be tried separately, the

government would have to prove that same offense in multiple trials.  Similar problems arise with any other attempt to split the defendants or offenses.

For the foregoing reasons, defendants' motions to sever should be denied.

IX.   <u>DEFENDANTS' MOTIONS TO STRIKE</u>

Defendants Alejandro Chavez (Doc. No. 331), Romero Cruz (Doc. Nos. 364, 365), and Rosales Villegas (Doc. No. 386) have filed motions to strike "surplusage" in the third superseding indictment.[18]  Defendants Alejandro Chavez and Rosales Villegas have specifically moved the Court to strike aliases from the indictment.  Doc. Nos. 331, 386.  Defendant Romero Cruz has moved the Court to strike several allegations from the indictment's introductory paragraphs and from its description of the racketeering enterprise.  Doc. No. 364.  Because the language the defendants seek to strike is relevant and material, the Court should deny these motions.

Rule 7(d) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information."   The purpose of the rule is "to protect a defendant against inflammatory or prejudicial allegations that are neither relevant nor material to the charges."  *United States v. Moussaoui*, No. CR. 01-455-A, 2003 WL 1877700, at *1 (E.D. Va. Feb. 28, 2003) (citing *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979)).  "[A] motion to strike surplusage from the indictment should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial."  *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006); *see also United States*

---

[18] Defendants DeJesus Castillo (Doc. No. 377) and Lemus Cerna (Doc. No. 378) have moved to adopt Alejandro Chavez's motion.  Defendants Lemus Cerna (Doc. No. 378), Rosales Villegas (Doc. No. 387), Lopez Torres (Doc. No. 388), and Alejandro Chavez (Doc. No. 389) have moved to adopt Romero Cruz's motion.  Defendant Lemus Cerna (Doc. No. 378) has moved to adopt Rosales Villegas's motion.

*v. Allegheny Bottling Co.*, CRIM. No. 87–123–N, 1988 WL 32936, at *3 (E.D. Va.  Feb. 10,

1988) ("[I]t is clearly established that the mere presence of surplusage in an indictment, absent

prejudice, need not be stricken." (citing *Ford v. United States*, 273 U.S. 593 (1927)).  This

standard is "rather exacting, and only rarely has surplusage been ordered stricken."  1 Charles

Alan Wright, Federal Practice & Procedure § 127, at 635–339 (3d ed. 1999).  As regards aliases,

an alias is not surplusage if the government "intends to introduce evidence of an alias and the use

of that alias is necessary to identify the defendant in connection with the acts charged in the

indictment."  *United States v. Clark*, 541 F.2d 1016, 1018 (4th Cir. 1976); *see also United States

v. Hines*, 955 F.2d 1449, 1454 (11th Cir. 1992) ("[T]he use of an alias in an indictment and in

evidence is permissible if it is necessary to connect the defendants with the acts charged.").

Applying these standards here, none of the language identified as "surplusage" in the

defendants' motions should be struck.  The government intends to introduce evidence of each

alias in the third superseding indictment, which the defendants regularly use to identify

themselves and each other.  Indeed, the discovery materials produced to the defendants are

replete with references to the aliases.  A notebook seized from a car occupied by two of the

defendants, as just one example, includes a ledger listing seven of the aliases at issue, including

"Demente" (Rosales Villegas).  In audio recordings produced to the defense, defendants use the

aliases almost exclusively when referring to one another.  If the government should fail to offer

proof relating to an particular alias, or fail to prove its relevance to the acts charged, the

defendants may move to strike at trial and request an appropriate instruction for the jury.  *Clark*,

541 F.2d at 1018; *see also United States v. Johnson*, 585 F. Supp. 80, 81 (M.D. Tenn. 1984)

("[T]he truth of the allegations of an indictment is tested at trial and not by pretrial motion or

other preliminary proceeding . . . .  That an allegation of the indictment may be false does not

render it surplusage so as to permit it to be stricken pretrial."). Otherwise, the aliases should remain.

