IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Case No. 1:14-CR-306 |
| v. ) | |
| ) | The Honorable Gerald Bruce Lee |
| MANUEL ERNESTO PAIZ GUEVARA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT
PAIZ GUEVARA'S MOTION TO SUPPRESS

The United States of America, by and through its attorneys, Dana J. Boente, the United States Attorney, Stephen M. Campbell, Julia K. Martinez, and Tobias D. Tobler, Assistant United States Attorneys, hereby files this response to Defendant Paiz Guevara's Motion to Suppress, Doc. Nos. 415, 416. Contrary to the defendant's claims, the investigative stop and search of the defendant and the resulting seizure fully complied with the Fourth Amendment's safeguards. The Court should therefore deny the defendant's motion to suppress the fruits of this search and seizure.

FACTUAL BACKGROUND

On April 23, 2014, Detective Raymond E. Betts of the Fairfax County Police Department observed the defendant and three other individuals in the vicinity of 6024 Vista Drive, Falls Church, Virginia. Exhibit A, Affidavit of Detective Raymond Betts, dated August 15, 2014, ("Ex. A") at 3. Detective Betts, who was assigned to the department's "Gang Investigations Unit," recognized these four individuals as known members or associates of MS-13, a gang active within Fairfax County. *Id.* at 1, 3; Exhibit B, Fairfax County Police Department Incident

Report ("Ex. B") at 5.[1]  Detective Betts was also aware of recent gang-related crimes that had occurred in the area, including a shooting, stabbings, and other malicious woundings.  Ex. B, at 5.

Detective Betts initiated a consensual encounter with the group, speaking to and conducting a voluntary search of another individual before addressing the defendant.  Ex. A, at 3; Ex. B, at 5.  As the defendant walked towards Detective Betts, the detective noticed that the defendant "appeared to be keeping his arms/hands tight to his waist area in a manner to conceal something, or to keep something from falling out of his clothing."  Ex. B, at 5; *see also* Ex. A, at 3.  The defendant also had a bulge in his left, sweatshirt pocket.  Ex. A, at 3; Ex. B, at 5.  Based upon these observations, and in light of the recent gang violence in the area, Detective Betts believed the defendant was armed with a weapon.  Ex. A, at 3; Ex. B, at 5.

Detective Betts conducted a pat down of the defendant's left, sweatshirt pocket.  Ex. A, at 3; Ex. B, at 5.  As he patted down the area, the detective felt "hard, lumpy objects, and heard the sound of plastic."  Ex. A, at 3; *see also* Ex. B, at 5.  Based on his training and experience as a detective, Detective Betts correctly determined that the item in the defendant's pocket was narcotics.  Ex. A, at 3; Ex. B, at 5.  The detective seized from the defendant a plastic Ziploc bag, within which were seven jeweler's baggies containing marijuana.  Ex. A, at 3; Ex. B, at 5.  Detective Betts did not arrest the defendant at that time.  Ex. A, at 3; Ex. B, at 5.

Following this encounter, the narcotics seized from the defendant field-tested positive for marijuana.  Ex. A, at 3; Ex. B, at 5.  Detective Betts obtained an arrest warrant charging the defendant with Possession with the Intent to Distribute Marijuana within a School Zone, in violation of Va. Code. § 18.2-255.2.  Ex. A, at 3; Ex. B, at 5.  The defendant fled to Kansas City,

---

[1] The government has previously produced these exhibits to the defendants in discovery.

Missouri, where he was subsequently arrested on a separate charge. Ex. A, at 3. Detective Betts traveled to the Jackson County Detention Center in Missouri to extradite the defendant, at which time the detention center provided the detective with the defendant's belongings. *Id.* at 4. Among the belongings was the defendant's cellular telephone, which the defendant possessed at the time of his arrest on the separate charges in Kansas City. *Id.* Based on the April 23 marijuana seizure, Detective Betts obtained a warrant from Fairfax County Circuit Court to search the defendant's cellular telephone on or about August 15, 2014. The defendant now moves to suppress any evidence obtained as a result of the defendant's encounter with law enforcement on April 23, 2014, including all evidence obtained from the defendant's cellular telephone.

## ARGUMENT

On April 23, 2014, Detective Betts initiated a consensual encounter with the defendant and others. Based on his observations of the defendant, his training, experience, and knowledge relating to the defendant and his associates, and his knowledge of recent gang violence in the area, Detective Betts developed a reasonable suspicion that the defendant was armed, in violation of Virginia law. *See* Va. Code Ann. § 18.2-308 (prohibiting possession of a concealed weapon). The detective thereafter conducted a protective frisk of the defendant and seized marijuana found in the defendant's possession. This seizure served as a basis for a search warrant authorizing the search of the defendant's cellular telephone, seized pursuant to a later arrest. The defendant's challenge to Detective Betts's April 2014 search of the defendant and seizure of marijuana is meritless. Because that search and seizure were in all respects lawful under the Fourth Amendment the Court should deny the defendant's motion.

