IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,               )
                                        )
          Plaintiff,                    )    CR. NO. 14-cr-306
                                        )
     vs.                                )
                                        )
PEDRO ANTHONY ROMERO CRUZ,              )
JOSE LOPEZ TORRES,                      )
JAIME ROSALES VILLEGAS,                 )
ALVIN GAITAN BENITEZ,                   )
CHRISTIAN LEMUS CERNA,                  )
OMAR DEJESUS CASTILLO,                  )
DOUGLAS DURAN CERRITOS,                 )
MANUEL ERNESTO PAIZ,                    )
JOSE DEL CID,                           )
JESUS ALEJANDRO CHAVEZ,                 )
JUAN CARLOS MARQUEZ AYALA,              )
ARAELY SANTIAGO VALLANUEVA,             )
GENARO SEN GARCIA,                      )
                                        )
          Defendants.                   )
_____)


September 15, 2015

---

BEFORE:     THE HONORABLE GERALD BRUCE LEE
            UNITED STATES DISTRICT JUDGE




OFFICIAL COURT REPORTER: RENECIA A. WILSON, RMR, CRR
                         401 Courthouse Square, 5th FL
                         Alexandria, VA  22314
                         (703)501-1580

APPEARANCES:

FOR THE GOVERNMENT: OFFICE OF THE UNITED STATES ATTORNEY
                    BY: TOBIAS TOBLER, ESQ.
                        STEPHEN CAMPBELL, ESQ.
                        JULIA MARTINEZ, ESQ.

FOR THE DEFENDANTS: CHARLES BURNHAM, ESQ.
                       (For Pedro Romero Cruz)

                    ROBERT JENKINS, ESQ.
                       (For Jose Lopez Torres)

                    GRETCHEN TAYLOR, ESQ.
                       (For Jaime Rosales Villegas)

                    JEFFREY ZIMMERMAN, ESQ.
                       (For Alvin Gaitan Benitez)

                    FRANK SALVATO, ESQ.
                    KEVA MCDONALD, ESQ.
                       (For Christian Lemus Cerna)

                    KATHERINE MARTELL, ESQ.
                    MEREDITH RALLS, ESQ.
                       (For Omar Dejesus Castillo)

                    DWIGHT CRAWLEY, ESQ.
                    JOHN ROCKECHARLIE, ESQ.
                       (For Douglas Duran Cerritos)

                    DAVID BAUGH, ESQ.
                    MICHAEL CHICK, ESQ.
                       (For Manuel Ernesto Paiz Guevara

                    ELITA AMATO, ESQ.
                    JEROME AQUINO, ESQ.
                       (For Jesus Alejandro Chavez)

                    PLEASANT BRODNAX, ESQ.
                    DANIEL LOPEZ, ESQ.
                       (For Juan Carlos Marquez Ayala)


                            ---

```
 1              (Thereupon, the following was heard in open
 2      court at 10:22 a.m.)
 3              THE CLERK:  1:14 criminal 306, United States
 4      versus Pedro Anthony Romero Cruz.
 5              And where is Mr. Burnham?
 6              MR. BURNHAM:  Right here.
 7              THE CLERK:  Mr. Burnham, does your client
 8      waive his appearance?
 9              MR. BURNHAM:  He does.  I have a written
10      waiver I can hand up with the assistance of the court
11      security.
12              THE COURT:  All right.
13              MR. BURNHAM:  I've shared it with the
14      government.
15              THE COURT:  The record should reflect that
16      Mr. Pedro Anthony Romero Cruz is not present and has
17      waived his appearance in writing which will be made a
18      part of the record.
19              Before we go further, let's swear the
20      interpreters, please.
21              Good morning.
22              THE CLERK:  Three interpreter.
23              THE COURT:  Ms. Anna Lefèvre, Ms. Angeles
24      Estrada and Ms. Maria Horvath, will you act as
25      interpreters for us today?
```

1          THE INTERPRETERS:  Yes, Your Honor.

2          THE COURT:  If you would take the oath from

3     the clerk, please.

4               (Interpreters duly sworn.)

5          THE INTERPRETER:  I do for the record, Anna

6     Lurina Lefèvre, federally certified court interpreter.

7          THE INTERPRETER:  Angeles Estrada, also

8     certified as well.

9          THE INTERPRETER:  Maria Horvath, also

10    federally certified.

11         THE CLERK:  And United States also versus

12    Jose Lopez Torres, Jaime Rosales Villegas, Alvin Gaitan

13    Benitez, Christian Lemus Cerna, Omar Dejesus Castillo,

14    Douglas Duran Cerritos, Manuel Ernesto Paiz Guevara.

15    Jose Del Cid, Jesus Alejandro Chavez, Juan Carlos Marquez

16    Ayala, Araely Santiago Villanueva, Genaro Sen Garcia.

17         THE COURT:  All right, counsel enter your

18    appearances, please.  Good morning.

19         MR. TOBLER:  Good morning, Your Honor.

20    Tobias Tobler, Stephen Campbell and Julia Martinez for

21    the United States.

22         MR. CAMPBELL:  Good morning, Your Honor.

23         MS. MARTINEZ:  Good morning, Your Honor.

24         MR. BURNHAM:  Good morning again, Your Honor.

25    Charles Burnham here on behalf of Romero Cruz.

```
 1              THE COURT:  Good morning.
 2              MS. AMATO:  Good morning, Your Honor.  Elita
 3   Amato and Jerome Aquino on behalf of Mr. Chavez who is
 4   present and seated in the fourth seat.
 5              THE COURT:  Where is Mr. Chavez?
 6              MS. AMATO:  Third seat, excuse me.
 7              THE COURT:  Good morning, Mr. Chavez.  Thank
 8   you.
 9              MS. TAYLOR:  Good morning, Your Honor.
10   Gretchen Taylor on behalf of Jaime Rosales Villegas.
11   He's in the back row left in the orange.
12              THE COURT:  Good morning.
13              MR. CRAWLEY:  Good morning, Your Honor.
14   Dwight Crawley and John Rockecharlie on behalf of
15   Mr. Douglas Duran Cerritos.
16              THE COURT:  Good morning.
17              MR. BRODNAX:  Good morning, Your Honor.
18   Pleasant Brodnax and Daniel Lopez on behalf of Mr. Ayala
19   Marquez.
20              THE COURT:  Good morning.
21              Good morning, Mr. Ayala.
22              MR. SALVATO:  Good morning, Your Honor.
23   Frank Salvato and Keva McDonald for Christian Lemus Cerna
24   who is right here.
25              THE COURT:  Good morning.
```

```
1              MR. JENKINS:  Good morning, Your Honor.  May
2   it please the Court.  Robert Jenkins on behalf of
3   Mr. Lopez Torres.
4              THE COURT:  Good morning, Mr. Lopez Torres.
5              Good morning, Mr. Jenkins.
6              MR. BAUGH:  Good morning, Your Honor.  David
7   Baugh.  My co-counsel is Michael Chick on behalf of the
8   defendant, Guevara.
9              THE COURT:  Good morning, Mr. Guevara.
10             Good morning, counsel.
11             Good morning, Mr. Baugh.
12             Is that everyone?
13             MR. BAUGH:  Good morning, Your Honor.
14             MR. ZIMMERMAN:  Good morning, Your Honor.
15  Jeffrey Zimmerman on behalf of Alvin Gaitan Benitez who
16  is seated next to me in the red.
17             THE COURT:  Good morning, Mr. Benitez.
18             Good morning, Mr. Zimmerman.
19             MS. MARTELL:  Good morning, Your Honor
20  Katherine Martell on behalf of Omar Dejesus Castillo to
21  my left and Meredith Ralls is for the defendant as well.
22             THE COURT:  Good morning.
23             Have we covered everyone now?  All right,
24  good morning, counsel, and good morning each individual
25  defendant and the government counsel.
```

1          I have a list of motions that I think still
2    remain pending that has been provided to you or will be
3    provided to you.
4          Does everyone have a copy of it?  All right.
5    Then maybe you all can tell me how you propose to
6    proceed.
7          I'm prepared to take up -- the motion seem to
8    fall in groups of -- have to do with *Brady* material,
9    *Jencks*, and *Giglio*, and I'm happy to hear from any lawyer
10   who has filed such a motion that's on the list.  And if
11   you come to the podium, I'll take them up now.
12          For purposes of the record, if you would
13   identify yourself and your client.
14          And I know that you all have filed motions to
15   adopt various motions, and you should presume that
16   whatever you filed is going to be included in the order
17   and that you are part of the motion.
18          MR. AQUINO:  Good morning, Your Honor.  Jerry
19   Aquino on behalf of Mr. Chavez.
20          THE COURT:  Which motion, Mr. Aquino?
21          MR. AQUINO:  I think it deals with the first
22   one, Judge, which is the discovery and *Brady* motion.  It
23   should be number one on the list, I believe.
24          THE COURT:  All right.
25          MR. AQUINO:  Just very briefly on that,

```
1    you've ruled on most of the issues in your June -- sorry,

2    September 11th order.  It's just a couple issues that I

3    thought would be helpful to take up with the Court.

4              The first deals with the issue about

5    transcripts.  And what I mean by that is my guess is to

6    prove the racketeering acts in this case it's highly

7    likely that the government is going to offer a number of

8    transcripts into evidence.  And my suggestion to the

9    Court is that they be produced and identified 30 days in

10   advance of trial.

11             And the reason I make that suggestion is we

12   may not agree that the trans -- that there -- that their

13   translation is accurate.  And for that reason, we may

14   want to get our own expert involved in that.  And my

15   concern is, is that if it comes too late in the game it's

16   going to cause us some difficulty immobilizing,

17   especially depending upon the volume of transcripts that

18   they use.

19             So my suggestion is that we use a date of 30

20   days prior to trial that the government use, identifies

21   and gives us copies of those transcripts that they intent

22   to offer into evidence.

23             THE COURT:  What transcripts are you

24   referring to, for the calls?

25             MR. AQUINO:  Yes, correct.  In addition to
```

1    that, outstanding is also that was not addressed in the

2    order is the question about expert testimony.  Again, my

3    suggestion is we treat it as a civil case.  And by that,

4    I mean, 60 days prior to trial for the government that

5    they identify who their experts are and what they're

6    going to say and it gives us time to immobilize and

7    produce countervailing experts.  And I would suggest that

8    we have until 30 days prior to trial to identify those

9    experts we may want to use in our case.

