IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA,        )
                                 )
                                 )
        v.                       )
                                 )        Case No. 1:14-cr-306-GBL-8
                                 )
MANUEL E. PAIZ GUEVARA,          )
                                 )
        Defendant.               )
                                 )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Manuel E. Paiz Guevara's Motion to Suppress Cellular Records ("Motion to Suppress"). (Doc. 415). The Third Superseding Indictment, in Count Six, charges Defendant Manuel Paiz Guevara with Murder in Aid of Racketeering in violation of Va. Code Ann. §§ 18.2-32 and 18.2-18. (Doc. 287). These offenses relate to an alleged attempt by several MS-13 members, including Defendant, to kill Gerson Adoni Martinez. *See id.*

In preparation for the trial concerning the above charges, Defendant seeks to suppress all acts and evidence obtained directly or indirectly from his encounter with Detective Raymond E. Betts ("Detective Betts") on April 23, 2014. (Doc. 415). More specifically, Defendants seeks to suppress all information contained in his cellular phone—currently in the possession of the Fairfax County Police Department—relating to the search and seizure of narcotics on April 23, 2014. *Id.* Defendant claims that, on that day, his Fourth Amendment rights were violated because Detective Betts illegally searched and seized him. *Id.* Defendant also argues that the

narcotics Detective Betts obtained as a result of the illegal search and seizure are 'fruits of the poisonous tree' and therefore should also be suppressed. *Id.*

The first issue before the Court is whether there was an objective, reasonable suspicion of criminal activity sufficient to justify Detective Betts' seizure and pat down of Defendant. The second issue is whether Detective Betts' plain feel of Defendant's sweatshirt was sufficient to alert Detective Betts that Defendant had narcotics in his pocket, thereby justifying the seizure.

The Court denies Defendant's Motion to Suppress because Detective Betts, upon viewing Defendant's behavior, had an objective and reasonable suspicion that criminal activity was afoot, given his experience with violent gangs in Virginia, his knowledge that Defendant was a member of MS-13, the high-crime area the encounter took place in, the bulge in Defendant's pocket, and the awkward manner that Defendant kept his left arm by his side. Additionally, because Detective Betts conducted a pat down of Defendant only *after* developing a reasonable and articulable suspicion, and the plain feel of the narcotics was reasonable, neither the pat down nor the seizure of narcotics violated Defendant's Fourth Amendment rights. Given the constitutionality of the search and seizure at issue, the narcotics seized should not be suppressed. The Court denies Defendant's Motion to Suppress because the Court finds Defendant's cell phone records were legally obtained pursuant to a search warrant.

## I.   Background

On August 15, 2014, a search warrant was issued for the contents of Defendant's cellular phone, in attempt to gain further evidence on Defendant's possible distribution of marijuana. (Doc. 416 at 4). The search warrant was based on the April 23, 2014 arrest where Detective Betts searched Defendant and seized marijuana from his person. *Id.* Defendant now seeks to suppress the contents of his cell phone recovered as a result of the April 23, 2015 arrest and

subsequent search warrant, contending that Detective Betts' initial stop and frisk of Defendant violated his Fourth Amendment rights. (Doc. 415).

## II. Standard of Review

To implicate Fourth Amendment protections, a "seizure" must be made by a state officer with no reasonable suspicion of criminal activity. *Elkins v. United States*, 364 U.S. 206, 213 (1960). A seizure requires either the use of physical force or, absent the use of such force, a submission to an officer's assertion of authority. *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *see also United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013). This means, an officer may suspect criminal activity and therefore approach and question an individual on the street, and the encounter still remain consensual, not yet invoking the Fourth Amendment. *Watson*, 703 F.3d at 689. (noting that whether an encounter has become a seizure depends on the officer's objective behavior, *not any subjective suspicion of criminal activity*) (emphasis added).

Alternatively, if at any point during the encounter, the individual is no longer free to simply walk away, the encounter is now elevated to detention or seizure, triggering Fourth Amendment protections. *See United States v. Wilson*, 953 F.2d 116 (4th Cir. 1991) (emphasizing that a police encounter is only consensual *as long as the citizen's cooperation with the police is voluntary*). Such a seizure, whether in the form of an investigatory detention (*Terry* stop) or a frisk of the Defendant's outer clothing to check for weapons (pat down), is only lawful if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause. *Terry*, 392 U.S. 1; *Burton*, 228 F.3d at 524.

