IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 1:14-CR-306 |
| v. | ) |
| | ) The Honorable Gerald Bruce Lee |
| PEDRO ANTHONY ROMERO CRUZ, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE
ENTERPRISE AND RACKETEERING ACT EVIDENCE

The United States of America, by and through its attorneys, Dana J. Boente, United States Attorney, Stephen M. Campbell, Julia K. Martinez, and Tobias D. Tobler, Assistant United States Attorneys, hereby files this notice of intent to introduce the evidence further described below to prove the existence of MS-13 as a racketeering enterprise and the pattern of racketeering in which members of the enterprise, including the defendants, engaged. Under clearly established law, the government may offer this evidence to prove the elements of the violent racketeering offenses charged in the Third Superseding Indictment ("the Indictment"), including the existence of a racketeering enterprise and the defendants' association with that enterprise.

I. THE PROFFERED EVIDENCE

The Indictment charges each of the defendants with various violent crimes in aid of racketeering, in violation of 18 U.S.C. § 1959 ("VICAR") and related offenses. Specifically, the indictment charges three defendants with conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count One), two defendants with attempted murder in aid of

racketeering, in violation of 18 U.S.C. §§ 1959(a)(5) and 2 (Count Two), and 11 defendants with murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 (Counts Four, Six, and Seven). The remaining counts all incorporate one or more of the VICAR offenses. At trial, the government intends to introduce evidence of racketeering acts committed by MS-13 gang members (the "Proffered Evidence") to prove elements of the charged offenses.[1] These acts include the following:

<u>Violent Offenses</u>

- *Murder – 05/16/2004* (*United States v. Alfaro-Fuentes*, No. 1:04-CR-381 (E.D.Va.)). On or about May 16, 2004, in Fairfax County, Virginia, Osmin Heriberto Alfaro Fuentes and Alirio Reyes murdered a juvenile male and wounded a juvenile female because MS-13 members believed them to be rival gang members or "chavalas."

- *Murder for Hire Conspiracy – 12/2010-1/10/2011 (United States v. Yimmy Anthony Pineda-Penado*, No. 13-375 (D.N.J.)). From in or around December 2011 to January 11, 2011, in New Jersey and Maryland, Yimmy Anthony Pineda-Penado and other MS-13 members conspired to commit a murder for hire of a woman who had been green-lit by MS-13.

- *Assault – 10/3/2013* (Fairfax County Police Department (FCPD) Case No. 2013-2760262).[2] On October 3, 2013, in Falls Church, Virginia, multiple individuals, including Defendants Lopez Torres, Marquez Ayala, Gaitan Benitez, Duran Cerritos, Santiago Villanueva, and Del Cid, assaulted a homeless man near Charles Street in Falls Church, Virginia, because he was interfering with the gang's narcotics activities.

- *Shooting – 12/21/2013* (FCPD Case No. 2013-3550202). On December 21, 2013, in Falls Church, Virginia, multiple individuals, including Defendants Lopez Torres, Marquez Ayala, Gaitan Benitez, Duran Cerritos, Lemus Cerna, Santiago Villanueva, and Paiz Guevara confronted two individuals for disrespecting the gang, and one of the MS-13 members fired a gun into an apartment where one of the victims was located.

<u>Narcotics Offenses</u>

In addition to general testimony from cooperating witnesses and law enforcement regarding MS-13's participation in drug trafficking activities, the government will introduce evidence of the following specific narcotics seizures:

---

[1] This evidence will also demonstrate MS-13's effect on interstate commerce.

[2] The government has produced the police reports cited herein to defense counsel.

- *Seizure of cocaine and marijuana from Defendant Lemus Cerna – 1/10/2014* (FCPD Case Number: 2014-0100185

- *Seizure of marijuana from Defendant Paiz Guevara – 4/24/2014* (FCPD Case No. 2014-1130210)

- *Seizure of heroin from Defendant Duran Cerritos – 4/25/2014* (FCPD Case No. 2014-1160018)

- *Seizure of methamphetamine and marijuana from Defendant Santiago Villanueva – 6/24/2014* (FCPD Case No. 2014-1560168)

Evidence of Sex Trafficking Offenses

- *Sex Trafficking – 2009-2010 (United States v. Yimmy Anthony Pineda-Penado*, 1:12-CR-399 (E.D. Va.)). From in or around the fall of 2009 through in or around the spring of 2010, in Virginia and Maryland, Yimmy Anthony Pineda-Penado and other MS-13 members engaged in sex trafficking of a juvenile female.

