IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) No. 1:14-CR-306 |
| v. | ) |
| | ) The Honorable Gerald Bruce Lee |
| PEDRO ANTHONY ROMERO CRUZ, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

GOVERNMENT'S NOTICE OF INTENT TO ADMIT EVIDENCE THAT
DEFENDANTS ROMERO CRUZ AND LEMUS CERNA PARTICIPATED
IN THE MURDER OF NELSON OMAR QUINTANILLA TRUJILLO

The United States of America, by and through its attorneys, Dana J. Boente, United States Attorney, Stephen M. Campbell, Julia K. Martinez, and Tobias D. Tobler, Assistant United States Attorneys, hereby files notice of intent to admit evidence that Defendants Romero Cruz and Lemus Cerna participated in the murder of Nelson Omar Quintanilla Trujillo on October 7, 2014. Count Four of the Third Superseding Indictment charges four defendants with this crime, but does not charge Romero Cruz or Lemus Cerna.[1] Evidence of Romero Cruz and Lemus Cerna's participation in Quintanilla Trujillo's killing is nevertheless admissible because it is intrinsic to the charged conduct, proves the defendants' membership and participation in the MS-13 racketeering enterprise, and because it tends to prove these defendants' state of mind with respect to violent crimes for which they *are* charged—namely, the conspiracy to murder D.F.

---

[1] Defendant Duran Cerritos was a juvenile at the time of the Quintanilla Trujillo murder. Duran Cerritos was charged in Count Four with this crime, but he has moved to dismiss the charge, citing *Miller v. Alabama*, 132 S. Ct. 2455 (2012). Dkt. No. 358. The Court has taken Duran Cerritos's motion under advisement, pending the Fourth Circuit's resolution of *United States v. Under Seal*, 15-4265. Dkt. No. 482. Should the Court ultimately dismiss this count against Duran Cerritos, the evidence of his participation in Quintanilla Trujillo's murder would remain admissible for the reasons set forth in this memorandum, and the government would similarly move to admit that evidence.

charged in Count One (Romero Cruz) and the murder of Gerson Adoni Martinez Aguilar charged in Count Six (Lemus Cerna).

BACKGROUND

As set forth in the Indictment, the defendants are members or associates of MS-13, a racketeering enterprise that promotes and enhances the gang's power, territory, and reputation through the use of violence, including murder and assault with deadly weapons.  Indictment ¶¶ 4, 10–12.  The gang directs these acts of violence against rival gang members, members of the public who cooperate with law enforcement, and its own members and associates who violate gang rules, among others.  *Id.*  MS-13 members and associates maintain and enhance their own status within the gang by participating in such violent acts.  *Id.* ¶ 4.  The Park View Locos Salvatruchas ("PVLS") is an MS-13 clique operating in Northern Virginia.  *Id.* ¶ 7.

The evidence at trial will prove that, in late September 2013, Defendants Romero Cruz, Lopez Torres, Rosales Villegas, and others engaged in phone conversations during which they discussed how, when, and, and where to murder D.F., an individual suspected of attempting to leave the gang.  Romero Cruz, who was the senior leader of the clique, was incarcerated, and he therefore communicated with the clique's membership with a contraband phone he possessed in jail.  On or about October 1, 2013, Rosales Villegas, Lopez Torres, and others drove to Gar-Field High School to commit the murder as planned.   Law enforcement officers intercepted the defendants, and seized from them a sawed-off shotgun, ammunition, and two machetes.

The evidence will further prove that, on or about October 7, 2013, Defendants Lopez Torres, Marquez Ayala, DeJesus Castillo, Duran Cerritos, Lemus Cerna, Santiago Villanueva, and Del Cid participated in the murder of another PVLS clique member, Nelson Omar Quintanilla Trujillo, who had been "green-lit" because gang members suspected him of being a

snitch.  Cooperating defendants will testify that, as with the plot to murder D.F., Romero Cruz participated in the planning of the crime and authorized the murder.  The victim was lured to Homes Run Park for a clique meeting under the pretext that he would receive a "calentón" (beating) for his violation of gang rules.  The defendants killed the victim using knives and machetes, and buried his body in the park.

