IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:14-CR-306 |
| v. | ) | |
| | ) | The Honorable Gerald Bruce Lee |
| PEDRO ANTHONY ROMERO CRUZ, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

GOVERNMENT'S NOTICE OF INTENT TO ADMIT RECORDED STATEMENTS

The United States of America, by and through its attorneys, Dana J. Boente, United States Attorney, Stephen M. Campbell, Julia K. Martinez, and Tobias D. Tobler, Assistant United States Attorneys, hereby files this notice of intent to admit recorded statements made by declarants, including defendants and government cooperators, to confidential sources and others. At trial, the government intends to offer many of these statements by defendants and cooperators for the truth of the matters asserted therein. The government respectfully submits this notice to brief the Court on the government's position and to help facilitate the timely resolution of any objections made when the government moves these incriminating statements into evidence during trial.

Under the Federal Rules of Evidence, each of the recorded statements offered for their truth is admissible against the defendant declarant as an opposing party admission. Furthermore, as set forth below, the defendant declarants' statements inculpating other defendants are likewise admissible against these other defendants as statements against the declarant's penal interest. In addition, the defendant declarants' and cooperator declarants' statements are admissible as statements made in furtherance of a conspiracy.

INTRODUCTION

The Third Superseding Indictment charges the defendants in connection with multiple violent crimes, including the attempted murder of D.F. on or about October 1, 2013, the murder of Nelson Omar Quintanilla Trujillo on or about October 7, 2013, the murder of Gerson Adoni Martinez Aguliar on or about March 29, 2014, and the murder of Julio Urrutia on or about June 19, 2014.  During the timeframe of these crimes, confidential sources engaged in consensually-recorded conversations with many of the defendants later charged in the indictment, including defendants now cooperating with the government.  The government has also obtained recorded jail calls between defendants.  These recordings are replete with defendants' admissions regarding their own participation in the charged crimes.  For instance, during a call recorded approximately three months after Quintanilla Trujillo's murder, Defendant Lopez Torres described the killing, stating "Dismembered, son of a bitch, we hacked him all up in pieces." During a call occurring days after Martinez Aguilar's killing, Defendant Gaitan Benitez described his participation in the murder, remarking, "I was calm, with the knife in my hand . . . they knock him down . . . right then and there I ripped his melon off."

The recorded conversations also include numerous statements in which a declarant reveals information known to him through his firsthand participation in the crimes, thereby both incriminating himself and implicating others, including charged defendants.  For example, in a December 2013 call, Lopez Torres explained that he and Defendant Rosales Villegas were "going to do a hit," *i.e.*, kill D.F., before authorities "caught him with a 12 and a machete."  In a call following Quintanilla Trujillo's murder, Lopez Torres described Defendant Duran Cerritos's vicious attack on the victim, stating "[S]on of a bitch, he gave it to him with the whole machete, he even cut himself, the son of a bitch, in his . . . in his crazy state." Lemus Cerna, in a separate

call, explained that Duran Cerritos had "opened a big hole in the stomach" of Quintanilla Trujillo.

A trial, the government intends to offer these and similar statements for the truth of the matters asserted therein.[1] The statements are admissible on several grounds. First, they are admissible as evidence against the declarant defendants as opposing party statements. *See* Fed. R. Evid. 801(d)(2)(A). Second, as set forth in Section I below, the statements are admissible as evidence against the non-declarant defendants implicated by the statements as statements against the declarant defendants' penal interests. *See* Fed. R. Evid. Rule 804(b)(3). Third, as set forth in Section II, because the declarants made the statements in furtherance of a conspiracy, they are also admissible against the non-declarant defendants under Rule 801(d)(2), irrespective of whether the declarant is a defendant or cooperator. Lastly, as explained in Section III, the Sixth Amendment's Confrontation Clause poses no bar to admission of the recorded statements.

ARGUMENT

I. THE DEFENDANTS' RECORDED STATEMENTS ARE ADMISSIBLE AS STATEMENTS AGAINST PENAL INTEREST.

Rule 804(b)(3) provides that a statement made by an unavailable[2] declarant is admissible if it meets two criteria. First, the statement must be "one that 'a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency to . . . expose the declarant to civil or criminal liability." *United States v. Dargan*, 738 F.3d 643, 649 (4th Cir. 2013) (quoting Fed. R. Evid. 804(b)(3)).

