IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:14-CR-306 |
| v. | ) | |
| | ) | The Honorable Gerald Bruce Lee |
| PEDRO ANTHONY ROMERO CRUZ, *et al.* | ) | |
| | ) | Trial: March 21, 2016 |
| Defendants. | ) | |
| | ) | |

## GOVERNMENT'S PROPOSED JURY INSTRUCTIONS

The United States hereby proposes the attached jury instructions in the above-captioned

matter.  Pursuant to this Court's Final Pretrial Order, dated January 8, 2016, the government has

shared the attached instructions with the defendants, and the defendants have objected to them.

Respectfully Submitted,

Dana J. Boente
United States Attorney

_____/s/_____
Stephen M. Campbell
Julia K. Martinez
Tobias D. Tobler
Assistant United States Attorneys
Counsel for the Government
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, VA 22314
(703) 299-3700
(703) 739-9556 (fax)

## GOVERNMENT'S PROPOSED INSTRUCTION NO. A

Typewritten transcripts in English of recorded conversations in foreign language (*if applicable*)

During the trial, Spanish language recordings and English transcripts of those recordings were admitted in evidence.  You were provided English transcripts of the recordings so you could consider the contents of the recordings.

It is up to you to decide whether a transcript is accurate, in whole or in part.  You may consider the translator's knowledge, training, and experience, the nature of the conversation, and the reasonableness of the translation in light of all the evidence in the case.  You may not rely on any knowledge you may have of the Spanish language.  Rather, your consideration of the transcripts should be based on the evidence introduced in the trial.

(Fed. Crim. Jury Instr. 7th Cir., Instruction No. 3.15 (2012))

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. B

Specific investigative techniques not required

During the trial you have heard testimony of witnesses and argument by counsel that the government did not utilize specific investigative techniques.  You may consider these facts in deciding whether the government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty. However, you also are instructed that there is no legal requirement that the government use any specific investigative techniques to prove its case.   Law enforcement techniques are not your concern.

I am sure that at least one of you has seen the popular TV shows, CSI or Law & Order. The TV standards, and the capabilities of law enforcement as portrayed on TV and in the movies, do not apply here to this trial.  Witness testimony is sufficient to establish the charges in this case.  Specific investigative techniques, such as DNA and  fingerprints, are not required to be presented in order for you to find the defendant guilty of the charges in this case.  Please dismiss from your deliberations in consideration of the appropriate verdict in this case, any investigative techniques which you may have seen on TV or in the movies, as well as anything else about which there was no evidence.

Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proven beyond reasonable doubt.

(Adapted from 1 Sand, Siffert, Loughlin and Reiss, Modern Federal Jury Instructions, Instr. No. 14.4 (2001); *United States v. Mason*, 954 F.2d 219, 222 (4th Cir. 1992))

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. C

### Proof of knowledge or intent—Rule 404(b) Evidence (*if applicable*)

Evidence that an act was done or that an offense was committed by a defendant at some other time is not, of course, any evidence or proof whatever that, at another time, the defendant performed a similar act or committed a similar offense, including the offenses charged in this indictment.

Evidence of a similar act or offense may not be considered by the jury in determining whether a defendant actually performed the physical acts charged in this indictment.  Nor may such evidence be considered for any other purpose whatever, unless the jury first finds beyond a reasonable doubt from other evidence in the case, standing alone, that the defendant physically did the act charged in this indictment.

If the jury should find beyond a reasonable doubt from other evidence in the case that a defendant did the act or acts alleged in the particular count under consideration, the jury may then consider evidence as to an alleged earlier (or subsequent) act of a like nature in determining the state of mind or intent with which the defendant actually did the act or acts charged in the particular count.

The defendants are not on trial for any acts or crimes not alleged in the indictment.  Nor may a defendant be convicted of the crimes charged even if you were to find that he committed other crimes—even crimes similar to the one charged in this indictment.

(1A O'Malley, Grenig, and Lee, <u>Federal Jury Practice and Instructions</u>, § 17:08 (6th ed. 2008); <u>United States v. Mohr</u>, 318 F.3d 613, 617 (4th Cir. 2003))

4

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. D

Nature of the offense charged—Count One—
Conspiracy to commit murder in aid of racketeering

Count One of the Third Superseding Indictment charges that, at all times relevant to the indictment:

