IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:14-CR-306 |
| v. ) | |
| ) | The Honorable Gerald Bruce Lee |
| PEDRO ANTHONY ROMERO CRUZ, *et al.* ) | |
| ) | Trial Date: March 21, 2016 |
| Defendants. ) | |
| ) | |

GOVERNMENT'S MOTION FOR ADMISSION OF
REDACTED TRANSCRIPTS AND FOR JURY AND WITNESS INSTRUCTIONS

The United States of America, by and through its attorneys, Dana J. Boente, United States Attorney, Stephen M. Campbell, Julia K. Martinez, and Tobias D. Tobler, Assistant United States Attorneys, hereby moves for admission of redacted transcripts and for instructions relating to this Court's order dated March 8, 2016, Dkt. No. 736.  In the order, the Court excluded "any evidence that Defendants Romero Cruz and Lemus Cerna participated in the murder of Nelson Omar Quintanilla Trujillo."  *Id.* at 6.  The government has several recorded calls in which defendant Lemus Cerna, a/k/a Leopardo, a/k/a Bago, a/k/a Vago, a/k/a Gatito, discusses both the murder of Quintanilla Trujillo and the murder of Gerson Adoni Martinez Aguilar.  In addition, the government has a video in which Lemus Cerna discusses both murders and leads an FBI Confidential Human Source ("CHS") to the locations in which the bodies were buried.[1]  These recordings contain crucial evidence regarding Lemus Cerna's guilt as to Count Six and the FBI's recovery of the two bodies.  The government submits that it should be

---

[1] All of these recordings were produced to defendants long ago in discovery.  Verbatim English transcripts of these recordings and others the government intends to offer as evidence at trial were provided to defendants on March 3, 2016.

permitted to use those portions of the transcripts of recordings that do not violate the Court's order.

Accordingly, the government respectfully submits the attached proposed redactions to transcripts of recordings the government seeks to admit as evidence. The government also proposes instructions to the jury and witnesses relating to anticipated testimony regarding Quintanilla Trujillo's murder.

## PROPOSED REDACTIONS TO TRANSCRIPTS

As the Court is aware, the government intends to introduce at trial transcripts of recorded calls and conversations between various defendants and an FBI CHS. Pursuant to the Court's March 8, 2016 order, the government has reviewed and redacted these transcripts to omit evidence of Romero Cruz's and Lemus Cerna's participation in Quintanilla Trujillo's murder. The government's proposed redactions appear highlighted in the exhibits attached to this motion.[2]

Recorded telephone calls and cooperator testimony adduced at trial will demonstrate that, following Quintanilla Trujillo's murder in Holmes Run Park, Defendants Gaitan Benitez, Lemus Cerna, and others dug up Quintanilla Trujillo's body and moved it to another location within the park. These facts form the basis for Count Five of Third Superseding Indictment, charging Gaitan Benitez with accessory after the fact. Defendants Gaitan Benitez, Lemus Cerna, Duran

---

[2] Defendant Duran Cerritos, a/k/a Lil Poison, a/k/a Guason, was a juvenile at the time of the Quintanilla Trujillo murder. Duran Cerritos was charged in Count Four with this crime, but he has moved to dismiss the charge, citing *Miller v. Alabama*, 132 S. Ct. 2455 (2012). Dkt. No. 358. The Court has taken Duran Cerritos's motion under advisement, pending the Fourth Circuit's resolution of *United States v. Under Seal*, 15-4265. Dkt. No. 482. Should the Court ultimately dismiss this count against Duran Cerritos, the government presumes that the Court's reasoning in its March 8, 2016 Order, Dkt. No. 736, would apply as well to this defendant. For this reason, the government has also proposed the redaction of references to Duran Cerritos's participation in the Trujillo murder. If the Court were to deny Duran Cerritos's motion, the government would retract any proposed redactions relating to Duran Cerritos.

Cerritos, Paiz Guevara, DeJesus Castillo, and others subsequently murdered Gerson Adoni Martinez Aguilar, and buried him elsewhere in the same park. These facts substantiate Count Six of the Third Superseding Indictment, charging these defendants with murder in aid of racketeering.

On May 15, 2014—after both murders and after the gang had moved Quintanilla Trujillo's body—Lemus Cerna walked with the CHS through Holmes Run Park and showed him the precise burial locations of the two murder victims. Lemus Cerna also showed the CHS the place where the gang originally buried Quintanilla Trujillo before moving him. The CHS captured audio and video recordings of these events through the use of a surreptitious body wire. Redacted transcripts of the pertinent portions of these recordings are attached. *See* Ex. 8, at 10–13 (Lemus Cerna identifying location of Quintanilla Trujillo's and Martinez Aguilar's bodies); Ex. 9, at 1–11 (at location of Quintanilla Trujillo's body).[3]

