IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:14-cr-00306-GBL-8 |
| MANUEL ERNESTO PAIZ GUEVARA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Manuel Ernesto Paiz Guevara's ("Guevara") Motion to Sever and Continue. (Doc. 597). The Third Superseding Indictment, in Count Six, charges Guevara with murder in the aid of racketeering in violation of Va. Code §§ 18.2-32 and 18.2-18. (Doc. 287). This offense relates to an alleged attempt by several MS-13 gang members, including Defendant, to kill Gerson Adoni Martinez. *See id.*

On January 29, 2016, Defendant Guevara moved to sever his case and continue it from the current trial date of March 21, 2016. (Doc. 597). This relief is sought in light of recent news that Mr. David Baugh ("Baugh"), learned counsel for Defendant, was recently diagnosed with a serious ailment, which necessitates medical testing, treatment, and recuperation over an extended period of time. (*Id.*) Defendant requests his case be severed and continued so that Mr. Baugh may remain on the case along with co-counsel Mr. Michael Chick. (*Id.*)

The issue before the Court is whether 18 U.S.C. § 3005 requires the retention of a second lawyer after (1) co-counsel becomes medically incapacitated on the eve of trial, (2) the Government has conclusively determined that it will not seek the death penalty, (3) the record

reflects that co-counsel is a seasoned and experienced criminal defense attorney, and (4) the Court offered to appoint a second learned co-counsel.

The Court **DENIES** Defendant's Motion to Sever and Continue this matter because 18 U.S.C. § 3005 does not require the retention of a second lawyer after the Government has conclusively determined that it will not seek the death penalty. In this case, § 3005 to requires two attorneys when the defendant faces the potential option of receiving the death penalty. Here, even though the Government notified Defendant on December 18, 2014, a mere three months after indictment, that it would not be seeking the death penalty, Defendant had two attorneys for more than a year and four months. Additionally, counsel was provided with all the resources that would ordinarily apply to a capital case including: mitigation experts, interpreters, investigators, and additional litigation support. When notified of Mr. Baugh's illness, this Court allowed defense counsel the opportunity to appoint additional counsel to take his place. Further, there are broad concerns with severing the Defendant or continuing this trial including: (1) the expenditure of unnecessary judicial resources in arguing the same case twice; (2) jeopardizing both the Government's evidence and the safety of its witnesses; (3) the difficulty of attempting to coordinate a new trial date with more than fifteen defense attorneys, eight defendants and the Government; and (4) prolonging the pretrial detention of co-defendants.

Accordingly, the Court denies Defendant's Motion to Sever and Continue because 18 U.S.C. § 3005 does not require the retention of two attorneys here where co-counsel has become medically incapacitated on the eve of trial, remaining defense counsel was unable to find a second attorney to join the case, and Defendant does not face the death penalty. Further, Mr. Baugh's medical disability will not deprive Defendant of the benefits he already received from

access to Mr. Baugh for over one year and four months, or effective assistance of counsel at trial as Mr. Chick is a seasoned criminal defense attorney.

## I. BACKGROUND

Defendant Guevara was indicted on September 9, 2014, and charged with murder in the aid of racketeering in violation of Va. Code §§ 18.2-32 and 18.2-18. (Doc. 287). These offenses relate to an alleged attempt by several MS-13 gang members, including Defendant, to kill Gerson Adoni Martinez. *See id.* As murder in the aid of racketeering is a capital crime, there *was* a possibility that the Government would seek the death penalty in Guevara's case. Thus, as required by 18 U.S.C. § 3005, Guevara was appointed two attorneys, David Baugh and Michael Chick, on October 1, 2014. (Doc. 33-34). However, on December 18, 2014, the Government indicated it would not seek the death penalty in Defendant's case. (Doc. 179). On December 11, 2015, counsel David Baugh was diagnosed with a serious illness. (Doc. 586 at 2). Mr. Baugh selected a treatment option on January 7, 2016 that, including recovery, would require him to take *at least* four months (or more) off from the date of March 21, 2016. (*Id.*) At the time of this motion, both attorneys had been appointed in this case for more than one year and four months, or 491 days.

