IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:14-CR-306 |
| | ) | |
| PEDRO ANTHONY ROMERO CRUZ, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

RESPONSE OF THE UNITED STATES TO
DEFENDANTS' JOINT MOTIONS FOR A NEW TRIAL

The United States of America, by and through its attorneys, Dana J. Boente, United States Attorney, Julia K. Martinez, and Tobias D. Tobler, Assistant United States Attorneys, hereby responds to the defendants' joint motions for a new trial, Dkt. Nos. 928–29. In their first pleading, the defendants move for a new trial on the grounds that the government allegedly failed to disclose exculpatory and/or impeachment materials regarding a cooperating human source (CHS) who testified at trial. *See* Dkt. No. 928. In their second pleading, the defendants move for a new trial under Rule 16 of the Federal Rules of Criminal Procedure, citing the government's nondisclosure of summaries of recorded calls. *See* Dkt. No. 929.

The defendant's arguments lack legal and factual support, and the Court should deny them accordingly. First, because the CHS's immigration and bankruptcy records are not in the prosecution team's possession, and because the defendants had access to the impeachment information at issue, the government had no obligation to obtain and produce these materials. Furthermore, even assuming that the government had such an obligation (which it did not), the defendants' motion fails because they cannot show that any purported *Brady/Giglio* violation was material.

As to the defendants' second motion, because the government provided the defendants with all recorded calls between the CHS and the defendants in the government's possession, Rule 16 does not compel disclosure of written summaries of those calls. Furthermore, even if the Court were to assume that failure to produce summaries violated Rule 16 (which it did not), the defendants would not be entitled to a new trial because they have not demonstrated prejudice.

## ARGUMENT

1. <u>The government did not violate *Brady/Giglio* by failing to obtain and produce the materials sought by the defendant relating to a cooperating human source.</u>

In their first joint motion, the defendants argue that the government violated its constitutional discovery obligations under *Brady/Giglio* by failing to produce immigration and bankruptcy records for a CHS who testified at trial. Dkt. No. 928. Because these records are not in the prosecution team's possession, and because the defendants were able to (and did) obtain the relevant impeachment information, the government had no obligation to produce the sought-after materials. In addition, even assuming the government had such an obligation, the defendants have failed to demonstrate a reasonable probability that the government's alleged *Brady/Giglio* violation affected the outcome at trial. The Court should therefore deny the defendants' motion.

To prove a *Brady/Giglio* violation, the defendants must show that the government suppressed evidence favorable to the defendants, and that the evidence suppressed was material to the verdict at trial. *Nicolas v. Attorney Gen. of Maryland*, --- F.3d ----, 2016 WL 1660204, at *5 (4th Cir. 2016). Here, the defendants can prove neither. First, as this Court is well aware, the *Brady/Giglio* line of cases imposes no obligation on the prosecution team to disclose information outside of its possession. *See, e.g.*, *United States v. Makarita*, 576 F. App'x 252, 262 (4th Cir. 2014) ("The Government is only obligated to disclose favorable evidence in its possession.");

2

*United States v. Atkinson*, 513 F.2d 38, 42 (4th Cir. 1975) (prosecution has "no duty under the standard set in *Giglio* . . . to disclose information to the defense when it is not even charged that Government attorneys were in possession of the information" (internal quotation marks omitted)). And while the government has a constitutional duty "to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), the government has no such duty with respect to government agencies not participating in the investigation, *see, e.g.*, *United States v. Smith*, 398 Fed. Appx. 938, 941 (4th Cir. 2010) ("There is no requirement that prosecutors in one district be aware of and disclose information in the possession of other governmental offices."); *Kasi v. Angelone*, 300 F.3d 487, 506 (4th Cir. 2002) ("[W]e reject Kasi's claim that *Kyles* imposes a duty upon a state prosecutor to conduct a *Brady* review of federal agency files."); *Lovitt v. True*, 330 F. Supp. 2d 603, 622 (E.D. Va. 2004) (finding "no supporting authority" for petitioner's claim that "duty to ascertain [exculpatory] information . . . is without jurisdictional boundaries"). As one court has observed, "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [courts] to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (internal quotation marks omitted).