Romero Cruz's motion to strike allegations from the indictment's introductory paragraphs and from its description of the racketeering enterprise should likewise be denied. The allegations set forth in paragraphs 1 through 13 of the indictment – which the government will prove through expert and lay witness testimony – directly address elements that the government must establish at trial, namely: (1) the existence of an "enterprise," as defined in 18 U.S.C. § 1959(b)(2); (2) affecting interstate or foreign commerce; (3) engaged in "racketeering activity," as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1). *See United States v. Gray*, 137 F.3d 765, 772 (4th Cir. 1998) (identifying VICAR elements). The allegations in these paragraphs set forth the organization of MS-13, *see* Third Superseding Indictment, at ¶¶ 7, 8, its common purposes, rules, customs, and objectives, *see id.* at ¶¶ 3-6, 8, 9, 11, 12, its effects on interstate and foreign commerce, *see id.* at ¶¶ 2, 10, and its racketeering activities, *see id.* ¶¶ 4, 12, 13. Because these allegations are relevant and material, they do not constitute "surplusage" and should not be struck. *See, e.g.*, *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) ("In RICO cases, courts have refused to strike allegations of organized crime connections that serve to identify the 'enterprise' and the means by which its members and associates conduct various criminal activities."); *United States v. Sattar*, 314 F. Supp. 2d 279, 320 (S.D.N.Y. 2004) ("[B]ackground paragraphs need not be stricken from an indictment where they are relevant to the crimes charged." (citing *United States v. Langella*, 776 F.2d 1078, 1081 (2d Cir.1985)); *United States v. Watt*, 911 F. Supp. 538, 554 (D.D.C. 1995) (rejecting motion to strike indictment's introduction as surplusage on grounds that introduction "provides the background

necessary for a jury to understand the full scope of defendant's activities, and to place defendant's conduct in the appropriate context").

X.    DEFENDANTS' MOTIONS REGARDING GOVERNMENT SPONSORED CONTACTS WITH REPRESENTED DEFENDANTS

Defendant Juan Carlos Marquez Ayala asserts that he "has reason to believe" that the government deliberately placed him in a situation where government agents attempted to question him in violation of his Sixth Amendment rights.  Doc. No. 327, at 2.  He asks the Court for an order "prohibiting the government from further contact" with him without the approval of his attorney and directing "the United States Attorney's Office to investigate" the incident.  Doc. No. 327, at 1.[19]  In a similar vein, defendant Christian Lemus Cerna argues that "[t]he possibility of manufactured conversations exists" by "government sponsored or planted" informants.  Doc. No. 344, at 2.[20]  He requests that the Court order the government "to immediately disclose any and all contact between government agents or prosecutors and potential informants incarcerated with defendant."  Doc. No. 344, at 1.

The government has a clear understanding of and respect for the defendants' constitutional rights.  Any claim or suggestion by defendants that the government engineered an encounter between them and government agents in order to elicit incriminating statements is completely baseless.  The Court should deny these motions accordingly.

---

[19]  Defendants DeJesus Castillo (Doc. No. 377), Gaitan Benitez (Doc. No. 363), Duran Cerritos (Doc. No. 376), Lemus Cerna (Doc. No. 345), and Alejandro Chavez (Doc. No. 316) have moved to adopt Marquez Ayala's motion (Doc. No. 327).

[20]  Defendants Romero Cruz (Doc. No. 374), Marquez Ayala (Doc. No. 351), DeJesus Castillo (Doc. No. 377), Gaitan Benitez (Doc. No. 363), Duran Cerritos (Doc. No. 376),  and Alejandro Chavez (Doc. No. 316) have moved to adopt Lemus Cerna's motion (Doc. No.  344).

XI.     <u>DEFENDANT'S MOTION FOR VIDEO RECORDING OF WITNESSES</u>

Defendant Paiz Guevara has moved for an order directing that all witnesses who speak foreign languages be subject to video and audio recording during their testimony, and that such recordings be made a part of the official record of the case.  Doc. Nos. 334, 335.[21]  In support, the defendant argues that 18 U.S.C. § 753(b) requires "[e]ach session of the court . . . be recorded verbatim," but that, due to supposed deficiencies inherent in courtroom translation, "the only method of recording . . . the actual words and ideas" of foreign-language speakers "is to have the testimony and interpretation electronically record[ed]."  Doc. No. 335.