I.     Detective Betts's Investigative Stop and Protective Frisk of the Defendant Was Lawful.

In his motion to suppress, the defendant argues that Detective Betts's "initial Terry stop" of the defendant was invalid because the detective lacked "a valid basis to conclude" the defendant "was engaged in criminal activity."  Doc. No. 416, at 4–6.  The defendant further claims that the detective's pat down of the defendant was unlawful because there was "insufficient indicia to support a conclusion that the defendant might be armed and dangerous." *Id.* at 6–8.  These arguments lack merit.  Detective Betts's contact with the defendant was initially consensual.  The encounter implicated the defendant's Fourth Amendment rights only when Detective Betts conducted a pat-down search of the defendant.  By this time, Detective Betts had developed a reasonable suspicion that the defendant possessed a weapon unlawfully.  The detective's search was therefore justified by law.

As a preliminary matter, Detective Betts's initial, consensual encounter with the defendant did not implicate, let alone violate, the defendant's Fourth Amendment rights.  "[V]oluntary citizen-police encounters do not implicate the Fourth Amendment." *United States v. Black*, 525 F.3d 359, 364 (4th Cir. 2008); *see also Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place").  "Police may question citizens without implicating Fourth Amendment protections. . . .  Indeed, officers remain free to seek cooperation from citizens on the street without being called upon to articulate any level of suspicion or justification for their encounters." *Black*, 525 F.3d at 364 (quoting *United States v. Burton*, 228 F.3d 524, 527 (4th Cir. 2000)).  Detective Betts's initial encounter with the defendant was "consensual," and he neither searched nor seized the defendant until he believed the defendant was armed.  *See* Ex. A, at 3; Ex. B, at 5.  The defendant's argument that Detective Betts

4

unlawfully detained him *prior* to this time, and that the detective did so relying upon no more than a racial profile, is spurious.

After developing a belief that the defendant was armed, and in light of the recent gang violence in the area, Detective Betts conducted a lawful stop and protective frisk of the defendant. "[W]hen a police officer, during a voluntary encounter or otherwise, 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot,' the officer may temporarily seize and detain a citizen." *Black*, 525 F.3d at 364 (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Furthermore, in connection with such a seizure, "if presented with a reasonable belief that the person may be armed and presently dangerous, an officer may conduct a protective frisk." *Id.* This "reasonable suspicion" standard requires "at least a minimal level of objective justification," but it is "less demanding than for probable cause," *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004), and "falls considerably short of satisfying a preponderance of the evidence standard," *United States v. Griffin*, 589 F.3d 148, 152 (4th Cir. 2009) (internal quotation marks omitted); *see also United States v. Swann*, 149 F.3d 271, 274 (4th Cir. 1998) ("Because a frisk . . . is substantially less intrusive than a full-blown search, and because of the paramount interest in officer safety and the extraordinary risks to which law enforcement officials are exposed during investigatory detentions, the standard justifying a frisk is not onerous." (internal citations and alterations omitted)).

In assessing the validity of an investigative stop and search, courts must consider "the totality of the circumstances, which requires [courts] to evaluate the cumulative information available to the detaining officer, rather than engaging in piecemeal refutation of the individual facts upon which the officer relied during the *Terry* stop." *United States v. McBride*, 676 F.3d

385, 392 (4th Cir. 2012) (internal quotation marks omitted). "[J]ust as one corner of a picture might not reveal the picture's subject or nature, each component that contributes to reasonable suspicion might not alone give rise to reasonable suspicion." *United States v. Mason*, 628 F.3d 123, 129 (4th Cir. 2010). Moreover, in assessing "reasonable suspicion" courts must accord "due weight to common sense judgments reached by officers in light of their experience and training." *Perkins*, 363 F.3d at 321; *see also United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008) ("*[P]ost hoc* judicial review of police action should not serve as a platform for 'unrealistic second-guessing' of law enforcement judgment calls." (quoting *United States v. Sharpe*, 470 U.S. 675, 686–87 (1985))). The Fourth Circuit's "overwhelming insistence" on this point recognizes that trained, experienced law enforcement officers may "make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Johnson*, 599 F.3d 339, 343 (4th Cir. 2010).