10              THE COURT:  What part of the rules are you

11   referring to that requires me to order them to --

12              MR. AQUINO:  No part of the rules require

13   that, Judge.  I'm just suggesting that because I think

14   it's an orderly way to handle the case.  The problem is

15   that if we get too close to trial, it creates a problem

16   for us to prepare for trial as well as them to have to

17   run out and get opposing experts depending upon what the

18   government experts might say.  So, I just think it

19   provides a more orderly way of handling the expert issue.

20              If we get to 30 days prior to trial, it may

21   not give us sufficient time to be able to immobilize and

22   get a countervailing expert, again depending upon what

23   expert they may choose.

24              THE COURT:  Well, I need more specificity.

25   If there's some specific expert that you're concerned

1    about, they already said the government is going to call

2    some gang expert, something like that, either through

3    someone who has been qualified as a former gang member or

4    someone who has studied gangs is going to testify.  We

5    already know that.

6              Is there some forensic experts that you're

7    thinking in your mind that you think ought to be

8    identified?

9              MR. AQUINO:  Again, I don't know.  And the

10   reason I say I don't know is because I don't know if the

11   government intends to expand beyond the gang expert that

12   we're talking about now.  If they're going to add two or

13   three more, it may create a problem for us in being able

14   to obtaining countervailing experts in that 30-day span

15   prior to trial.  So it's just difficult to say.

16             THE COURT:  Well, I appreciate your request.

17   I guess I'm concerned about the absence of any specific

18   area that you're concerned about.  Because you have an

19   idea what the parameter of the case is.  It's a

20   racketeering case involving some murders -- two murders

21   and attempted murder.

22             MR. AQUINO:  Understood.

23             THE COURT:  So if you're talking about

24   forensic pathologist, if you're talking about DNA, things

25   like that, tell me.

```
1              If you don't have any specific ones, it's
2    hard for me to order them to do something to disclose
3    their theory of the case and what their plans are to you
4    well in advance of trial.  Do you have anything?
5              MR. AQUINO:  I don't, and maybe I could
6    suggest that you -- when the government gets up here that
7    you ask if there's anything beyond a gang expert that we
8    should have to worry about, and then we might be in a
9    better position to address that.
10             THE COURT:  Okay.  Thank you.
11             MR. AQUINO:  And then the last issue is I
12   know at some point today, the government wants to further
13   address the Rule 15 deposition issues.  I think just as
14   to parameters for them.  They're already set for
15   October 20th.
16             THE COURT:  They're set for October 20th?
17             MR. AQUINO:  Yes, sir.
18             THE COURT:  All right, thank you.  And
19   they're video depositions; is that right?
20             MR. AQUINO:  Yes, I think that's one of the
21   issues the government wants to discuss.
22             THE COURT:  All right.
23             MS. AMATO:  Good morning, again, Your Honor.
24   Elita Amato also on behalf of Mr. Chavez.
25             There were two motions Your Honor has
```

1    identified on the list that Your Honor wanted to hear on.

2    One is listed as number five which is defendant's motion

3    for an order directing the government to provide

4    impeachment evidence as to all hearsay declarants, and

5    that was a motion document number 333.

6              Your Honor, in that motion I'm specifically

7    requesting the government to provide us with impeachment

8    material that would relate to any out-of-court declarant

9    whose testimony or statements, excuse me, they intend to

10   introduce through an in-court witness.

11             And, the rule --

12             THE COURT:  What do you mean by that?

13             MS. AMATO:  Well, Rule 806 provides a

14   mechanism for us to impeach an out-of-court declarant who

15   is -- whose statement is introduced through another

16   witness.

17             So if the government puts on witness X and

18   witness X discusses a statement that witness Y told him,

19   Rule 806 permits us to impeach that witness Y.  And,

20   therefore, I'm asking the government to provide us

21   impeachment material so that we can be in a position to

22   impeach that out of court --

23             THE COURT:  You have to give me some tangible

24   hypothetical.  I don't understand.

25             MS. AMATO:  Well, again, if witness X

testifies, let's say, that he heard witness Y state
something in regards to Mr. Chavez, for example, and
witness Y does not take the stand, and that's why they
have witness X give a statement that witness Y said, and
it is a hearsay statement, but let's say it's permitted
under Rule 801.  So we're hearing a witness that
witness -- that declarant Y said through witness X.  Rule
806 permits us to impeach the out-of-court declarant
which is Y, and --

        THE COURT:  And so what do you want?  Are you
asking for prior record?  Are you asking --

        MS. AMATO:  Yes.

        THE COURT:  Let me finish.  Let me finish.
Are you asking for prior record?  Are you asking for
prior inconsistent statements that the government's way
aware of?

        MS. AMATO:  Correct.

        THE COURT:  That would be exculpatory,
wouldn't it?

        MS. AMATO:  Right, Your Honor.  We'd be
asking for any kind of juvenile adjudications, any prior
convictions via out of court --

        THE COURT:  You mean all of these would fall
under 609, right?

        MS. AMATO:  Right.

```
1              THE COURT:  Don't they have an obligation to
2    do that anyway, Ms. Amato?
3              MS. AMATO:  Right, they do.  Exactly, they
4    do.  But we just want to make sure that they're on notice
5    that it's not just for the witnesses that they intend to
6    call but for any out-of-court declarants hearsay
7    statement that they elicit.
8              So we'd also like any promises that are
9    provided to an out-of-court declarant, anything like
10   that.  So, yes, you're right, we believe the rules
11   require it.  We just want to make sure they're aware of
12   that and they're on notice of that.
13             THE COURT:  Well, the hypothetical you posit
14   to me is difficult to understand.  But, as I understand
15   the basic rudiments of it, if the government offers a
16   witness who testifies that witness X said something and
17   then the government knows that witness X has given
18   inconsistent statement or has been given some deal or
19   money, they're required to disclose it.  Is that what
20   you're saying?
21             MS. AMATO:  Correct.
22             THE COURT:  All right.  Well, I think that's
23   encompassed in the discovery *Brady/Giglio*, but I
24   appreciate your motion.
25             MS. AMATO:  Thank you.  The other motion that
```

1   I have filed that's also listed on the Court's list is

2   the last one.  It's number 11 which I believe also should

3   be pretty self-explanatory.  It's our request for the

4   preservation of electronic mail.  And that is

5   particularly as to the government's *Jencks* requirements

6   that we would request that they obviously preserve and

7   then turn over any type of communication between any law

8   enforcement and the government, any witnesses to law

9   enforcement, anything that would be considered *Jencks* but

10  that is being communicated as opposed to verbally, that

11  is being communicated through text messages, through

12  e-mails, any kind of electronic communication.

13          THE COURT:  You're saying *Jencks* statements

14  that are in e-mail?

15          MS. AMATO:  Correct.  Because in this day and

16  age, clearly witnesses are communicating with law

17  enforcement or with government counsel through e-mails,

18  through text messages sometimes.

19          I mean, I've had myself, I've had potential

20  defense witnesses who have communicated to me and

21  provided me information about their testimony in an

22  e-mail or even in a text.  And so I want the government

23  just to be put on notice that we are requesting and

24  expecting those types of communications as well since

25  they would also be *Jencks*.

1          THE COURT:  All right.

2          MS. AMATO:  Thank you, Your Honor.

3          THE COURT:  We'll take one more and give the

4    government a chance to respond.

5          Come up, Mr. Lopez.

6          MR. LOPEZ:  Thank you.  Your Honor, good

7    morning.  Daniel Lopez for Mr. Ayala who is present in

8    court.

9          Your Honor, this would be motion number 325,

10   number two on the Court's list that was --

11         THE COURT:  All right.

12         MR. LOPEZ:  -- provided this morning.  And,

13   Your Honor, as you can see in the motion, we're asking

14   for as early disclosures of the *Jencks* material and the

15   *Brady* and *Giglio* materials.  And I do note that Your

16   Honor has ruled on this issue for informant testimony,

17   and this would be non-informant testimony is the way that

18   I'm reading the Court's ruling -- the order that was

19   released -- signed on 11th of September.

20         Your Honor, what we're asking the Court to do

21   is to -- we would like this *Jencks* material now, Your

22   Honor.  I understand the Court's hesitancy in some

23   aspect --

24         THE COURT:  If you would address that, that

25   would help me because the government has said that there

1    are security reasons not to release prematurely months in

2    advance the identities of individuals who may be

3    witnesses because of the risk that there might be some

4    retaliation or intimidation of witnesses which we know

5    has occurred in the past in cases where there have been

6    allegations involving MS-13.  These are allegations.

7    Nonetheless, there have been instances in this court

8    we're very aware that has occurred.

9              So what's your response?  What should I do

10   about all that?

11             MR. LOPEZ:  Yes, Your Honor.  Your Honor,

12   this Court has issued protective orders already in one

13   matter for a witness who may be removed.  There's also

14   matters that I wasn't personally involved in litigation,

15   but I just reading the electronic filing where it appears

16   that there were protective orders also issued.

17             And I would suggest to the Court that myself

18   and my colleagues would, of course, follow the Court's

19   order and not reveal this information to anybody,

20   including our clients, only to the extent permitted in

21   the order, which would guarantee the safety of these

22   witnesses.

23             Your Honor, the entire -- my understanding is

24   most of these folks are incarcerated at this point,

25   either for this case or in hands of ICE or other law

enforcement officials.