There is no exact legal formula for determining what is 'reasonable suspicion,' therefore, "[a]rticulating precisely what 'reasonable suspicion' [] mean[s] is not possible." *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (noting that the standard for reasonable suspicion is "not

readily, or even usefully reduced to a neat set of legal rules"). Rather, the determination involves "commonsense" and "nontechnical conceptions" that take into account the "factual and practical considerations of everyday life." *Id.* Thus, a reasonable suspicion requires (1) a determination of the historical facts leading up to the [] search, and (2) a decision on whether the historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion. *Id. at* 690. The facts supporting an officer's search or seizure must be judged against an objective standard of whether facts available to an officer at that moment of seizure or search would warrant man of reasonable caution in belief that action taken was appropriate. *Terry*, 392 U.S. at 22. To make this determination, a court will consider factors such as the area's crime rate, nature of questionable activity observed, time of day, any suspicious behavior of the suspect, and practical experience of officers involved []. *United States v. Edmonds*, 948 F. Supp. 562 (E.D. Va. 1996) *aff'd,* 149 F.3d 1171 (4th Cir. 1998).

　　　In the course of deciding a motion to suppress, the district court may make findings of fact, as well as rulings of law. *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir.2005) (citations omitted). "At a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely*, 6 F.3d 1447, 1452–53 (10th Cir.1993); *see also Columbus–Am. Discovery Group v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir.1995) ("In the usual case, the fact finder is in a better position to make judgments about the reliability of some forms of evidence than a reviewing body acting solely on the basis of a written record of that evidence. Evaluation of the credibility of a live witness is the most obvious example.").

4

### III.    Suppression Hearing

The Court held an evidentiary hearing on this motion on October 15, 2015.  Having reviewed the pleadings, heard argument by both the Defendant and the Government, and observed the witness, the Court renders the following findings of fact and conclusions of law.

Detective Randy Betts, who was with the Fairfax County Gang Investigation Unit, is now a task force member with the FBI.  (Doc. 495, Exhibit A, Affidavit of Detective Raymond Betts).  Detective Betts has investigated gangs and violent crimes in his position as a police officer for sixteen years and as a gang detective for eight years.  *Id.*; *see also* October 15 Suppression Hearing[1].  Detective Betts has had significant training in gang culture, interdiction, and investigation.  October 15 Suppression Hrg.  Additionally, Detective Betts has trained other officers in various locations, both locally and internationally.  *Id.*  He has twice traveled to El Salvador to conduct one-week trainings on interdiction and gang investigation.  *Id.*  Further, Detective Betts has had formal, personal, and field training in narcotics detection, resulting in at least ten instances where his pat downs have led to recovery of drugs or narcotics.  *Id.*

On April 23, 2014, Detective Betts was in the Culmore area, near Vista Drive in Falls Church, Virginia, along with another officer, to investigate the disappearance of an alleged gang member.  (Doc. 416 at 3).  At this point, Detective Betts was familiar with the Culmore area because he was aware of the recent assaults and a shooting occurring in the months prior the April 23, 2014 investigation.  October 15 Suppression Hrg.  Detective Betts was also aware that four separate weapons had been seized in the Culmore area—with three of the weapons seized prior to April 23, 2014.  *Id.*

On that same day, April 23, 2014, Defendant, along with three other men, was also in the

---

[1] All citation referencing the Suppression Hearing conducted on October 15, 2015 are reflected in the transcript from that hearing.