- *Evidence of defendants' plan to engage in sex trafficking – September/October 2013*. The government will present evidence that Defendants Romero Cruz and Rosales Villegas planned to transport individuals from New York to Virginia for the purpose of engaging in prostitution in order to make money for the gang.

Evidence of Gang Affiliation

- The government will offer evidence of the defendants' affiliation with MS-13, to include distinctive clothing, symbols, tattoos, graffiti, paraphernalia, and rituals. *See* Indictment ¶ 9.

To prove these racketeering acts, the government intends to call individuals associated with these crimes, including cooperating members of MS-13, as well as law enforcement witnesses.

II. ADMISSIBILITY OF PROFFERED EVIDENCE

To establish a violation of § 1959, the government must prove the following elements: "(1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his

general purpose in so doing was to maintain or increase his position in the enterprise." *United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994).[3]

A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To constitute an "association-in-fact," an enterprise must have three "structural features": "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). *See also United States v. Turkette*, 452 U.S. 576, 583 (1981) (defining an association-in-fact enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct"). Thus, an enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Boyle*, 556 U.S. at 944–45. *See also Fiel*, 35 F.3d at 1003 ("The hallmark concepts that identify RICO enterprises are 'continuity, unity, shared purpose and identifiable structure.'" (quoting *United States v. Griffin*, 660 F.2d 996, 1000 (4th Cir. 1981)).

"Racketeering activity" is defined, in pertinent part, as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance . . . chargeable under State law and punishable by imprisonment

---

[3] The VICAR statute reads, in pertinent part, as follows: "(a) Whoever . . . for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished--(1) for murder, by death or life imprisonment, or a fine under this title, or both; and for kidnapping, by imprisonment for any term of years or for life, or a fine under this title, or both . . . (5) for attempting or conspiring to commit murder or kidnapping, by imprisonment for not more than ten years or a fine under this title, or both." 18 U.S.C. § 1959(a).

for more than one year." 18 U.S.C. § 1961(1).  Racketeering activity is an element distinct from existence of a RICO enterprise, but evidence used to prove each element may "coalesce." *Boyle*, 556 U.S. at 947.

"Where, as here, the existence of a racketeering enterprise is at issue, evidence of uncharged crimes committed by members of that enterprise, including evidence of uncharged crimes committed by the defendants themselves, is admissible to prove an essential element of the RICO crimes charged—the existence of a criminal enterprise in which the defendants participated." *United States v. Mejia*, 545 F.3d 179, 206 (2d Cir. 2008) (internal quotation marks omitted).  *See also United States v. Stokes*, 64 Fed. Appx. 352, 356 (4th Cir. 2003) (evidence that defendants "were engaged in drug distribution, carried firearms, and committed crimes of violence" tended to prove VICAR enterprise and was therefore admissible).  Indeed, as one court has observed, "[i]t is difficult to comprehend how one could prove the existence of an enterprise comprised of 'a group of individuals associated in fact,' and organized solely for the purpose of committing crimes, without presenting evidence of the crimes that detail the structure, common purpose, and continuity of the charged enterprise." *United States v. Salerno*, 108 F.3d 730, 739 (7th Cir. 1997).

Evidence of other crimes may prove the existence of a racketeering enterprise in any of several ways.  The evidence may, for instance, establish an association-in-fact's common purposes and methods—an element of proof for a racketeering enterprise, *Boyle*, 556 U.S. at 946.  For example, in *United States v. Jones*, the court held that evidence related to the slashing of another Bloods gang member and uncharged shootings targeting rival gangs went to proving the VICAR charges against a Bloods gang member, "specifically the expansive elements of 'enterprise' and 'racketeering activity.'" 566 F.3d 355, 362, 365 & n.5 (3d Cir. 2009).  Among

other things, this evidence demonstrated the gang's "expectations that lower-ranking members, such as Jones, carry out the violent acts of retaliation, including murder, against other gangs to ensure one's position within the Bloods, solidify its violent reputation, and protect its drug-distribution territory from rival gangs, among other things." *Id.* at 365 n.5. *See also United States v. Gray*, 137 F.3d 765, 772 (4th Cir. 1998) (in VICAR murder prosecution, jury could infer "shared purpose" of enterprise from testimony that "stash houses were used to distribute drugs").