On or about March 29, 2014, Defendants DeJesus Castillo, Gaitan Benitez, Duran Cerritos, Lemus Cerna, Santiago Villanueva, Paiz Guevara, and Del Cid participated in the murder of Gerson Adoni Martinez Aguilar, an associate of the PVLS clique.  As with the prior killing, Martinez Aguilar was suspected of violating gang rules, and he was lured to Holmes Run Park for a clique meeting under the pretense that he would receive a calentón.  The defendants killed the victim using knives, and buried his body in the park.

ARGUMENT

I.     EVIDENCE OF PARTICIPATION BY ROMERO CRUZ AND LEMUS CERNA IN QUINTANILLA TRUJILLO'S MURDER IS NOT PRECLUDED BY RULE 404(B) AND IS ADMISSIBLE.

Federal Rule of Evidence 404(b) establishes a limited exception to the general rule that relevant evidence is admissible, by providing that evidence of a defendant's crimes, wrongs, or other acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  This prohibition is narrow.  Most fundamentally, Rule 404(b) does not apply to evidence that is intrinsic to the crime charged.  "Other criminal acts are intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged."  *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996) (internal quotation marks omitted).  *See also United States v. Siegel*, 536 F.3d 306, 316 (4th Cir.

3

2008) ("Evidence of uncharged conduct is not 'other crimes' evidence subject to Rule 404 if the uncharged conduct arose out of the same series of transactions as the charged offense, or if evidence of the uncharged conduct is necessary to complete the story of the crime on trial." (internal quotation marks and alterations omitted)).

Even for truly extrinsic acts, Rule 404(b) is "an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *United States v. Higgs*, 353 F.3d 281, 311 (4th Cir. 2003). Thus, the rule "recognizes the admissibility of prior crimes, wrongs, or acts . . . for purposes other than character, such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *United States v. Queen*, 132 F.3d 991, 994 (4th Cir. 1997) (quoting Fed. R. Evid. 404(b)).

For extrinsic evidence to qualify as admissible under Rule 404(b), it must be "(1) relevant to an issue other than character; (2) necessary; and (3) reliable." *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009). As regards the first prong, evidence is relevant "if it has any tendency to make the existence of any determinative fact more probable than it would be absent the evidence." *United States v. Van Metre*, 150 F.3d 339, 349 (4th Cir. 1998) (citing Fed. R. Evid. 401). This threshold is "relatively low." *Id.* *See also Queen*, 132 F.3d at 998 ("[T]he evidentiary fact offered does not need to have strong, full, superlative, and probative value and does not need to involve demonstration or to produce persuasion by its sole and intrinsic force but merely needs to be worth consideration by the jury.").

With respect to the second prong, an act is necessary where it is "probative of an essential claim or an element of the offense," *Queen*, 132 F.3d at 997, or "furnishes part of the context of the crime," *United States v. Byers*, 649 F.3d 197, 209 (4th Cir. 2011) (internal quotation marks omitted). Even where the government offers substantial proof of the defendant's guilt apart from

Rule 404(b) evidence, the extrinsic evidence may still be necessary if the defendant specifically disputes the point that the Rule 404(b) evidence would be offered to prove. *United States v. Mohr*, 318 F.3d 613, 619 (4th Cir. 2003).

Lastly, the reliability prong is satisfied when the evidence is "sufficient to allow the jury to reasonably conclude that the act[s] occurred and that the defendant was the actor." *Van Metre*, 150 F.3d at 350 (internal quotation marks omitted). "Under prong three, [e]vidence is reliable and should be submitted to the fact finder unless it is so preposterous that it could not be believed by a rational and properly instructed juror." *United States v. Hornsby*, 666 F.3d 296, 308 (4th Cir. 2012) (internal quotation marks omitted).