---

[1] The government will offer these statements by moving to admit the relevant recordings, which are in Spanish, as well as English translations of the recordings prepared by court-certified linguists. The government anticipates moving for the admission of approximately 25 such recordings throughout the course of the trial.

[2] The government will offer for the truth of the matter asserted statements of declarant defendants. Assuming each of these defendants elects not to testify, he is "unavailable" for the purposes of the rule. *United States v. Dargan*, 738 F.3d 643, 649 (4th Cir. 2013).

3

Second, the statement must be supported by "corroborating circumstances" that "clearly indicate [its] trustworthiness." Fed. R. Evid. 804(b)(3). If a declaration meets both criteria, it is a statement against penal interest admissible against the declarant as well as others implicated by the statement. *See Dargan*, 738 F.3d at 649–51.

As regards the first criterion, a declaration qualifies as a statement against penal interest if it is "individually self-inculpatory." *Williamson v. United States*, 512 U.S. 594, 599 (1994). "[W]hether a statement is self-inculpatory or not can only be determined by viewing it in context," as facially-neutral statements may, when placed in proper context, actually be against the declarant's interest. *Id.* at 603. *See also* 5 Federal Evidence § 8:129 (4th ed.) ("[I]t is often the case that parts of a single narrative are not against interest when taken by themselves, but they are nevertheless against interest when taken together with other parts, and they should be viewed as against interest if they add meaning or dimension to other parts of a statement that are saliently against interest."). For instance, statements implicating the declarant in a criminal conspiracy by linking him to the conspiracy's members may qualify as a statement against penal interest. *Williamson*, 512 U.S. at 603. *See also United States v. Tocco*, 200 F.3d 401, 415 (6th Cir. 2000) (declarant's statements describing his own role in RICO enterprise, inculpating himself and others as coconspirators, admissible as against declarant's penal interest). Relatedly, statements demonstrating a declarant's insider knowledge of a criminal organization and its criminal activities are "self-inculpatory." *See Williamson*, 512 U.S. at 606–07 (Scalia, J., concurring) ("[I]f a lieutenant in an organized crime operation described the inner workings of an extortion and protection racket, naming some of the other actors and thereby inculpating himself on racketeering and/or conspiracy charges, I have no doubt that some of those remarks could be admitted as statements against penal interest."); *United States v. Barone*, 114 F.3d 1284, 1297

4

(1st Cir. 1997) (declarant's statements "demonstrat[ing] 'an insider's knowledge' of a criminal enterprise and its criminal activities" admissible).

Statements that would lead investigators to evidence of a crime or provide the police with "significant details about the crime" also qualify as self-inculpatory. *Williamson*, 512 U.S. at 603. *United States v. Udeozor*, 515 F.3d 260, 267 (4th Cir. 2008). In *United States v. Dargan*, for example, the Fourth Circuit held that a declarant's statements were "intrinsically inculpatory," and therefore admissible against the defendant, where the declarant admitted to participating in a robbery with the defendant and revealed his knowledge of the number and identity of other participants. 738 F.3d at 649–50. Such statements, the court explained, potentially subjected the declarant to conspiracy liability, and were therefore against his penal interests. *Id.*

Similarly, in *United States v. Jordan*, the Fourth Circuit held that a declarant's statements relating her involvement in defendants' plan to lure a drug dealer to an apartment to be robbed, and describing "her observations and actions after she emerged from the bedroom on the night of the [drug dealer's] murder . . . no doubt subjected her to criminal liability so that a reasonable person would not have made them had they been untrue." 509 F.3d 191, 202 (4th Cir. 2007). Because the statements were against the declarant's penal interest, they were properly admitted against the defendants. *Id.* at 203. *See also United States v. Smalls*, 605 F.3d 765, 769, 785 (10th Cir. 2010) (declarant's "comments as to how precisely [the victim's] murder occurred," including description of each participant's role in holding down and suffocating victim, were "undoubtedly against [the declarant's] penal interest" and admissible against defendant).