1.      The defendants, PEDRO ANTHONY ROMERO CRUZ, also known as "Payaso," JOSE LOPEZ TORRES, also known as "Grenas," also known as "Peluca," also known as "Peluquin," OMAR DEJESUS CASTILLO, also known as "Lil Payaso," also known as "Lil Slow," ALVIN GAITAN BENITEZ, also known as "Pesadilla," also known as "Lil Pesadilla," also known as "Lil Tuner," also known as "Tooner," also known as "Lil Tunnel," DOUGLAS DURAN CERRITOS, also known as "Lil Poison," also known as "Guason," CHRISTIAN LEMUS CERNA, also known as "Leopardo," also known as "Guepardo," also known as "Gatito," also known as "Bago," also known as "Vago," also known as "Christian Josue Lemus Alfaro," MANUEL ERNESTO PAIZ GUEVARA, also known as "Solitario," also known as "Colita," and JESUS ALEJANDRO CHAVEZ, also known as "Chuy," also known as "Taliban," also known as "Taliman," are members and associates of a criminal organization known as La Mara Salvatrucha or "MS-13."  MS-13 is a violent international street gang involved in a variety of criminal activities, including murder, obstruction of justice, drug trafficking, and sex trafficking, in the Eastern District of Virginia and elsewhere.

2.      MS-13 has operated in the Eastern District of Virginia since at least 1993.  MS-13 members and associates are located throughout the United States, including Virginia, Maryland, New York, and California.  MS-13 also has a large international presence in El Salvador, Guatemala, Honduras, and Mexico.

3.      MS-13 recruits members and associates predominantly from the Hispanic community, typically juveniles.  Recruits are "jumped in" to the gang by being physically beaten by members and associates while a member counts to 13.

4.      In order to protect the power, reputation, and territory of MS-13, members and associates are required to use violence, threats of violence, and intimidation.  These acts of violence often include murder and assault with deadly weapons.  MS-13 members and associates maintain and enhance their status in the gang by participating in such violent acts.

5.      MS-13 recruits are indoctrinated into MS-13 rules, which are ruthlessly enforced. One prominent rule encourages MS-13 members and associates to confront, fight, and kill rival gang members, known as "chavalas."   When an MS-13 member or associate encounters a chavala, he is to attack the chavala with anything available—from fists to machetes to firearms. In addition to attacking chavalas, MS-13 members and associates are required to aid other members who engage in fights.  If a member violates this rule, he may be subjected to a beating ("calentón") for failing to perform his duty.

6.      Another prominent MS-13 rule commands silence about gang activity and prohibits cooperation with law enforcement.  If a member violates this rule, gang leadership issues a "green light," which signals authorization to murder that member.  A civilian may also be the subject of a "green light" if the person is suspected of cooperating with law enforcement against the gang.  These murders are intended to deter others from challenging the authority and power of the gang.

7.      MS-13 is organized into local groups known as "cliques" that hold regular meetings to coordinate gang activities.  Each clique is run by the senior leader, who is designated the "First Word," and the second-in-command, who is designated the "Second Word."  The

general members of the gang are known as "soldiers" and take their orders from the "First Word" or the "Second Word."  The leaders of the respective cliques attend larger general meetings to manage gang operations on a regional and international level.  The Park View Locos Salvatruchas ("PVLS") is an MS-13 clique operating in Northern Virginia.

8.     MS-13 members must attend clique meetings that are held once or twice a month depending on the clique.  At each clique meeting, a member is usually required to pay dues to the clique leaders.  The money is used to finance clique activities, to provide support for clique members who are in jail, and to fund the MS-13 enterprise in El Salvador where many of the top gang leaders are based.

9.     To promote their gang identity, MS-13 members and associates often wear blue or white clothing, as well as clothing displaying the number "13" or numbers that total 13, such as "76."   MS-13 members and associates also often have tattoos reading "Mara Salvatrucha," "MS," or "MS-13" and mark their territory with graffiti displaying those names and symbols associated with the gang.  One such symbol is the MS-13 hand sign, meant to resemble both an inverted "M" and the face of the devil, with outstretched fingers representing the devil's horns.

## The Racketeering Enterprise

10.     MS-13, including its leaders, members, and associates, constitutes an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact which is engaged in, and the activities of which affect, interstate and foreign commerce.  MS-13 is an ongoing organization whose members and associates function as a continuing unit for a common purpose of achieving the objectives of the enterprise.

## Purposes of the Enterprise

11.     The purposes of the MS-13 enterprise include the following:

(a)     Preserving, expanding, and protecting the power, territory, and reputation of MS-13 through the use of violence, threats of violence, and intimidation;

(b)     Promoting and enhancing MS-13 and the activities of its members and associates by committing crimes, including, but not limited to, murder;

(c)     Keeping victims, potential victims, and community members in fear of MS-13 and its members and associates through violence, threats of violence, and intimidation;

(d)     Confronting and retaliating against rival gangs through the use of violence, threats of violence, and intimidation;

(e)     Hindering and obstructing efforts of law enforcement to identify, apprehend, and successfully prosecute offending gang members; and

(f)     Providing financial support and information to MS-13 members, including those incarcerated in the United States and El Salvador.