As reflected in the proposed redactions, the government submits that evidence of Lemus Cerna's participation in moving Quintanilla Trujillo's body weeks after Quintanilla Trujillo's murder *is admissible*, even though Lemus Cerna's participation in the murder is not. Evidence that Lemus Cerna helped moved Quintanilla Trujillo is essential because it provides an explanation to the jury as to *how* Lemus Cerna knew the location of Quintanilla Trujillo's body (as the jury will not hear that Lemus Cerna participated in Quintanilla Trujillo's murder and initial burial). As explained below, Lemus Cerna's knowledge of Quintanilla Trujillo's ultimate burial location provides a critical link in the government's evidentiary chain because Lemus

---

[3] The evidence at trial will demonstrate that defendants and witnesses, including Lemus Cerna and the CHS, referred to Trujillo as "Lagrima," "the chicken," "the big chicken," "the hen," and "the big hen." Speakers refer to him by these names alternately in the transcripts. The evidence will further show that defendants and witnesses referred to Aguilar as "Lil' Guason," "the little chicken," and "the little hen." Speakers refer to him by these names alternately in the transcripts as well.

Cerna later conveyed information regarding Quintanilla Trujillo's location to the CHS, which led directly to the recovery of the victim's body.

Evidence that Lemus Cerna knew the location of Quintanilla Trujillo's body and conveyed this information to the CHS is a key aspect of the government's presentation to the jury. As the testimony of government witnesses will establish, after Lemus Cerna identified the location of the victims' bodies, the CHS alerted law enforcement authorities. With the CHS's information and the recordings from the body wire, investigators were able to find and excavate the bodies.

Naturally, the victims' bodies are significant evidence in the case against the defendants. But without evidence that Lemus Cerna knew the location of Quintanilla Trujillo's body and that he shared this information with the CHS, the government could not elucidate for the jury how investigators recovered the victim's remains. This gap in the narrative of the criminal investigation would both undermine the government's presentation of its case and potentially confuse jurors. *See United States v. Gougis*, 432 F.3d 735, 742 (7th Cir. 2005) (Instances of uncharged conduct admissible when "they complete the story of the crime on trial; their absence would create a chronological or conceptual void in the story of the crime; or they are so blended or connected that they incidentally involve, explain the circumstances surrounding, or tend to prove any element of, the charged crime.")

Moreover, as the transcripts make clear, the discussions between Lemus Cerna and the CHS regarding Quintanilla Trujillo's burial locations are intertwined with their discussions of Martinez Aguilar's murder and burial. Lemus Cerna and the CHS, as captured in audio and video recordings, physically visited the burial sites on the *same* day during the *same* excursion. Thus, evidence of Lemus Cerna's knowledge of the Quintanilla Trujillo site is closely bound

with evidence of Lemus Cerna's knowledge regarding Aguilar. Indeed, during their walk through Holmes Run Park, Lemus Cerna and the CHS repeatedly referred to the victims' graves collectively. *See* Ex. 8, at 1 ("So—so are the little chickens where they were, man?"); *id.* at 12 ("You wanted to see the chickens."); Ex. 9, at 7 ("I do want to stand on the chickens, dude.").

Likewise, in recorded calls, Lemus Cerna and the CHS repeatedly reference the locations of both victims' bodies in an entwined manner. In a call from May 12, 2014, for instance (after Quintanilla Trujillo's body had been moved from its original grave), Lemus Cerna described the location of the bodies relative to a nearby home, prompting CHS to ask, "[S]o if those dudes from the houses go down, they pass right on top those homies, man?" Lemus Cerna replied, "Right." *See also* Ex. 6, at 1 (Lemus Cerna stating, "I wish it was just those two, dog. The homeboys have left there, skeletons of other cliques too."). It is therefore impossible to excise all references to Lemus Cerna's knowledge of the *location* of Quintanilla Trujillo's body without also depriving the government of critical evidence regarding Lemus Cerna's complicity in Martinez Aguilar's murder.

The possibility that evidence of Lemus Cerna's participation in moving Quintanilla Trujillo's body could unfairly prejudice the defendant does not outweigh its significant probative value. At trial, the jurors will hear extensive evidence of Quintanilla Trujillo's murder as proof against the defendants charged with this crime. Moreover, the jury will also receive extensive evidence regarding two other brutal murders (including a murder for which Lemus Cerna is charged). As the Fourth Circuit has recognized, evidence of uncharged acts—even evidence of brutal and deplorable behavior—poses a reduced risk of unfair prejudice where the jury will hear similar evidence regarding the charged offenses. *United States v. Van Metre*, 150 F.3d 339, 351 (4th Cir. 1998). Indeed, the Fourth Circuit has regularly admitted evidence of uncharged

murders against Rule 403 challenges.  *See e.g.*, *United States v. Barefoot*, 754 F.3d 226, 237 (4th Cir. 2014) (upholding district court determination that probative value of defendant's participation in uncharged murder was not substantially outweighed by risk of unfair prejudice); *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (same); *United States v. Myers*, 280 F.3d 407, 413–14 (4th Cir. 2002) (same); *United States v. Melton*, 970 F.2d 1328, 1336 (4th Cir. 1992) (same).  Evidence that Lemus Cerna helped move Quintanilla Trujillo's body is far less incendiary than evidence that he committed an additional murder and in no way implies his involvement in the murder itself.  Rule 403 should therefore pose no bar to its admission.