An under seal telephonic hearing was held on Thursday, February 4, 2016, where Mr. Baugh explained his situation to the Court and moved to sever the Defendant from the current case and continue this matter from the current trial date of March 21, 2016, thereby allowing Mr. Baugh to remain on the case. In response, the Court permitted Mr. Baugh to withdraw from the case, and instructed Mr. Chick to inquire about other possible learned counsel to replace Mr. Baugh for the current March 21, 2016 trial date. The Court also stated that any resources Mr.

3

Chick needed would be provided. To date, Mr. Chick has been unsuccessful in finding a replacement for Mr. Baugh. (Doc. 597 at 2).

Defendant argues that denying his Motion to Sever and Continue would: (1) violate 18 U.S.C. § 3005 and (2) deny him effective assistance of counsel at trial. (Doc. 597).

## II. STANDARD OF REVIEW

### A. Motion for Continuance of Trial

Given the inevitably fact-specific conflicts between individual rights and state interests posed in motions for continuances, trial courts must be accorded broad discretion in deciding whether to grant continuances, notwithstanding that constitutional rights may be implicated. *Morris v. Slappy*, 461 U.S. 1, 11 (1983); *United States v. Williams*, 445 F.3d 724, 738-39 (4th Cir. 2006). The constitutional right is probably best stated as a limit on trial court discretion: that discretion only exceeds its constitutional bounds when it is exercised to deny a continuance on the basis of an "unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" *Slappy*, 461 U.S. at 11-12 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). Because a request for delay cannot be considered "justifiable" if it proceeds from a "transparent ploy for delay," *Slappy*, 461 U.S. at 13, whether it is the one or the other is the critical constitutional issue posed by such a request.

"[A] trial court's denial of a continuance is . . . reviewed for abuse of discretion; even if such an abuse is found, the defendant must show that the error specifically prejudiced her case in order to prevail." *Williams*, 445 F.3d at 739 (quoting *United States v. Hedgepeth*, 418 F.3d 411, 419 (4th Cir. 2005)).

### B. Motion for Severance

The decision whether to sever is within the sound discretion of the trial judge. *United States v. Santoni*, 585 F.2d 667, 674 (4th Cir. 1978). The burden is on the defendant to demonstrate "a strong showing of prejudice." *United States v. Mir*, 525 F.3d 351, 357 (4th Cir. 2008) (citing *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir.1984)).

Federal Rule of Criminal Procedure 14 provides for relief from prejudicial joinder. "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). In determining whether to grant a Rule 14 motion, the court must balance potential prejudice of the defendants against judicial economic interests. *United States v. Stratton*, 649 F.2d 1066 (5th Cir.1981). The defendant undertakes a "considerable burden" in attempting to show the trial judge abused his discretion in denying a motion to sever. *See* 8 *Moore's Federal Practice*, § 14.02 [1] at 14-5 (Matthew Bender 1990).

"The Supreme Court has indicated that '[t]here is a preference in the federal system for joint trials of defendants who are indicted together.'" *United States v. Najjar*, 300 F.3d 466, 473 (4th Cir. 2002) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)). "This preference exists because 'joint trials are more efficient, and generally serve the interests of justice by avoiding the inequity of inconsistent verdicts.'" *United States v. Hickson*, 506 Fed. Appx. 227, 234 (4th Cir. 2013) (quoting *United States v. Dinkins*, 691 F.3d 358, 368 (4th Cir. 2012) (internal alterations omitted)).

Due to this preference, "when an indictment properly has joined two or more defendants under the provisions of Rule 8(b), severance pursuant to Rule 14 is rarely granted." *Richardson*

*v. Marsh*, 481 U.S. 200, 210 (1987). A district court should grant severance under Federal Rule of Criminal Procedure 14 only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Before any such severance, the defendant must "establish that actual prejudice would result from a joint trial, and not merely that a separate trial would offer a better chance of acquittal." *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995) (internal citation and alteration omitted).