In their motion, the defendants allege that the government violated *Brady*/*Giglio* by failing to produce immigration and bankruptcy court records that the prosecution team does not possess, maintained (presumably) by a governmental office and/or court unassociated with the present investigation. The government had no duty to produce such materials. *See, e.g.*, *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) (government's failure to produce

affidavits made for a prior bankruptcy proceeding was not a *Brady* violation because the affidavits were in the possession of an arm of the district court and were not subject to the prosecution's control). *Cf. United States v. Cagnina*, 697 F.2d 915, 922 (11th Cir. 1983) ("Anything in control of a district court, such as the court reporter's notes, is not in the possession of the prosecutor and therefore does not fall within the requirements of the Jencks Act."). Thus, the government suppressed no evidence, and the defendants' *Brady*/*Giglio* claim fails accordingly.

The defendants' *Brady*/*Giglio* claim fails for the additional, independent reason that the purportedly "suppressed" impeachment materials were already in the defendants' possession or were available to the defense through other sources. *See, e.g.*, *United States v. Melinsky*, 208 F. App'x 263, 264 (4th Cir. 2006) ("Government is not required to provide a defendant with information that the defendant has or with reasonable diligence could obtain himself." (citing *Stockton v. Murray,* 41 F.3d 920, 927 (4th Cir. 1994)); *Fullwood v. Lee,* 290 F.3d 663, 686 (4th Cir. 2002) ("The *Brady* rule does not compel the disclosure of evidence available to the defendant from other sources, including diligent investigation by the defense." (internal quotation marks omitted)). Where the defendant possesses or can reasonably obtain the materials at issue, he has all the means necessary to conduct effective cross-examination of the government's witnesses and the government bears no additional disclosure obligation. *Lovitt v. True*, 403 F.3d 171, 184 (4th Cir. 2005).

The trial record plainly demonstrates that the defendants had a meaningful ability to obtain relevant materials and cross-examine the witness on his immigration and bankruptcy history. In compliance with its discovery obligations, the government notified the defendants prior to trial of immigration benefits conveyed by the government to the CHS—namely,

assistance with the CHS's unsuccessful S-Visa application and a letter submitted by the U.S. Attorney's Office to an immigration judge. The Court expressly denied defense motions for additional materials, including the adjustment application sought by the defendants in their present motion. *See* Trial Tr. (Apr. 12, 2016), at 24–25. As this Court observed, the government is not required to find and produce the CHS's immigration filings to facilitate "fishing expeditions" and "wild goose chases" based upon defense counsel's "hunches." *Id.* at 16, 24–25.

At trial, counsel for various defendants questioned the CHS at length regarding the benefits he received from the government, and, more broadly, regarding his immigration status and his recent bankruptcy filing. Indeed, defense counsel was able to cross-examine and impeach the CHS on *precisely* the grounds that the defendants identify in their current motion. For instance, under cross-examination, the CHS testified that he had disclosed in his application for permanent residency that he was an MS-13 member and that he had a criminal record, but did not report having engaged in drug trafficking. *See* Trial Tr. (Apr. 13, 2016), at 42–44, 74. Counsel for defendant Lemus Cerna independently obtained the CHS's bankruptcy petition, and questioned the CHS regarding the representations he made in his bankruptcy proceedings. *Id.* at 102–116. Counsel for defendant DeJesus Castillo likewise obtained the CHS's bankruptcy records, and elicited testimony in which the CHS admitted that he had lied about his income in his bankruptcy petition. *Id.* at 109, 162–64.

As the record demonstrates, the defendants had at their full disposal the means required to cross-examine the CHS regarding his immigration and bankruptcy records. Under these circumstances, the government had no obligation to seek out and obtain the records the defendants request. For this additional reason, the Court should deny the defendants' motion.

5

Lastly, even assuming that the government had an obligation to obtain and produce the materials at issue (which it did not), the defendants' motion fails because they cannot show that any purported *Brady*/*Giglio* violation was material. In other words, the defendants have not shown (and cannot show) that "there is a 'reasonable probability' that [they] would not have been convicted" had the alleged violation not occurred. *United States v. Robinson*, 627 F.3d 941, 952 (4th Cir. 2010) (quoting *Strickler v. Greene*, 527 U.S. 263, 296 (1999)). This "materiality requirement asks whether the suppressed evidence, including impeachment evidence, could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

First, as noted above, the defendants had the opportunity to cross-examine the CHS on exactly the topics that they now claim they were unable to explore. They were able to obtain independently and elicit at trial information regarding the CHS's immigration and bankruptcy proceedings, and impeach him accordingly. The defendants' rank speculation regarding conflicts that might theoretically exist between the CHS's testimony and statements he made in an immigration filing are not a basis for a new trial. *See United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." (quoting *United States v. Agurs*, 427 U.S. 97, 109–10 (1976))).