The Court should deny the defendant's request.  First, the defendant's proposal violates Local Criminal Rule 53, which explicitly prohibits "[t]he taking of photographs and operation of tape recorders in the courtroom or its environs . . . during the progress of or in connection with judicial proceedings."   But even if the defendant's proposal was permissible under the local rules, the Court should not adopt it.  As a court in this District has previously observed, video preservation of testimony may intimidate witnesses because the witness knows "that his or her face or voice may be forever publicly known and available to anyone in the world."  *United States v. Moussaoui*, 205 F.R.D. 183, 187 (E.D. Va. 2002).  This could cause witnesses for both the government and defense to refuse to come forward or to withhold testimony out of "reasonable fears for their personal safety" or "fear of being ostracized."  *Id.*

In any event, the "solution" identified by the defendant is one without a problem.  Courts in this District (and nationwide) have functioned fairly and effectively through the use of court-certified sworn interpreters, and the defendant proffers not a single example to suggest

---

[21] Defendants Romero Cruz (Doc. No. 374), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), Rosales Villegas (Doc. No. 387), Lopez Torres (Doc. No. 388), and Alejandro Chavez (Doc. No. 389) have moved to adopt this motion.

otherwise.  Indeed, the defendant cites no legal precedent for the installation of video cameras in the courtroom for the proposed purposes.  At least one district court has considered – but flatly rejected – such a request.  *See Five for Entertainment S.A. v. Rodriguez*, No. 11-24142-CIV, 2014 WL 4063045, at *2 (S.D. Fla. Aug. 15, 2014) ("Defendants have cited to no authority indicating that an incomplete record exists when testimony given in a language other than English is translated to English and only the English testimony is recorded.").  For these reasons, the government asks the Court to deny the defendant's motion.

XII.   <u>DEFENDANTS' JURY SELECTION MOTIONS</u>

Defendant Rosales Villegas has moved the Court for additional peremptory challenges. (Doc. No. 375).[22]  Where, as here, defendants have shown no particularized need for additional challenges, the court does not abuse its discretion by denying such motions.  *United States v. Meredith*, 824 F.2d 1418, 1423 (4th Cir. 1987).  Because the defendant's request substantially and unnecessarily deviates, without authority or justification, from the standard practice of the Court, the government opposes the relief sought.  If, however, the Court grants the defendants additional challenges, the government requests that the United States also receive additional challenges sufficient to preserve the 6:10 proportion set forth in Rule 24(b) of the Federal Rules of Criminal Procedure.  *See* Fed. R. Crim P. 24(b) ("The government has 6 peremptory challenges and the defendant or defendants jointly have 10 peremptory challenges when the defendant is charged with a crime punishable by imprisonment of more than one year.").

Defendants Alejandro Chavez (Doc. No. 319) and Duran Cerritos (Doc. Nos. 338, 339) have moved the Court for permission to administer a jury questionnaire to assist in jury

---

[22] Defendants DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), Marquez Ayala (Doc. No. 385), Lopez Torres (Doc. No. 388), and Alejandro Chavez (Doc. No. 389) have moved to adopt this motion.

selection.[23]   As the Court is aware, the use of such questionnaires in this District is typically reserved for capital or high-profile terrorism cases.  In the present matter, by contrast, there is no need to probe potential jurors' views on the death penalty, or to gauge, prior to voir dire, their exposure to media coverage of the case.  Moreover, authorization of a questionnaire introduces the strong likelihood of disputes (and associated delay) over the questionnaire's contents.  *See, e.g.*, *United States v. Bakker*, 925 F.2d 728, 733–34 (4th Cir. 1991) (rejecting defendant's claim that court erred by refusing to submit questionnaire to potential jurors and noting "the questionnaire was concerned less with ensuring an impartial jury and more with ensuring a jury inclined to acquit").  Voir dire is more than sufficient to meet the concerns raised in the defendants' briefs, and there is thus no justification for departing from our court's customary practice.  Should the Court authorize a questionnaire, however, the government requests the opportunity to propose questions for the questionnaire and to be heard regarding any disputes with the defendants regarding the questionnaire's contents.

Defendant Paiz Guevara has moved for attorney-conducted voir dire.  Doc. Nos. 309, 310.[24]   A trial court has broad discretion to control the scope of questions during voir dire, *Rosales–Lopez v. United States*, 451 U.S. 182, 188–89 (1981), and "[i]t is well settled that a trial judge may conduct voir dire without allowing counsel to pose questions directly to the potential jurors," *Bakker*, 925 F.2d at 734.  Within our courthouse, it is customary for the district judge to

---

[23] Defendants Romero Cruz (Doc. No. 374), DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), and Rosales Villegas (Doc. No. 387) have moved to adopt Alejandro Chavez's motion.  Defendants Lemus Cerna (Doc. Nos. 345, 378), Gaitan Benitez (Doc. No. 363), Romero Cruz (Doc. No. 374), Duran Cerritos (Doc. No. 376), DeJesus Castillo (Doc. No. 377), Lopez Torres (Doc. No. 388), and Alejandro Chavez (Doc. No. 389) have moved to adopt Duran Cerritos's motion.