Applying these principles here, Detective Betts's investigative stop and protective frisk of the defendant was plainly justified by law. First, at the time of his encounter with the defendant, Detective Betts had spent over 14 years as a police officer with the Fairfax County Police Department, including approximately seven years with the department's Gang Investigation Unit. Ex. A, at 1. Detective Betts had also served for approximately five years as an FBI task force officer, assigned to a squad investigating criminal enterprises and violent gangs. *Id.* Under clear Fourth Circuit precedent, Detective Betts's extensive law enforcement experience, including over half a decade investigating gangs specifically, should bear due weight in the Court's assessment of whether "reasonable suspicion" supported the detective's actions. *Perkins*, 363 F.3d at 321; *see also Branch*, 537 F.3d at 336–37 (observing that it is "entirely

6

appropriate for courts to credit the practical experience of officers who observe on a daily basis what transpires on the street" (internal quotation marks omitted)).

Second, Detective Betts knew at the time he approached the defendant that he was a member or associate of MS-13, and that the three individuals with him were also members or associates of MS-13, a violent street gang active within the area. Ex. A, at 3; Ex. B, at 5. The defendant's affiliation with a violent gang contributes to the reasonable suspicion required for an investigative stop and search. *See, e.g.*, *United States v. Holmes*, 376 F.3d 270, 278 (4th Cir. 2004) ("[A] reasonable officer in this situation—knowledgeable of the suspects' criminal history and that the gang to which the suspects belonged was known to be armed—would be aware of the risk that absent a protective search . . . , the suspects might, as the stop proceeded, seek to take advantage of a gap in the officers' vigilance."); *United States v. Guardado*, 699 F.3d 1220, 1223 (10th Cir. 2012) ("[A]lthough gang affiliation is not necessarily determinative by itself, gang connection further supports the reasonableness of an officer's suspicion." (internal quotation marks and alterations omitted)); *United States v. Garcia*, 459 F.3d 1059, 1066 (10th Cir. 2006) (officer's observation that "guns are often part of the gang environment . . . resonates with common sense and ordinary human experience" (internal quotation marks omitted)); *United States v. Feliciano*, 45 F.3d 1070, 1074 (7th Cir. 1995) ("Knowledge of gang association and recent relevant criminal conduct . . . is a permissible component of the articulable suspicion required for a *Terry* stop."); *United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1997) ("[A]n officer can couple knowledge of prior criminal involvement with more concrete factors in reaching a reasonable suspicion of current criminal activity.").

Third, Detective Betts also knew at the time he approached the defendant that multiple, gang-related, violent crimes had recently occurred in the area. Ex. B, at 5. That the stop

7

occurred in a high-crime area is a relevant contextual consideration in a *Terry* analysis. *See, e.g.*, *United States v. Christmas*, 222 F.3d 141, 145 (4th Cir. 2000) (Although defendant's "presence in a high crime area is not alone sufficient to justify a *Terry* stop, '[t]he fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis.'" (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000))). That the recent crimes in the area were gang-related and involved weapons provides particular support for the reasonableness of Detective Betts's suspicion that the defendant, a gang affiliate, might be armed. *See United States v. Perrin*, 45 F.3d 869, 873 (4th Cir. 1995).

Fourth, when Detective Betts attempted to speak with the defendant, he observed a bulge in the defendant's left, sweatshirt pocket. Ex. A, at 3; Ex. B, at 5. Fifth, the defendant also kept his left arm "suspiciously close to his left side" as he walked towards the detective, Ex. A, at 3, "in a manner to conceal something, or to keep something from falling out of his clothing," Ex. B, at 5. These direct observations – in conjunction with Detective Betts's specialized training and experience, his knowledge regarding the defendant's gang association, and his knowledge of recent gang-related violent crime in the area – led Detective Betts reasonably to suspect that the defendant was involved in illegal gang-related activity and was armed with a weapon. *See, e.g.*, *United States v. Williams*, 232 F.3d 892, 2000 WL 1421327, at *3 (4th Cir. 2000) (bulge that officer observed in defendant's pocket supported reasonable articulable suspicion for stop); *United States v. Clapp*, 181 F.3d 92, 1999 WL 359436, at *3 (4th Cir. 1999) ("A suspicious bulge under a suspect's clothing may provide a basis for a protective search."); *United States v. Caruthers*, 458 F.3d 459, 467 (6th Cir. 2006) (noting that suspicious arm movement can indicate an attempt to conceal contraband or to reach for a weapon); *United States v. Bradshaw*, No. 09-CR-10296, 2011 WL 1085122, at *2 (D. Mass. Mar. 22, 2011) (assigning "greatest weight" in

8

analysis of *Terry* stop's validity to officer's observation of defendant's "awkward gait and the unusual positioning of his right arm," which appeared "fastened to his side"); *United States v. Douglas*, No. 4:07CR216, 2007 WL 2080418, at *3 (E.D. Mo. July 16, 2007) (noting as relevant factor in *Terry* analysis that defendant "had his arm pulled tightly to his chest area in a bent manner, which the officers believed to be unusual and suspicious").