THE COURT:  That has not stopped individuals from being accused of engaging in retaliatory activities even from the jail.  I understand what you're saying, but there's a balancing here.  And we're now seven months away from trial.

Why would you need it seven months ahead of trial, Mr. Lopez?

MR. LOPEZ:  Well, Your Honor, obviously in a case of this magnitude with very severe consequences for Mr. Ayala, the more time we have to investigate, the better is it for Mr. Ayala, the better we can effectively represent Mr. Ayala.

However, in striking the balance, Your Honor, I would suggest to the Court then perhaps 90 days before trial would be an adequate point to give the defense the time with this information to investigate what's contained in it, to verify any of these statements, look at impeachment, et cetera.

THE COURT:  So your proposal is 90 days before trial --

MR. LOPEZ:  Yes, sir.

THE COURT:  -- with a protective order concerning the identities of the witnesses.  Is that right?

```
 1          MR. LOPEZ:  Yes, Your Honor, and their
 2   statements.
 3          THE COURT:  All right.
 4          MR. LOPEZ:  And, Your Honor, that would also
 5   apply to the -- to the Brady material, although I
 6   understand and the government does acknowledge it's an
 7   ongoing duty.  But I would suggest that they have their
 8   similar concerns.  And to that extent that they have
 9   security concerns, I would suggest the Court that 90-day
10   would be appropriate.
11          And there are some individuals perhaps their
12   safety concerns aren't quite as heightened and that would
13   be any sort of impeachment evidence of law enforcement
14   officer who are involved in the case and whose names are
15   already out there on some of the documents that are
16   available to counsel.
17          And of course, counsel being mindful of
18   what's happened in the past, Your Honor, we would not --
19   at least I can let Your Honor know that I would not
20   spread those names around in any place where those people
21   would be subject to --
22          THE COURT:  What type of impeachment evidence
23   do you think that the government may have in law
24   enforcement that should be disclosed 90 days in advance
25   of trial, Mr. Lopez?
```

```
 1            MR. LOPEZ:  Your Honor, there are instances
 2   where law enforcement might have been reprimanded by
 3   officials for unethical conduct during the course of
 4   their duties or actual -- and, Your Honor, I'm not trying
 5   to cast --
 6            THE COURT:  This is your -- you're doing your
 7   job.  You're saying that if some officer that has been
 8   reprimanded for lying in court?
 9            MR. LOPEZ:  Yes, sir, any sort of perjury
10   testimony, manufacturing evidence, any questionable
11   procedures on handling evidence, that sort of thing, Your
12   Honor.
13            THE COURT:  All right.  That would be
14   exculpatory, wouldn't it?
15            MR. LOPEZ:  It would be, Your Honor.
16            THE COURT:  All right.
17            MR. LOPEZ:  Your Honor, thank you.  That's
18   all we have.
19            THE COURT:  I'm going to go back to the
20   motions.  I'm going to give the government counsel a
21   chance to respond what's been presented so far so we can
22   stay on the same page.
23            MR. TOBLER:  Thank you, Your Honor.  I'll
24   first take up that last matter that was discussed by
25   defense counsel.
```

1            As Your Honor alluded to at the outset, this

2    question of *Jencks* and *Brady* and *Giglio* arises in several

3    of the pending motions.  So I'll try to respond to all of

4    those at once for purposes of efficiency.  They all seek

5    the same basic relief which is early disclosure of

6    *Jencks*, *Brady* and *Giglio* materials.

7            THE COURT:  They do, but it would be helpful

8    to me if you focus on the things that the defense counsel

9    has brought up now, so that I'm not just making a general

10   ruling and not taking into account, for example -- do you

11   agree Mr. Lopez says that if some law enforcement witness

12   has received a reprimand for lying in court,

13   manufacturing evidence or things like that, that may not

14   be the subject of a criminal conviction -- I was just at

15   a meeting this weekend where a states attorney told the

16   audience that she has something called a do-not-call

17   list.  And these were officers who the prosecutor

18   determined that there would be questions about their

19   credibility.

20            And so, there were certain police officers

21   that they didn't call -- her office had a policy not to

22   call them.  I don't know if you have such a thing.  But

23   I'm curious as to whether, if there is such a thing or

24   issues of fabricating evidence or manufacturing evidence,

25   you would agree that would be exculpatory, don't you?

1            MR. TOBLER:  We certainly would agree with

2    that, Your Honor.

3            THE COURT:  Would there be any reason to

4    withhold that 90 days before the trial --

5            MR. TOBLER:  Your Honor --

6            THE COURT:  -- for police officers or --

7            MR. TOBLER:  Yes, Your Honor, we do believe

8    that that -- it's more critical from our standpoint of

9    our safety concerns to withhold information involving

10   witnesses that are not law enforcement officers.

11           THE COURT:  My question had to do with police

12   officers --

13           MR. TOBLER:  Yes, Your Honor.

14           THE COURT:  -- or agents who have issues with

15   lying in court, manufacturing evidence, or prosecutors

16   who do not call them because of their testimony in cases.

17           MR. TOBLER:  My apologies, Your Honor.  To

18   answer your question, I believe that 90 days before trial

19   for any impeachment materials for law enforcement is a

20   reasonable deadline and that we would be able to meet

21   that deadline.

22           THE COURT:  All right.

23           MR. TOBLER:  If I can turn to the other

24   evidence, Your Honor, the approach to discovery

25   obligations that the government has taken in this case.

1          THE COURT:  I -- I want to focus on what has

2     been argued so that that doesn't get lost.

3          MR. TOBLER:  Sure.

4          THE COURT:  And I've read your opposition,

5     you're 48 page brief.  And it's very helpful and very

6     comprehensive.  But I need to focus on what's being

7     presented specific requests under *Brady* have a different

8     set of review as you know.  So I'm trying to focus on

9     those first.

10          MR. TOBLER:  Absolutely.

11          THE COURT:  So, there was request by

12     Ms. Amato about e-mail and text messages, statements from

13     witnesses.  What about that?

14          MR. TOBLER:  Yes, in response to that motion,

15     as set forth in the government's papers, the government

16     is aware of its requirements under *Jencks*.  It has also

17     taken pains to make sure that all law enforcement

18     investigative agencies that are working on this case are

19     also aware of their obligations under *Jencks*.

20          And as a point of fact as the Court may be

21     aware, the Department of Justice has a policy of

22     preserving all e-mail for up to five years.  So that

23     e-mail is not going anywhere.  And we've met all

24     obligations under *Jencks* so far and will continue to meet

25     those obligations moving forward.

1          THE COURT:  Have you received e-mail from

2    witnesses or text messages from witnesses that have been

3    sent to law enforcement?  Are those preserved?

4          MR. TOBLER:  With the Court's indulgence one

5    second.

6          THE COURT:  Uh-huh.  The example I'm thinking

7    of is suppose some witness who has been in touch with

8    some agent, text message the witness --

9          MR. TOBLER:  Yes, Your Honor.

10          THE COURT:  -- the officer and says, look,

11    you know, I really don't want to come to court.  And by

12    the way, I think what I told you before is not the truth

13    but in a text message.  That would be a statement by the

14    witness, wouldn't it?

15          MR. TOBLER:  I agree, Your Honor, and I

16    understand the question.  The government isn't currently

17    in possession of those sorts -- of that sort of

18    information, that sort of *Jencks* material.  But as I

19    stated before, we certainly made law enforcement aware of

20    its ongoing obligations to preserve those *Jencks*

21    materials and we will do that moving forward.

22          If we come into possession of any such

23    materials like that --

24          THE COURT:  Will you affirmatively tell

25    police officers who interview witnesses that if they

1    receive text messages or e-mails from witnesses to

2    preserve them.  Will you do that?

3              MR. TOBLER:  Yes, sir.

4              THE COURT:  All right.  So you wouldn't have

5    any problem my ordering you to do that, would you?

6              MR. TOBLER:  Excuse me.

7              THE COURT:  You wouldn't have any problem my

8    ordering you to do that, would you?

9              MR. TOBLER:  No, Your Honor.

10             Moving to the motion for an index or

11   transcripts of calls, multiple defendants in this case

12   have requested that the government produce transcripts of

13   the calls at a date certain prior to trial.

14             THE COURT:  I know you have an agenda and I'm

15   trying to follow mine.  And the reason I've asked the

16   lawyers to come up with their specific arguments is I

17   wanted to address them.

18             So the next thing I have on my list has to do

19   with expert testimony from the government.  Mr. Aquino

20   wants 60 days in advance for ID.  He wants to use some

21   civil rules.

22             I'm not really familiar with what experts

23   beyond the gang expert you plan to call.  I guess you

24   call the pathologist and people with blood and things

25   like that given the scene of the two alleged murders and

1    alleged attempted murder.

2          Are there other experts that I'm missing that

3    you might be calling?

4          MR. TOBLER:  No, Your Honor.  We --

5          THE COURT:  I'm not trying to make you reveal

6    your case now.  I'm just curious.

7          MR. TOBLER:  I understand that and I

8    appreciate that, Your Honor.  And I think it's reasonable

9    to assume at this point that there will be an expert, one

10   expert we anticipate at this time on the gang in general,

11   also, a medical examiner and a forensic expert, along

12   those lines.

13         But, as Your Honor mentioned we're not

14   prepared today, of course, to disclose all of the experts

15   that we will ultimately be calling at trial.

16         But in any event, we do believe that the

17   30 days for expert disclosure as set forth in the

18   proposed discovery order, Exhibit 1 to the memorandum,

19   that we've attached, issued a memorandum that we

20   submitted in response to the defendant's motion is a

21   sufficient period of time for expert disclosures for the

22   defense as well as for the prosecution.

23         THE COURT:  But you're talking about 30 days

24   before trial?

25         MR. TOBLER:  That's correct, Your Honor.

1          THE COURT:  Well, I guess the question I have

2    is given the complexity of the case and the fact that it

3    is a complex case and the number of defendants here, when

4    do you expect them to digest your notice of expert and

5    have time to identify an expert, get ready for trial,

6    jury selection?  Isn't this a case where 30 days might

7    need to be bumped back to 45 or 60?