Vista Drive area. (Doc. 416 at 3). Defendant, as well as the three other men that accompanied him, are all Hispanic and all members of the street gang, Mara Salvatrucha 13 ("MS-13"). *Id.* Upon seeing and recognizing Defendant and his companions as members of MS-13, Detective Betts approached the group and began to engage in conversation. October 15 Suppression Hrg. Detective Betts first began to engage in conversation with only one of the group members—Mr. Lemus Cerna. *Id.* Detective Betts recognized Mr. Cerna from having previously arrested him in January 2014. *Id.* Detective Betts then asked Mr. Cerna if he could pat him down; Mr. Cerna consented. Finding nothing, Detective Betts told Mr. Cerna "all right, dude, listen. I have no right to hold you here. I can't tell you to leave either. You can do whatever you want. But, if you want to leave, you can." *Id.* Mr. Cerna then left. *Id.*

Detective Betts then turned his attention to Defendant and Defendant's two remaining associates. *Id.* Looking at Defendant first, Detective Betts stated that he "noticed a bulge in Defendant's left sweatshirt pocket" and observed Defendant "keeping his left arm suspiciously close to his left side." *Id.* Given this, Detective Betts stated that he believed Defendant was armed. *Id.* Moving closer to Defendant, Detective Betts asked Defendant if he could speak with him. *Id.* Obliging, Defendant moved closer to Detective Betts. *Id.* At this point, Detective Betts ordered Defendant to turn around and put his hands behind his back. *Id.* Once Defendant did as instructed, Detective Betts then placed Defendant's hands together, grabbed Defendant's fingers to control him, and immediately began patting down the outside of Defendant's sweatshirt. *Id.*

Proceeding to pat down Defendant's outer clothing, Detective Betts stated that he then felt something he described as "hard, lumpy objects." *Id; see also* (Doc. 416 at 3). Feeling this, along with hearing the sound of crinkling plastic, Detective Betts claims he immediately knew

that the item he felt was narcotics.  October 15 Suppression Hrg.  Detective Betts then seized the item—a large plastic Ziploc bag containing seven jewelers' baggies—from Defendant's sweatshirt pocket.  (Doc. 416 at 3).  Later, a field test confirmed that the items in the plastic bags were marijuana.  October 15 Suppression Hrg.

After seizing the marijuana from Defendant, Detective Betts walked Defendant to the side of a building and took a photograph of his face.  October 15 Suppression Hrg.  Later, a search warrant charging Defendant with Possession with the Intent to Distribute Marijuana within a School Zone was issued for Defendant's arrest.  (Doc. 416 at 2).  However, having relocated to Kansas City, Missouri, Defendant was first arrested in Missouri on separate charges.  *Id.* at 4.  When arrested in Kansas City, the Jackson County Detention Center seized all personal possessions Defendant had on him at that time, including Defendant's cellular phone.  *Id.*  Once aware that Defendant was in custody in Kansas City, Detective Betts and another officer, on May 15, 2014, extradited Defendant to Fairfax County, Virginia.  *Id.*  Defendant's personal possessions, including his cellular phone, were turned over to the officers travelling with Defendant; one of these officers was Detective Betts.  October 15 Suppression Hrg; *see also* (Doc. 416 at 3).

On August 15, 2014, Detective Betts obtained a search warrant for the contents of Defendant's cellular phone.  (Doc. 495, Exhibit A).  The search warrant was based on the April 23, 2014 arrest where Detective Betts initially seized marijuana from Defendant.  *Id.*  Notably, in applying for the search warrant Detective Betts stated that, in his experience, drug dealers frequently utilize their cell phones to send text messages about criminal activity as opposed to talking on the phone. . . ."  *Id.* at 4.  Therefore, Detective Betts reasoned, a search warrant allowing him to search the contents of Defendant's cellular phone would "assist th[e]

investigation by confirming [Defendant's] relationship and participation in the drug distribution business and [the] criminal activities specifically related to [the charge of Possession with Intent to Distribute in a School Zone]." *Id.* The search warrant of Defendants' cellular phone was granted, authorizing Detective Betts to search and retain the contents of the cellular phone. (Doc. 416 at 4); *see also* Exhibit A.

Defendant now argues that the manner in which Detective Betts first secured the marijuana—a nonconsensual pat down—unconstitutionally violated his Fourth Amendment rights. Specifically, Defendant asserts that Detective Betts had no particularized suspicion nor an objective and reasonable basis for suspecting that Defendant was engaged in unlawful activity before seizing and searching him. Therefore, Defendant alleges, the *Terry* stop and search was not justified and was the result of racial profiling. Further, Defendant states that no sound or lumps, indicating that Defendant possessed narcotics, could have resulted from Detective Betts' pat down. This, Defendant maintains, is the result of a "fabrication and falsehood," resulting in a warrantless intrusion of Defendant. Given this, Defendants claim that the marijuana seized and the search warrant for Defendant's cellular phone, which stemmed from its seizure, should be suppressed, as they are the fruits of an unlawful stop and search.