Evidence of other crimes may also prove the relationships within and/or structure of an association—an additional element of a racketeering enterprise, *see Boyle*, 556 U.S. at 946. For instance, in *United States v. Thai*, the court held that testimony regarding a beating administered by "BTK" gang leadership to members who had violated gang rules was admissible evidence "as to the existence and structure of the BTK enterprise, as to the leadership roles played by [the gang leaders], and as to the discipline imposed by the BTK leaders on the rank-and-file members." 29 F.3d 785, 813 (2d Cir. 1994). *See also Gray*, 137 F.3d at 772 (in VICAR murder prosecution, jury could infer "identifiable structure" of enterprise from evidence regarding drug distribution ring, including evidence of the ring's leader and his lieutenant).

In addition to offering other crimes to prove the existence of an enterprise, the government may proffer such acts as evidence that the enterprise, and members of the enterprise, in fact engaged in racketeering. *See Fiel*, 35 F.3d at 1003 (To establish a VICAR offense, the government must prove, *inter alia*, that the RICO enterprise as issue "was engaged in racketeering activity as defined in RICO."). In *United States v. Mejia*, for example, the court held that MS-13's involvement in drug trafficking was an element of the charged VICAR offenses as it tended to prove the enterprise's engagement in racketeering. 545 F.3d at 206.

"[A]s a result, evidence of narcotics trafficking is not prior act evidence, but rather direct evidence of the charged offense." *Id.* *See also United States v. Finestone*, 816 F.2d 583, 587 (11th Cir. 1987) (evidence of uncharged kidnapping and murder admissible to prove RICO enterprise's engagement in racketeering activity).

Furthermore, evidence of other crimes may also prove the defendants' own association with the racketeering enterprise, and, relatedly, the defendants' general purpose of serving the enterprise by committing the charged VICAR offense. *See Fiel*, 35 F.3d at 1003 (identifying defendant's participation in and purpose of serving enterprise as VICAR elements). For instance, in *United States v. Rolett*, the court admitted evidence that the defendant, who was charged with murder in aid of racketeering, had associated with a chop-shop operation that constituted the underlying racketeering enterprise. 151 F.3d 787, 790–91 (8th Cir. 1998). In so holding, the court observed that the evidence was relevant to proving that the defendant was himself a member of the enterprise, and that he committed the charged murder because the enterprise "gave or promised [him] consideration." *Id.* at 790. *See also Salerno*, 108 F.3d at 739 (evidence that defendant demanded and collected "street taxes" acting on behalf of street crew provided admissible evidence of defendant's "participation in enterprise activities").

Applying this authority here, the Proffered Evidence is plainly admissible to prove the existence of a racketeering enterprise. The RICO enterprise alleged in the Indictment is MS-13. As the Indictment sets forth, the common purposes of this enterprise include preserving, expanding, and protecting the power, territory and reputation of MS-13, promoting and enhancing the activities of the gang's members and associates, and keeping victims and community members in fear of MS-13, all through the use of violence (including murder), threats of violence, and intimidation. Indictment ¶ 11. MS-13's purposes also include providing

7

financial support to members, including those incarcerated in the United States and El Salvador. *Id.* The enterprise's racketeering activity includes murder, attempted murder, sex trafficking, and drug trafficking. *Id.* ¶ 13.

As further alleged in the Indictment, in order to conduct the affairs of the enterprise and achieve its purposes, MS-13 directs violence at not only rival gangs and members of the community, but at the gang's own membership as well. *Id.* ¶ 12. Gang members and associates use violence, threats of violence, and intimidation to discipline and punish fellow members and associates who violate enterprise rules. *Id.*

Indeed, evidence at trial will show that the defendants committed the four violent offenses charged in the Indictment for a variety of these purposes. Defendants engaged in the conspiracy to commit murder and attempted murder charged in Counts One and Two of the Indictment because the intended victim had been "green-lit" for walking away from the gang. Defendants murdered Nelson Omar Quintanilla Trujillo because they believed he had "snitched" on the gang. Defendants murdered Gerson Adoni Martinez Aguilar because he had broken rules of the clique, including stealing money and sleeping with a gang member's girlfriend. And defendants murdered Julio Urrutia because he failed to show sufficient respect to the gang.

The Proffered Evidence is plainly admissible as tending to prove the existence of the MS-13 enterprise and the enterprise's engagement in racketeering evidence. Specifically, evidence of the violent offenses enumerated above will tend to show MS-13's common purpose of promoting the gang through violence. In addition, the evidence will show associations within the enterprise, defendants' participation in the enterprise, and the enterprise's continuity during the timeframe of the charged VICAR offenses. The enumerated offenses are also direct evidence of the enterprise's engagement in racketeering activities.