Applying these principles here, the evidence of Romero Cruz and Lemus Cerna's participation in Quintanilla Trujillo's murder is fully admissible. First, as more fully set forth in the Government's Notice of Intent to Introduce Enterprise and Racketeering Act Evidence, this evidence is intrinsic to the crimes with which these two defendants are charged as it tends to prove essential elements of violent crimes in aid of racketeering (VICAR). For instance, the evidence tends to prove the structure of and associations within the racketeering enterprise, and the defendants' participation in the enterprise, including defendant Romero Cruz's leadership role. *See, e.g.*, *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994) (testimony regarding a beating administered by "BTK" gang leadership to members who had violated gang rules admissible "as to the existence and structure of the BTK enterprise, as to the leadership roles played by [the gang leaders], and as to the discipline imposed by the BTK leaders on the rank-and-file members"); *United States v. Gray*, 137 F.3d 765, 772 (4th Cir. 1998) (in VICAR murder prosecution, jury could infer "identifiable structure" of enterprise from evidence regarding drug distribution ring, including evidence of the ring's leader and his lieutenant); *United States v.*

5

*Salerno*, 108 F.3d 730, 739 (7th Cir. 1997) (evidence that defendant demanded and collected "street taxes" acting on behalf of street crew provided admissible evidence of defendant's "participation in enterprise activities").

Evidence of uncharged acts, when offered to prove an essential element of a VICAR charge, is plainly "not offered to show any character trait of any defendant or that a defendant acted in accordance with such a trait," but is instead intrinsic to the offense itself. *United States v. Matera*, 489 F.3d 115, 120 (2d Cir. 2007). *See also United States v. Stokes*, 64 Fed. Appx. 352, 356 (4th Cir. 2003) (evidence that defendants "were engaged in drug distribution, carried firearms, and committed crimes of violence" tended to prove VICAR enterprise and was therefore intrinsic and not subject to Rule 404(b)); *United States v. Rollett*, 151 F.3d 787, 790–91 (8th Cir. 1998) (evidence of uncharged conduct offered to establish RICO enterprise and defendant's relationship to enterprise is "intrinsic evidence" not subject to Fed. R. Evid. 404(b)); *Salerno*, 108 F.3d at 738 (evidence proffered to establish RICO enterprise is not "other crimes" evidence and Fed. R. Evid. 404(b) does not apply). Rule 404(b) therefore does not preclude admission of this evidence.

Second, and relatedly, the evidence of Romero Cruz and Lemus Cerna's participation in Quintanilla Trujillo's murder is inextricably intertwined with the other facts of the crime, and is therefore admissible to "complete the story of the crime on trial." *Siegel*, 536 F.3d at 316. At trial, several witnesses will explain, in step-by-step detail, the planning and motive behind the crime, and the manner in which the killing transpired. Their testimony will demonstrate that each of the various participants from the gang played a role in the crime's completion—from the instigation of the plot, to the planning and coordination of the killing, to the murderous act itself. Omitting all references to the defendants not charged with this particular crime would leave the

jury with an incomplete, incomprehensible narrative of how the murder unfolded, and, more broadly, of how PVLS operated. The evidence is therefore admissible to complete the narrative of the crime. *See, e.g.*, *Chin*, 83 F.3d at 88 (evidence of uncharged murder admissible as "inextricably intertwined" with defendant's "conducting of a criminal enterprise"); *United States v. Gougis*, 432 F.3d 735, 742 (7th Cir. 2005) (Instances of uncharged conduct admissible when "they complete the story of the crime on trial; their absence would create a chronological or conceptual void in the story of the crime; or they are so blended or connected that they incidentally involve, explain the circumstances surrounding, or tend to prove any element of, the charged crime.")