The recorded statements the government intends to offer for the truth of the matters asserted therein plainly qualify as self-inculpatory. In these statements, which are consistent

5

with the examples excerpted above, the declarants relate specific details regarding the charged crimes, including the identities of the participants and their respective roles, the planning and motives behind the crimes, the crimes' locations, the manner in which the crimes occurred, and the words spoken by the victims and participants at the time of the crime. These statements inculpate their declarants by, among other things, revealing the declarants' intimate knowledge of non-public particulars of the crimes and by linking the declarants to the crimes' perpetrators. *See Williamson*, 512 U.S. at 603; *Dargan*, 738 F.3d at 649. No reasonable person would have made such statements had they been untrue, *Jordan*, 509 F.3d at 202, as "no other statement is so much against interest as a confession of murder," *Donnelly v. United States*, 228 U.S. 243, 278 (1913) (Holmes, J., dissenting). The statements therefore satisfy Rule 804(b)(3)'s requirement that a statement against penal interest be "self-inculpatory."

As noted above, Rule 804(b)(3) also requires that a statement against interest be supported by corroborating circumstances that indicate the statement's trustworthiness. Fed. R. Evid. 804(b)(3). The Fourth Circuit has enumerated several factors relevant to this inquiry:

> (1) whether the declarant had at the time of making the statement pled guilty or was still exposed to prosecution for making the statement, (2) the declarant's motive in making the statement and whether there was a reason for the declarant to lie, (3) whether the declarant repeated the statement and did so consistently, (4) the party or parties to whom the statement was made, (5) the relationship of the declarant with the accused, and (6) the nature and strength of independent evidence relevant to the conduct in question.

*United States v. Kivanc*, 714 F.3d 782, 792 (4th Cir. 2013).

Applied here, these factors clearly weigh in favor of finding sufficient corroborating circumstances. First, all of the statements at issue were made at a time that the declarant "remained exposed to the full range of penal consequences attached to his illicit conduct." *Dargan*, 738 F.3d at 650. Second, each of the statements were made to individuals the declarant

6

believed to be trusted members of MS-13. Unlike a confession to law enforcement, in which the declarant has a motive to "shift blame or curry favor," *Jordan*, 509 F.3d at 203, the declarants had no incentive to "manipulate [the] narrative to please the authorities," *Dargan*, 738 F.3d at 650. Third, the declarants' statements conveyed information regarding premeditated, coordinated acts of violence that the declarants undertook alongside fellow members of MS-13. The declarants' firsthand knowledge regarding the crimes and the perpetrators lends further support to the statements' accuracy and reliability. Fourth, the government will present extensive evidence at trial corroborating the content of the declarants' statements, including eyewitness and cooperator testimony as well as physical evidence.

For the foregoing reasons, the recorded statements the government intends to offer at trial are inculpatory of the declarants and supported by corroborating circumstances. The declarations therefore qualify as statements against penal interest, and the government may offer them against the declarants as well as other defendants implicated by the statements.

II. THE DECLARANTS' RECORDED STATEMENTS ARE ADMISSIBLE AS COCONSPIRATOR STATEMENTS MADE IN FURTHERANCE OF A CONSPIRACY.

In addition to being admissible as statements against penal interest, the declarants' statements offered by the government are admissible as coconspirator statements made in furtherance of a RICO conspiracy in which all of the defendants participated. These statements are admissible irrespective of whether the declarant is a current defendant or a cooperator.

For a statement to qualify as an admissible coconspirator statement under Federal Rule of Evidence 801(d)(2)(E), there "must be evidence [1] that there was a conspiracy involving the declarant and the nonoffering party, and [2] that the statement was made 'during the course and in furtherance of the conspiracy.'" *United States v. Ayala*, 601 F.3d 256, 267–68 (4th Cir. 2010)

(quoting *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)). The offering party must establish these elements by a preponderance of the evidence. *United States v. Graham*, 711 F.3d 445, 453 (4th Cir. 2013).