<u>Means and Methods of the Enterprise</u>

12.     Among the means and methods by which MS-13 members and associates conduct and participate in the affairs of the enterprise are the following:

(a)     MS-13 members and associates use violence, threats of violence, and intimidation to preserve, protect, and expand the enterprise's territory and activities and to enhance its prestige, reputation, and position in the community;

(b)     MS-13 members and associates promote a climate of fear through violence, threats of violence, and intimidation;

(c)     MS-13 members and associates use violence, threats of violence, and intimidation to discipline and punish members and associates who violate enterprise rules;

(d)     MS-13 members and associates use telephones to discuss gang-related business and to obtain approval for the use of violence to further the purposes of MS-13; and

(e)     MS-13 members and associates collect dues to send to MS-13 members incarcerated in the United States and El Salvador and to MS-13 leadership in El Salvador, in an effort to provide financial support to the enterprise;

13.     MS-13, through its members and associates, engages in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder and attempted murder, in violation of the laws of the Commonwealth of Virginia; acts indictable under Title 18, United States Code, Sections 1503 (obstruction of justice) and 2421 and 2422 (sex trafficking); and acts involving drug trafficking, in violation of Title 21, United States Code, Sections 841 and 846.

From on or about September 29, 2013, through on or about October 1, 2013, in Woodbridge, Virginia, within the Eastern District of Virginia, and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, defendants PEDRO ANTHONY ROMERO CRUZ, also known as "Payaso," and JOSE LOPEZ TORRES, also known as "Grenas," also known as "Peluca," also known as "Peluquin," together with others known and unknown to the grand jury, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other and others to murder D.F., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code Ann. §§ 18.2-32 and 18.2-18.

(In violation of Title 18, United States Code, Section 1959(a)(5).)

<u>GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. E</u>

<u>Statute defining the offense charged—Counts One, Two, Four, Six, and Seven</u>

Title 18, United States Code, Section 1959 provides, in pertinent part:

Whoever . . . for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders . . . or attempts or conspires so to do, shall be punished . . . .

(18 U.S.C. § 1959(a))

<u>GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. F</u>

<u>Essential elements of the offense—Count One</u>

Count One charges defendants PEDRO ANTHONY ROMERO CRUZ, a/k/a "Payaso," and JOSE LOPEZ TORRES, a/k/a "Grenas," a/k/a "Peluca," a/k/a "Peluquin," with a violent crime, that is, with conspiracy to commit murder in aid of racketeering.  To sustain its burden of proof against a charged defendant, the government must prove the following five essential elements beyond a reasonable doubt:

> One:    That, on or about the date charged in Count One of the indictment, an enterprise engaged in, or the activities of which affect, interstate or foreign commerce existed;

> Two:    That the enterprise was engaged in racketeering activity;

> Three:  That the defendant had a position in the enterprise;

> Four:   That the defendant knowingly and unlawfully conspired together and/or with others to murder D.F.; and

> Five:   That one of the defendant's purposes in doing so was to maintain or increase his position in the enterprise.

Please note that the first, second, third, and fifth elements of this charge are also elements of the racketeering charges in Counts Two, Four, Six, and Seven.  My instructions regarding these four elements, which I am about to provide to you, apply to all five of these racketeering counts.

(<u>United States v. Fiel</u>, 35 F.3d 997, 1003 (4th Cir. 1994); <u>United States v. Umana</u>, 750 F.3d 320, 334–35 (4th Cir. 2014); 18 U.S.C. § 1959)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. G

"Racketeering activity" defined—Counts One, Two, Four, Six, and Seven

The second element of the charges in Counts One, Two, Four, Six, and Seven requires the government to prove beyond a reasonable doubt that the enterprise was engaged in racketeering activity on or around the time charged in the indictment.  The RICO—or Racketeer Influenced and Corrupt Organizations—statute, Title 18 of the United States Code, Section 1961, defines the term "racketeering activity" to mean the commission of certain crimes, including murder, attempted murder, and conspiracy to commit murder in violation of the laws of the Commonwealth of Virginia, and sex trafficking and drug trafficking in violation of federal law.

It is for you to determine whether the enterprise engaged in these activities as charged. You should give the words "engaged in" their ordinary, everyday meaning.

*Murder*

In order for murder in violation of Virginia law to be considered a racketeering act, the government must prove to you beyond a reasonable doubt that the enterprise, through its members, committed, attempted, or conspired to commit murder.  Section 18.2-32 of Virginia Code defines murder to include first-degree and second-degree murder.  You may find that MS-13 engaged in racketeering activity if you find beyond a reasonable doubt that the enterprise engaged in first-degree *or* second-degree murder.