For the foregoing reasons, the government submits that evidence of Lemus Cerna's participation in moving Quintanilla Trujillo's body weeks after Quintanilla Trujillo's murder is admissible.  In addition, the government respectfully requests that the Court instruct the jury that it should draw no inference from the redactions appearing in the transcripts.

## INSTRUCTIONS RELATING TO COOPERATOR TESTIMONY

Three cooperating defendants who were present at Quintanilla Trujillo's murder will testify at trial.  But for the Court's ruling, each of these three cooperating defendants would testify that Lemus Cerna and Duran Cerritos participated in Quintanilla Trujillo's murder.  Each would also testify that Duran Cerritos was the first attacker to stab the victim.

The Court's order requires each cooperating defendant to withhold those portions of his account that incriminate either Lemus Cerna or, potentially, Duran Cerritos.  *See* Note 1, *supra*.  This raises several complications.  All three cooperating defendants have pled guilty to crimes that carry mandatory life sentences.  Their plea agreements require them to testify with complete truthfulness to have any opportunity for a sentencing reduction.  The government has reminded the cooperating defendants of these obligations repeatedly.  The cooperating defendants have, in

turn, expressed their understanding that they must tell the *complete* truth for any hope of a reduced sentence.

Clearly, the cooperating defendants must now receive additional instruction to ensure they do not name two of the defendants who they would otherwise testify participated in Quintanilla Trujillo's killing. These cooperating defendants were born in other countries, do not speak English, and are not well-educated. Explaining to them what they are now *not* allowed to say during their testimony, while also assuring them that the Court and the government will not view such omissions as lies, will be challenging to say the least.

And to complicate matters, several of the government's cooperating defendants are not readily available to the government due to the circumstances of their incarceration. The government is not assured of another opportunity to meet with these cooperating defendants between now and their trial testimony.

In addition, requiring the cooperating defendants to omit mention of Duran Cerritos's and Lemus Cerna's participation in Quintanilla Trujillo's murder may prevent the government from eliciting a cogent explanation of how the crime transpired. Again, Duran Cerritos was the first of the group to stab the victim—a critical fact that features prominently in each witness's account of the killing, and is corroborated by the recorded calls. *See* Exhibit 1, at 19; Exhibit 6, at 11–12. Eliciting testimony regarding the murder that does *not* describe how the crime *began* will at best be awkward and confusing to both the cooperating defendants and the jury. Moreover, barring the cooperating defendants from mentioning that Lemus Cerna and Duran Cerritos participated in the crime deprives the government of the corroborative value of the cooperating defendants' testimony on key points upon which they agree, *e.g.*, Duran Cerritos's role as initial aggressor and the identity of the participants in the murder.

To address these issues, the government respectfully proposes the following measures:

- First, prior to each affected cooperating defendant's testimony, the government should be given an opportunity to privately meet with the cooperating defendant, relay the Court's order, and instruct the cooperating defendant to refer to Duran Cerritos and Lemus Cerna by pseudonyms such as "Homeboy One" and "Homeboy Two" when discussing the Quintanilla Trujillo murder only.

- Second, after the government has met with the cooperating defendant, the Court should provide a similar instruction on the record. The government requests that the Court specifically assure the cooperating defendant that the use of pseudonyms will not be viewed by the Court as dishonest or a violation of the cooperating defendant's plea agreement.

- Third, prior to the cooperating defendant's testimony, the Court should instruct the jury that it has instructed the cooperating defendant to refer to a particular individual, known to the cooperating defendant, by a pseudonym (*e.g.*, "Homeboy One") and a second particular individual, also known to the cooperating defendant, by another pseudonym (*e.g.*, "Homeboy Two"). The Court should further instruct the jury that it is to draw no inferences from the use of the pseudonyms. For each following cooperating defendant, the Court should explain to the jurors that it has instructed the witness to refer to the *same* particular individuals by the same pseudonyms as did the prior cooperating defendant.

The government submits that these measures will help ensure compliance with the Court's order while minimizing the adverse impact on the government's evidence as well as confusion for the cooperating defendants and the jury.

8

CONCLUSION

As set forth above, the government respectfully submits the attached proposed redactions to transcripts of recordings the government seeks to admit as evidence, and proposes instructions to the jury and witnesses relating to anticipated testimony regarding Quintanilla Trujillo's murder. The government requests that the Court set this matter for hearing on Friday, March 18, 2016, at 9:00 a.m., or at the Court's earliest convenience.

Respectfully Submitted,

Dana J. Boente
United States Attorney

/s/
Stephen M. Campbell
Julia K. Martinez
Tobias D. Tobler
Assistant United States Attorneys
Counsel for the Government
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, VA 22314
(703) 299-3700
(703) 739-9556 (fax)

CERTIFICATE OF SERVICE

      I hereby certify that on the 14th of March, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to counsel of record.

                      /s/
Tobias D. Tobler
Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3700
Fax: (703) 299-3981
tobias.tobler@usdoj.gov