The party seeking severance under Rule 14 "bears the burden of demonstrating 'a strong showing of prejudice . . . .'" *United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008) (quoting *United States v. Goldman,* 750 F.2d 1221, 1225 (4th Cir. 1984)). Such burden requires a moving defendant to show that a joint trial will result in "actual prejudice" to such defendant. *Reavis*, 48 F.3d at 767. When the potential for prejudice is raised by a defendant seeking a separate trial, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro,* 506 U.S. at 539.

### III. ANALYSIS

The Court **DENIES** Defendant's Motion to Sever and Continue because 18 U.S.C § 3005 does not preclude Guevara from going forward in the trial without having two lawyers represent him where co-counsel became medically incapacitated on the eve of trial. Allowing Mr. Baugh to withdraw from the case will not deprive Mr. Chick of the benefit he received by having access to Mr. Baugh for one year and four months, or deprive Mr. Guevara of his rights to trial counsel under 18 U.S.C. § 3005. This is no longer a capital case as the Government is not seeking the death penalty, and Mr. Chick is a qualified criminal defense attorney. Therefore, Defendant is

not being denied effective assistance of counsel by moving forward without Mr. Baugh's assistance.

Defendant argues that a denial of his Motion to Sever and Continue will unfairly prejudice his case, however, there are multiple countervailing factors against continuing the entire trial, or alternatively severing Defendant's case and continuing his trial. Specifically, any delay in the trial date would be greatly prejudicial to the Government, the victims' families, the victims who remain alive, the co-defendants who have been in pretrial detention for the last fourteen months, and the pursuit of justice. The Government also has valid concerns about evidence and witnesses becoming less available if the trial date is pushed back.

Here, Defendant poses two arguments in favor of granting his Motion to Sever and Continue. First, Defendant states that denying the continuance will violate 18 U.S.C. § 3005. (Doc. 597 at 4). Second, Defendant argues denying his motion will result in identifiable prejudice to Defendant's case. (Doc. 612 at 4). According to defense counsel, unless the case is continued and Defendant is severed from the remaining co-defendants, Guevara's constitutional right to effective assistance of counsel will be violated should he be forced to proceed with Mr. Chick or any new counsel. (*Id.*)

A. **Retention of Counsel Under 18 U.S.C. § 3005**

The Court holds that 18 U.S.C. § 3005 does not preclude Defendant from going to trial with only one attorney representing him where co-counsel becomes medically incapacitated on the eve of trial. Under 18 U.S.C. § 3005, indictment of a capital crime triggers a defendant's right to two attorneys. The statute demands that at least one of the two appointed counsel "shall be learned in the law applicable to capital cases." 18 U.S.C. § 3005. A recent D.C. Circuit case, *United States v. Cordova*, 806 F.3d 1085 (D.C. Cir. 2015), analyzed this very issue; whether 18

U.S.C. § 3005 requires the retention of the second lawyer after the government has conclusively determined that it will not seek the death penalty.

The court in *Cordova* first focused on the actual language of the statute, because "where the language is clear, that is the end of judicial inquiry 'in all but the most extraordinary circumstances.'" *Cordova,* 806 F.3d at 1099 (quoting *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 474 (1992)). Specifically, that statute states:

> Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases, and who shall have free access to the accused at all reasonable hours. In assigning counsel under this section, the court shall consider the recommendation of the Federal Public Defender organization, or, if no such organization exists in the district, of the Administrative Office of the United States Courts. The defendant shall be allowed, in his defense to make any proof that he can produce by lawful witnesses, and shall have the like process of the court to compel his witnesses to appear at his trial, as is usually granted to compel witnesses to appear on behalf of the prosecution.

18 U.S.C. § 3005.

While it is clear that the return of an *indictment* of a capital crime triggers the right to a second lawyer, a plain reading of 18 U.S.C. § 3005 does not provide whether the statute requires the retention of the second lawyer after the government has conclusively determined that it will not seek the death penalty. In this regard, the statute is silent, and therefore ambiguous. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning *with regard to the particular dispute in the case.*" (emphasis added); *see also id.* at 341 ("In determining the 'plainness or ambiguity of statutory language' we refer to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'").