Second, even assuming that the materials the defendants seek would result in additional impeachment of the CHS, the defendants would still fail to satisfy the materiality requirement. During the course of the seven-week trial, the jury heard evidence from nearly 40 witnesses. These included no fewer than two eyewitnesses to each of the crimes with which the defendants

6

were charged, including five cooperating defendants. The testimony of the eyewitnesses was corroborated by more than 20 recorded telephone calls and body wire recordings in which the defendants themselves described the planning, execution, and concealment of the crimes. This evidence was further corroborated by physical evidence recovered and analyzed by law enforcement, including weapons, cellular phones, and the bodies of the victims. In short, the government's strong case against the defendants is not comparable to those in which the *Brady* materiality requirement was actually met—*i.e.*, cases where the allegedly suppressed evidence "cut[s] into a somewhat thin and entirely circumstantial government case" or where the witness at issue was the "only witness[] linking [the defendant] with the crime." *Robinson*, 627 F.3d at 952–53. Rather, "physical evidence . . . and the eyewitness accounts of numerous co-conspirators and others amply proved the government's contentions," and whatever marginal benefit the defendants could derive from additional impeachment of the CHS "could do little to damage the extensive physical and testimonial foundation of the case." *Id.* at 953.

For the foregoing reasons, the Court should deny the defendants' motion for a new trial on *Brady*/*Giglio* grounds.[1]

---

[1] In addition to immigration and bankruptcy records, the defendants' motion also requests disclosure of "any and all benefits" the government provided to the CHS or his family, including immigration benefits. Dkt. No. 928, at 3. By defense counsel's own admission, the government has provided this information to the defense. On April 13, 2016, Defendant DeJesus Castillo filed a Motion to Compel Giglio Disclosure seeking disclosure of "all benefits . . . that the government or its agencies have provided to [the CHS], including . . . immigration or visa assistance provided to any friend or family member." Dkt. No. 852, at 4. On April 17, 2016, the government responded with a supplemental disclosure. Dkt. No. 861. On April 20, 2016, the Court asked counsel for DeJesus Castillo whether the parties had resolved the pending *Giglio* motion, to which defense counsel responded, "[W]e believe we've gotten that information at this point." Trial Tr. (Apr. 20, 2016), at 180. The Court thereafter denied the defendant's motion as moot. Dkt. No. 876.

2. <u>The government's nondisclosure of summaries of recorded calls provided to the defendants did not violate Rule 16, nor entitle the defendants to a new trial.</u>

The defendants also move for a new trial on the grounds that the government did not disclose all English-language summaries of recorded telephone calls prepared by FBI contractors and employees. Dkt. No. 929. For support, the defendants cite Rule 16(a)(1)(B)(1), which requires the government to disclose upon request "any relevant written or recorded statement by the defendant." Here, the government has fully complied with its obligations under Rule 16, providing the defendant with the recorded statements at issue approximately a year-and-a-half before trial. The rule does *not* require the government to produce as well any English-language summaries of the evidence itself. Moreover, because the defendants have shown no prejudice arising from the purported Rule 16 violation, they are not entitled to a new trial. The Court should therefore deny the defendant's motion.

In September 2014, the government indicted the defendants for violent crimes in aid of racketeering. In the ensuing litigation, the government produced audio recordings in its possession to the defendants, the bulk of which were obtained through the use of a consensual wiretap on the cellular phone of a CHS. The recordings of these CHS calls, which are the subject of the defendants' present motion, were produced on November 18, 2014. At the time of the production, the government specifically directed defense counsel to a subset of 200 recordings, and explained that the government considered these recordings relevant. This subset of recorded calls included all of the CHS's calls that the government ultimately introduced in the March 2016 trial. Before trial, the defendants also each received full transcripts of *all* the recordings the government planned to introduce as evidence.