[24] Defendants Lemus Cerna (Doc. Nos. 345, 378), Gaitan Benitez (Doc. No. 363), Duran Cerritos (Doc. No. 376), DeJesus Castillo (Doc. No. 377), Rosales Villegas (Doc. No. 387), and Lopez Torres (Doc. No. 388) have moved to adopt this motion.

direct voir dire after considering questions proposed by the parties.  The government is confident this longstanding practice will best serve the aims of fairness and efficiency rather than a protracted adversarial proceeding.  Should the Court grant this motion, the government requests a period of time for voir dire equal to that granted the combined defendants.

XIII.   MOTIONS FOR WHICH THE GOVERNMENT DEFERS TO THE COURT

The government defers to the Court with respect to Defendant Marquez Ayala's Motion to Authorize Reasonable Professional Visits with Mr. Ayala, Doc. No. 326, and Defendant Romero Cruz's Motion to File Additional Motions, Doc. No. 373.[25]

---

[25] Defendants Lemus Cerna (Doc. Nos. 345, 378), Gaitan Benitez (Doc. No. 363), Duran Cerritos (Doc. No. 376), and DeJesus Castillo (Doc. No. 377) have moved to adopt Marquez Ayala's motion.  Defendants DeJesus Castillo (Doc. No. 377), Lemus Cerna (Doc. No. 378), Marquez Ayala (Doc. No. 384), Rosales Villegas (Doc. No. 387), and Lopez Torres (Doc. No. 388) have moved to adopt Romero Cruz's motion.

CONCLUSION

For the foregoing reasons, the government does not oppose Defendant Marquez Ayala's Motion to Disclose Statements Made by Co-Defendants Which Incriminate Defendant, Doc. No. 347, subject to the testimonial limitations discussed above; defers to the Court with respect to Defendant Marquez Ayala's Motion to Authorize Reasonable Professional Visits, Doc. No. 326, and Defendant Romero Cruz's Motion for Leave to File Additional Motions, Doc. No. 373; and opposes the defendants' remaining motions.

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY


                    /s/
Stephen M. Campbell
Julia K. Martinez
Tobias D. Tobler
Assistant United States Attorneys
Counsel for the Government
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703)299-3700
(703)739-9556 (fax)

## INDEX OF DEFENDANT'S MOTIONS

1.  Defendant Paiz Guevara's Motion for Attorney Conducted Voir Dire
    (Doc. Nos. 309, 310) ................................................................. 42-43

2.  Defendant Alejandro Chavez's Motion for Discovery Under Rule 16 of
    the Federal Rules of Criminal Procedure & The Jencks Act & The Rule of
    Brady v. Maryland (Doc. No. 317)   ............................................... 1-3

3.  Defendant Alejandro Chavez's Notice of Intention to Use Evidence
    (Doc. No. 318) ........................................................................23

4.  Defendant Alejandro Chavez's Motion to Authorize Jury Questionnaire
    (Doc. No. 319) ........................................................................23

5.  Defendant Alejandro Chavez's Motion for Severance
    (Doc. No. 320) ................................................................... 29-36

6.  Defendant Alejandro Chavez's Motion to Direct the Government to Give Notice
    of Its Intention to Rely Upon Other Crimes Evidence (Doc. No. 324) ..................... 20-22

7.  Defendant Ayala Marquez's Motion for Early Disclosure of Jencks Material and
    Brady/Giglio Material (Doc. No. 325) ........................................... 1-2

8.  Defendant Ayala Marquez's Motion to Authorize Reasonable Professional
    Visits (Doc. No. 326) .................................................................43

9.  Defendant Juan Carlos Ayala Marquez's Motion to Prevent Unauthorized Government
    Contact with Mr. Ayala (Doc. No. 327) ...........................................39

10. Defendant Juan Carlos Ayala Marquez's Motion to Reveal Identity of Confidential
    Informants (Doc. No. 328)........................................................ 13-15

11. Defendant Alejandro Chavez's Motion to Strike Improper Alias (Doc. No. 331) ..... 36-39

12. Defendant Alejandro Chavez's Request for Preservation of Electronic Mail
    (Doc. No. 332) .........................................................................6

13. Defendant Alejandro Chavez's Motion for Order Directing the Government
    to Provide Impeachment Evidence as to All Hearsay Declarants (Doc. No. 333)   ............1

14. Defendant Paiz Guevara's Motion for Videorecording of All Foreign Speaking
    Witnesses (Doc. Nos. 334, 335) .................................................. 40-41