In view of the totality of the circumstances, Detective Betts held a reasonable suspicion that the defendant was involved in illegal gang-related activity and was unlawfully armed with a weapon. *See, e.g.*, *United States v. Hernandez-Mendez*, 626 F.3d 203, 208 (4th Cir. 2010) ("Officer Webster relied on his knowledge of Hispanic gangs in the area, his experience responding to gang-related incidents [in the vicinity], and his observations during the surveillance to find reasonable suspicion to stop the group of eight young Hispanic people gathered across from the school that afternoon."); *United States v. Cornelius*, 391 F.3d 965, 967 (8th Cir. 2004) (*Terry* stop justified given: (1) defendant's gang and narcotics affiliation; (2) the high crime area where defendant was found; and (3) defendant's furtive hand motions and evasive behavior). These reasonable suspicions justified the detective's stop and protective frisk of the defendant. *See United States v. Mayo*, 361 F.3d 802, 808 (4th Cir. 2004) (stop and frisk of defendant lawful given officers' reasonable suspicion that defendant was armed in violation of Virginia Code § 18.2-308); *United States v. Pittman*, 102 Fed. Appx. 315, 2004 WL 1444958, at *5 (4th Cir. 2004) (same); *United States v. Morton*, 400 F. Supp. 2d 871, 879 (E.D. Va. 2005) (same). Detective Betts's actions complied with the Fourth Amendment, and provide no basis for suppressing the fruits of his subsequent search of the defendant.

II.     Detective Betts's Seizure from the Defendant was Lawful.

The defendant next challenges Detective Betts's seizure of drugs from the defendant, proclaiming (without citing any support) that the detective could not have identified the drugs by feel alone. In so doing, the defendant accuses Detective Betts of "wild and unreasonable conclusion," "unsupported speculation," "fabrication," and "falsehood." Doc. 416, at 8–9. These baseless allegations lack any merit.

"During a permissible frisk, if a police officer 'feels an object whose contour or mass makes its identity immediately apparent' as contraband, it may be lawfully seized." *Hernandez-Mendez*, 626 F.3d at 213 (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375–76 (1993)). As Detective Betts patted down the defendant's left pocket, he felt "hard, lumpy objects, and heard the sound of plastic." Ex. A, at 3. Detective Betts – a 14-year police veteran with specialized training in gang and drug interdiction, *id.* at 1 – correctly determined at that time that the item in the defendant's pocket was narcotics, *id.* at 3. The detective seized from the defendant a plastic Ziploc bag, within which were seven jeweler's baggies containing marijuana. *Id.*

Substituting his own untrained and self-serving speculation for Detective Betts's first-hand observations, the defendant declares that the detective could not have heard the sound of plastic in the defendant's pocket as he felt the bag of drugs. Doc. No. 416, at 9–10. The defendant further asserts that the marijuana in the defendant's possession could be "neither hard nor lumpy," because it is a "shredded leaf product." *Id.* at 9. These presumptions are baseless. *See, e.g.*, *United States v. Stewart*, 149 F. Supp. 2d 236, 245–46 (E.D. Va. 2001) ("[T]he officer's detection of a distinct odor of marijuana emanating from defendant's jacket, *when combined with the officer's tactile detection of a compact object contained in a plastic bag in the jacket pocket* and the other circumstances surrounding the traffic stop, gave the officer probable

cause to arrest defendant." (emphasis added)); *United States v. Kulkarni*, No. 2:10-cr-00217, 2010 WL 5059704, at *11 (E.D. Cal. Dec. 2, 2010) (upholding plain view seizure of marijuana, crediting officer testimony that "bulky," or "lumpy" substance in "shadowy clump" appeared to be marijuana in compressed "bud" form). The detective's seizure of drugs from the defendant was lawful, and his conduct therefore does not warrant suppressing the fruits of the seizure.

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the Court should deny Defendant Paiz Guevara's Motion to Suppress.

Respectfully Submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

      /s/
Stephen M. Campbell
Julia K. Martinez
Tobias D. Tobler
Assistant United States Attorneys
Counsel for the Government
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, VA 22314
(703) 299-3700
(703) 739-9556 (fax)

CERTIFICATE OF SERVICE

I hereby certify that on the 22nd of September, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to the following counsel of record:

David Preston Baugh
Law Office of David P. Baugh
2025 E Main St.
Suite 108
Richmond, VA 23223
804-743-8111
dpbaugh@dpbaugh.com

William Michael Chick , Jr
Law Offices of W. Michael Chick Jr.
10513 Judicial Dr.
Suite 102
Fairfax, VA 22030
571-276-8279
Fax: 571-748-4399
mike@chicklawfirm.com

/s/
Tobias D. Tobler
Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3700
Fax: (703) 299-3981
tobias.tobler@usdoj.gov