8          We're talking about experts.  We're not

9    talking about something that's going to surprise the

10   defendants that someone is dead.  It's going to be a fact

11   that a pathologist would say.

12         And if there's -- a gang expert is going to

13   say what the gang expert is going to say.  We already

14   know what they say.  MS-13 is a gang.  We got that part.

15         MR. TOBLER:  Thank you, Your Honor.  We

16   understand and appreciate that it's a complex case,

17   that's why the date, the 30 days in advance of trial was

18   proposed and our proposed discovery order as opposed to

19   what's typical in this court which is a period of ten

20   days.

21         We do believe that the government will need

22   30 days to properly examine the materials as you say, as

23   they come over from the defendants.  And that's also a

24   period of time that's appropriate for the defendants when

25   they're reviewing expert disclosures from the government.

```
 1              So, in other words, we have already attempted
 2    to account for the fact that this is an especially
 3    complex trial and proposing that 30-day period as opposed
 4    to ten days which is typical in this court, Your Honor.
 5              THE COURT:  All right.  And, as it relates to
 6    the transcript of the calls, I -- as I understand,
 7    Mr. Aquino's concern, he thinks there might be some
 8    dispute about the interpretation of the calls.  And I
 9    guess my question to you would be you've already
10    disclosed the actual tapes in Spanish; is that right?
11              MR. TOBLER:  That's correct, Your Honor.
12              THE COURT:  And these defendants have
13    resources to hire their own interpreter to listen to the
14    calls.
15              MR. TOBLER:  We believe so, Your Honor.
16              THE COURT:  All right.  So --
17              MR. TOBLER:  That being said, Your Honor, I
18    would add that although the government has taken the
19    position as Your Honor is aware in its papers that we are
20    not required to disclose transcripts well in advance of
21    trial.
22              We've reviewed that request.  I believe it
23    came in one instance from the defendant, Paiz Guevara and
24    we do believe that it's reasonable for the government to
25    produce transcripts of recordings that it intends to use
```

```
 1   at trial.  And we believe a period in advance of trial,
 2   perhaps 30 to 60 days as the defendants have requested
 3   would be appropriate.
 4              THE COURT:  All right.  Well, pick 30 days or
 5   60.  Which one do you want?
 6              MR. TOBLER:  Excuse me.
 7              THE COURT:  Thirty or 60?
 8              MR. TOBLER:  Sixty.
 9              THE COURT:  Sixty would be fine.  These are
10   transcripts of the audio recordings that the government
11   has and plans to used in evidence; is that correct?
12              MR. TOBLER:  That's correct, Your Honor, that
13   it plans to use in evidence.
14              THE COURT:  Okay.  All right.  Let me take up
15   the next set.  You see what I'm doing?
16              MR. TOBLER:  I do now, Your Honor.
17              MR. CHICK:  Your Honor, if I may briefly on
18   that order --
19              THE COURT:  I haven't entered any order yet,
20   but come on up.  I'm trying to give you all a chance who
21   wants to be heard, to be heard on these matters.
22              And then the other motions that you have that
23   you want to be heard on, I'm taking them up according to
24   my schedule here, this list that I gave you all.
25              Come to the podium and tell me your name.
```

1    Because they're so many people here, each person has to

2    identify themselves.

3                  MR. Chick:  Yes, sir.  Mike Chick, C-H-I-C-K

4    on behalf of Mr. Paiz Guevara.

5                  I just heard the Court and the government

6    discussing the transcripts.  I just wanted to make

7    sure -- I think I understand but I just want to make sure

8    that we're all on the same page, that those transcripts

9    have been -- are going to be in English as opposed to the

10   Spanish language transcripts.  I know it's a silly

11   question, but I just want to make sure that -- that we're

12   all on the same page about that.

13                 THE COURT:  You're right, Mr. Chick, silly

14   question.

15                 MR. Chick:  Thank you, Your Honor.  I know, I

16   know.

17                 THE COURT:  It is, I mean.

18                 Come on.  Next.

19                 MS. AMATO:  Your Honor, excuse me.  I just

20   wanted to follow up with that.  Elita Amato, Mr. Chavez.

21                 I know that different prosecutor's offices

22   handle these transcripts differently.  And I'd like to

23   know and I'd be asking, actually for the government to

24   provide a transcript where there's a Spanish on one side

25   of the page and the English on the other so that may --

```
1    that's naturally the appropriate way that the transcript
2    should be done since the actual language is being spoken
3    is in Spanish.  And so that way, one can compare it much
4    better with it in Spanish and in English and review it.
5              THE COURT:  I appreciate it, Ms. Amato.  What
6    you're going to get is English transcripts.  And if you
7    want to have them side by side, you just pull up your
8    Spanish transcript, put it side by side.  I'm not going
9    to make them draw some format like that, typically a
10   transcript that is produced just in English.
11             MS. TAYLOR:  Your Honor, if I may ask a
12   question.  Gretchen Taylor --
13             THE COURT:  Yes, Ms. Taylor.
14             MS. TAYLOR:  -- on behalf of Rosales
15   Villegas.
16             Are the parties in the transcript going to be
17   identified?  So, you know, the government claims that my
18   client, for instance, is one of the speakers, and maybe
19   another defendant --
20             THE COURT:  I don't think that they're
21   required to do that.  If they decide to do that, that's
22   great.  Unless the speaker identifies himself in the
23   call, the government's not required to tell you who they
24   think the person speaker is.  So I'm not going to make
25   them do that.
```

If the speaker says, hi, I'm Joe and I'm
talking on the phone, that's one thing.  They're just
going to give you a transcript, period.  You understand?

MS. TAYLOR:  I understand, Your Honor.  I'm
just worried about there are hearsay concerns if it's not
a party to the case, and if they're identified by, you
know, informant X or whatever is fine.  I just want to
make sure that we know the parties to the case if they're
identified so that, you know, if my client says no,
that's not me, I know which ones they're claiming are
him, et cetera.

THE COURT:  That's a matter of proof.  You'll
be able to cross-examine on that.

MS. TAYLOR:  Yes, Your Honor.

MR. SALVATO:  Good morning, Your Honor.
Frank Salvato for Christian Lemus Cerna.  And Keva
McDonald is my co-counsel.

Your Honor, to circle back, I just want to
make clear for the record we do join Mr. Lopez's request
for that 90-day time period with regard to *Jencks* with a
protective order.

I don't know if the Court --

THE COURT:  I have footnotes in my notes that
all individuals would joined each other's motions.  So if
this -- what this is, is that everyone has already done

1    that.

2              MR. SALVATO:  I don't know if the Court

3    finalized its ruling with respect to *Jencks* and *Giglio*

4    and the timeframe.

5              THE COURT:  No, I haven't issued any ruling.

6    I'm going to issue a written order once I finish the

7    hearing.

8              MR. SALVATO:  So, we would join that, Your

9    Honor.  We would certainly abide by any terms of a

10   protective order and certainly not even share that with

11   our client.

12             I think *Jencks* and *Giglio,* 90 days in

13   advance, considering the points made by Mr. Lopez, the

14   complexity of the case, the severity of the consequences

15   and I think all counsel would abide by any protective

16   order that the Court would issue.  So we would ask for --

17             THE COURT:  Have you had a case where you had

18   three months disclosure of *Jencks* material, Mr. Salvato,

19   ever?

20             MR. SALVATO:  I don't believe so, Your Honor,

21   however --

22             THE COURT:  I don't either.

23             MR. SALVATO:  I've never had a case that

24   looked like this scenario either, in 26 years of being in

25   the --

1          THE COURT:  Have you had a death penalty

2     case, Mr. Salvato?

3          MR. SALVATO:  I did, Your Honor.

4          THE COURT:  And did you get the *Jencks*

5     material 90 days in advance of a death penalty case?

6          MR. SALVATO:  It was certainly well in

7     advance of trial.

8          THE COURT:  It wasn't 90 days.  It might have

9     been 30 days, but it wouldn't have been 90 days.

10         MR. SALVATO:  It may have been, but

11    considering the amount of -- the sheer volume of this

12    case in terms of the defendants, 7,000 phone calls that

13    we're still dealing with, and the sheer enormity of the

14    case, and also the fact that the Court can impose a

15    protective order with regard to the *Jencks* material -- I

16    don't believe -- I don't recall whether there was a

17    protective order in that previous case or not.

18         But given all of those factors, I think

19    certainly something in advance of 30 days, if not

20    approaching 90 days would be appropriate, considering the

21    specific facts of this case, Your Honor.

22         THE COURT:  Thank you.

23         MR. SALVATO:  So I would join with regard to

24    that, Your Honor.

25         THE COURT:  What I'm trying to tell you,

1   Mr. Salvato, you've already joined everything that you

2   were given in writing.  So I don't want to have every

3   lawyer to come up and say I join in what Mr. Lopez said

4   or Mr. Aquino said.  It's not helpful to me.

5           MR. SALVATO:  I understand, Your Honor.  And

6   the 60 days -- the only other issue with regard to our

7   client that I believe is pending is some type of index

8   with regard to these phone calls that we have received.

9   That's item number seven or item number six which is

10  document number 348.  And if I could just be heard for

11  about 30 seconds.

12          THE COURT:  Number six, index.  Tell me what

13  you're asking for.

14          MR. SALVATO:  This is what we're asking for,

15  Your Honor.  What we're asking for specifically is an

16  index.  And it can be a rolling index.  It doesn't need

17  to be a final index, but an index that the government has

18  by defendant identifying which individuals the government

19  contends are on call that they intend to introduce.

20          So, we're asking --

21          THE COURT:  You want the government to commit

22  to the identity of the callers in the recordings?