The Government, on the other hand, argues that Detective Betts' initial encounter with Defendant was consensual and therefore did not invoke Defendant's Fourth Amendment protections. The Government further contends, the combination of Detective Betts' training and experience, coupled with Defendants positioning of his left arm and the bulge in his shirt, was sufficient to establish an objective reasonable suspicion that Defendant was unlawfully concealing a weapon, thereby justifying the seizure and pat down. In light of this, the Government reiterates that the stop, frisk, and seizure of the marijuana were lawful, thereby

making the search warrant of Defendant's cellular phone also lawful and therefore not suppressible at trial.

## IV.    Analysis

**A.    Though Defendant's Encounter with Detective Betts was *Not* Consensual, Seizing Defendant was Still Lawful Because Defendant's Seizure was Based on an Objective and Reasonable Suspicion of Criminal Activity.**

Defendant contends that his Fourth Amendment rights were violated in his initial encounter with Detective Betts because the detective had no particularized and objective basis for suspecting Defendant was engaged in criminal activity.  The government, on the other hand, contends that the stop was consensual.  Both are incorrect.

### i.    *Detective Betts' Initial Encounter and Subsequent Pat Down of Defendant Constituted a Seizure of Defendant*

To constitute a Fourth Amendment seizure, an officer's objective conduct must be such that a reasonable person would not feel free to decline the officer's requests or terminate the encounter.  *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013) (citing *United States v. Lattimore,* 87 F.3d 647, 653 (4th Cir.1996)).  Essentially, a state officer must "intru[de] on the personal security" of a detained individual.  *Michigan v. Summers*, 452 U.S. 692, 699 (1981).

Therefore, only when an officer has in some way restrained the liberty of a citizen, usually by physical force or show of authority, may a court then conclude that a seizure has occurred and the encounter is no longer consensual  *Jones*, 678 F.3d at 293; *United States v. Burton*, 228 F.3d 524 (4th Cir. 2000).

Here, Detective Betts stated at the suppression hearing that, after approaching Defendant, he ordered Defendant to turn around, placed Defendant's hands together, grabbed Defendant's fingers "to control him," and immediately began patting down the outside of Defendant's sweatshirt.  *See supra, Part III*.  This encounter, unlike that of Defendant's associate Lemus

Cerna, cannot be interpreted as consensual at all.  Rather, while Detective Betts first asked Mr.
Lemus Cerna if Detective Betts could search him, Detective Betts never sought such approval
before detaining Defendant.  Further, Detective Betts told Mr. Lemus Cerna he could leave—
and he did—while Defendant and his associates remained in front of Detective Betts, apparently
under the impression they could not do the same.  Most indicative however, of the non-
consensual nature of Detective Betts' encounter with Defendant, is Detective Betts almost
immediate physical restraint of Defendant—a clear demonstration of authority. *See Terry,* 392
U.S. at 20 ("Only when the officer, by means of physical force or show of authority, has in
some way restrained the liberty of a citizen may we conclude that a 'seizure' has
occurred.")This is precisely the type of encounter the Supreme Court has held to be non-
consensual because a reasonable person in Defendant's situation would not have felt free to
terminate the encounter.  ; *Jones*, 678 F.3d at 293; *see also Watson*, 703 F.3d at 68.  Given this
intrusion and Defendant's inability to refuse or terminate the encounter, Detective Betts detainer
of Defendant before and during the pat down amounted to a "seizure" under the Fourth
Amendment. *Summers*, 452 U.S. 692.  That Detective Betts engaged Defendant in conversation
does not change this.