Evidence of gang members' drug and sex offenses likewise tends to prove several elements of VICAR, including the MS-13 enterprise's common purpose of providing financial support to MS-13 members, continuity of the enterprise during the timeframe of the charged VICAR offenses, and racketeering activity. The evidence also demonstrates defendants' associations with MS-13. For these reasons, the Proffered Evidence is admissible to prove the MS-13 enterprise and its racketeering activities.

Rule 403 of the Federal Rules of Evidence does not bar admission of the Proffered Evidence. Under Rule 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice" refers to "prejudice that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion." *United States v. Mohr*, 318 F.3d 613, 620 (4th Cir. 2003). To exclude evidence on this ground, "the district court must be convinced that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *United States v. Van Metre*, 150 F.3d 339, 351 (4th Cir. 1998) (internal quotation marks omitted).

As set forth above, the Proffered Evidence is essential to proving the existence of a racketeering enterprise, the defendants' participation in the gang, and racketeering acts. The evidence therefore has an unquestionably high degree of probative value.

The possibility that the evidence will unfairly "excite the jury to irrational behavior," *Van Metre*, 150 F.3d at 351, does not "substantially outweigh" this considerable probative value. First, as noted above, "unfair prejudice" refers only to "prejudice that damages an opponent for reasons *other than* its probative value." *Mohr*, 318 F.3d at 620 (emphasis added). *See also*

9

*United States v. Amante*, 418 F.3d 220, 223 (2d Cir. 2005) ("evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence"). Because the Proffered Evidence is direct proof of the defendants' participation in a racketeering enterprise—an element of the charged offenses—the evidence is not "unfairly prejudicial."

Second, at trial, the jurors will receive extensive, detailed evidence regarding three brutal murders and one murder plot perpetrated by the charged defendants. Evidence of these individuals' involvement in assaults, drug trafficking, and sex offenses is no more disturbing than proof of these killings, which poses a reduced risk of unfair prejudice. *See, e.g.*, *United States v. Branch*, 537 F.3d 328, 342 (4th Cir. 2008) (affirming admission of Rule 404(b) evidence over a Rule 403 objection because "[t]he government's considerable evidence of Branch's distribution of cocaine base in September 2004 alleviated the risk that the jury might react irrationally to the evidence of drug possession from 2001"); *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995) ("the balancing test undeniably weighs in favor of admitting the evidence, because the evidence of Boyd's personal use of marijuana and cocaine did not involve conduct any more sensational or disturbing than the crimes with which he was charged").

Third, "additional protection" against possible prejudice "may be provided by . . . a limiting jury instruction . . . explaining the purpose for admitting evidence of prior acts." *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). Such an instruction from the Court would further "dissipate the emotional impact" of the evidence at issue. *Van Metre*, 150 F.3d at 351. *See also United States v. Powers*, 59 F.3d 1460, 1468 (4th Cir. 1995) ("cautionary or limiting instructions generally obviate any such prejudice").

For the foregoing reasons, Rule 403's balancing test weighs in favor of admitting the Proffered Evidence. Indeed, courts in VICAR cases have regularly admitted evidence of serious uncharged crimes over Rule 403 objections, including evidence of murders. *See, e.g.*, *United States v. Henley*, 766 F.3d 893, 915 (8th Cir. 2014) (evidence of uncharged murder relevant to establishing continuity and common purpose of RICO conspiracy and was not unfairly prejudicial); *United States v. Tse*, 135 F.3d 200, 208 (1st Cir. 1998) (probative value of evidence of defendant's other acts, including attempted murders, not substantially outweighed by prejudice); *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (proof of uncharged murder involving defendant admissible to show existence and nature of RICO enterprise, and probative value of evidence not substantially outweighed by potential for unfair prejudice).

## CONCLUSION

For the reasons set forth above, the Proffered Evidence is admissible to prove the elements of the charged VICAR offenses, including the existence of an enterprise engaged in racketeering activity.

Respectfully Submitted,

Dana J. Boente
United States Attorney

      /s/
Stephen M. Campbell
Julia K. Martinez
Tobias D. Tobler
Assistant United States Attorneys
Counsel for the Government
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, VA 22314
(703) 299-3700
(703) 739-9556 (fax)

CERTIFICATE OF SERVICE

    I hereby certify that on the 12th of February, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to counsel of record.

                                                                    /s/
                                          Tobias D. Tobler
                                          Assistant United States Attorney
                                          Justin W. Williams U.S. Attorney's Building
                                          2100 Jamieson Ave.
                                          Alexandria, VA 22314
                                          Tel: (703) 299-3700
                                          Fax: (703) 299-3981
                                          tobias.tobler@usdoj.gov