Third, evidence of Romero Cruz and Lemus Cerna's participation in Quintanilla Trujillo's murder is admissible as evidence of these defendants' culpable states of mind with respect to the violent crimes for which they *are* charged, *i.e.*, the conspiracy to murder D.F. (Romero Cruz) and the murder of Martinez Aguilar (Lemus Cerna).[2] "A not-guilty plea puts one's intent at issue and thereby makes relevant evidence of similar prior crimes when that evidence proves criminal intent." *Van Metre*, 150 F.3d at 350. *See also Queen*, 132 F.3d at 995 ("when *intent* to commit a crime is at issue, we have regularly permitted the admission of prior acts to prove that element"). Evidence of similar prior crimes is relevant to proving culpable state of mind because "[o]nce an act is assumed to be done, the prior doing of other similar acts is useful as reducing the possibility that the act in question was done with innocent intent." *Queen*, 132 F.3d at 996 (internal quotation marks and alterations omitted). Likewise,

---

[2] To prove Lemus Cerna murdered Martinez Aguilar in aid of racketeering, the government must prove he acted "knowingly and intentionally," Indictment, at 13 (citing Va. Code. Ann. § 18.2-32), "to maintain or increase his position in the enterprise," *United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994). To prove Romero Cruz conspired to murder D.F., the government must prove he intended that his coconspirators kill D.F., *see* Indictment, at 8 (citing Va. Code. Ann. § 18.2-32), and that Romero Cruz' sought "to maintain or increase his position in the enterprise," *Fiel*, 35 F.3d at 1003.

"[e]vidence of the commission of similar offenses closely related in time and place" may prove "relevant on such matters as identity, guilty knowledge, [or] motive . . ., where these are in issue, or may tend to establish a criminal plan or design out of which the crime charged has originated." *Lovely v. United States*, 169 F.2d 386, 388 (4th Cir. 1948).

The requisite "similarity may be proved through physical similarity of the acts or through the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offense." *Van Metre*, 150 F.3d at 350 (internal quotation marks and alterations omitted). "Of course, the past conduct need not be identical to the conduct charged, but it must be similar enough to be probative of intent." *Id*. (internal quotation marks omitted). Subsequent conduct, like *prior* conduct, "'may be highly probative of . . . intent,' because it is evidence that 'one's thought patterns had already been so developed and were so operating on another previous occasion.'" *United States v. Torrez*, No. 1:11-CR-115, 2013 WL 204727, at *3 (E.D. Va. Jan. 17, 2013) (quoting *United States v. Hadaway,* 681 F.2d 214, 217 (4th Cir. 1982)).

Here, the similarities between Quintanilla Trujillo's murder and that of Martinez Aguilar are substantial. The crimes involved five of the same participants, including Lemus Cerna, and all the perpetrators were associated with the PVLS clique of MS-13. Both victims were murdered because the clique suspected them of violating gang rules. In both instances, the perpetrators lured the victim to the scene of the crime under the ruse that the victim would receive a beating only. Both murders occurred in Holmes Run Park. And the perpetrators stabbed both victims to death with bladed weapons, burying them in the park afterwards. Given the high degree of similarity between the two crimes, evidence of the first murder is relevant to proving Lemus Cerna's intent to kill his second victim, as well as motive, identity, plan,

knowledge, and absence of mistake. *See, e.g.*, *Van Metre*, 150 F.3d at 351 (admitting evidence of defendant's prior sexual assault as proof of defendant's intent to sexually assault victim where the victims resembled each other physically and the defendant "traveled alone with both women to wooded areas on farms," and "committed sexual acts and violence against both victims soon after they arrived in the woods"); *Torrez*, 2013 WL 204727, at *3–4 (admitting evidence of defendants' prior bad acts as intent and identity evidence where "both the [prior] offenses and the charged offense involved assault of women in their early-to-mid-twenties during the early morning hours, with a sexual motive, and . . . binding the victim's hands with an electrical cord"); *United States v. Williams*, 740 F. Supp. 2d 1, 2–3 (D.D.C. 2010) (admitting evidence of prior assaults during gang initiation ceremonies as proof of defendant's "common plan or scheme, motive, intent, and possibly identity" with respect to similar beating that resulted in the victim's death).