"[A] trial court is not required to hold a hearing to determine whether a conspiracy exists before admitting statements under the rule," *id.*; instead, a court may "conditionally admit co-conspirators' statements subject to the subsequent satisfaction of the requirements for their admission," *United States v. Blevins*, 960 F.2d 1252, 1256 (4th Cir. 1992). In making its admissibility determination, "the court may consider *all* evidence before it, whether admissible at trial or not, including the co-conspirator statements sought to be admitted." *United States v. Shores*, 33 F.3d 438, 442 (4th Cir. 1994).

Importantly, to establish the existence of a conspiracy for the purpose of admitting co-conspirator statements, the government need not rely on a conspiracy charged in an indictment. Rather, a statement made in furtherance of *any* proven conspiracy is admissible, even if that conspiracy is different from the conspiracy charged in an indictment, or where the indictment charges no conspiracy at all. *United States v. Jackson*, 757 F.2d 1486, 1490 (4th Cir. 1985); *United States v. Russo*, 302 F.3d 37, 45 (2d Cir. 2002).

As regards the second element, "[a] particular statement may be found to be 'in furtherance' of the conspiracy even though it is susceptible of alternative interpretations and was not exclusively, or even primarily, made to further the conspiracy, so long as there is some reasonable basis for concluding that it was designed to further the conspiracy." *Shores*, 33 F.3d at 444 (internal quotation marks omitted). *See also United States v. Smith*, 441 F.3d 254, 262 (4th Cir. 2006) ("Most courts, including the Fourth Circuit, construe the in furtherance requirement so broadly that even casual relationships to the conspiracy suffice to satisfy the

8

exception." (internal quotation marks omitted)).  Courts construe "in furtherance of a conspiracy" broadly to include statements that "seek[] to induce a coconspirator's assistance," *United States v. James*, 712 F.3d 79, 106 (2d Cir. 2013), "serv[e] to foster trust and cohesiveness," *United States v. Diaz*, 176 F.3d 52, 85 (2d Cir. 1999), or identify "participants and their roles in the conspiracy," *United States v. Franklin*, 415 F.3d 537, 552 (6th Cir. 2005); *United States v. Arias*, 252 F.3d 973, 977 (8th Cir. 2001) (same).  "[S]tatements are also in furtherance of the conspiracy if they serve to inform a conspirator of the status of the conspiracy," *United States v. Dawson*, 141 F.3d 1160, 1998 WL 188636, at *5 (4th Cir. 1998) (citing *United States v. Edmond*, 52 F.3d 1080, 1111 (D.C. Cir. 1995)), or "report[] significant events to one of the co-conspirators," *United States v. Tse*, 135 F.3d 200, 209 (1st Cir. 1998)). *See also James*, 712 F.3d at 106 (Statements "informing coconspirators as to the progress or status of the conspiracy" are in furtherance of conspiracy.); *United States v. Heron*, 721 F.3d 896, 903 (7th Cir. 2013) ("Statements made in furtherance of a conspiracy may include comments designed . . . to inform other members about the progress of the conspiracy." (internal quotation marks omitted)); *Franklin*, 415 F.3d at 552 ("[S]tatements that keep a conspirator abreast of a co-conspirator's activities are admissible." (internal quotation marks omitted)); *United States v. Jefferson*, 215 F.3d 820, 824 (8th Cir. 2000) ("[S]tatements that describe past events are in furtherance of the conspiracy if they are made . . . simply to keep coconspirators abreast of current developments and problems facing the group.").

In addition, a coconspirator's statement is made "in furtherance" of a conspiracy "if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect." *Graham*, 711 F.3d at 453.  Consequently, the fact that a coconspirator unwittingly makes a statement to a government informant does not render the statement inadmissible under Rule

801(d)(2)(E), as long as the declarant *intended* to promote the conspiracy through the statement. *Ayala*, 601 F.3d at 268.  *See also Tse*, 135 F.3d at 209 ("Numerous times we have accepted statements made to government informants as co-conspirator statements.  And other circuits addressing this issue have held that the inquiry should focus on the declarant's intent, making the intent of the one who receives the information immaterial." (internal citations omitted)). "Indeed, the landmark Supreme Court case, *Bourjaily v. United States*, involved statements to a government informant." *Id.* (internal citation omitted).