Section 18.2-32 of the Virginia Code defines first-degree murder to include any "willful, deliberate, and premeditated killing."   To prove first-degree murder, the government must establish beyond a reasonable doubt: (1) that the perpetrator killed a person; (2) that the killing was malicious; and (3) that the killing was willful, deliberate, and premeditated.

"Malice" is that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the

control of reason.  Malice may result from any unlawful or unjustifiable motive including anger, hatred or revenge.  Malice may be inferred from any deliberate, willful, and cruel act against another, however sudden.

"Malice" may be express or implied.  Express malice is evidenced when one kills another with a sedate, deliberate mind and formed design.  Implied malice exists when any purposeful, cruel act is committed by one individual against another without any, or without great provocation.  You may infer malice from the perpetrator's wanton and reckless indifference to human life.  You may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed.  A "deadly weapon" is any object or instrument, not part of the human body, that is likely to cause death or great bodily injury because of the manner and under the circumstances in which it is used.

"Willful, deliberate, and premeditated" means a specific intent to kill, adopted at some time before the killing, but which need not exist for any particular length of time.  An intent to kill may be formed only a moment before the fatal act is committed provided the perpetrator had time to think and did intend to kill.

To prove second-degree murder, defined by Section 18.2-32 of Virginia Code, the government must establish beyond a reasonable doubt: (1) that the perpetrator killed a person; and (2) that the killing was malicious.  Once the government has proved that there was an unlawful killing, you are entitled to infer that there was malice and that the act was murder in the second degree unless, from all the evidence, there is reasonable doubt as to whether malice existed.

An *attempt* to commit either first-degree or second-degree murder also constitutes a racketeering act.   To prove attempt under Virginia law, the government must prove that the

14

perpetrator intended to commit a crime, and took a direct act toward the commission of that crime. The intent required to be proved in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged. In determining whether the intent has been proved, you may consider the conduct of the person involved and all the circumstances revealed by the evidence.

The direct act required to be proved in an attempted crime is an act which shows a present intention to commit the crime. The act need not be the last act prior to the actual commission of the crime, but it must be more than mere preparation. It is not a defense to attempted murder that a perpetrator voluntarily withdrew before actually committing the murder or that some other person or thing prevented the murder from being committed.

Like attempt to commit murder, conspiracy to commit murder also constitutes a racketeering act. To prove conspiracy to commit murder in violation of Virginia law, the government must prove: (1) that the perpetrator entered into an agreement with one or more other persons; (2) that the agreement was that they were to commit murder; and (3) that both the perpetrator and at least one other party to the agreement intended to commit murder.

The existence of an agreement may be inferred from the actions or conduct of the parties. It is not necessary that the perpetrator actually commit murder or attempt to commit murder to be guilty of the crime of conspiracy. Withdrawal from the agreement or change of mind is no defense to the crime of conspiracy.

In addition to the crimes charged in Counts One, Two, Four, Six, and Seven of the indictment, the government has presented evidence to prove that the following constitutes a racketeering act of murder: the murder of a juvenile male by Osmin Alfaro-Fuentes on or about May 16, 2004.

If you find beyond a reasonable doubt that MS-13, through its members, engaged in any of the above described acts or threats constituting murder, attempted murder, or conspiracy to commit murder under Virginia law, as I have just defined those crimes, then you may find this racketeering act established.

The government does not allege, and no evidence has been introduced to suggest, that the defendants participated in the murder of the juvenile male on or about May 16, 2004.  Rather, the government has offered this evidence to prove that the alleged enterprise, MS-13, was engaged in racketeering activity.  You may only consider this particular act of murder as evidence of MS-13's having engaged in racketeering activity.  You may not consider such crimes as proof in any way of the particular crimes charged in Counts One through Nine of the indictment.

*Narcotics trafficking*

Racketeering activity also includes the felonious buying, selling, or otherwise dealing of a controlled substance.  Distribution or possession with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), constitutes racketeering activity.  Cocaine, marijuana, heroin, and methamphetamine are controlled substances.  If you find beyond a reasonable doubt that MS-13, through its members, engaged in the trafficking of a controlled substance, as I have just defined that crime, then you may find this racketeering act established.

The government has offered evidence of narcotics trafficking to prove that the enterprise, MS-13, was engaged in racketeering activity and to prove that the enterprise engaged in or had an effect on interstate commerce.  Drug dealing is an inherently economic enterprise that affects interstate commerce.  You may consider the government's evidence of narcotics trafficking for

these purposes only.  You may not consider such crimes as proof in any way of the particular crimes charged in Counts One through Nine of the indictment.