8

The court in *Cordova* addressed this ambiguity by looking to the statutory purpose of § 3005. *Cordova*, 806 F.3d at 1099; *see also Braxtonbrown-Smith*, 278 F.3d at 1352 ("Where the language is subject to more than one interpretation and the meaning of Congress is not apparent from the language itself, the court may be forced to look to the general purpose of Congress in enacting the statute and to its legislative history for helpful clues."). The language used by Congress suggests that the purpose of the statute would be best met by applying the mandate for two attorneys generally, as long as the death penalty is actually being pursued. *Cordova*, 806 F.3d at 1099. However, in this case Defendant was appointed two attorneys as is required by the statute. Defendant is only being deprived of two attorneys in this instance due to the involuntary medical disability of learned counsel.

The statute demands that at least one of the two appointed counsel, "shall be learned in the law applicable to capital cases." 18 U.S.C. § 3005. Congress has repeatedly used "capital case" to mean a proceeding in which the death penalty has been imposed or a case in which the death penalty is being or could be sought. *See, e.g.*, 18 U.S.C. § 3510(b) (right of victim to attend trial even if she may appear as witness at subsequent sentencing phase in a death penalty case); 28 U.S.C. § 2266 (special habeas corpus procedures for cases where a death sentences was imposed); 42 U.S.C. § 14163 (grants to states to improve representation in cases where a death sentence may be sought or has been imposed). *See, e.g., Wiggins v. Smith*, 539 U.S. 510, 524 (2003); *United States v. Shepherd*, 576 F.2d 719, 728 (7th Cir. 1978) (the term "capital," when used to modify "crime," means punishable by death). Congress and the courts have imposed procedural safeguards in cases where the death penalty is at issue that are distinct from the procedures required in noncapital cases because "there is a significant constitutional difference between the death penalty and lesser punishments." *Beck v. Alabama*, 447 U.S. 625, 637 (1980).

Thus, by requiring that at least one attorney be "learned in the law applicable to capital cases," Congress indicated that the purpose of the second lawyer is to provide additional support and expertise to defendants facing the possibility of the death penalty, precisely because defending those cases requires a separate and unique base of knowledge, training, and experience. *Cordova*, 806 F.3d at 1100. In light of this understanding, the statute reflects Congress's policy decision that defendants relying on appointed counsel need even more resources when their life hangs in the balance. *Id.* If the death penalty is no longer a possibility in a particular case, such expertise is no longer absolutely necessary for a fair proceeding to result. *Cf. Shepherd*, 576 F.2d at 729 (reflecting that "the purpose of the two counsel provision [is] to reduce the chance that an innocent defendant would be put to death because of inadvertence of errors in judgment of his counsel, and to attempt to prevent mistakes that would be irrevocable because of the finality of the punishment").

It is clear that the congressional purpose is best served by reading 18 U.S.C. § 3005 to require two attorneys when the defendant faces the death penalty as a potential option. *Cordova*, 806 F.3d at 1101. Once the government has decided not to seek the death penalty, the trial court retains the discretion to keep or dismiss the second attorney, but is it not per se error for the court to choose dismissal. *Id.*

This conclusion is in accord with the majority of circuit courts that have considered the issue. *See United States v. Douglas*, 525 F.3d 225, 237 (2d Cir. 2008) ("[O]nce the government has formally informed the court and the defendant of its intention not to seek the death penalty, the matter is no longer a capital case within the meaning of § 3005 and that section does not require the district court to continue the appointment of a second attorney."); *United States v. Waggoner*, 339 F.3d 915, 917–18 (term "capital crime" did not encompass the underlying

10

offense when capital punishment could not be imposed and thus government's formal and irrevocable renunciation of intent to seek a conviction for capital murder justified denial of defendant's motion for continued representation by a second court-appointed lawyer); *United States v. Casseus*, 282 F.3d 253, 256 (3d Cir. 2002) (any error in the failure of the district court to act on the defendant's requests to appoint death-penalty qualified counsel was harmless where the requests were rendered moot by the government's decision not to seek the death penalty); *United States v. Grimes*, 142 F.3d 1342, 1347 (11th Cir. 1998) (defendant was not entitled to two court-appointed lawyers where the government had stated, on the record prior to trial, that it would not seek the death penalty; court determined that at that point the proceeding was transformed from a capital case into a noncapital case); *see also In re Sterling–Suárez*, 306 F.3d 1170, 1175 (1st Cir. 2002) ("[I]n this case there *are* practical reasons to treat the case as capital from indictment forward, for purposes of appointing learned counsel, until it becomes clear that the death penalty is no longer an option.") (emphasis in the original)).