The government understands that the Court authorized significant funds to permit the defendants to hire linguists to translate the recordings prior to trial. During pretrial motions

practice, the defendants nevertheless sought to compel the government to provide the defense with English-language summaries of the contents of the recordings it intended to use at trial. *See* Dkt. Nos. 348, 363, 374, 376, 377, 387–89. The Court denied these motions, noting that the government had identified the calls it considered most pertinent, that the court had provided defense counsel with funds for translating the recorded calls, and that defense counsel still had (at that time) seven months until the March 2016 trial. Dkt. No. 489, at 6–7.

This Court should again deny the defendants' motion. The plain language of Rule 16(a)(1)(B)(1) requires the government to disclose "any relevant written or recorded statement by the defendant." The government indisputably disclosed all such statements on November 18, 2014, when it produced the recordings of all calls involving the defendants and the CHS. Written summaries of these recordings, prepared by other persons, are not statements of the defendants, and Rule 16 does not compel their production. *See, e.g.*, *United States v. Mayes*, No. 10-CR-00473, 2011 WL 5320976, at *2 (E.D.N.Y. Nov. 2, 2011) (holding that Rule 16(a)(1)(B)(i) "[b]y its terms . . . limits required disclosure to written or recorded statements made by a defendant; it does not require the government to produce draft summaries of recorded statements made by a defendant where the recordings are themselves produced in discovery"); *United States v. Bailey*, 689 F. Supp. 1463, 1470 (N.D. Ill. 1987) ("the government 'is not generally obligated to provide defense counsel with the original tapes or with transcripts of the tapes'" (quoting 8 *Moore's Federal Practice* ¶ 16.04[1], at 16–57 (2d ed. 1986))). Indeed, the government has "no general obligation to provide a transcript of tapes that it has made available to defense counsel." *United States v. Villaneuva*, No. 91 CR. 976, 1993 WL 178224, at *2 (S.D.N.Y. May 24, 1993) (citing *United States v. Koska*, 443 F.2d 1167, 1169 (2d Cir. 1971)).

Because the government complied with its obligations under Rule 16, the defendants have no basis for seeking a new trial on these grounds.

Furthermore, even if the Court were to assume that failure to produce these summaries violated Rule 16 (which it did not), the defendants would not be entitled to a new trial. A failure to disclose under Rule 16 warrants a new trial only when it "has prejudicially affected the defendant's substantial rights such that she has been deprived of a fair trial." *United States v. Ware*, 225 F.3d 656, 2000 WL 1087626, at *2 (4th Cir. 2000) (citing *United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993)). *See also United States v. Chastain*, 198 F.3d 1338, 1348 (11th Cir. 1999) ("Violations of Rule 16 will result in a reversal of conviction only if such a violation prejudices a defendant's substantial rights."). To demonstrate prejudice, the defendant must establish that "it is likely that had the government complied with the discovery rule . . . , the verdict would have been different." *United States v. Suthar*, 221 F. App'x 199, 202 (4th Cir. 2007).

Here, the defendants offer no explanation for how obtaining recorded call summaries would have affected the verdict in their case. Again, the government provided the defendants with the recorded statements themselves 18 months before trial, specifically directing the defendants to a subset that included all of the CHS calls later introduced at trial. The defendants also received full translations of the calls the government offered as trial evidence. In addition, the Court provided the defendants with substantial funds pretrial to enable them to perform independent translations of these calls. Any theoretical prejudice to the defendants' case resulting from their inability to accomplish these translations is attributable to neither the government nor the Court, and is no basis for a new trial.

Moreover, the evidence against the defendants, as described above, was substantial. The defendants identify no basis for believing that their receipt of call summaries would have affected the verdict. For these reasons, the Court should deny the defendants' motion.

## CONCLUSION

For the reasons set forth above, the Court should deny the defendants' joint motions for a new trial.

Respectfully Submitted,

Dana J. Boente
United States Attorney

        /s/
Julia K. Martinez
Tobias D. Tobler
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th of June, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to counsel of record.

                                                       /s/
Tobias D. Tobler
Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3700
Fax: (703) 299-3981
tobias.tobler@usdoj.gov