15. Defendant Duran Cerritos's Motion for a Bill of Particulars (Doc. No. 336)   .......... 25-28

16. Defendant Duran Cerritos's Motion to Direct the Government to Give Notice

of Its Intention to Rely Upon Other Crimes Evidence (Doc. No. 337) ...................... 20-22

17. Defendant Duran Cerritos's Motion to Use a Jury Questionnaire
    (Doc. Nos. 338, 339) ................................................................................... 41-42

18. Defendant Rosales Villegas's Motion for the Production of Exculpatory
    Evidence (Doc. No. 340) ...................................................................................1

19. Defendant Christian Lemus Cerna's Motion to Immediately Disclose Any and All
    Contact Between Government Agents or Prosecutors and Potential Jailhouse Informants
    Incarcerated with Defendant (Doc. No. 344)....................................................39

20. Defendant Lemus Cerna's Motion for Disclosure of Rule 404 Evidence
    (Doc. No. 346) .......................................................................................... 20-22

21. Defendant Alvin Gaitan Benitez's Motion to Compel Disclosure of Statements
    Made by Co-Defendants which Incriminate Defendant (Doc. No. 347) ................... 16-17

22. Defendant Lemus Cerna's Motion for Index of All Recordings/Phone Calls the
    Government Intends to Use at Trial (Doc. No. 348) ...................................... 7-9

23. Defendant Alvin Gaitain Benitez's Motion for a James Hearing (Doc. No. 349) ...... 19-20

24. Defendant Gaitan Benitez's Motion to Compel the Government to Disclose
    Subpoena Returns (Doc. No. 350) ............................................................... 22-23

25. Defendant Juan Carlos Ayala Marquez's Motion to Direct the Government to Provide
    Statements of Co-Conspirators That It Does Not Intend to Call at Trial That Are
    Potentially Imputable to the Defendant If Admitted in Evidence Under the Hearsay
    Exception of Fed.R.Evid. 801(D)(2)(E)  (Doc. No. 352) .......................................... 17-19

26. Defendant Paiz Guevara's Motion for Immediate Tender of Giglio Materials
    (Doc. Nos. 353, 354) .......................................................................................1

27. Defendant Paiz Guevara's Motion for Immediate Tender of Rule 404(B) Materials
    (Doc. Nos. 355, 356) ..................................................................................... 20-22

28. Defendant Lemus Cerna's Motion for Discovery and Inspection and Exculpatory
    Evidence (Doc. No. 357) ...................................................................................1

29. Defendants Paiz Guevara's Motion for Designation of Recorded Telephone Calls
    That the Government Intends to Seek to Use at Trial (Doc. Nos. 359, 360) ................. 7-9

30. Defendant Paiz Guevara's Brady Discovery Motion for Investigative Materials
    Pertaining to the Park View Locos Salvatruchas Clique of MS-13
    (Doc. Nos. 361, 362) ................................................................................... 9-11

31. Defendant Romero Cruz's Motion to Strike Surplusage (Doc. Nos. 364, 365) ......... 36-39

32. Defendant Paiz Guevara's Motion for Provision or Access to PSI and Plea
Agreements of Co-Defendants or Other Individuals Who Have Entered or
Agreed to Enter Guilty Pleas in Exchange for Testimony (Doc. Nos. 367, 368) ....... 12-13

33. Defendant Romero Cruz's Motion to Dismiss (Doc. No. 369) .................................. 23-25

34. Defendant Romero Cruz's Motion for a Bill of Particulars (Doc. No. 371) .............. 25-28

35. Defendant Romero Cruz's Motion for Relief from Prejudicial Joinder
(Doc. No. 372) ......................................................................................................... 29-36

36. Defendant Romero Cruz's Motion for Leave to File Additional Motions
(Doc. No. 373) ...........................................................................................................43

37. Defendant Rosales Villegas's Motion for Additional Peremptory Challenges
(Doc. Nos. 375) ...................................................................................................... 41-43

38. Defendant Rosales Villegas's Motion to Strike Aliases from Indictment
(Doc. No. 386) ......................................................................................................... 36-39

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 21, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will then send electronic notification of such filing (NEF) to defense counsel on the case.

_____/s/_____<br>
Julia K. Martinez<br>
Assistant United States Attorney<br>
Counsel for the Government<br>
United States Attorney's Office<br>
2100 Jamieson Avenue<br>
Alexandria, VA 22314<br>
(703)299-3700<br>
(703)739-9556 (fax)