23          MR. SALVATO:  If they know them.  So, if they

24  have an index now of a call between my client and say,

25  Mr. Lopez's client which they know they're going to

introduce at trial and they already intend to introduce
that call, they know it's between these two individuals,
that would be extremely helpful in our process of having
our -- the other calls and, in fact, that call
independently translated.

So, we're asking for an index of the calls
that they intend to introduce at trial identifying, if
they know, the callers that are within that call by
defendant.

And let me tell you why I have that request,
Your Honor.  We've spoken to the translators on the
defense side that are undertaking this task.  And as I
understand it, Your Honor, the defense has completed only
approximately 25 percent of the 7,000 or so phone calls.

There is apparently an effort to bring in
about 3 or 4 new or additional translators in order to
complete this task.  I can tell the Court that a
one-minute phone call takes about one hour for the
translators to finish.

And what the translators have informed us is
that it would be extremely helpful for their job to get
some specificity as to calls that are clearly irrelevant
and other calls which seem to have more meat on the
bones.

THE COURT:  I may be misreading the

1    government's response.  I had the impression that the

2    government gave you a list of calls it deemed to be most

3    pertinent without committing to those calls.  Did you

4    receive that?

5              MR. SALVATO:  Correct, we have received that.

6              THE COURT:  So, are your translators focusing

7    on those calls first?

8              MR. SALVATO:  We're focusing on those calls.

9              THE COURT:  First, first?

10             MR. SALVATO:  But a lot of those calls are --

11   the individuals on the call are not identified.  So it

12   might be unidentified male talking to unidentified male,

13   which makes it particularly difficult if we get a call

14   between two unidentified males to then take every call

15   then back to our clients to say, is this you on the call?

16   Who are they talking about, et cetera.

17             If we have an index, Your Honor, of -- and

18   all we're asking for if the government already has an

19   index by defendant and they've identified the people on

20   those particular calls, that would be extremely helpful

21   in --

22             THE COURT:  How would the government be able

23   to know in advance who was speaking on each of these

24   calls, Mr. Salvato?

25             MR. SALVATO:  Well, I think some of the calls

1    may be between informants and clients.  Some of these

2    calls may be from specific phone numbers that they have

3    identified to a particular defendant.

4            So, there are circumstances where I am sure

5    the -- the government at some point, as we're sitting

6    here at trial, will have to connect the phone calls to a

7    particular defendant.  And I'm sure that process has

8    started, if not been completed.

9            So, all -- all I'm asking for in my index is

10   a rolling index.  It doesn't have to be a final index.

11   It can be a draft index of calls that the government

12   intends to introduce as per each defendant, and if they

13   have it, if they have it, who is on that particular call.

14   So, that's what we're asking for in terms of our index.

15           Then we can take that back to our

16   translators, back to our clients more specifically

17   without taking 7,000 phone calls between unidentified

18   male and unidentified male to my client.  That's simply

19   an unworkable proposition, even given the government's

20   position that they'll get the transcripts to us 60 days

21   in advance.

22           Other than that, Your Honor, those are the

23   two points I wanted to make, the 90 days in advance in

24   terms of *Jencks* and *Giglio* and also an index with respect

25   to the phone calls.

```
 1            THE COURT:  Well, I'm not going to let make
 2   them tell you who they think is the caller.  I don't
 3   think they're required to do that.  And, I think that if
 4   they're wrong about who they think it is, that that would
 5   then be a matter for you to impeach.
 6            And I think -- I have an order here back in
 7   May where the defense has had resources and has had
 8   resources for four months and it's still seven months
 9   before trial.
10            So if you're saying, you can't get it done in
11   11 months, then I guess it won't be done.  But I've given
12   you all the resources you need to do it.  But I'm not
13   going to make them outline for you who they think the
14   speakers are because they're not required to do that.
15   And you have the resources now to order your own
16   transcripts.  And you have your own interpreters, so you
17   can pay for them.
18            Those are trial matters.  If you want to draw
19   up an index and have the ones they give you, the
20   pertinent calls that they think they're going to use,
21   they're not committing to that.  They've given you some
22   outline.  That's all I'm going to give you.
23            MR. SALVATO:  I appreciate it, Your Honor.
24            MR. CRAWLEY:  Good morning, Your Honor.
25            THE COURT:  Good morning.
```

```
 1              MR. CRAWLEY:  Dwight Crawley on behalf of
 2    Mr. Cerritos.
 3              THE COURT:  Which motion are you speaking to,
 4    Mr. Crawley, that's on my list?
 5              MR. CRAWLEY:  I wanted back to Ms. Taylor's
 6    request that the Court order the government to identify
 7    the individuals in the transcripts that they are
 8    preparing to use at trial.
 9              And, I think --
10              THE COURT:  Were you just here a moment ago
11    when I just had that argument about identities?
12              MR. CRAWLEY:  I did.
13              THE COURT:  Okay.  So you've heard me address
14    that twice.  Do you have something new to say about it?
15              MR. CRAWLEY:  I have a question, Your Honor.
16              THE COURT:  All right.
17              MR. CRAWLEY:  It would seem to me that if
18    they're providing us transcripts that they're actually
19    prepared to use at trial, then it would not be cumbersome
20    or a burden to the government to identify who those
21    individuals are.  These are the transcripts that they're
22    telling the Court that they're going to use at trial.
23    So, at trial, they have to identify who the speaker is.
24              So, why would the Court not require them to
25    tell us who that speaker is.
```

1          THE COURT:  I just told you.  Thank you.

2          All right.  The next set of motions anyone

3     want to be heard on that's on my list?

4          MR. BAUGH:  David Baugh, Your Honor, for the

5     defendant, Paiz Guevara, only because no one else jumped

6     up.  We have the --

7          THE COURT:  Which motion are you referring to

8     on the list, Mr. Baugh?

9          MR. BAUGH:  Yes, number three.

10         THE COURT:  All right.

11         MR. BAUGH:  His motion for immediate tender

12    of *Giglio* materials.  I know you've already ruled on when

13    they have to give up the *Giglio*.  However, it goes to two

14    things.

15         One, we would ask for the protective order as

16    well in the 90 days, because most of my training in this

17    goes back to the *Beckford* case wherein we -- we need not

18    only to know what convictions they're getting forbearance

19    from, but we need to find out -- since the Ogden,

20    O-G-D-E-N memo, which I cited came out of the Department

21    of Justice, the extent of the government *Giglio* offer has

22    been turned on its head.  We listed it.

23         Not only --

24         THE COURT:  Excuse me.  Okay, sorry.

25         MR. BAUGH:  Yes, sir.  We put a list in there

1    and I won't run over it again, but I mean things like S

2    Visas which normally is not given up, relocation

3    assistance, also the contra things, member in other

4    gangs, relationship with the victim, relationship with

5    the defendant.  That is the extent of the *Giglio*.

6              And when that information comes to us, we

7    need time to investigate it.  And in this type of case,

8    investigation can be very involved and sometimes you run

9    into obstructions.

10             So, I would state that I would ask for the 90

11   days with protective order as well and that the order

12   reflect when tendering *Giglio* that it include those items

13   listed under the DOJ memo of the sort of benefits the

14   government can give and whether or not they've done it.

15             And additionally, not only do we need to

16   know --

17             THE COURT:  So, you're saying you want to

18   specify that they have ascertained the items in the Ogden

19   memo?

20             MR. BAUGH:  Yes, Your Honor, determine if

21   they did -- if it was done or not.

22             THE COURT:  Uh-huh.

23             MR. BAUGH:  And additionally that they give

24   us not only a list of -- well, in the Ogden memo, they do

25   address this and that is issue of forbearance where if a

1    man could be charged with murder and instead they charged

2    him with littering or something like that --

3                    THE COURT:  That's *Brady* material.  You agree

4    with that, right?

5                    MR. BAUGH:  I would agree that is *Brady*

6    material and I understood for the first time your concern

7    about this balancing and security, particularly since

8    last time I was in front of you in front on one of these

9    matters many years ago, we didn't have the Virginia State

10   Bar LEO 1862 that says that has recognized that trial

11   lawyers need this information not only to present at

12   trial but to investigate it so it can be presented at

13   trial.

14                   And to give us to -- you've said 90 days,

15   actually I'd like as much as humanly possible.  But if we

16   can get it 90 days with a protective order, we can get

17   our investigators or ourselves out and find out, because

18   many of these cases are confidential informant-driven

19   cases.  And the credibility of the confidential informant

20   is a vital issue at these trials.

21                   So, we have --

22                   THE COURT:  Some of the witnesses actually

23   may be people who were present and may have been involved

24   in these things.  You suspect that, Mr. Baugh?

25                   MR. BAUGH:  Yes, sir.

```
1          THE COURT:  Well then, I -- I want to say out
2    loud that I've looked at your list on pages 6, 7 and 8 of
3    your --
4          MR. BAUGH:  That's Mr. Ogden's list.
5          THE COURT:  Yes.  Well, it's your list in
6    your motion that you filed Document 354, and I have it in
7    front of me.
8          And, the government has an obligation to
9    produce all these things.  There's no question about
10   that.  And, I think that they have a specific obligation
11   to disclose it with respect to anyone that is going to
12   testify at the trial that they plan to offer.
13         I guess the concern I have is the one that I
14   addressed earlier and that is these things about S Visas,
15   monetary benefits, you don't get all of that.  So, I'm
16   not sure what more there would be to investigate about
17   how much money the government gave you.
18         Maybe there is more to do, but I'm concerned
19   about the issue of witness security.  And, so if you have
20   some ideas about that, I'll hear them.
21         MR. BAUGH:  Yes, Your Honor.  It may be a
22   two-step process.  And I was listening to your security
23   concerns.  Many of these things can be done with the
24   identification redacted.
25         If -- if -- if there's some particular
```

1   issues, if they can say that witness X received X number
2   of dollars, we can't really investigate that.  But we
3   could do more than not knowing it happened.
4           So, I would say that where necessary, we're
5   going to have to balance, Your Honor, with security and
6   you're going to have to -- I understand the security
7   concerns, and I understand the Court's security concerns
8   and I know that there's a history of that.
9           However, I come back to the fact that I'm
10  representing that man over there, and he's my only
11  concern.  And I'm not going to tell him the names, and I
12  swear to God I won't.
13          THE COURT:  I know.  As an officer of the
14  Court and experienced attorney as you are, I'm confident
15  that you will not.
16          However, I cannot necessarily leave the
17  witness security to the good faith statements of the
18  officer of the court.
19          I know each of the defense counsel here have
20  appeared in this court before and they have
21  representations for integrity and being vigorous fighters
22  on behalf of their client.  That's why most of you are
23  here.
24          MR. BAUGH:  Thank you.
25          THE COURT:  But, the issue is one of

1    protecting witness identity in advance of trial and

2    trying to balance that with the defendant's right to

3    information.