Thus, this nonconsensual expression of police authority on Defendant's person, certainly
amount to an intrusion into Defendant's personal security, as explained in *Terry* and *Summers*.
*See Terry,* 392 U.S. at 19 (noting that the officer "'seized' petitioner and subjected him to a
'search' when he took hold of him and patted down the outer surfaces of his clothing"). With this
in mind, the Court addresses next whether that seizure was lawful, both in its inception and
scope.  Put another way, this Court must determine if, prior to the pat down, Detective Betts had
an objective reasonable basis for seizing Defendant with the pat down.

    ii.    *The Seizure Was Lawful Because Detective Betts Had Reasonable Suspicion That Defendant Was Engaged In Criminal Activity*

A detention or seizure, even if brief, without an objective reasonable suspicion, is unlawful and violates the Fourth Amendment. *Reid v. Georgia*, 448 U.S. 438, 440 (1980). The standard for reasonable suspicion entails a *minimal* level of objective justification and thus requires a lower level of suspicion than is required for probable cause. *United States v. Sokolow*, 490 U.S. 1, 2 (1989).

An *articulable* reasonable suspicion means the police officer who executed the search or seizure at issue, must be able to point to *specific* and articulable facts which, taken together with rational inferences from those facts, reasonably warrant intrusion of an individual. *Terry*, 392 U.S. at 88. This means, the officer's suspicion must be based on more than "inarticulate hunches;" "good faith on part of officer is not enough." *Id.* Instead, to justify seizing an individual, an officer must have a particularized and objective justification for suspecting the particular person stopped of criminal activity. *United States v. Black*, 707 F.3d 531 (4th Cir. 2013). This principle applies even when a pat down may be an officer's first demonstration of authority in an otherwise consensual encounter. *See Massenburg*, 654 F.3d at 485-86 (4th Cir. 2011) (noting that reasonable suspicion is required "prior to a frisk, when the officer's initial encounter with the citizen is voluntary").

In *Massenburg*, an officer had a consensual encounter with the defendant, Massenburg. 654 F.3d at 483. The officer, then believing Massenburg to have a weapon, began frisking Massenburg without his consent. *Id.* The Fourth Circuit, noting that Massenburg's Fourth Amendment protections were invoked when the nonconsensual frisk began, stated that the officer was required to have a particularized and objective basis for suspecting Massenburg was engaged in criminal activity, before ever beginning to pat him down. *Id.* at 486. In determining

whether this particularized reasonable suspicion existed, the court considered factors like (1) the officer's "vague report of shots fired" in the area, (2) the defendant being in a high-crime neighborhood, and (3) the officer's limited one year of practical experience. *Id.* at 486-87. Still, these factors, the court determined, were not sufficient to create a reasonable and particular suspicion, *specific to Massenburg. Id.* at 487. In other words, the totality of the circumstances did not objectively provide reasonable justification for patting down Massenburg. Therefore, the court concluded, the pat down was not lawful and the items seized as a result of the pat down should be suppressed.

In this case, Defendant maintains that, simply because he "kept his left arm suspiciously close to his side," there was a "bulge in his left sweatshirt pocket," and Defendant was a known member of a street gang, is insufficient to objectively and reasonably suspect that he carried a weapon. (Doc. 416 at 7). While it is true that this circuit has admittedly held that these factors individually do not give rise to an objective basis for seizing a Defendant, the factors *combined* present a different scenario. *See Burton*, 228 F.3d 524 (noting that the officer was not justified in frisking the defendant on the *sole* rationale that defendant kept his hands in his pockets and refused to answer questions); *United States v. Wilson,* 953 F.2d 116 (4th Cir. 1991) (noting that a bulge in an individual's coat *alone*, did not justify the seizure and frisk of passenger). Instead, reasonable suspicion determinations are made according to the totality of the circumstances and thus, *all relevant factors* must be considered. *Massenburg*, 654 F.3d at 488. This means, when evaluating the officer's conduct, this Court will consider the "*cumulative* information available to the [] officer" . . . because a set of factors—although individually innocent—could, when considered together, produce a reasonable suspicion of criminal activity. *United States v.*

*McBride*, 676 F.3d 385, 392 (4th Cir. 2012) (citing *Sokolow*, 490 U.S. 1, 109 (1989) and *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008)).