The conspiracy to murder D.F. bears fewer similarities to Quintanilla Trujillo's killing, but the similarities are nonetheless substantial. With respect to both crimes, Romero Cruz played an active role in not only planning but authorizing the murders. The motivation behind both killings was to punish the victim, a member of PVLS, for a violation of gang rules. And the perpetrators planned to use machetes in their attacks. In light of these key similarities, evidence of Quintanilla Trujillo's murder is relevant to proving Romero Cruz's intent, as well as motive, identity, plan, and knowledge.

Furthermore, the evidence of Romero Cruz's role in Quintanilla Trujillo's murder is also admissible against Romero Cruz because it demonstrates Romero Cruz's leadership position within the gang and the conspiracy to kill D.F., and, specifically, his power to authorize D.F.'s murder. *See, e.g.*, *United States v. Kennedy*, 32 F.3d 876, 886 (4th Cir. 1994) (evidence of

defendant's other crimes admissible as "proof of the existence and structure" of the charged conspiracy).  The many motions previously filed by Romero Cruz make clear that he intends to argue he could not have conspired to kill D.F. because he was incarcerated at the time of the crime.  *See, e.g.*, Dkt. Nos. 369, 371, 452, 538.  Evidence that Romero Cruz helped direct Quintanilla Trujillo's murder just days after law enforcement foiled the conspiracy to kill D.F. directly rebuts this argument.

In addition to being relevant, the evidence of the uncharged defendants' participation in the Quintanilla Trujillo murder is both reliable and necessary.  With regard to reliability, multiple witnesses will testify to the roles Romero Cruz and Lemus Cerna played in the murder, and recorded telephone calls among confidential informants, government cooperators, and defendants will corroborate this testimony.  This is sufficient to satisfy the low threshold for reliability.  *See Hornsby*, 666 F.3d at 308 ("[e]vidence is reliable and should be submitted to the fact finder unless it is so preposterous that it could not be believed by a rational and properly instructed juror").

As regards necessity, the defendants can be expected to challenge not only the admissibility of the government's recordings, but also the reliability and credibility of cooperator testimony.  *See Queen*, 132 F.3d at 997.  Moreover, the defendants may assert a range of defenses that the Quintanilla Trujillo murder evidence is essential to rebut.  As noted above, Romero Cruz may claim that he could not have participated in a conspiracy to kill D.F. because he was incarcerated at the time of the crime.  He may also argue mistaken identity.  Lemus Cerna may claim he was not present at the second murder, that he lacked the requisite intent, or that he acted under duress.  Because the Quintanilla Trujillo evidence serves a crucial role in proving

elements of the charged offenses, and because other evidence available to the government is largely contested, the evidence is an essential part of the crimes on trial and should be admitted.

II.     EVIDENCE OF PARTICIPATION BY ROMERO CRUZ AND LEMUS CERNA IN QUINTANILLA TRUJILLO'S MURDER SHOULD NOT BE EXCLUDED UNDER RULE 403.

Under Rule 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice" refers to "prejudice that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion." *Mohr*, 318 F.3d at 620. To exclude evidence on this ground, "the district court must be convinced that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *Van Metre*, 150 F.3d at 351 (internal quotation marks omitted).

As set forth above, the evidence that Romero Cruz and Lemus Cerna participated in Quintanilla Trujillo's murder tends to prove the associations within and structure of the MS-13 racketeering enterprise, as well as the defendants' participation in the gang. The evidence is also relevant to proving these defendants' state of mind with respect to other crimes. The evidence therefore has an unquestionably high degree of probative value.

The possibility that the evidence will unfairly "excite the jury to irrational behavior," *Van Metre*, 150 F.3d at 351, does not "substantially outweigh" this considerable probative value. First, as noted above, "unfair prejudice" refers only to "prejudice that damages an opponent for reasons *other than* its probative value." *Mohr*, 318 F.3d at 620 (emphasis added). *See also United States v. Amante*, 418 F.3d 220, 223 (2d Cir. 2005) ("evidence is prejudicial only when it

tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence"). Because the evidence at issue is direct proof of the defendants' participation in a racketeering enterprise—an element of the charged offenses—the evidence is not "unfairly prejudicial."