The recorded statements the government intends to offer at trial constitute statements made in furtherance of a conspiracy.  In order to prove the elements of the various violent crimes in aid of racketeering activity charged in the indictment, the government's evidence will necessarily establish a RICO conspiracy involving the defendants.[3]  As charged in the Third Superseding Indictment, the defendants are local members or associates of MS-13, a racketeering enterprise that promotes and enhances the gang's power, territory, and reputation through the use of violence, including murder and assault with deadly weapons.  Third Superseding Indictment ¶¶ 4, 10–12.  The gang directs these acts of violence against rival gang members, members of the public who cooperate with law enforcement, and its own members and associates who violate

---

[3] Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of [18 U.S.C. § 1962(c)]."  The elements of a substantive RICO offense under § 1962(c) are "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *United States v. Mouzone*, 687 F.3d 207, 217 (4th Cir. 2012).  "Racketeering activity includes any act or threat involving murder, robbery, or dealing in a controlled substance, which is chargeable under State law and punishable by imprisonment for more than one year."  *Id.* (internal quotation marks and alterations omitted).  To prove a violent crime in aid of racketeering activity, as charged in the Third Superseding Indictment, the government must establish: "(1) *that the organization was a RICO enterprise*, (2) *that the enterprise was engaged in racketeering activity as defined in RICO*, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise." *United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994) (emphasis added).

gang rules, among others. *Id.* MS-13 members and associates maintain and enhance their own status within the gang by participating in such violent acts. *Id.* ¶ 4.

The statements the government will offer at trial are plainly in furtherance of the RICO conspiracy, which preexisted and continued after the violent acts charged in the indictment. Included among these statements are discussions in which coconspirator declarants relay firsthand knowledge regarding the murders of Quintanilla Trujillo and Martinez Aguilar, both of whom were murdered because they allegedly broke gang rules. These discussions include descriptions by the declarants of the identities of the crimes' participants and their respective roles, the planning and motives behind the crimes, and details concerning the manner in which the crimes occurred. Again, the RICO conspiracy at issue and its participants promote and maintain power and reputation through violent acts of racketeering. MS-13 directs these violent acts against its own membership in order to enforce gang rules. Coconspirator statements conveying information regarding the crimes charged in the Third Superseding Indictment— including the purpose, participants, and salient details of these crimes—were made in furtherance of the conspiracy. *Dawson*, 1998 WL 188636, at *5; *Franklin*, 415 F.3d at 552. *See also United States v. Flemmi*, 402 F.3d 79, 95 (1st Cir. 2005) (declarant's statement to defendant and coconspirator that he killed victim "furthered the conspiracy because it fostered a relationship of trust among the three, and it kept them abreast of current developments and problems facing the group" (internal quotation marks omitted)); *Diaz*, 176 F.3d at 85 (declarant's statements that he and defendant committed murders and sold 9mm gun afterwards were in furtherance of racketeering conspiracy because, *inter alia*, they "attempted to apprise . . . of the progress or status of the conspiracy").

The statements the government will offer at trial also include discussions among multiple coconspirator declarants planning the murder of D.F.—an individual suspected of attempting to leave MS-13 in violation of gang rules. The strategic and logistical considerations and instructions relayed among the declarants during these conversations were made in furtherance of not only the broader RICO conspiracy, but also in furtherance of the conspiracy to kill D.F., as charged in Count One of the Third Superseding Indictment. These statements are therefore plainly admissible under Rule 801(d)(2)(E) as well.

For the foregoing reasons, the recorded statements the government intends to offer at trial constitute statements in furtherance of a conspiracy and are admissible.

### III. THE CONFRONTATION CLAUSE DOES NOT BAR ADMISSION OF THE RECORDED STATEMENTS.

As described above, the government will introduce at trial several defendants' prior statements that inculpate not only the declarant, but other defendants as well. Should these declarants elect not to testify, the defendants incriminated by the declarants' statements will not have an opportunity to cross-examine the declarant. Admission of these statements nevertheless does *not* violate the Sixth Amendment's Confrontation Clause because the statements are not testimonial.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This provision bars the admission of "*testimonial* statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004) (emphasis added). In a specific application of this rule, the Supreme Court held in *Bruton v. United States* that, under certain circumstances, admission of a non-testifying codefendant's confession inculpating a defendant violates that

defendant's Sixth Amendment confrontation rights because the defendant has no opportunity to cross-examine the declarant. 391 U.S. 123, 126 (1968).