*Sex trafficking*

Racketeering activity also includes any act in violation of Tile 18, United States Code, Sections 2421 and 2422 relating to transportation for illegal sexual activity.  Section 2421 prohibits knowingly transporting any individual in interstate or foreign commerce, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense.  Section 2422 prohibits knowingly persuading, inducing, enticing, or coercing any individual to travel in interstate or foreign commerce, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense.  If you find beyond a reasonable doubt that MS-13, through its members, engaged in violations of Title 18, United States Code, Section 2421 or 2422, then you may find this racketeering act established.

The government has offered evidence of sex trafficking crimes to prove that the enterprise, MS-13, was engaged in racketeering activity and to prove that the enterprise engaged in or had an effect on interstate commerce.  You may only consider the government's evidence of sex trafficking for these purposes only.  You may not consider such crimes as proof in any way of the particular crimes charged in Counts One through Nine of the indictment.

(18 U.S.C. § 1961(1); 18 U.S.C. §§ 2421–22; 21 U.S.C. § 841; 2B O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions, § 56.06 (6th ed. 2008); Va. Code Ann. §§ 18.2-22, 18.2-26, 18.2-32; Virginia Model Jury Instructions (Criminal) (4th ed. 2003), Instr. No. 8.100, 8.120, 8.140, 8.160, 14.100, 14.150, 14.200, 14.260, 33.200A, 33.220, 33.240, 33.260, 33.300, 33.320; Essex v. Commonwealth, 322 S.E.2d 216, 220, 222 (Va. 1984); Stewart v. Commonwealth, 427 S.E.2d 394, 407 (Va. 1993); United States v. Williams, 342 F.3d 350, 355 (4th Cir. 2003))

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. H

Position in the racketeering enterprise—Counts One, Two, Four, Six, and Seven

The third element of the charges in Counts One, Two, Four, Six, and Seven requires the government to prove beyond a reasonable doubt that the defendant held a position in the racketeering enterprise.

"Position" is to be given its ordinary meaning, and is not limited to the meaning the enterprise itself may have used.  For example, you have heard testimony that there are certain requirements to becoming a member of La Mara Salvatrucha, or MS-13.  It is not necessary, under the statute, for a defendant to have been made a member of Mara Salvatrucha, or MS-13, or to have aspired for membership.  Rather, it is sufficient to find a defendant had a position in the enterprise if you find that he knowingly and willfully associated himself with the enterprise. That is, he must be connected to the enterprise in some meaningful way and have knowledge of the existence of the enterprise through a general awareness of some of its purposes, activities, and personnel.

A defendant need not have been associated with the enterprise for the entire period of its existence, but a defendant must have been associated with the enterprise at the time he committed the crime charged.

(United States v. Fernandez, 388 F.3d 1199, 1231 (9th Cir. 2004); United States v. Brady, 26 F.3d 282, 289–90 (2d Cir. 1994); Mod. Crim. Jury Instr. 3d Cir., Instr. No. 6.18.1962C-4 (2012); Pattern Crim. Jury Instr. 10th Cir., Instr. No. 2.76.4 (2011))

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. I

### The violent crime—Count One

The fourth element of the charge in Count One requires the government to prove beyond a reasonable doubt that defendants PEDRO ANTHONY ROMERO CRUZ, a/k/a "Payaso," and JOSE LOPEZ TORRES, a/k/a "Grenas," a/k/a "Peluca," a/k/a "Peluquin," unlawfully and knowingly conspired together to murder D.F.  To sustain its burden of proof against a defendant charged with this crime, the government must prove the following three essential elements beyond a reasonable doubt:

One:    The conspiracy, agreement, or understanding to commit murder, as described in the indictment, was formed, reached, or entered into by two or more persons;

Two:    At some time during the existence or life of the conspiracy, agreement, or understanding, the defendant knew the purpose(s) of the agreement; and

Three:  With knowledge of the purpose(s) of the conspiracy, agreement, or understanding, the defendant then deliberately joined the conspiracy, agreement, or understanding.

(2 O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions, § 31:03 (6th ed. 2008))

<u>GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. J</u>

<u>Purpose to Maintain/Increase Position in Enterprise—Counts One, Two, Four, Six, and Seven</u>

The fifth element of each of the charges in Counts One, Two, Four, Six, and Seven of the indictment require that the government prove beyond a reasonable doubt that at least one of the defendant's purposes in committing the violent crimes alleged in each count was to maintain or increase his position in the racketeering enterprise.