Further support for this conclusion comes from opinions interpreting § 3005 in the wake of *Furman v. Georgia*, 408 U.S. 238 (1972). *See United States v. Dufur*, 648 F.2d 512, 514–15 (9th Cir. 1980) (invalidation of death penalty provision in 18 U.S.C. § 1111 eliminated defendant's right to two attorneys in prosecution for "capital crimes"); *United States v. Shepherd*, 576 F.2d 719, 727–29 (7th Cir. 1978) (holding that because "there is no possibility that the death penalty can be imposed," this provision granting defendants a right to two counsel in capital cases was inapplicable); *United States v. Weddell*, 567 F.2d 767, 770–71 (8th Cir. 1977) (defendant accused of murder was not entitled to appointment of second attorney where Furman precluded imposition of death penalty and case thus lost its capital nature).

11

The only circuit that has come to a different conclusion is the Fourth Circuit, *see United States v. Boone*, 245 F.3d 352, 359–60 (4th Cir. 2001); *United States v. Watson*, 496 F.2d 1125 at 1127–29 (4th Cir. 1973) (offense of first-degree murder still a "capital crime," and thus defendant charged with such offense had absolute statutory right to two attorneys on request, notwithstanding that under *Furman* the death penalty could not constitutionally be imposed). In *Boone*, the court found that, even though the Government did not seek the death penalty, the defendant was entitled to the assistance of two attorneys under 18 U.S.C. § 3005 because he was indicted under a statute that carries the death penalty as a maximum sentence. *Boone*, 245 F.3d 352, at 358. As the text of § 3005 is clear that the statute becomes applicable upon *indictment* for a capital crime and not upon the later decision by the government to seek or not to seek the death penalty, the court refused to, in their words, "rewrite" the statute. *Id.* at 361.

Here, the Court has followed *Boone* and Defendant was appointed two attorneys. Defense counsel has been deprived of second counsel only because of learned counsel's medical incapacitation on the eve of this non-capital trial. The Court has balanced the Defendant's right to effective assistance of counsel and determined that Mr. Chick is a seasoned criminal defense attorney who is more than capable of handling this trial alone. The Court offered to appoint second counsel for the Defendant, but defense counsel attests that he was not able to identify an attorney to join the case.

The Court holds that 18 U.S.C. § 3005 does not require the retention of a second defense attorney after (1) the Government determines not to seek the death penalty, (2) two attorneys were appointed, and (3) on the eve of trial learned counsel became medically disabled.

### B. Defendant's Motion to Sever and Continue

Defendant makes two arguments in support of his Motion to Sever and Continue. First, Defendant states that denying the continuance will violate 18 U.S.C. § 3005. (Doc. 597 at 4). Second, Defendant argues denying his motion will result in identifiable prejudice to Defendant's case. (Doc. 612 at 4). According to Defense counsel, unless the case is continued and Defendant is severed from the remaining co-defendants, Guevara's constitutional right to effective assistance of counsel will be violated should he be forced to proceed with Mr. Chick and any new counsel. (*Id.*)

#### i. 18 U.S.C. § 3005 Does Not Require Mr. Baugh be Retained as Defendant's Counsel

Turning first to the issue of statutory violation, this Court holds that denying Defendant's Motion to Sever and Continue, thereby permitting Mr. Baugh to withdraw as counsel, does not violate 18 U.S.C. § 3005 or the Fourth Circuit's holding in *Boone*. As stated previously, § 3005 does not require the retention of a second attorney if the Government is no longer seeking the death penalty. In Guevara's case, although he was indicted for a capital crime and therefore was initially appointed additional defense counsel, on December 18, 2014 the Government announced they would not be seeking the death penalty. As the Court "retained the discretion to keep or dismiss the second attorney," it allowed Mr. Baugh to remain on the case.