4            Basic information about plea agreements,

5    you're going to get that anyway.  And all of you are

6    very experienced.  I've seen you all cross-examine the

7    snitch and the testifying witness with the plea

8    agreement.  I know exactly what you're going to do.  You

9    know what you're going to do about that.

10           The hickey stuff, when I say hickey, I mean

11   things like mental health, addictions, things like that,

12   may require some more information.  But, I'm struggling

13   with how to do that and not compromise witness security.

14           And I'm inviting you all for suggestion and

15   it sounds like your suggestion is either 90 days or

16   30 days, judge.  And if you have another suggestion, now

17   is your time to tell me.

18           MR. BAUGH:  Your Honor, I will settle for the

19   90 days.  I understand there's a balancing --

20           THE COURT:  I didn't say I would give you

21   90 days.  I said that's your position.  That's your

22   position is 90 days.

23           MR. BAUGH:  I'm sorry.

24           THE COURT:  And the government's position is

25   30 days, and I'm trying to see if they're -- so far

1   nobody has had a solution.  I've been trying to think of

2   one, too.  But I don't have a solution that meets your

3   need.  And I don't think we're going to have that many

4   witnesses with -- and without even knowing how many might

5   have been to mental institutions or drug treatment

6   programs that may have some information that bears on

7   their truth telling.

8           Other than that, I don't really -- the rest

9   of the stuff, plea agreement and how much money they

10  paid, they're going to give you that anyway and you know

11  what to do with that.

12          MR. BAUGH:  Your Honor, some of the things

13  I've seen for some of these young people, they have

14  juvenile problems.  They have school problems, school

15  counselor problems.  They're all out there, and they're

16  all indicating impact on credibility.

17          THE COURT:  Well, 609 is limited.  You know,

18  what some kid did in junior high school is not

19  impeachable, right?

20          MR. BAUGH:  No, no.  It may not be

21  impeachable by itself, but it could be the source of

22  investigation -- if we find out that he did something

23  that by itself was not impeachable, we all have the

24  obligation to look under all the rocks and find out the

25  people who were involved in that situation so that we can

```
 1    develop it and do something impeachable.  Something
 2    that -- I mean, if it's impeachable, something that
 3    qualifies under the rules of evidence for impeachment.
 4               It's not just the information.  We have to be
 5    able to follow up on it.
 6               So, I understand the Court's concern for
 7    the -- and, you know, I don't -- I'm not in the Solomonic
 8    position to be able to cut that baby.
 9               THE COURT:  I'm going to make a decision.
10               MR. BAUGH:  I know you are, Your Honor, so
11    I'm going to --
12               THE COURT:  And I've tried to give each
13    counsel a chance to tell me something that would help me
14    about balancing the witness security.
15               And I understand you're in a difficult place
16    as well, and that is that you've got a client to
17    represent.  But I also have the impression that the
18    government's turned over a lot of information already.
19    And some of the individuals present -- I have some idea
20    about what's going on here.  It's not out of the clear
21    blue sky.  There's something going on here where
22    information provided to you so far gives you some idea of
23    what's coming.  You have some idea of what's coming.
24               MR. BAUGH:  Your Honor, there's a lot of
25    information.  And the biggest problem is whittling
```

1    through it.  I mean, we're looking for needles in a pile

2    of needles.

3              THE COURT:  That's why I gave you almost

4    11 months for trial.

5              MR. BAUGH:  Yes, you did, Your Honor.

6              THE COURT:  You've already had 4 months to go

7    through those calls.  So telling me that you won't have

8    the calls in 11 months, I'm not going to hear any motion

9    to continue.  I've given you as much time as you're going

10   to get in a death penalty case, and this is not a death

11   penalty case any more.

12             MR. BAUGH:  No, it's not.

13             THE COURT:  Don't procrastinate, lawyers.

14   I'm sure you're not because there won't be any

15   continuances.  We're going forward in March.

16             MR. BAUGH:  That's fine.  And also the

17   earlier you give us that information, the faster the

18   trial could go.

19             THE COURT:  I'm not in any hurry about the

20   trial days because I want you to have a chance to present

21   your case.  I understand your point, but unless there's

22   something more, I don't have anything more I can offer

23   you.

24             MR. BAUGH:  I'm just leaning towards as much.

25   By the way, one thing you said 90 days, at least 90 days.

1           THE COURT:  Lawyers with their qualifiers,
2   absolutely.  I agree, at least.
3           Ms. Amato, you don't have to stand up, at
4   least 90 days.
5           You do not have to stand up, Mr. Salvato, at
6   least -- no less than -- I understand completely,
7   including and up to business days.  I got it all.
8           MR. BAUGH:  Thank you.
9           MS. TAYLOR:  Your Honor, Gretchen Taylor for
10  Rosales Villegas, number four on your list.
11          THE COURT:  Yes, let's take that up now.
12          MS. TAYLOR:  It's pretty much a very similar
13  issue that we were just discussing with Mr. Baugh,
14  Document 340, my motion for production of exculpatory
15  information.  I know this is *Brady* information.  I
16  provided a very specific list.
17          And really it's to aid the government as to
18  what things we're specifically looking for that can go to
19  witness's credibility, bias, impeachment, all these
20  things.  I believe it all should be encompassed in *Brady*.
21  I don't have anything to add other than a protective
22  order I think is the best way to allay witness concerns,
23  Your Honor.
24          THE COURT:  All right, thank you.
25          All right.  I believe I've now covered one,

1  two, three, four, five, six, seven, eight.  I've not

2  covered nine, ten -- nine and ten.

3           MR. CHICK:  Good morning again, Your Honor.

4  Mike Chick on behalf of Mr. Paiz Guevara.  I am here on

5  both motions nine and ten.

6           Before I get into that, just to -- on the

7  issue that the Court is going into with respect to

8  alleviating the concerns of security and that sort of

9  thing, I don't know that this -- I don't know that this

10 gives the Court a solution, but I think that it's

11 something that the Court should also consider in

12 determining how much time is -- is appropriate in this

13 case.

14          And that is the -- under the particular -- I

15 know that problems have arisen in the past, but under the

16 particular facts of this case --

17          THE COURT:  What type of problems are you

18 referring to?

19          MR. CHICK:  Problems with witness security

20 and witness safety and that sort of things, that the

21 Court referenced has happened in this court in the past.

22          Under this particular case, with respect to

23 my client, Mr. Paiz Guevara, I think it is important for

24 the Court in making that time determination to consider

25 the fact that, number one, there's -- we know, we do know

1    of certain people who are cooperating with the government
2    already.  We know of multiple people -- at least two
3    people, but I think more people who are cooperating with
4    the government already.
5            And at this point, there's been certainly --
6    and we've known some of them for quite some time.  At
7    this point, there's certainly been no evidence or
8    suggestions of evidence of any -- anything
9    inappropriately done by my client with respect to that
10    information or those witnesses.  I think that's something
11    that the Court should certainly take into account with
12    respect to this case.
13           And, the other thing is, with respect to this
14    case, there's also absolutely no evidence that Mr. Paiz
15    Guevara is any -- is a person within the gang who is --
16    who's authorized to issue what they call a green light or
17    who is authorized to make those calls.
18           There's no evidence that he's been in
19    communication with anybody in the gang.  There's no
20    evidence that he's in fact -- in fact, there is evidence
21    that he is not an initiated member of the gang.
22           THE COURT:  Mr. Paiz Guevara is not the only
23    person in MS-13, and I'm not saying that he is, who is
24    accused of crimes in this case.  And there are other
25    individuals in MS-13 who still reside in our community.

1    We know that.

2            So, the point is do you have some specific

3    suggestion?  I'm listening.

4            MR. CHICK:  Your Honor, I don't have a

5    specific suggestion, but it sounds to me like the

6    Court -- I guess we don't know yet what number the Court

7    is landing on, and we're talking about 90 and all these

8    kinds of things.  I think those are things the Court

9    should also take into consideration in making that

10   determination as to what an appropriate number is.

11           THE COURT:  Please know that I'm trying to be

12   as thoughtful as I possibly can about these matters from

13   both sides weighing and balancing the matters before the

14   Court.  And I've intentionally given the lawyers an

15   extended period of time to prepare for trial in the case

16   on purpose, intentionally expecting that you all will do

17   whatever it is you need to do to be ready.