Here, there are multiple factors that support a finding that Detective Betts had reasonable articulable suspicion to pat down Defendant.   First, Detective Betts' experience.   When determining whether an officer acted reasonably, due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts *in light of his experience.* *Terry*, 392 U.S. at 27.   Therefore, even though an officer's "mere hunch" is not sufficient to justify why the officer suspected criminal activity, an officer's *practical experience* as a law enforcement officer on a daily basis, is also taken into account.   *United States v. Perkins*, 363 F.3d 317 (4th Cir. 2004).

Detective Betts has extensive practical experience as an officer.   Unlike *Masenburg*, where the officer had limited, one-year experience as an officer, Detective Betts has spent over fourteen years as a police officer with the Fairfax County Police Department.   Within that time, he spent seven years with the department's Gang Investigation Unit.   In addition to this experience and training, Detective Betts also had personal knowledge that, at the time he approached Defendant, Defendant and the men standing with him were all members of MS-13's gang.   More importantly, Detective Betts was familiar with MS-13's presence as a common street gang in Virginia because he spent five years as an FBI task force officer, investigating criminal enterprises and violent gangs.   This included information on MS-13's members as well. This knowledge of Defendant's background, as it relates to MS-13, is a key factor in determining the reasonableness of Detective Betts' actions.   S*ee United States v. Holmes*, 376 F.3d 270, 278 (4th Cir. 2004) (noting that a reasonable officer would have taken into account his personal knowledge of the individual's criminal history and gang affiliation as factors supporting the

necessity of a protective search). Another important factor is the fact that multiple gang-related crimes had recently occurred in the area. Of course, simply being in a high crime area is not sufficient to constitute reasonable suspicion. *United States v. Christmas*, 222 F.3d 141, 145 (4th Cir. 2000). However, this is an additional fact that must be considered when determining if the officer had reasonable suspicion of criminal activity or not. *Id.*, (holding that, although defendant's "presence in a high crime area is not alone sufficient to justify a *Terry* stop, '[t]he fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis.'") (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000))); *see also United States v. Sprinkle*, 106 F.3d 613 (4th Cir. 1997).

These factors—Detective Betts' extensive experience as an officer, his first-hand knowledge of Defendant's specific connection with MS-13, as well as information about MS-13 itself, including that the area had recently fell victim to the gang's violence—all add to the likelihood that Detective Betts' suspicion that Defendant was engaged in criminal activity is both particularized and reasonable. *See United States v. Perrin*, 45 F.3d 869, 873 (4th Cir. 1995) (noting that an officer's awareness of the high crime area and knowledge of the defendant's violent past, along with other factors, "provide[d] a strong[] foundation" for the officer's reasonable suspicions and subsequent *Terry* stop). When these factors are coupled with the critical fact that Detective Betts saw a bulge in Defendant's shirt *and* noticed that Defendant continually kept his arm to his side, it is evident that Detective Betts' suspicions were both particularized and objectively reasonable. *See, e.g., United States v. Williams*, 232 F.3d 892, 2000 WL 1421327, at *3 (4th Cir. 2000) (noting that the officer's observation of a bulge in defendant's pocket, in addition to other factors, supported reasonable articulable suspicion for the stop); *see also United States v. Clapp*, 181 F.3d 92, 1999 WL 359436, at *3 (4th Cir. 1999)

("A suspicious bulge under a suspect's clothing may provide a basis for a protective search."). Together, these factors are sufficient to meet the low standard of reasonable suspicion. Moreover, it is completely plausible that a reasonable police officer, armed with all of the knowledge that Detective Betts possessed at that time would notice a bulge in Defendant's shirt and Defendant's awkward behavior, and become suspicious that Defendant possessed a weapon.