Second, at trial, the jurors will already hear extensive evidence of Quintanilla Trujillo's murder as proof against the defendants charged with this crime. Moreover, the jury will also receive extensive evidence regarding two other brutal murders (including a murder for which Lemus Cerna is charged) and a murder plot (for which Romero Cruz is charged). As the Fourth Circuit has recognized, evidence of uncharged acts—even evidence of brutal and deplorable behavior—poses a reduced risk of unfair prejudice where the jury will hear similar evidence regarding the charged offenses. In *United States v. Van Metre*, for instance, the Fourth Circuit admitted over a Rule 403 challenge testimony regarding a violent and prolonged sexual assault, concluding that the uncharged crime "was no more disturbing than the circumstances of Blake's kidnapping and murder as related by Van Metre himself" in his confession. *Van Metre*, 150 F.3d at 351. The court further observed that the extrinsic evidence of an "abduction and violent repeated rape was certainly prejudicial to Van Metre," but determined that "the significant probative value of the evidence," along with the district court's limiting instructions, justified its admission. *Id. See also United States v. Branch*, 537 F.3d 328, 342 (4th Cir. 2008) (affirming admission of Rule 404(b) evidence over a Rule 403 objection because "[t]he government's considerable evidence of Branch's distribution of cocaine base in September 2004 alleviated the risk that the jury might react irrationally to the evidence of drug possession from 2001"). That the jury will consider evidence against Lemus Cerna and Romero Cruz that is no less

"sensational" or "disturbing" than the Quintanilla Trujillo murder significantly alleviates the danger of unfair prejudice. *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995).

Lastly, "additional protection" against possible prejudice "may be provided by . . . a limiting jury instruction . . . explaining the purpose for admitting evidence of prior acts." *Queen*, 132 F.3d at 997. Such an instruction from the Court would further "dissipate the emotional impact" of the evidence at issue. *Van Metre*, 150 F.3d at 351. *See also United States v. Powers*, 59 F.3d 1460, 1468 (4th Cir. 1995) ("cautionary or limiting instructions generally obviate any such prejudice").

In light of these factors, Rule 403's balancing test weighs in favor of admitting evidence that Romero Cruz and Lemus Cerna participated in Quintanilla Trujillo's murder. Indeed, courts have regularly admitted such evidence of uncharged murders as intrinsic to VICAR offenses and under a Rule 404(b) framework. *See, e.g.*, *United States v. Henley*, 766 F.3d 898, 915 (8th Cir. 2014) (evidence of uncharged murder relevant to establishing continuity and common purpose of RICO conspiracy and was not unfairly prejudicial); *United States v. Tse*, 135 F.3d 200, 208 (1st Cir. 1998) (probative value of evidence of defendant's other acts, including attempted murders, not substantially outweighed by prejudice); *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (proof of uncharged murder involving defendant admissible to show existence and nature of RICO enterprise, and probative value of evidence not substantially outweighed by potential for unfair prejudice); *United States v. Barefoot*, 754 F.3d 226, 237 (4th Cir. 2014) (upholding district court determination that probative value of defendant's participation in uncharged murder was not substantially outweighed by risk of unfair prejudice); *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (same); *United States v. Myers*, 280 F.3d 407, 413–14 (4th Cir. 2002) (same); *United States v. Melton*, 970 F.2d 1328, 1336 (4th Cir. 1992) (same).

CONCLUSION

For the reasons set forth above, evidence that Romero Cruz and Lemus Cerna participated in Quintanilla Trujillo's murder is admissible as intrinsic to the crimes charged, and as relevant evidence not subject to Rule 404(b) exclusion.

Respectfully Submitted,

Dana J. Boente
United States Attorney

_____/s/_____

Stephen M. Campbell
Julia K. Martinez
Tobias D. Tobler
Assistant United States Attorneys
Counsel for the Government
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, VA 22314
(703) 299-3700
(703) 739-9556 (fax)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th of February, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to counsel of record.

_____/s/_____

Tobias D. Tobler
Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3700
Fax: (703) 299-3981
tobias.tobler@usdoj.gov