The recorded statements at issue here are non-testimonial and therefore implicate neither *Crawford* nor *Bruton*. "As *Crawford* and later Supreme Court cases make clear, a statement must be 'testimonial' to be excludable under the Confrontation Clause." *Dargan*, 738 F.3d at 650. "The primary determinant of a statement's testimonial quality is whether a reasonable person in the declarant's position would have expected his statements to be used at trial—that is, whether the declarant would have expected or intended to bear witness against another in a later proceeding." *Id.* (internal quotation marks omitted).

Here, the declarants made the statements at issue to individuals the declarants believed to be trusted criminal associates. These statements inculpated the declarants and fellow gang members in serious crimes, including murder. No reasonable person in the declarants' position would have expected or intended that these statements be used in a criminal prosecution, and the statements therefore do not qualify as "testimonial." Indeed, the Supreme Court has expressly noted that such statements "made unwittingly to a Government informant" are "clearly nontestimonial." *Davis v. Washington*, 547 U.S. 813, 825 (2006) (citing *Bourjaily*, 483 U.S. at 181–84). *See also Brown v. Epps*, 686 F.3d 281, 287–89 (5th Cir. 2012) (holding that "statements unknowingly made to an undercover officer, confidential informant, or cooperating witness are not testimonial in nature because the statements are not made under circumstances which would lead an objective witness to reasonably believe that the statements would be available for later use at trial" (internal quotation marks omitted)); *id.* at 288 n.36 (collecting cases holding the same); *United States v. Hargrove*, 508 F.3d 445, 449 (7th Cir. 2007) ("In both *Crawford* and *Davis*, the Supreme Court specifically cited *Bourjaily*—which as here involved a

coconspirator's statements made to a government informant—to illustrate a category of nontestimonial statements that falls outside the requirements of the Confrontation Clause."). *Cf. Udeozor*, 515 F.3d at 270 ("Because Mr. Udeozor plainly did not think he was giving any sort of testimony when making his statements to the victim during the recorded telephone calls, the admission of these two taped conversations into evidence did not violate Dr. Udeozor's rights under the Confrontation Clause.").

Because the declarants' statements are non-testimonial, their admission does not violate the defendants' rights under the Confrontation Clause. *Crawford*, 541 U.S. at 68. Furthermore, because *Bruton* merely "espoused a prophylactic rule designed to prevent a specific type of Confrontation Clause violation," statements that "do not implicate the Confrontation Clause *a fortiori* do not implicate *Bruton*." *Dargan*, 738 F.3d at 651. Thus, the conclusion that the declarants' statements are non-testimonial "suffices to dispatch [any] *Bruton* argument as well." *Id*. *See also United States v. Clark,* 717 F.3d 790, 816 (10th Cir. 2013) ("[T]he *Bruton* rule, like the Confrontation Clause upon which it is premised, does not apply to nontestimonial hearsay statements." (citation and internal quotation marks omitted)). For these reasons, the Sixth Amendment poses no bar to the admission of the recorded statements at issue.

## CONCLUSION

For the reasons set forth above, the recorded statements the government intends to offer at trial for the truth of the matters asserted therein are admissible as statements against the declarants' penal interests as well as statements made in furtherance of a conspiracy.

Respectfully Submitted,

Dana J. Boente
United States Attorney

_____/s/_____
Stephen M. Campbell
Julia K. Martinez
Tobias D. Tobler
Assistant United States Attorneys
Counsel for the Government
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, VA 22314
(703) 299-3700
(703) 739-9556 (fax)

CERTIFICATE OF SERVICE

I hereby certify that on the 12th of February, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to counsel of record.

                                             /s/
                                     Tobias D. Tobler
                                     Assistant United States Attorney
                                     Justin W. Williams U.S. Attorney's Building
                                     2100 Jamieson Ave.
                                     Alexandria, VA 22314
                                     Tel: (703) 299-3700
                                     Fax: (703) 299-3981
                                     tobias.tobler@usdoj.gov