In determining whether a defendant's purpose was to "maintain" or "increase" his position in the enterprise, you should give those words their ordinary meaning. You should consider all of the facts and circumstances in making that determination. For example, you may consider what, if any, position a defendant held in the enterprise, and the extent, if at all, commission of the alleged crimes served to maintain, uphold or enhance his position within the enterprise.

You need *not* find that maintaining or increasing position in the enterprise was the defendant's sole or even principal motive. It is sufficient if you find that a defendant committed violent crimes because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership.

In deciding what a defendant's "purpose" was in committing a particular act, you must determine what he had in mind. Since one cannot look into a person's mind, you must determine his purpose by considering all of the facts and circumstances before you.

(<u>United States v. Tipton</u>, 90 F.3d 861, 891 (4th Cir. 1996); <u>United States v. Fiel</u>, 35 F.3d 997, 1004 (4th Cir. 1994); <u>United States v. Concepcion</u>, 983 F.2d 369, 381 (2d Cir. 1992); <u>United States v. Thai</u>, 29 F.3d 785, 817 (2d Cir. 1994); <u>Pattern Crim. Jury Instr. 5th Cir.</u>, Instr. No. 2.78 (2015))

20

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. K

Aiding and abetting explained—Counts Two, Three, Four, Six, and Seven

Counts Two, Three, Four, Six, and Seven of the indictment charge defendants with "aiding and abetting" the offenses charged within those counts.  A person may violate the law even though he or she does not personally do each and every act constituting the offense if that person "aided and abetted" the commission of the offense.

Section 2(a) of Title 18 of the United States Code provides:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Before a defendant may be held responsible for aiding and abetting others in the commission of a crime, it is necessary that the government prove beyond a reasonable doubt that the defendant knowingly and deliberately associated himself in some way with the crime charged and participated in it with the intent to commit the crime.

To sustain its burden of proof against a defendant for aiding and abetting the commission of a crime, the government must prove beyond a reasonable doubt:

One:    That the defendant knew that the crime charged was to be committed or was being committed;

Two:    That the defendant knowingly did some act for the purpose of aiding, commanding, or encouraging the commission of that crime; and

Three: That the defendant acted with the intention of causing the crime charged to be committed.

Before a defendant may be found guilty as an aider or an abettor to the crime, the government must also prove, beyond a reasonable doubt, that some person or persons committed each of the essential elements of the offense charged as detailed for you in these instructions.

Merely being present at the scene of the crime or merely knowing that a crime is being committed or is about to be committed is not sufficient conduct for the jury to find that a defendant aided and abetted the commission of that crime.

The government must prove that the defendant knowingly associated himself with the crime in some way as a participant—someone who wanted the crime to be committed—not as a mere spectator.

(1A O'Malley, Grenig, and Lee, <u>Federal Jury Practice and Instructions</u>, § 18:01 (6th ed. 2008))

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. L

Essential elements of the offense—Count Three

Count Three charges defendants PEDRO ANTHONY ROMERO CRUZ, a/k/a "Payaso," and JOSE LOPEZ TORRES, a/k/a "Grenas," a/k/a "Peluca," a/k/a "Peluquin," with possession of a firearm in furtherance of a crime of violence.  To sustain its burden of proof against a defendant for this crime, the government must prove the following essential elements beyond a reasonable doubt:

One:   That the defendant committed a crime of violence; and

Two:   That the defendant knowingly possessed a firearm in furtherance of this crime.

(18 U.S.C. § 924(c)(1)(A); United States v. Reed, 780 F.3d 260, 272 (4th Cir. 2015))

23

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. M

"Crime of violence"—Defined

The term "crime of violence" means an offense that is a felony and has as one of its essential elements the use, attempted use, or threatened use of physical force against the person or property of another, or an offense that by its very nature involves a substantial risk that such physical force may be used in committing the offense.

The offenses charged in Count One and Count Two are crimes of violence.

(2A O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions, § 39:19 (6th ed. 2008))

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. N

"In furtherance of"—Defined

Possession "in furtherance of" means for the purpose of assisting in, promoting, accomplishing, advancing, or achieving the goal or objective of a crime of violence.