As the Fourth Circuit analyzed in *Boone*, 18 U.S.C. § 3005 is triggered upon the *indictment* of a capital crime; not once the Government decides whether or not to seek the death penalty. This is because the Government has time between indictment and trial to decide whether it intends to seek the death penalty. *Boone* at 360; *see* 18 U.S.C. § 3593(a) (2000) ("If . . . the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the

13

trial . . . sign and file with the court, and serve on the defendant, a notice . . . ."). Prior to the government's decision to seek or not seek the death penalty, defense counsel can present mitigating factors counseling against imposition of death. *Boone* at 360. Thus, the appointment of a second lawyer assists the defendant during this preliminary process, including investigation of relevant factors and presentment of information to the Government. *Id.*

Here, in accord with *Boone*, Defendant *was* afforded a second defense attorney when he was indicted for the capital crime of murder in the aid of racketeering. A mere three months after Defendant was indicted, the Government made the decision *not* to seek the death penalty in Guevara's case. In spite of this decision, Defendant had continued access to both attorneys for approximately one year and four months. In similar fashion, Defendant had access to all the resources that would ordinarily apply in a capital case; the Court appointed a mitigation expert, interpreters, investigators, and allowed the parties to have additional litigation support they needed in translating telephone calls and other things that were necessary for Defendant to prepare for trial. Accordingly, it is clear that the objective of 18 U.S.C. § 3005 as analyzed in *Boone*, that is to grant a defendant additional counsel for the purpose of "present[ing] mitigating factors counseling against imposition of death," was not only met, but exceeded in Defendant's case.

Furthermore, Defendant's counsel was informed they had the option to seek Court approval to appoint additional counsel to replace Mr. Baugh if necessary. While Mr. Chick states he has been unsuccessful in finding an attorney to replace Mr. Baugh, the Court would like to point out that two other Defendants in this case also had counsel withdraw for medical reasons, and both found suitable replacements.[1]

---

[1] *See United States v. Douglas Duran Cerritos*, Case No. 1:14-cr-306-6, at Docs. 644, 645 (learned counsel withdrew from case on February 16, 2016, and new attorney was appointed on February 17,

14

Accordingly, the Court holds that denying Defendant's Motion to Sever and Continue here does not violate 18 U.S.C. § 3005 or the Fourth Circuit's holding in *Boone*, as Defendant was afforded two attorneys and necessary resources.

### ii. Going to Trial With Mr. Chick as Lead Counsel Will not Deny Defendant Effective Assistance of Counsel

Second, with respect to effective assistance of counsel, the Court finds that denying Defendant's Motion to Sever and Continue will not deny Defendant effective assistance of counsel because Mr. Chick is a qualified criminal defense attorney.

Mr. Michael Chick's criminal trial practice began as an assistant public defender in Fairfax, Virginia, where he successfully handled a countless number of serious felony, misdemeanor, and traffic criminal matters, and he was involved in multiple capital cases. *Our Lawyers*, (April 6, 2016, 8:30 AM), http://www.chicklawfirm.com. Eventually he transitioned to one of the premiere criminal trial firms in Virginia and the D.C. Metropolitan area, Greenspun Shapiro, PC. *Id.* Mr. Chick also worked as an attorney with the Capital Defender's Office of Northern Virginia, where he exclusively handled capital murder cases for clients facing the possibility of the death penalty. *Id.* Now in his own practice, Mr. Chick continues to litigate capital murder death penalty cases and other serious criminal matters. *Id.*

Mr. Chick is a member of the Fairfax Bar Association, the Prince William County Bar Association, and the Arlington County Bar Association. *Id.* He was elected a board member of the Young Lawyers Section of the Fairfax Bar in 2008, and he served on the FBA's Legislative, J&DR and General District Court Committees. *Id.* In 2013 Mr. Chick was named a Rising Star by Super Lawyers magazine, and he was listed by Washingtonian Magazine as one of the top criminal lawyers in the Washington, D.C. Metro area. *Id.*

---

2016); *United States v. Christian Lemus Cerna*, Case No. 1:14-cr-306-5, at Docs. 623, 722 (third attorney appointed on February 5, 2016. Medically disabled counsel withdrew from case on March 18, 2016).