18           MR. Chick:  Yes, sir.  I can tell that you

19   and we're very, very appreciative of that.  And -- these

20   cases are a lot more difficult to prepare and to

21   investigate and to discuss, to find witnesses that we

22   need to talk to and to go over those things.  I know that

23   there are many other --

24           THE COURT:  Concerning your motion for

25   investigative materials pertaining to Parkview Locos

1    Salvatruchas Clique MS-13, my first question is what
2    specifically are you asking for?  What is it that you
3    want?
4                     MR. CHICK:  Your Honor, I know based on doing
5    gang cases in the past that the government, including
6    agencies that I know are working with the government,
7    including the Fairfax County Police Department and their
8    gang unit that is working with the government, I know
9    that they have things such as field interview cards when
10   they -- when they are in the field and they're doing
11   their investigations on cases, that they've had contact
12   with people who are involved or alleged to be involved in
13   this case, whether they're co-defendants of Mr. Paiz
14   Guevara, whether it's Mr. Paiz Guevara, or whether it's
15   people who are non-charged participants in these alleged
16   events.
17                   And if there is information that the police
18   have with respect to those people within this clique, I
19   believe that we are entitled to it.
20                   THE COURT:  Incriminating information?
21                   MR. CHICK:  Incriminating information.
22   Information that shows that they have different roles and
23   involvement in the gang than my client does.
24                   I believe that the evidence in this case --
25   well, I won't go -- I'm not going to go into that, but --

1    THE COURT:  I want to understand your theory

2  of what you want the government to disclose concerning

3  contacts with law enforcement, with other members of the

4  MS-13 who are either before the Court or not before the

5  Court where there's a conspiracy to commit murder in aid

6  of racketeering charge.

7    So, what is it that you're specifically

8  thinking that they have that you want that you're

9  entitled to?

10    MR. CHICK:  Your Honor, I believe they have

11  information about -- about who the people are involved

12  in -- in the alleged cases here who are higher ranks

13  members and who are lower ranking members, who are more

14  involved, who are not involved, who are initiated, who

15  are not initiated and I believe that that's all

16  information that is useful to us at trial.

17    I also believe --

18    THE COURT:  I don't understand.  I have a

19  specific indictment here with specific charges.  Are you

20  suggesting that there's some unindicted co-conspirators

21  who are higher up who were present who should be

22  disclosed?

23    MR. CHICK:  Your Honor, I think that that is

24  a real possibility.

25    THE COURT:  I'm not trying to throw theories

```
 1    at you.  I'm trying to understand yours.  What is your
 2    theory?
 3             MR. Chick:  Your Honor, that is something
 4    that I believe is very possibly true based on what I've
 5    looked into in the case.
 6             THE COURT:  How would that exculpate Mr. Paiz
 7    Guevara?
 8             MR. CHICK:  Your Honor, one of the other
 9    things that I believe about this case is I believe the
10    facts of the case with respect to -- to prove murder, you
11    have to prove premeditation.  And I believe that there
12    are facts that -- to suggest that my client didn't have
13    that premedication.
14             THE COURT:  You'll have a chance to present
15    that in your examination of the witnesses and at trial.
16    This is a pretrial hearing where you asked me to order
17    the government to give you information about
18    investigations into the PVLS Clique MS-13 as exculpatory.
19    If you can articulate a theory under which it is
20    exculpatory, I'll consider it.  So far you have not.
21             MR. CHICK:  Your Honor, I'm trying my best to
22    articulate it.
23             THE COURT:  I'm not trying to throw stumbling
24    blocks in your mind.  You filed this motion.  You filed a
25    brief.  So what is it?
```

1          MR. CHICK:  Your Honor, I believe the

2     information that shows the comparative levels of

3     involvement of the individuals in this case will show

4     that my client is -- is at best, at best, a low man on

5     the totem pole and that my client didn't even know -- he

6     wasn't told certain information that other people

7     certainly were told and that they knew.

8          And I think that the information I'm seeking

9     helps to support that claim that helps support the

10    information that we already believe we have that will

11    show that.

12         All right.

13         MR. Chick:  So that's why we're asking for

14    it.  And one other thing that I think makes it helpful to

15    us and exculpatory is this is a little bit of a unique

16    case in that I believe that the information they have,

17    the general information they have on the gang itself and

18    on the dangers of the gang and the allure of the gang and

19    people who they believe are typically targeted to be --

20    to join the gang, and all of those things, I believe that

21    they're also useful to us in preparing for trial in this

22    particular case.

23         So --

24         THE COURT:  Well, the defense can hire a gang

25    expert if you want, and the defense can identify

1    witnesses who can say that they resisted alleged attempts
2    to entice into the gang.  I -- let's move to the next
3    motion which is presentence reports and plea agreements.
4              Now, I would be shocked if the government
5    tried to call a witness that they had not disclosed to
6    you the plea agreement and any monies or things they've
7    given them.
8              So, putting that aside for a moment, what --
9    why would you need access to the presentence report of
10   any witness?  And is there a particular witness you're
11   thinking of?
12             MR. CHICK:  Your Honor, this motion was also
13   made under -- under *Brady* and the other relevant cases.
14             In my experience, in cases with co-defendants
15   and in presentence reports, one of the things that is
16   done is there's an offender's version of the facts.  And
17   I believe that the offender's motion of the facts in
18   presentence reports that have been -- that have been done
19   for these particular individuals will show that my
20   client -- will show that my client -- that his level of
21   culpability is not what the government is suggesting that
22   it is.
23             THE COURT:  All right.
24             MR. Chick:  And that's why I'm asking for
25   that.  And quite honestly, I don't have any information

```
 1    about mental health problems or any good faith basis to
 2    say that there are mental health issues that might exist.
 3    But I guess if they did, I would certainly want that.
 4    But I don't have any good faith basis for that.  But I do
 5    have a good faith basis to say that I believe that those
 6    statements from the co-defendants, that they will be
 7    favorable to my client in terms of his level of
 8    culpability.
 9                THE COURT:  All right.  Well, thank you very
10    much, Mr. Chick.
11                MR. CHICK:  Thank you, Your Honor.
12                MR. BURNHAM:  Can I be heard briefly on
13    motion number nine?
14                THE COURT:  Identify yourself for the record,
15    please.
16                MR. BURNHAM:  I'm sorry.  Charles Burnham for
17    defendant Romero Cruz.
18                THE COURT:  Number nine is?
19                MR. BURNHAM:  Is the motion that Your Honor
20    was just discussing with Mr. Chick about investigative
21    materials on PVLS.  I join that motion, but I have two
22    specific points that I think applies specifically to my
23    client.
24                The government's theory, so far as I can
25    discern it, depends on my client not only being a member
```

1   of MS-13 but given the fact that he's been incarcerated

2   at all relevant times occupying a position of some

3   authority.

4           I think the fact that the government is

5   proceeding under such a theory makes two specific

6   categories of information on the Parkviews certainly

7   material and very probably exculpatory or impeaching for

8   Mr. Guevara, my client's perspective.

9           Those two categories are one, information

10  tending to show that Mr. Romero Cruz did not, in fact,

11  occupy any position of authority within MS-13.  That's

12  number one.  And number two, information tending to show

13  that other individuals occupied the positions of

14  authority that would have been necessary to occupy in

15  order to control the activities of the Parkview clique

16  during the relevant time period covered by the

17  indictment.

18          We'd ask the Court to order the government to

19  turn over any materials on the Parkviews from local

20  police, from any -- I think that clearly they're required

21  to conduct *Brady* review that includes the Prince William

22  County, Fairfax Police Department and turn over any

23  information responsive to those two requests.

24          THE COURT:  All right.  So your point is that

25  Mr. Cruz allegedly was in jail at the time all these

1   things took place --

2          MR. BURNHAM:  Yes.

3          THE COURT:  -- and was not a leader or a

4   supervisor in the organization so would not have had any

5   involvement in the conspiracy; is that right?

6          MR. BURNHAM:  Yes.

7          THE COURT:  All right.  Let me hear from the

8   government.

9          MR. BURNHAM:  Thank you, Your Honor.

10         MR. TOBLER:  Thank you, Your Honor.  If I

11  may, I'll begin by responding to the issue of timing with

12  respect to this disclosures of *Giglio* and *Jencks* and

13  *Brady*.

14         THE COURT:  If you would focus on this first.

15  We'll go back to that.

16         MR. TOBLER:  I can, of course.  I'd like to

17  frame this issue about the PVLS materials just by citing

18  a few basic principles of discovery.

19         The government is not required to disclose

20  all evidence -- it doesn't have a duty to disclose any

21  exculpatory evidence that's available within the

22  possession or within its reach.  The government simply

23  doesn't have that responsibility, nor does it --

24         THE COURT:  Say that again.  Repeat what you

25  just said.

1           MR. TOBLER:  The government's not required to

2    divulge every possible shred of evidence that could

3    conceivably benefit the defendant, nor does our duty to

4    disclose exculpatory evidence require us to make

5    available all evidence within the government's possible

6    reach.

7           And, I believe that the defendant's

8    request --

9           THE COURT:  This is evidence that's within

10   the government's possession; is that right?

11          MR. TOBLER:  No, of course, all evidence

12   within the government's possession, the investigating

13   agencies that is exculpatory needs to be disclosed to the

14   defense, Your Honor.

15          THE COURT:  All right.

16          MR. TOBLER:  But I believe that the

17   defendant's request runs afoul of both of these

18   principles.

19          First, the request is potentially staggering

20   in its scope and would require the government to

21   potentially amass a tremendous amount of information.

22          PVLS, Your Honor, is not merely a local

23   clique.  It has a presence throughout the United States

24   and Central America.

25          And as Your Honor is well aware, the Federal

1   Bureau of Investigations which is an investigating agency
2   in this case, and Homeland Security, are not local law
3   enforcement agencies.
4          Nevertheless, the defendant seeks
5   essentially, if you look at their motion, all law
6   enforcement investigative materials in possession of
7   these agencies that relate to the PVLS clique of MS-13.
8   This is far, far beyond what relevant discovery
9   authorities require.
10         And none of the defendants, Your Honor,
11  respectfully have cited any case in which the government
12  has had that sort of duty to go out and collect these
13  vast troves of information on behalf of defendants.
14         And not only that, Your Honor, as we pointed
15  out in our papers, even assuming we could pull all those
16  materials together from all corners, it would implicate
17  grave security concerns as those documents that they
18  request are undoubtedly replete with information about
19  victims --
20         THE COURT:  The question has to be one of
21  relevance in the instance to this indictment as it
22  relates to PVLS.  I understand that.
23         What is your view concerning the issue of
24  whether Mr. Cruz was a leader or organizer of this
25  alleged PVLS clique and evidence that he was not -- that

1  the government has that he was not the boss or that he

2  was not the leader?  You would agree that if you have

3  evidence that he was not the boss or not the leader, you

4  would have to disclose that as exculpatory, wouldn't you?