Further, this case is distinguished from others where this circuit did not conclude a reasonable suspicion existed because the information Detective Betts used here, in reaching a reasonable suspicion, is neither vague nor unreliable. *See Massenburg*, 654 F.3d at 486 (explaining that officers responding to a "vague report" of "possible" shots fired and finding the defendant in "the general vicinity of reported gunfire," "d[id] little to create particularized suspicion"). Here, unlike *Massenburg*, Detective Betts' information was all derived from his own experience and tailored to Defendant specifically. *Compare id.* (noting that the officer in question had no physical description of potential suspect) *with* (Doc. 495, Exhibit A, Aff. of Detective Raymond Betts) (listing Detective Bett's familiarity with Defendant's gang and associates). Detective Betts knew Defendant's personal gang affiliation and knew that the men accompanying Defendant were members of the gang as well. Aff. of Detective Raymond Betts at 3. Additionally, Defendant's suspicious behavior- a bulge in Defendant's shirt and the manner Defendant carried his left arm-was all observed by Detective Betts; he did not rely on another officer's account. *See, e.g., Black,* (concluding that officer had a reasonable suspicion that the defendant had a weapon because, in addition to other factors, officer *personally* saw bulge in defendant's pocket) and *United States v. Bumpers*, 705 F.3d 168, 182 (4th Cir.) *cert. denied*, 134 S. Ct. 218 (2013) ("if [officer] had observed a suspicious *bulge* indicative of a concealed weapon, the stop would likely have been justified. . . ."; *compare Massenburg,* 654 F.3d 480,

495 (4th Cir. 2011) (maintaining that a nonconsensual frisk could not be supported by reasonable suspicion given that the seizing officer did not see a bulge in defendants pants *himself*, even though a separate officer did) (emphasis added).

When looking at all factors combined and the totality of the circumstances, it is clear that Detective Betts was justified in suspecting Defendant was engaged in criminal activity.  Using his training, experience, knowledge of Defendant and his gang affiliation, the high-crime area, recent gang-related crime in the area, the bulge in Defendant's sweatshirt, and the manner Defendant carried his left arm; Detective Betts reasonably concluded Defendant may have a concealed weapon, in violation of Virginia law.  Since this suspicion was objectively reasonable, the seizure and pat down that followed did not violate Defendant's Fourth Amendment rights and therefore, Defendant's Motion to Suppress is denied.

   iii.  *Detective Betts' Pat Down Satisfied the Plain-Feel Doctrine*

Finally, Defendant contends that Detective Betts' 'plain feel' conclusions regarding Defendant's Ziploc bag, were wild and unreasonable.  Defendant asserts, without citing any support, that Detective Betts' plain feel of Defendants' Ziploc bag, was a warrantless intrusion.  However, Defendant once again, neglects to address the case law on this subject.

Under the "plain-feel doctrine," an officer may seize nonthreatening contraband discovered during a pat-down search if: 1-the pat-down was justified and 2-the contraband's contour or mass made its identity immediately apparent upon touching it. *United States v. Simmons*, 110 F. App'x 298, 299 (4th Cir. 2004); *see also United States v. Hernandez-Mendez*, 626 F.3d 203, 213 (4th Cir. 2010) ("during a permissible frisk, if a police officer 'feels an object whose contour or mass makes its identity immediately apparent' as contraband, it may be lawfully seized.").

16

Here, Defendant only asserts that it was "impossible" for Detective Betts to immediately know that what he felt was contraband. (Doc. 415). Given the lack of both factual and legal support for this argument, Defendant's argument fails entirely. Detective Betts stated in his Affidavit that given his numerous years of experience, he immediately knew the plastic bag crinkling sound to be indicia of Defendant's possession of narcotics. Upon a later field test, it was discovered the items were in fact marijuana. (Doc. 495, Exhibit A) Moreover, because Defendant has not shown that the pat down or seizure of the marijuana was in violation of the Fourth Amendment, Defendant's Motion to Suppress is **DENIED.**

## V.    Conclusion

The Court denies Defendant Manuel E. Paiz Guevara's Motion to Suppress because the Government has demonstrated that Detective Betts' seizure and search of Defendant on April 23, 2014 was lawful. Under the totality of the circumstances it is evident that the seizure and search was supported by an objective and reasonable suspicion that Defendant was engaged in unlawful activity. Given the legality of Defendant's seizure, no evidence produced from the seizure, directly or indirectly, should be suppressed.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Manuel E. Paiz Guevara's Motion to Suppress Cellular Records (Doc. 415) is **DENIED.**

**IT IS SO ORDERED.**

ENTERED this /8 day of December, 2015.

Alexandria, Virginia

12 / 18 / 2015

_____/s/_____
Gerald Bruce Lee
United States District Judge

17