Mere presence of a firearm at the scene is not enough to find possession in furtherance of a crime of violence.  The firearm's presence may be coincidental or entirely unrelated to the underlying crime.  Some factors that may help you determine whether possession of a firearm furthers a crime of violence include, but are not limited to:

1. the type of criminal activity that is being conducted;

2. accessibility of the firearm;

3. the type of firearm;

4. whether the firearm is stolen;

5. whether the defendant possesses the firearm legally or illegally;

6. whether the firearm is loaded; and

7. the time and circumstances under which the firearm is found;

(Mod. Crim. Jury Instr. 3d Cir., Instr. No. 6.18.1962A-1 (2012); United States v. Howard, 773 F.3d 519, 527 (4th Cir. 2014))

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. O

### Responsibility for substantive offense—Count Three

A member of a conspiracy who commits another crime during the existence or life of a conspiracy and commits this other crime in order to further or somehow advance the goal(s) or objective(s) of the conspiracy may be considered by you to be acting as the agent of the other members of the conspiracy. The illegal actions of this conspirator in committing this other crime may be attributed to other individuals who are then members of the conspiracy. Under certain conditions, therefore, a defendant may be found guilty of this other crime even though he or she did not participate directly in the acts constituting that offense.

If you find that the government has proven defendant PEDRO ANTHONY ROMERO CRUZ, a/k/a "Payaso," and/or defendant JOSE LOPEZ TORRES, a/k/a "Grenas," a/k/a "Peluca," a/k/a "Peluquin," guilty of conspiracy beyond a reasonable doubt, as charged in Count One of the indictment, you may also find that defendant guilty of the crime alleged in Count Three of the indictment, provided you find that the essential elements of that count as defined in these instructions have been established beyond reasonable doubt and, provided further, that you also find beyond reasonable doubt, that

One:    The substantive offense of possession of a firearm in furtherance of a crime of violence as described in Count Three of the indictment was committed by a member of the conspiracy as detailed in Count One of the indictment;

Two:    The substantive crime charged in Count Three of the indictment was committed during the existence or life of and in furtherance of the goal(s) or objective(s) of the conspiracy detailed in Count One of the indictment; and

Three:  At the time that this offense was committed, the defendant was a member of the conspiracy detailed in Count One of the indictment.

(2 O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions, § 31:10 (6th ed. 2008))

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. P

Essential elements of the offense—Count Six

Count Six charges defendants OMAR DEJESUS CASTILLO, a/k/a "Lil Payaso," a/k/a "Lil Slow," ALVIN GAITAN BENITEZ, a/k/a "Pesadilla," a/k/a "Lil Pesadilla," a/k/a "Lil Tuner," a/k/a "Tooner," a/k/a "Lil Tunnel," DOUGLAS DURAN CERRITOS, a/k/a "Lil Poison," a/k/a "Guason," CHRISTIAN LEMUS CERNA, a/k/a "Leopardo," a/k/a "Guepardo," a/k/a "Gatito," a/k/a "Bago," a/k/a "Vago," a/k/a "Christian Josue Lemus Alfaro," and MANUEL ERNESTO PAIZ GUEVARA, a/k/a "Solitario," a/k/a "Colita," with a violent crime, that is, murder in aid of racketeering.  To sustain its burden of proof against a defendant for this crime, the government must prove the following essential elements beyond a reasonable doubt:

One:   That, on or about the date charged in Count Six of the indictment, an enterprise engaged in, or the activities of which affect, interstate or foreign commerce existed;

Two:   That the enterprise was engaged in racketeering activity;

Three: That the defendant had a position in the enterprise;

Four:  That the defendant knowingly and unlawfully murdered, or aided and abetted the murder of, Gerson Adoni Martinez Aguilar; and

Five:  That one of the defendant's purposes in doing so was to maintain or increase his position in the enterprise.

As I mentioned before, the first, second, third, and fifth elements of this count are also elements of the racketeering charges in Counts One, Two, Four, and Seven.  My prior instructions regarding these four elements apply to all five of these counts, including the present count.  My prior instructions regarding the definition of murder under Virginia law and the federal law of aiding and abetting also apply to the fourth element of the present count.

(United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994); United States v. Umana, 750 F.3d 320, 334–35 (4th Cir. 2014); 18 U.S.C. § 1959)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. Q

Essential elements of the offense—Count Seven

Count Seven charges defendant JESUS ALEJANDRO CHAVEZ, a/k/a "Chuy," a/k/a "Taliban," a/k/a "Taliman," with a violent crime, that is, murder in aid of racketeering.  To sustain its burden of proof against the defendant for this crime, the government must prove the following essential elements beyond a reasonable doubt:

One:    That, on or about the date charged in Count Seven of the indictment, an enterprise engaged in, or the activities of which affect, interstate or foreign commerce existed;

Two:    That the enterprise was engaged in racketeering activity;

Three:  That the defendant had a position in the enterprise;

Four:   That the defendant knowingly and unlawfully murdered, or aided and abetted the murder of, Julio Urrutia; and

Five:   That one of the defendant's purposes in doing so was to maintain or increase his position in the enterprise.