15

Accordingly, the Court finds that Defendant is not being denied effective assistance of counsel by moving forward without Mr. Baugh's assistance, as this is no longer a capital case and Mr. Chick is a qualified criminal defense attorney. Allowing Mr. Baugh to withdraw from the case will not deprive Defendant of the benefit of access he had to Mr. Baugh for one year and four months, or deprive Mr. Guevara of his rights to trial counsel under 18 U.S.C. § 3005.

### iii. There are Multiple Countervailing Factors Against Continuing the Entire Trial or Severing Defendant's Case

The Court holds that continuing or severing Defendant's case would be prejudicial to the Government, waste unnecessary judicial resources, prolong the pretrial detention of co-defendants, and jeopardize evidence as well as the safety of witnesses. These multiple countervailing factors outweigh the prejudice, if any, Defendant would experience by moving forward with only Mr. Chick as counsel.

While Defendant argues denial of his Motion to Sever and Continue would severely prejudice *him* in this matter, the Government points out that any delay in the trial date would be greatly prejudicial to the Government, the victims' families, the victims who remain alive, the co-defendants who remain in pretrial detention, and to the pursuit of justice. The Government also has valid concern about evidence and witnesses becoming less available if the trial date is pushed back. Specifically, the Government will call numerous witnesses who will have to testify against MS-13 gang members; a gang that is known to take violent reprisal on witnesses who speak out against it. These witnesses, who will testify as to their first-hand knowledge of the murders, attempted murder, and other gang activity committed by the defendants in this case, are fearful and apprehensive about testifying. As many of these individuals live in the community where other MS-13 gang members may also live, MS-13's history of retaliation makes this a valid concern. *See United States v. Denis Rivera, et al.*, Case No. 1:04-cr-00283 (E.D. Va. 2005)

(jury convicted two MS-13 gang members for murdering pregnant MS-13 gang member who had become an informant). These witnesses are understandably apprehensive and fearful, and delaying the trial will undoubtedly increase their anxiety and potentially jeopardize the Government's evidence. The families of the three victims in this case also have an interest in seeing this trial go forward as scheduled. They have waited a long time to see these defendants brought to justice, and that justice should not be further delayed. Furthermore, the co-defendants have been in lengthy pretrial detention, and, they have an interest in proceeding to trial.

Severing and continuing Defendant's case would also effectively force the Government to put on the same trial twice, taxing the Government's resources and jeopardizing the safety of witnesses. The witnesses would still testify at the earlier trial, thereby revealing their identities, and then they would have to be called again much later for Defendant's trial.

There are also valid scheduling concerns with continuing the entire trial. The March 21, 2016 trial date was set on April 2, 2015, more than one year ago. Finding another trial that would accommodate eight defendants, fifteen defense attorneys and the Government for a six to eight week jury trial would be extremely difficult.

The Court denies Defendant's Motion to Sever and Continue because continuing the entire trial, or alternatively severing and continuing Defendant's case, would greatly prejudice the Government's evidence, the personal safety of their witnesses who are at are at risk for retaliation from MS-13 gang members, and unnecessarily prolong the detention of the co-defendants.

## IV. CONCLUSION

First, the Court denies Defendant's Motion to Sever and Continue and holds that 18 U.S.C. § 3005 does not require the retention of a second defense attorney after the Government

17

determines not to seek the death penalty, where here learned counsel became medically disabled on the eve of trial. Second, the Court holds that Defendant proceeding to trial with only one attorney as counsel will not deny Defendant effective assistance of counsel, as Mr. Chick is a qualified criminal defense attorney. Further, Defendant was informed that the Court would appoint a second attorney upon defense counsel's request, and continuing or severing Defendant's case would greatly prejudice the Government, the victims and the witnesses in this case, and would unnecessarily prolong the pretrial detention of co-defendants.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Manuel Ernesto Paiz Guevara's Motion to Sever and Continue (Doc. 597) is **DENIED**.

**IT IS SO ORDERED.**

ENTERED this 15th day of April, 2016

Alexandria, Virginia
4 / 15 / 16

/s/
Gerald Bruce Lee
United States District Judge