5          MR. TOBLER:  We would.  If I may, our about

6  opposition is to this requirement that we go out and

7  collect data about PVLS generally.

8          THE COURT:  I understand.  My focus -- my

9  question was as it relates to his leadership, Mr. Cruz's

10  leadership of this alleged clique that's involved in the

11  allegations of the indictment.

12          You agree that if there's evidence you have

13  from any officer or witness that Mr. Cruz was not the

14  boss or the supervisor, it's exculpatory, and you'd have

15  to disclose it, right?

16          MR. TOBLER:  Yes, Your Honor.

17          THE COURT:  Okay.

18          MR. TOBLER:  And just making the point, I

19  believe, Your Honor has already alluded to it yourself,

20  but, whether these exculpatory materials, these quote

21  unquote exculpatory materials relating to parallel

22  investigations from presumably any where in the United

23  States or Central America can be used to differentiate

24  the culpability of one defendant versus the next, there's

25  no authority requiring us to go out and collect that

1   information.

2          And Your Honor, you heard Mr. Baugh himself

3   say that there's a lot of information already in this

4   case and we're winnowing through it.

5          And I would just also add, under the rules of

6   evidence, information about parallel cases would not in

7   the government's estimation be admissible under Rule 401

8   as relevant, nor would it be admissible under Rule 403.

9          So, that I wish to make those points about

10  the breadth of that motion.  And I'm happy to continue to

11  the next motion if you'd like.

12         THE COURT:  Well, I just wanted to say it

13  does not appear that there's a specific request for

14  access to a specific presentence report.

15         However, if there is a government witness who

16  has some issue involving mental health bearing on

17  truthfulness or addictions that bear on truthfulness, do

18  you agree you'd have to disclose that?

19         MR. TOBLER:  We do, Your Honor.

20         THE COURT:  All right.  Tell me -- now turn

21  to what you want to talk about which is when.  Now, I

22  have the government's proposed order which is document

23  number 439-1 that you all filed back in August.  And I

24  think you all make some specific offers in that motion --

25  in that order, but all the defendants rejected it.  And

1    so I understand that.  That order only gave them ten days
2    on *Jencks* and -- ten business days.  And I think that
3    that is really insufficient.  But you have 30 calendar
4    days for others.
5            Tell me what you -- what do you propose --
6    what's the government's prepared to offer?
7            MR. TOBLER:  Yes, Your Honor, we believe that
8    the proposal, proposed discovery order that you alluded
9    to is fair and will give the defendants sufficient time
10   to prepare for trial.
11           As -- as several of the defendants mentioned
12   today, Your Honor entered an order last Friday addressing
13   the issue of -- the defendants sought citing many of the
14   same arguments that you've heard today, the immediate
15   disclosure of the identity of confidential informants.
16   And the government opposed it on the grounds that we
17   would oppose these motions as well, early disclosure,
18   that is.  And that is that we are attempting, as the
19   Court has alluded to, to balance some very serious safety
20   concerns.
21           Our proposal is that 30 days for exculpatory
22   materials, ten days for impeachment materials and *Jencks*
23   is sufficient.  And that tracks not only the --
24           THE COURT:  Thirty business days or 30 days
25   before trial?  I think you've --

1          MR. TOBLER:  Days, Your Honor, calendar days,

2     Your Honor.

3          THE COURT:  Calendar days, okay.

4          MR. TOBLER:  And we believe that not only

5     tracks the order that Your Honor entered last Friday, but

6     it does also track the case of *Beckford* in which there

7     was -- the analogous case, Your Honor, cited by the

8     defendants as well as the government, is a capital case

9     involving multiple defendants.

10         And there the Court gave the parties only

11    three days, required the government to produce

12    impeachment materials and witness statements, including

13    exculpatory information only three days before beginning

14    of trial.

15         So the proposal that the government has made

16    is actually more generous to the defense than what the

17    Court found suitable in that case.

18         I would also mention, Your Honor, in that

19    case, there is a reference -- the judge in *Beckford* case

20    made a reference, in fact, that there might be certain

21    types of exculpatory materials that he referred to as

22    quote unquote "facially exculpatory", including alibi

23    evidence and evidence that someone other than the

24    defendants that were charged with the offense might have

25    committed the charged offense.

1    And even with respect to that information,

2  which the Court allowed may require that -- may need to

3  go out to the defendants earlier to allow them to conduct

4  the type of investigation that Mr. Baugh referred to, the

5  Court gave them 30 days in that case.

6        Now the government, I can represent does

7  not -- is not currently aware of any of that type of

8  facially exculpatory evidence in this case.

9  Nevertheless, we have put forward 30 days as a deadline

10 for exculpatory information.

11       We think that that's fair and we're willing

12 to abide by it, Your Honor.

13       THE COURT:  Are you willing, with respect to

14 law enforcement witnesses on *Giglio,* go earlier than ten

15 days?

16       MR. TOBLER:  Yes, Your Honor.  Again, we

17 would ask for ten days.  But we recognize the arguments

18 that have been made today, and we think that -- we

19 appreciate that the safety concerns with respect to that

20 sort of evidence, assuming there is any, are of a

21 different nature to the United States.

22       THE COURT:  All right.  That's all I have.  I

23 think I've covered now --

24       MR. TOBLER:  Thank you.

25       THE COURT:  -- all eleven motions on the

```
 1   list.
 2               Does everyone who wanted to be heard, has
 3   been heard?
 4               MR. BAUGH:  As counsel in the Beckford
 5   case --
 6               THE COURT:  Come to the podium if you will.
 7   I'm going to take a recess and come back and give you
 8   some further direction, but come up.
 9               MR. BAUGH:  You can take the recess first.
10               THE COURT:  If you have something you want to
11   say -- Mr. Baugh, you have to state your name for the
12   record.
13               MR. BAUGH:  I'm sorry.  David Baugh for the
14   defendant, Paiz Guevara.
15               One of the problems with Beckford which was
16   cited by the United States is that in the Beckford case,
17   the trial judge in that case, when he said impeachment,
18   and he points it out, he's talking about convictions.  He
19   didn't understand that impeachment can be more than a
20   conviction.  And so, we are asking for more.
21               Secondly, I want to point out and I don't
22   mean to tax you.  I think when my co-counsel asked for
23   investigative materials pertaining to Salvatruchas, I
24   know from my experience and maybe in other cases, this
25   Court is too, your local police will walk up on a group
```

1    of young Hispanic men and take pictures and check their

2    tattoos and ask them who they are.  And there are

3    intelligent files in local police on various cliques.

4              If there is an intelligence file that

5    indicates that some of these people are not in that file,

6    we would submit that that's -- that intelligence file

7    should be turned over to us.

8              THE COURT:  I want to make sure I'm clear

9    what you're saying.

10             MR. BAUGH:  Thank you.

11             THE COURT:  If law enforcement have had

12   contacts with members of MS-13 they think are PVLS --

13             MR. BAUGH:  Yes.

14             THE COURT:  -- and going through their index,

15   Mr. Paiz Guevara's name does not appear, they have an

16   obligation to disclose that?  Is that what you're saying?

17             MR. BAUGH:  I believe they are.  If they have

18   intelligence files of my client or any other client is

19   not in their intelligence file as being a probable or

20   plausible member, we should be tendered that as *Brady*.

21             THE COURT:  All right.  I'm going to take

22   about a 15-minute recess and come back and give you

23   further instructions.

24             Thank you very much.

25             MR. BAUGH:  Thank you, Your Honor.

```
 1              (Court recessed at 11:38 a.m. and reconvened
 2    at 12:00 p.m.)
 3              THE COURT:  Counsel, I've now considered all
 4    of the pending non-evidentiary motions that are not
 5    subject of my prior order.  Given the complexity of the
 6    case and the motions, my plan is to issue a written
 7    ruling in due course which will be in the next several
 8    weeks on all the pending motions in writing.
 9              So, to be clear, I'm going to issue a written
10    ruling to all the motions that have been filed.
11              I just want to make an observation.  This is
12    not to be interpreted as a complaint.  It's an
13    observation.
14              We have interpreters for all the lawyers in
15    the case.  And interpreters can certainly be used to
16    interpret orders that you might receive from the court.
17    I would caution you not to order the interpreters to
18    translate in writing and to prepare a written translation
19    of all the orders of the court, typically court orders.
20    It's very, very costly.
21              And, it is better to have the interpreter
22    just sit down with you and your client to go over the
23    orders.  So that's just some guidance for counsel and for
24    the interpreters as well.
25              So, my plan, to be clear, is to issue a
```

1    written ruling on all the pending motions.  And what I'd

2    like to do now is to recess this case, except for

3    Mr. Chavez and counsel for the government.  So you all

4    are free to leave.

5                (Proceeding concluded at 12:01 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

1

2

3          I, Renecia Wilson, an official court

4    reporter for the United State District Court of Virginia,

5    Alexandria Division, do hereby certify that I reported by

6    machine shorthand, in my official capacity, the

7    proceedings had upon the motions in the case of United

8    States of America vs. Pedro Anthony Romero Cruz, et al.

9          I further certify that I was authorized and

10   did report by stenotype the proceedings and evidence in

11   said motions, and that the foregoing pages, numbered 1 to

12   72, inclusive, constitute the official transcript of said

13   proceedings as taken from my shorthand notes.

14          IN WITNESS WHEREOF, I have hereto subscribed

15   my name this  14th day of   December , 2015.

16

17                                    /s/
                              Renecia Wilson, RMR, CRR
18                            Official Court Reporter

19

20

21

22

23

24

25

RENECIA A. SMITH-WILSON, RMR, CRR