As I mentioned before, the first, second, third, and fifth elements of this count are also elements of the racketeering charges in Counts One, Two, Four, and Six.  My prior instructions regarding these four elements apply to all five of these counts, including the present count.  My prior instructions regarding the definition of murder under Virginia law and the federal law of aiding and abetting also apply to the fourth element of the present count.

(United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994); United States v. Umana, 750 F.3d 320, 334–35 (4th Cir. 2014); 18 U.S.C. § 1959)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. R

Essential elements of the offense—Count Eight

Count Eight charges defendant JESUS ALEJANDRO CHAVEZ, a/k/a "Chuy," a/k/a "Taliban," a/k/a "Taliman," with causing the death of another through the use of a firearm during and in relation to a crime of violence.  To sustain its burden of proof against the defendant for this crime, the government must prove the following essential elements beyond a reasonable doubt:

One:   The defendant committed a crime of violence;

Two:   During and in relation to the commission of this crime of violence, the defendant knowingly used or carried a firearm; and

Three: The defendant used the firearm to murder Julio Urrutia; that is, the defendant used the firearm to kill Julio Urrutia and did so with malice aforethought.

My prior instructions regarding the definitions of a "crime of violence" and "firearm" apply to this count.

Murder in aid of racketeering is a crime of violence.  Therefore, if you find the defendant committed murder in aid of racketeering, as charged in Count Seven, the first element of Count Eight is satisfied.

(United States v. Reid, 523 F.3d 310, 317–18 (4th Cir. 2008); 18 U.S.C. § 1111)

29

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. S

"Malice aforethought"—Defined

As used in these instructions, the term "malice aforethought" means either to kill another person deliberately and intentionally or to act with callous and wanton disregard for human life.

(2A O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions, § 45:16 (6th ed. 2008))

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. T

Nature of the offense charged—Count Nine—Felon in possession of a firearm

Count Nine of the Third Superseding Indictment charges that:

On or about June 19, 2014, in the City of Alexandria, within the Eastern District of Virginia, defendant JESUS ALEJANDRO CHAVEZ, also known as "Chuy," also known as "Taliban," also known as "Taliman," having been convicted on or about April 10, 2009, of a crime punishable by imprisonment for a term exceeding one year, to wit: robbery in violation of Va. Code Ann. § 18.2-58, knowingly possessed a firearm in and affecting interstate commerce, said firearm having been shipped and transported in interstate commerce.

(In violation of Title 18, United States Code, Section 922(g)(1).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. U

"Crime punishable by imprisonment for a term exceeding one year"—Defined

The phrase "crime punishable by imprisonment for a term exceeding one year" generally means a crime which is a felony.  The phrase does not include any state offense classified by the laws of that state as a misdemeanor and punishable by a term of imprisonment of two years or less and certain crimes concerning the regulation of business practices.

I hereby instruct you that the crime of robbery is a crime in the Commonwealth of Virginia punishable by imprisonment for a term exceeding one year as that phrase is used in these instructions.

(2A O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions, § 39:10 (6th ed. 2008))

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. V

Evidence of Prior Conviction

I previously instructed you that evidence of a defendant's previous conviction of a crime may be considered by the jury only insofar as it may affect the credibility of the defendant as a witness and must never be considered as any evidence of his guilt of the crime for which the defendant is now on trial. A limited exception to this rule applies with respect to Count Nine of the indictment.

You have heard evidence that the defendant JESUS ALEJANDRO CHAVEZ, a/k/a "Chuy," a/k/a "Taliban," a/k/a "Taliman," was previously convicted in the Commonwealth of Virginia of a crime punishable by imprisonment for a term exceeding one year. This prior conviction was brought to your attention only because it tends to establish one of the elements of the crime of possession of a firearm by a convicted felon as set forth in the indictment. You may not consider this prior conviction in deciding whether the defendant was in knowing possession of the firearm that he is charged in this case with possessing, which is a disputed issue in this case.

The fact that the defendant was found guilty of another crime on another occasion does not mean that he committed the crimes charged in the indictment, and you must not use his guilt of the other crime as proof of the crime charged in this case except for the one element of this crime which I have mentioned. You may find the defendant guilty of this crime only if the government has proved beyond a reasonable doubt all of the elements of this crime.

[In addition, as I instructed you during trial, you may consider evidence of this defendant's prior conviction as proof of the defendant's motive, intent, and/or identity with respect to the crimes for which he is charged in Counts Seven, Eight, and Nine.]

(<u>Mod. Crim. Jury Instr. 3d Cir.</u>, Instr. No. 6.18.922-3 (2012) (modified); Fed. R. Evid. 404(b))

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th of March, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to counsel of record.

_____ /s/ _____

Tobias D. Tobler
Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3700
Fax: (703) 299-3981
tobias.tobler@usdoj.gov